UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL WILLIAMSON, THE ESTATE OF
DON C. CRAFT, KIRK O'DONNEL, JOHN
LETTOW, TIMOTHY MCGINNIS, FRED
NEWTON, WILLIAM WATSON, CHRIS
HANCOCK, DALE SCHONEMAN and
INTERNATIONAL DEEP SEA SURVEY, INC.

     Plaintiffs,

     v.                                                      06-CV-5724 (LTS)


RECOVERY LIMITED PARTNERSHIP,
COLUMBUS EXPLORATION, LLC,
COLUMBUS-AMERICA DISCOVERY GROUP,
INC., COLUMBUS EXPLORATION LIMITED
PARTNERSHIP, OMNI ENGINEERING, INC.,
OMNI ENGINEERING OF OHIO, INC.,
ECONOMIC ZONE RESOURCE ASSOCIATES,
ECONOMIC ZONE RESOURCE ASSOCIATES,
LTD., EZRA, INC., EZRA OF OHIO, INC., ECON
ENGINEERING ASSOCIATES, INC. DOE.E,
INC., THOMAS G. THOMPSON, GILMAN D.
KIRK, JR., JAMES F. TURNER, MICHAEL J.
FORD, JR. and W. ARTHUR CULLMAN, JR.

     Defendants.
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION BY ORDER TO SHOW CAUSE TO VACATE
## RULE B ATTACHMENT

### PRELIMINARY STATEMENT

    Defendants Recovery Limited Partnership, et al., by counsel, respectfully file this

Memorandum in Support of their Motion to Vacate Rule B Attachment and to Dismiss.  As

discussed below, three independent grounds justify vacating the attachment and dismissing

the Complaint.

    First, the attachment fails to comply with the procedural strictures for an attachment

under the Local Admiralty Rule B.2 ("Notice of Attachment").  Plaintiffs failed to "give

prompt notice to the defendant[s] of the attachment" in any form whatsoever, let alone, as

1

required by Local Admiralty Rule B.2 "in writing…by telex, telegram, cable, fax, or other verifiable electronic means." *See* Local Admiralty Rule B.2.  As the Court has recently admonished in light of the potential for abuse inherent in the prejudgment attachments authorized by Supplemental Rule B, "The Plaintiff must demonstrate that 'reasonable grounds' exist for the attachment, and that *all technical requirements for effective attachment have been met.*" *Maersk, Inc. v. Neewra, Inc.*, No. 05 Civ. 4356 (RCC), 2006 U.S. LEXIS 53395, at *21 (Aug. 1, 2006) (emphasis added).

Second, the attachment fails because the contracts upon which Plaintiffs have predicated their right to attachment are not maritime. Those contracts have expressly chosen Ohio state law, not maritime law, as the governing law.  Moreover, the contracts upon which Plaintiffs rely are between Plaintiffs and Defendants Thompson and/or Recovery Limited Partnership (the Ohio Limited Partnership of which Mr. Thompson served at the time as the sole General Partner)-- not with the members of the Board of Directors or the other Defendants in this case. *See Orient Overseas Container Line v. Kids Int'l Corp.*, 1999 A.M.C. 961, 964-965 (S.D.N.Y. 1998) (Rule B may be used only to enforce claims within admiralty or maritime jurisdiction).

Third, even if Plaintiffs had properly complied with the technical procedural requirements for a valid Rule B attachment, the other circumstances of this case support vacatur of the attachment.  Plaintiffs have other convenient forums for their suit against Defendants, and the parties have expressly stipulated to at least one alternative forum by contract. *See Maersk*, 2006 U.S. LEXIS at *21; *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, No. 05-5385-CV, 2006 U.S. App. Lexis 19302, at * 27, (2nd Cir. July 31, 2006).

## FACTS & PROCEDURAL POSTURE

Plaintiffs' Complaint in this matter, a copy of which is annexed to the Order to Show Cause at Exhibit A, asserts that Plaintiffs assisted in the search for the historic shipwreck SS *Central America.*  Pl Cmpl, 7-28-6, at ¶¶ 2, 5, 27.  They claim that they did so in 1986 through 1988.  *Id.* at ¶¶ 2, 27.  Plaintiffs claim that they subsequently executed non-

2

present action. *Id*. at ¶¶ 2, 28.

Less than a year after the date when the Williamson Plaintiffs claim to have executed their non-disclosure agreements, in May, 1987, the U.S. District Court for the Eastern District of Virginia ordered the arrest of the SS *Central America*.[1] By Order dated July 7, 1987, the Court ordered that:

> ***upon execution of the warrant of arrest, this Court has constructive possession of the wreck itself and *everything that is a part thereof, wherever located and whenever removed therefrom, past, present or future*; and that the U.S. Marshal is ORDERED to receive and take into his possession and control any and all items that have or will come up from the wreck in question, *no matter who has brought up or who will bring up such items* until a determination of ownership is made or a further order of the Court is issued.

Order, July 7, 1987 at 2 (emphasis added).[2]  Pursuant to Supplemental Rule C, the Court further ordered notice by publication of the arrest, including the requirement that:

> *any persons claiming any interest* in the <u>in rem</u> Defendant *shall file* their respective claims and Answers to the Complaint with the Court within 45 days, in the form of, or similar to, Attachment "A" to this Order ("Notice of Complaint and Arrest Pursuant to Admiralty Rules.").

Order, July 7, 1987.  The Court subsequently entered an order providing that any person claiming any interest in the SS *Central America* was required to file his or her claim prior to the claims cut-off date, which expired over a decade ago, in 1992.  Those orders have been updated and reinforced by a series of additional orders, decrees and amendments over the years, adjudicating a panoply of procedural and substantive issues ranging from the procedure to be followed by persons, such as the Williamson Plaintiffs, who assert that they have any interest in the treasure of the SS *Central America*.[3]  Consistent with the District Court's decisions that have taken continuing jurisdiction over the shipwreck, the U.S. Court of Appeals for the Fourth Circuit has noted that the jurisdiction of the Eastern District of Virginia is continuing until the salvage work is completed.  *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 301 (4th Cir. 2000) (holding "the jurisdiction

---

[1] Warrant of Arrest dated May 7, 1987, attached as Exhibit 1.
[2] A copy July 7, 1987 order, assuming exclusive jurisdiction over the shipwreck and requiring that persons claiming an interest assert them in the Eastern District of Virginia is attached as Exhibit 2.
[3] E.g. *Darlak v. Columbus-America Discovery Group, Inc.*, 59 F.3d 20 (4th Cir. 1995)

3

of the district court over the wreck of the *Central America* in the *in rem* action yet continues . . . .").

In exercising exclusive jurisdiction over salvage claims, the U.S. District Court for the Eastern District of Virginia has proceeded to marshal and adjudicate all claims pertaining to the shipwreck under the maritime principle of *concursus*: a single forum where all claims pertaining to a particular subject matter should be adjudicated.[4]  During the course of those first-filed proceedings, that District Court has adjudicated well in excess of seven-dozen claims by various persons relating to the SS *Central America*.  The Williamson Plaintiffs, like the rest of the world, are bound by the prior orders and decrees of the U.S. District Court for the Eastern District of Virginia affecting the shipwreck, see *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427 (1866) (*in rem* proceedings bind the entire world).

On March 31, 2006, Plaintiffs filed a civil action in the Court of Common Pleas for Franklin County, Ohio arising out of the same claims as those set forth in this case. *See Michael Williamson et al. v. Recovery Limited Partnership et al.,* No. 06CVH03-4469, (Common Pleas, Franklin County, Ohio).

On April 24, 2006, Defendants removed the suit to the U.S. District Court for the Southern District of Ohio on the belief that Plaintiffs were seeking to assert a maritime claim for contract salvage. *See Michael Williamson et al. v. Recovery Limited Partnership et al.,* No. C2-06-292, (S.D. Ohio), Def Notice of Removal dated April, 24, 2006.

Since the date of the removal, Plaintiffs have disclaimed any claim based on maritime

---

[4] The Court's assumption of jurisdiction is consistent with the emerging principle that disputes involving the salvage of historic shipwrecks that have significant scientific, historic or archaeological value will be administered and adjudicated in a maritime *concursus* in which all claims and defenses can be presented in a single, centralized forum. This is because the salvage of historic shipwrecks involves unique considerations, including the need to protect the scientific, historic and archaeological values of the particular shipwreck at issue. *See, e.g., Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 974 F.2d 450, 468 (4th Cir. 1992).  The salutary policy considerations underlying the maritime concept of the *concursus* has been most lucidly described in the context of limitation of liability proceedings. *E.g. Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 417, 74 S.Ct. 608, 612 (1954) (discussing how "[d]irect actions against the liability underwriter of the shipowner would detract from the benefit of a concursus," subjecting the ship's crew to the inconvenience and expense of being called "as witnesses in more than one proceeding, perhaps in diverse forums"; creating the prospect of "[c]onflicting judgments"; and noting that "it is important to bear in mind that the *concursus* is not solely for the benefit of the shipowner," but instead to "ensure that all claimants, not just a favored few, will come in on an equal footing to obtain a pro rata share of their damages.").

4

salvage contract. Instead, they now assert that they base their claims on Defendants' alleged

breach of Plaintiffs' non-disclosure agreements with Mr. Thompson. Pl Compl, 7-28-06, at

¶¶ 28, 47. Plaintiff IDSS also relies on an equipment lease agreement with Recovery Limited

Partnership. *See id.* at ¶¶ 63-64. In addition, Plaintiff Estate of Don C. Craft asserts a

penalty wage claim on the theory that "By the terms of his Non-Disclosure Agreement,

Plaintiff Don C. Craft chose to take one-third of his daily hire rate of $450.00 in the form of

an additional .15% percentage [sic] of the recovered treasure." *See id.* at ¶ 82. Plaintiffs

have attached what they represent to be exemplary copies of those contracts to their

Complaint. *See id.* at ¶28. *See also* Pl Compl, Exs 1, 2, 3.

Each of the contracts expressly states that (1) the law of the State of Ohio, not federal

maritime law, provides the governing law; (2) the agreement contains "the full and complete

understanding of the parties" and "supersedes all prior representations and understandings,

whether oral or written"; and (3) the agreement "may be modified only in a writing signed

by both parties." The individual non-disclosure agreements state:

> This Agreement shall be governed by Ohio law applicable to
> contracts between residents of Ohio wholly executed and performed
> in Ohio. Further, this Agreement contains the full and complete
> understanding of the parties with respect to the subject matter hereof
> and supersedes all prior representations and understandings, whether
> oral or written. This Agreement may be modified only in a writing
> signed by both parties.

Pl Cmpl, Ex 1, p.4, ¶9. *See also* Pl Cmpl, Ex 3, p.4, ¶11 (same). The IDSS contract

similarly states:

> This Agreement shall be governed by and construed under the laws of the
> State of Ohio.

Pl Cmpl, Ex 2, p.5, ¶14.3.

On July 28, 2006, Plaintiffs filed this civil action and obtained an *ex parte* attachment

order pursuant to Supplemental Rule B. See Fed. R. Civ. P., Supplemental Rule B.

Plaintiffs have disclaimed any claim for salvage and instead have predicated their claims

solely upon (1) their individual non-disclosure agreements with Defendant Thompson, (2)

as to Plaintiff IDSS, its lease agreement with Defendant Recovery Limited Partnership, and

as to Plaintiff IDSS, its lease agreement with Defendant Recovery Limited Partnership, and

(3) as to Plaintiff Estate of Don Craft, a penalty wage claim based on his non-disclosure

agreement.  See Williamson Plaintiffs' Memorandum of Law in Response to Defendants'

Supplementary Memorandum and in Opposition to Defendants' Motion to Transfer Venue,

p. 6 (attached as Exhibit 3).  Plaintiffs have now disavowed a claim for salvage[5]:

> "*None of the Williamson Plaintiffs claims to have a proprietary interest in the treasure, and none claims to be eligible for an award in salvage in that action.*  Rather, the Williamson Plaintiffs all have alleged breach of contract (and similar) claims against Defendants based on Defendants' failure to compensate the Williamson Plaintiffs in exchange for the Williamson Plaintiffs having performed their contracts.  *None of the Williamson Plaintiffs' contracts is a salvage contract.*  Rather, they are (1) non-compete and non-disclosure agreements relating to the individual Williamson Plaintiffs' performance, (2) the IDSS lease agreement pertaining to Defendants' leasing of the side scan sonar used by Defendants to find the wreck of the Central America and, (3) in the case of Don C. Craft, a penalty wage claim based on Mr. Craft not having been paid his full wages while serving on the Defendants' vessel.  The Williamson Plaintiffs' claims are not based on a percentage of the treasure because they are salvage claims, but rather are based on such a percentage because that was the consideration agreed by Defendants in exchange for the Williamson Plaintiffs' performance of the aforementioned contracts."

*Id.* at p. 6 (emphasis added).

Recently, plaintiffs froze personal accounts, including joint accounts with spouses

and Individual Retirement Accounts, of defendants Gilman D. Kirk, Jr., James F. Turner,

Michael J. Ford, Jr., and W. Arthur Cullman, Jr. (the "board defendants"), making it difficult,

if not impossible, for board defendants to pay regularly occurring monthly bills and counsel

fees, among other obligations.  Plaintiffs actions have compelled defendants to move for an

order to show cause why this Court should not issue an expedited Order granting defendants'

Motion to Vacate plaintiffs' Rule B Attachment and to dismiss plaintiffs' Verified Complaint

in its entirety.

---

[5] This position appears to be contrary to that originally taken by Plaintiffs when they began proceedings in Ohio.

ARGUMENT

"The ease with which a prima facie case for attachment can be made creates a real risk of abusive use of the maritime remedy." *Maersk, Inc. v. Neewra, Inc.*, 2006 U.S. LEXIS 53395, *20. The Supplemental Rules have addressed that risk with the addition of Supplemental Rule E(4)(f) which calls for a prompt hearing where a defendant can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings. Supp. R. Fed. R. Civ. P. E(4)(f), Advisory Committee notes. "The Plaintiff must demonstrate that 'reasonable grounds' exist for the attachment, and that *all technical requirements for effective attachment have been met*." *Maersk*, 2006 U.S. LEXIS at *21 (emphasis added). Moreover, the Court has inherent authority to vacate an attachment upon a showing of any improper practice or other circumstances, such as the a manifest want of equity on the part of plaintiff. *Id.* (quoting *Blake Mar., Inc. v. Petrom S.A.*, 2005 U.S. Sist. LEXIS 26310, No. 05 Civ, 8033 (PAC), 2005 WL 2875335, at *2 (S.D.N.Y. Oct. 31, 2005)); Southern District of New York Former Local Civil Rule 12 (1986)). A motion to vacate is not a motion to dismiss, but rather a specialized maritime proceeding with the singular purpose of determining the ongoing propriety of a maritime attachment. *Maersk*, 2006 U.S. Dist. LEXIS at *30. As discussed below, not only have the technical and procedural requirements for attachment not been met, but the equities weigh, on balance, against an attachment.

I. **PLAINTIFFS HAVE FAILED TO COMPLY STRICTLY WITH LOCAL ADMIRALTY RULE B.1 REQUIRING THAT PERSONAL NOTICE BE GIVEN TO KNOWN DEFENDANTS.**

While the former admiralty rules did not require notice to the defendant in attachment proceedings, modern conceptions of fairness dictate that actual notice be given to persons known to claim an interest in the property that is the subject of the action where it is reasonably practicable. Moore's Federal Practice § 702.02[2][a] (stating that as the persons with interests are named in the complaint as defendants, there is no burden on plaintiffs by a simple requirement to notify defendant of the action by mail). Under the provisions of the

7

Federal Rules of Civil Procedure governing Supplemental Rule B, notice to the defendant is not required unless defendant has not appeared prior to the time when a default judgment is demanded. Fed. R. Civ. P. Supp. R. B(1).

In addition to the requirements of the Federal Rules of Civil Procedure, the Local Admiralty Rules of the Southern District of New York also establish procedural requirements for a valid attachment. Among these is Local Admiralty Rule B.2. Local Admiralty Rule B.2 requires that the plaintiff give prompt notice to the defendant of the attachment:

> "In an action where any property of a defendant is attached, the plaintiff shall give prompt notice to the defendant of the attachment. Such notice shall be in writing, and may be given by telex, telegram, cable, fax, or other verifiable electronic means."

Local Admiralty Rule B.2 ("Notice of Attachment"). Local Admiralty Rule B.2 reflects the salutary policy consideration that fundamental fairness and due process demand prompt notice to the defendant, not merely constructive notice.[6]

In the present case, Plaintiffs have failed to comply with Local Admiralty Rule B.2. Plaintiffs failed to "give prompt notice to the defendant[s] of the attachment," written or oral. And Plaintiffs have certainly failed, despite to strictures of Local Admiralty Rule B.2, to give notice "in writing…by telex, telegram, cable, fax, or other verifiable electronic means." *See* Local Admiralty Rule B.2.

As noted above, the validity of a Rule B attachment requires strict compliance with each of the technical procedural requirements. This is because Rule B is unusual in permitting prejudgment attachment, before an adjudication on the merits. Given the due process concerns implicated by prejudgment attachments, strict adherence to the technical procedural standards are critical to the validity of a Rule B attachment. To demonstrate a

---

[6] The Southern District's local rule on Rule B attachments appears aimed at ensuring the constitutional viability of that rule. *See International Ocean Way Corporation of Monrovia v. Hyde Park Navigation, Ltd.*, 555 F. Supp. 1047, 1049, 1983 U.S. Dist. LEXIS 19384, **2; 1984 AMC 25 (S.D.N.Y. 1983) ("Defendant contends that even if the escrow account is properly subject to attachment, the attachment procedure established by Rule B(1) is unconstitutional because it does not require pre-attachment notice and hearing. Rule B(1), however, must be read in conjunction with Admiralty Rule 12 of the Southern District…Because the local rule affords any interested party an opportunity for a prompt post-attachment hearing before a judicial officer, it cures any constitutional defects which may exist in Supplemental Rule B(1) on its face.").

valid attachment, the Plaintiff must thus demonstrate compliance with all technical procedural requirements. *Maersk*, 2006 U.S. LEXIS at *21.

A plaintiff's excuse for failure to comply is thus typically not a defense to non-compliance, and failure to comply strictly results in vacatur of the attachment. Even if, *arguendo*, strict failure to comply with the procedural requirements for a Rule B attachment could be dispensed with by the Courts based on some legitimate justification, the Plaintiffs in this case have no excuse for their failure to give notice to Defendants. Plaintiffs are parties to a proceeding in the U.S. District Court for the Southern District of Ohio against most of the same defendants in this case. See Pl Cmpl ¶3 (noting pending proceeding in *Michael Williamson et al. v. Recovery Limited Partnership et al.,* No. C2-06-292 (S.D. Ohio), ("the Ohio proceeding")).

The defendants in the Ohio proceeding are all represented by counsel. Plaintiffs gave notice neither to Defendants nor even to their counsel. Their conduct falls well outside the bounds of the law and can only be characterized as an effort to misuse the ex parte procedures permitted by Rule B to gain a tactical advantage. Such conduct cannot be countenanced by the requirement of strict compliance with all technical requirements for a Rule B attached. Nor may it be countenanced by standards of decency, fair play and clean hands. In sum, the Court should vacate the attachments for Plaintiffs' failure to comply with Local Admiralty Rule B.2.

## II.    THE CONTRACTS UPON WHICH PLAINTIFFS HAVE PREDICATED THEIR CLAIMS ARE NOT MARITIME.

"To be entitled to Rule B attachment, and to establish jurisdiction over the defendant through such attachment, the plaintiff must show, first, that a claim exists against the defendant within the admiralty jurisdiction and, second, that the defendant is not found within the district." *Limonium Maritime, S.A., v. Mizushima Marinera, S.A.*, 961 F.Supp. 600, 605 (S.D.N.Y. 1997); Fed. R. Civ. P. Supp. Rule B(1). The *quasi in rem* process of Rule B can only be used to enforce claims that are within the court's admiralty or maritime

jurisdiction.[7]  *Orient Overseas Container Line*, 1999 A.M.C. at 964-965; *Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119 (S.D.N.Y. 1979); *Miravalles Compania Naviera v. Nissho Co., Ltd.*, 207 F. Supp. 716 (E.D.N.Y. 1962).

Plaintiffs allege that "their claims are maritime contract claims and a claim [on behalf of Don Craft] under the U.S. Seaman's Wage State, 46 U.S.C. § 10504, all of which are subject to admiralty jurisdiction."  The general rule for exercising admiralty jurisdiction in a contract case is that "jurisdiction arises only when the subject-matter of the contract is 'purely' or 'wholly' maritime in nature." *Hartford Fire Insurance Co. v. Orient Overseas Container Lines (UK)*, 230 F.2d 549, 555 (2d Cir. 2000) (citing *Transatlantic Marine Claims Agency, Inc., v. Ace Shipping Corp.*, 109 F.3d 105, 109 (2d Cir. 1997)).  In the case of a contract claim, the character of the contract as maritime or non-maritime will determine the propriety of *quasi in rem* process under Rule B.  29 Moore's Federal Practice - Civil § 705.04 (2006).  *See also Venezuelan Container Line CA v Navitran Corp.*, 792 F. Supp. 1281, 1283 (S.D. Fla. 1991) ("'In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry....'") (quoting from Benedict on Admiralty).

**A.    The Non-Disclosure And Lease Agreements Upon Which Plaintiffs Have Sued Expressly Choose Ohio State Law Rather Than Maritime Law.**

As noted above, Plaintiffs have disclaimed any claim for salvage, and instead have predicated their claims upon (1) their individual non-disclosure agreements, (2) the equipment lease agreement of Plaintiff IDSS, and (3) the penalty wage claim on behalf of Plaintiff Craft. *See Michael Williamson et al. v. Recovery Limited Partnership et al.*, No. C2-06-292, Pl Mem in Resp and Opp. to Mot. to Transfer Venue, 9/25/06, p. 6 (attached as

---

[7] Moore's Federal Practice Rule B may be used only to enforce claims within admiralty or maritime jurisdiction. *See* Fed. R. Civ. P., Supp. Rule B(1) (providing for use of *quasi in rem* service "[w]ith respect to any admiralty or maritime claim in personam.").

Exhibit 3). [8]

But, as also noted above, Plaintiffs contracts have each adopted the law of the State of Ohio, not federal maritime law. Each agreement is "governed by Ohio law applicable to contracts between residents of Ohio wholly executed and performed in Ohio." Pl Cmpl, Ex 1, p.4, ¶9; Pl Cmpl, Ex 3, p.4, ¶11; Pl Cmpl, Ex 2, p.5, ¶14.3. Each agreement also contains a merger clause, providing that the written agreement "contains the full and complete understanding of the parties with respect to the subject matter hereof and supersedes all prior representations and understandings, whether oral or written." *Id.*

Such choice-of-law provisions are typically enforceable, and will ordinarily be upheld by the Courts. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972) ("courts should enforce choice-of-law and choice-of-forum clauses in cases of 'freely negotiated private international agreements.'") *See also Marine Midland Bank, N.A. v. United Missouri Bank, N.A.*, 223 A.D.2d 119, 643 N.Y.S.2d 528, 530 (N.Y. App. Div. 1996) (citing *Wyatt v. Fulrath*, 16 N.Y.2d 169, 211 N.E.2d 637, 264 N.Y.S.2d 233 (N.Y. 1965); *in re Millenium Seacarriers, Inc.*, 292 B.R. 25, 29 (S.D.N.Y. 2003) (holding "the choice of law provision in the agreement of the parties governs, unless it would be 'unfair, unjust or unreasonable' to hold the party to his bargain").

To determine whether a district court can exercise admiralty jurisdiction based on a contract claim, the terms of the contract itself—including the parties' decision to adopt state law as the governing law-- are determinative. *See National Enterprises v. Paul Smith*, 114

---

[8] Plaintiffs have expressly elected not to pursue salvage claims, apparently in recognition that such claims are within the exclusive jurisdiction of the salvage *concursus* created by the U.S. District Court for the Eastern District of Virginia, which has taken exclusive jurisdiction over the shipwreck and its treasure. As noted above, under those orders and decrees, the Williamson Plaintiffs were required to present their contract claims for a total share of the treasure of the SS *Central America* to the U.S. District Court for the Eastern District of Virginia. In addition to those orders and decrees, however, the Williamson Plaintiffs were bound to present their claims to the U.S. District Court for the Eastern District of Virginia pursuant to Supplemental Rule C(6). See Supplemental Rule C(6), Fed. R. Civ. P. ("The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court*****"). Plaintiffs' Rule B attachment reflects an effort to do an end-run around the orders of the U.S. District Court for the Eastern District of Virginia. The Court should decline Plaintiffs' indirect invitation that it use its powers to assist in such an end-run.

F.3d 561, 565 (6th Cir. 1997)[9] ("If the terms of the contract indicate that the parties did not intend for their agreement to be considered a charter governed by admiralty law, then the exercise of admiralty jurisdiction is not proper.") A contract provision adopting state law provides clear indication that the contract is not within the court's maritime jurisdiction. *See, e.g., id.* ("Section 23 of the Lease states that the Lease 'Shall be construed, interpreted and determined *by the laws of the State of Ohio.*' As the district court correctly noted, this provision indicates that neither Smith nor First Federal considered the Lease to be a charter cognizable in admiralty at the time of contract.") (emphasis in the original)).[10] In light of the merger clause in each of the contracts, the provision adopting Ohio law is binding on all the plaintiffs, including Mr. Craft.

Even if the Court were to disregard the provisions in Plaintiffs' voluntary contracts expressly selecting Ohio law instead of maritime law, the contracts upon which Plaintiffs rely for their Rule B attachments would still not qualify as maritime contracts.[11] "In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry,...." 1 *Benedict on Admiralty* § 182 (7th Ed. 1991).

"The one general rule is that to be a maritime contract, the subject matter of the contract must be directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract related in some *preliminary* manner to maritime affairs. Contracts that are not directly related to maritime matters and ship navigation afford no justification for the application of the uniform admiralty law and are best left for decision under state law contract principles." Schoenbaum, Admiralty and Maritime Law, p. 59, §1-10 (emphasis supplied).

---

[9] Judge Van Graafeiland, Circuit Judge of the United States Court of Appeals for the Second Circuit, sat on the three judge panel by designation.
[10] The choice of law language that appears in *National Enterprise* is remarkably similar to the choice of law terms in the lease agreement upon which IDSS. It is also remarkably similar to that in the agreements upon which the other Williamson Plaintiffs rely.
[11] When based on a contract claim, admiralty jurisdiction requires that the existence of a maritime contract. *Kossick v. United Fruit Co.,* 365 U.S. 731, 1961 AMC 833 (1961).

12

The Williamson Plaintiffs' claim that they are entitled to a share of the treasure of the SS *Central America* is not based on their rendering of maritime salvage service agreements, but instead on their execution of non-disclosure agreements.[12] As they have alleged in their Complaint, they were:

> required to execute *separate, distinct non-disclosure agreement with Thompson (the "Non-Disclosure Agreements")*, in consideration for which each of the Individual Intervenors was promised a share of the total treasure recovered off the S.S. Central America, without deduction for competing claims or recovery or marketing expenses.

New York Compl ¶28. *See also Michael Williamson et al. v. Recovery Limited Partnership et al.*, No. C2-06-292, Pl Mem Opp Def Joint Motion to Transfer Venue & Altern Dismiss, 6/30/06, p. 2 (attached as Exhibit 4) ("….the individual *Williamson* Plaintiffs claims are for enforcement of non-disclosure agreements ("NDA's") that were executed by Defendant Thomas G. Thompson ("Thompson") and the *Williamson* Plaintiffs individually. Shirley Aff., at ¶¶ 3, 4 & Ex. 1…. Defendants' contention that the *Williamson* Plaintiffs' is an *in rem* salvage claim misrepresents facts and law to the Court. The *Williamson* Plaintiffs' claim under the NDAs are for compensation promised in exchange for the not competing and not disclosing information regarding the *S.S Central America's* search and recovery operations.")

A non-disclosure agreement is not a maritime contract. By definition, a non-disclosure agreement is an agreement aimed at the protection of trade secrets and intellectual property. It does not directly relate to "the operation of the ship, its navigation, or its management afloat". 1 *Benedict on Admiralty* § 182 (7th Ed. 1991). There are no compelling policy considerations that justify supplanting existing state laws on the application and enforcement of non-disclosure agreements with the federal law of maritime contracts, and constitutional considerations of comity instruct to the contrary. The parties have specifically chosen Ohio state law, not maritime law, as governing their agreements.

---

[12] Although Defendants originally thought that Plaintiffs were seeking to assert such a claim in the Ohio proceeding, they have expressly declined to do so. *See Michael Williamson et al. v. Recovery Limited Partnership et al.*, No. C2-06-292, Pl Mem Opp Def Mot Dismiss and Alt Trsfr Venue, 6/30/06, at p. 12, 19, 20. As discussed in III below, they have presumably disclaimed such potential claims in light of the fact that such claims are now barred by the *in rem* proceeding in the U.S. District Court for the Eastern District of Virginia for failure to file prior to the 1992 claim cut-off date.

13

**B.    Plaintiffs Have No Maritime Claim Against the Defendant Members of the Board of Directors.**

Assuming *arguendo* that those contracts qualify as "maritime" in nature, each of those contracts demonstrates that none of the members of the Board of Directors is a party to the contracts. On their face, the individual Non-Disclosure Agreements provide that they are agreements:

> by and between Thomas G. (Harvey) Thompson, a research scientist in the field of ocean engineering with principal offices in Columbus, Ohio (herein called "Thompson"), who represents interests, in addition to his own, of certain other science professionals and individuals, including one or more entities, and [the Individual Plaintiffs].

Pl Cmpl, Ex 1 at p.1 (preamble). *See also* Pl Cmpl, Ex 3 at p.1 (preamble).

Similarly, the contract between International Deep Sea Survey, Inc., ("IDSS") and Recovery Limited Partnership ("RLP") The IDSS contract provides that it is:

> ...by and among International Deep Sea Survey, Inc.... and Recovery Limited Partnership, an Ohio Limited Partnership....

Pl Cmpl, Ex 2 at p.1 (preamble).

None of the members of the Board of Directors of Columbus Exploration LLC executed any of the contracts. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr (attached to the Declaration of Rex H. Elliott as Exhibit B). None agreed to be legally bound by any of the contracts. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr. No person or entity signing the contracts purported to have any authority to do so on behalf of any member of the Board of Directors. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr. None of the Defendant Board Members are named in the Non-Disclosure Agreements. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr. None of the members of the Board of Directors of CXLLC has any contractual relationship to the Plaintiffs. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner,

14

Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr. No Board member signed a contract. The members of the Board of Directors act without compensation. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr. No Board member authorized any person to act as agent. No Board member authorized any person to hold itself out himself as acting on behalf of any member. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr.

Columbus Exploration LLC was not even in existence at the time the contracts were executed. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr. It was not formed until over 10 years later. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr. The members of the Board of Directors had no managerial, operational or other role in Recovery Limited Partnership, other than being investors.[13] *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr.

Plaintiffs claim without a scintilla of proof that in executing each of the Individual Plaintiff Non-Disclosure Agreements, Thompson was acting for each of the Defendants. Again, the record demonstrates that this claim is sheer fabrication and nothing less than an abuse of the Court's process. *See* Affidavits of Gilman D. Kirk, Jr., C. Arthur Cullman, Jr., James F. Turner, Jr., Michael J. Ford, Jr., Thomas G. Thompson, Jr.[14]

---

[13] "Except as provided in division (D) of this section, a limited partner shall not become liable for the obligations of a limited partnership unless the limited partner is also a general partner or, in addition to the exercise of the limited partner's rights and powers as a limited partner, the limited partner participates in the control of the business." Ohio Rev. Code Ann. § 1782.19.
[14] As for the assertion of a penalty wage claim by the Estate of Don Craft against Mr. Kirk on grounds that he was an owner of the vessel, as noted above, Mr. Craft's non-disclosure agreement chose Ohio state law, not maritime law, as the governing law. As further discussed below, Plaintiffs' claim fails as a matter of law.

15

C.    **Plaintiffs Have No Maritime Claim Against the Defendants Columbus Exploration, LLC, Columbus-America Discovery Group, Inc., Columbus Exploration Limited Partnership, Omni Engineering, Inc., Omni Engineering of Ohio, Inc., Economic Zone Resource Associates, Economic Zone Resource Associates, LTD., EZRA, Inc., EZRA of Ohio, Inc., ECON Engineering Associates, Inc., DOE.E, Inc.**

Plaintiffs likewise have no maritime claim against Defendants Columbus Exploration, LLC, Columbus Exploration Limited Partnership, Omni Engineering, Inc., Omni Engineering of Ohio, Inc., Economic Zone Resource Associates, Economic Zone Resource Associates, LTD., EZRA, Inc., EZRA of Ohio, Inc., ECON Engineering Associates, Inc., DOE.E, Inc. These company defendants are not parties to the contracts under which the Plaintiffs are suing. None of the Defendant Companies are named in the Non-Disclosure Agreements. None signed any of the contracts.

None of these companies executed any of the contracts. None agreed to be legally bound by any of the contracts. None of the Defendant companies are named in the Non-Disclosure Agreements.

D.    **The Estate of Don Craft Has No Penalty Wage Claim.**

It is not entirely clear that the penalty wage claim asserted by the Estate of Don C. Craft would survive Mr. Craft's death. The statute does not appear to make a specific provision. *See* 46 USC 10501-10504. For the sake of argument, it is nevertheless assumed that the penalty wage claim would survive Mr. Craft's death and vest in his Estate. The Estate's claim nevertheless would still fail as a matter of law.

First, as noted above, Mr. Craft's non-disclosure agreement chooses Ohio state law, not maritime law, as the governing law; the contract contains a merger clause precluding contrary written or oral agreements unless set forth in a writing signed by both parties. The Estate has neither alleged nor produced such agreement, and no such agreement exists. On its face, the sole agreement produced on Mr. Craft's claim proves that state law, not maritime law, is governing.

Second, the wage penalty statute is inapplicable on its face. Title 46 USC 10501 (b)

16

states that "This chapter does not apply to a vessel on which the seamen are entitled by custom or agreement to share in the profit or result of the voyage. Plaintiffs' Complaint alleges that an express agreement existed, entitling Mr. Craft to a .35% share of the net recovery.[15]

### III.    EVEN IF PLAINTIFFS HAD COMPLIED WITH ALL THE TECHNICAL REQUIREMENTS FOR A RULE B ATTACHMENT, THE OTHER CONSIDERATIONS, ON BALANCE, WEIGH AGAINST PERMITTING THE ATTACHMENT.

In addition to vacatur based on the plaintiff's failure "to sustain his burden of showing that he has satisfied the requirements of Rules B and E," vacatur "is appropriate in other limited circumstances." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 2006 U.S. App. Lexis 19302, at ** 28-29. These include, for example, where the plaintiff and defendant may be subject to jurisdiction in the same district, or where another alternative convenient forum is available. *Id.* at **27 ("Although the precise boundaries of a district court's vacatur power are not before us, we are persuaded that vacatur may be warranted when the defendant can show that it would be subject to in personam jurisdiction in another jurisdiction convenient to the plaintiff. *See Integrated*, 476 F. Supp. at 124; *cf. Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52-53 (2d Cir. 1965).") The concept of "convenience" is circumscribed, however, and would attach, for example, the alternative forum is adjacent or where the plaintiff and defendant are both subject to jurisdiction in the same district. *Id.* at ** 27-28.

In addition to failing to prove compliance with all the technical requirements of Rule B, Plaintiffs have failed to prove that there are no fora where both Plaintiffs and Defendants are subject to jurisdiction, or that there are no other convenient jurisdictions. To the contrary, Plaintiffs have filed virtually identical claims in Ohio and California, often using

---

[15] Moreover, on its face, the statute applies only to "voyages," not services in port; and the only voyages covered are those that are "coastwise" (defined as between one port and another port in a different, non-adjacent state). See 46 USC §1050 (a). Conversely, even if it were assumed that the ship was docked at different ports in the states, 46 USC 10504 (d) states that subsection c (the penalty wage statue) does not apply to a vessel engaged in "coastwise commerce". *Cf. Fredrick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1289 (11th Cir. 2000) (transport of goods is a form of "coastwise commerce.")

word-for-word language in the complaints.

Moreover, Plaintiffs have expressly recognized in the very contracts upon which they have brought this suit that there is at least one alternative forum to which the Plaintiffs and Defendants are subject to jurisdiction.  The non-disclosure agreements between Thompson and the individual Plaintiffs each contain a forum selection clause:

> In the event that disputes, differences, or controversies arise in connection with the Agreement, [Individual Plaintiff] agrees that the United States District Court for the Southern District of Ohio, Eastern Division, shall have exclusive jurisdiction.  Accordingly, [Individual Plaintiff] irrevocably submits his person to the jurisdiction of such court for purposes of such litigation.

Pl Cmpl, Ex 1, p.4, ¶10.  *See also* Pl Cmpl, Ex 3, p.4, ¶12 (same).

The Equipment Lease and Services Agreement between IDSS and RLP also contained a forum selection clause:

> Any action or proceeding involving or arising out of this Agreement shall be brought in the Court of Common Pleas, Franklin County, Ohio.  The parties agree that venue is such court is proper.

Pl Cmpl, Ex 2, p.5, ¶14.3.

Whereas the defendants in *Seaplus* had simply started to participate in an arbitration agreement, the Plaintiffs here have not only begun a proceeding against Defendant in another jurisdiction, but Defendants have actively participated in the proceedings, as well.  If, as the Court held in *Seaplus*, a Rule B attachment was not maintainable in *Seaplus*, it clearly is not maintainable here.  *See Seaplus*, 409 F. Supp 2d at 323 ("Seaplus has commenced such a proceeding, and Bulkhandling is fully participating in that proceeding...There is therefore no basis for concluding that the attachment is necessary to obtain jurisdiction").  Clearly, Plaintiffs cannot show that the attachment of Defendant's property is necessary to obtain jurisdiction over Defendants.

In fact, Plaintiffs have represented to the Southern District of Ohio that that district

court is the appropriate forum for hearing this dispute.[16]  Plaintiffs have told that Court that

their contractual forum selection clauses preclude the exercise of jurisdiction by district

courts outside the State of Ohio:

> Under general maritime law, a forum selection clause is "*prima facie* valid and
> should be enforced unless enforcement is shown by the resisting party to be
> 'unreasonable' under the circumstances."**** A party seeking to set aside a forum
> selection clause has a "heavy burden of proof and, absent a very strong showing of
> unreasonableness, the forum selection clause must be enforced.**** Thus, the forum
> selection clauses, which call for the exclusive jurisdiction in the Southern District of
> Ohio, are *prima facie* valid and should be upheld by this Court unless the Defendants
> that this is an "exceptional case."  No such showing has been made nor can
> Defendants make such a showing.  The forum selection clause in each of the NDAs
> should therefore be given controlling weight….

*Michael Williamson et al. v. Recovery Limited Partnership et al.,* No. C2-06-292, Pl Mem Opp Def

Joint Motion to Transfer Venue & Altern Dismiss, 6/30/06, at pp. 7-9.[17]

---

[16] In fact, in proceedings currently pending in the Southern District of Ohio, Plaintiffs have taken the
position that (1) the forum selection clauses under the contracts under which they have brought this suit are
reasonable and should be enforced, and (2) that those clauses actually *preclude* the exercise of jurisdiction
by district courts outside the State of Ohio.  Based on that position, they have represented to the Southern
District of Ohio that it may not transfer the pending proceeding in that state to the salvage *concursus* in the
U.S. District Court for the Eastern District of Virginia.  It would clearly be inequitable now to permit
Plaintiffs to prevail on their contrary representation to the Court in this proceeding.  See *Maersk,* 2006 U.S.
LEXIS at *21 (court has inherent authority to vacate an attachment based on the equities of the situation).
[17] Moreover, Defendants have all stipulated to making themselves available to the jurisdiction over the U.S.
District Court for the Eastern District of Virginia.

19

## CONCLUSION

The Court should vacate the attachment and dismiss Plaintiffs' Complaint.

Dated: New York, New York
October 16, 2006

Respectfully submitted,

*Rex H. Elliott*

Rex H. Elliott  (RHE 6310)
Cooper & Elliott, LLC
Attorney for Defendants
2175 Riverside Drive
Columbus, Ohio  43221
(614) 481-6000
(614) 481-6001 (Facsimile)

*Daniel S. Moretti*

Daniel S. Moretti  (DSM 6630)
Landman Corsi Ballaine & Ford P.C.
Local Counsel for Defendants Thomas G.
Thompson, Gilman D. Kirk, James F.
Turner, Michael J. Ford, Jr., and W. Arthur
Cullman, Jr.
120 Broadway, 27th Floor
New York, New York 10271
(212) 238-4800

To:     James T. Shirley (JTS 6114)
HOLLAND & KNIGHT, LLP
195 Broadway
New York, New York 10007-3189
(212) 513-3200

428209.1 DocsNY

## AFFIDAVIT OF PERSONAL SERVICE

STATE OF NEW YORK    )
                            ) ss.:
COUNTY OF NEW YORK  )

      **RYAN NEW**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at BROOKLYN, NEW YORK.

      That on the 18th day of October, 2006, deponent served the within **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION BY ORDER TO SHOW CAUSE TO VACATE RULE B ATTACHMENT** upon:

                James T. Shirley, Esq.
                HOLLAND & KNIGHT, LLP
                195 Broadway, 24th Floor
                New York, New York 10007-3189

attorneys in this action, at the addresses designated by said attorneys for that purpose by personally delivering a copy of the same and leaving it with a person at that office authorized to receive service of legal papers.

                                      _____
                                        Ryan New

Sworn to before me this
18th day of October, 2006

                Notary

MARCHETA R. IVORY
Notary Public, State of New York
No. 01IV5050954
Qualified in Kings County
Commission Expires Oct. 23, 20___

# Exhibit 1

W A R R A N T (By order)
Rule C(3) 8/1/85

```
EXHIBIT
ALL-STATE LEGAL
  1
```

U N I T E D   S T A T E S   O F   A M E R I C A )
 EASTERN DISTRICT OF VIRGINIA
NORFOLK            DIVISION
)- ss : Civil Action No. 87- 363 -N
)

T H E   P R E S I D E N T   O F   T H E   U N I T E D   S T A T E S   O F   A M E R I C A

To the Marshal of the Eastern District of Virginia - Greeting:

WHEREAS, a verified complaint in rem alleging an admiralty or maritime claim has been filed in the United States District Court for the Eastern District of Virginia, at Norfolk         , on the 27th day of May          , 198 7 , by Columbus-America Deep Search, Inc., d/b/a Columbus-America Discovery Group,

against The Unidentified, Wrecked and Abandoned Sailing Vessel, her engines, tackle, apparel appurtenances, cargo, etc., Located within a circle having a radius of 15 miles, whose center point is at coordinates 31o 52' North latitude and 76o 21' West longitude, in a cause of and praying the usual process and monition of the said Court in that behalf to be made, and that all persons interested in the said Unidentified, Wrecked and Abandoned Sailing Vessel, her engines, tackle, apparel, appurtenances, cargo, etc.

eral and special to answer the premises, and all proceedings being had, that the said Unidentified, Wrecked and Abandoned Sailing Vessel, her engines, tackle, apparel, appurtenances, cargo, etc. , may for said causes in the said complaint mentioned be condemned and sold to pay the demands of the plaintiff;

And the said verified complaint in rem having been submitted to the Court in accordance with Supplemental Rule C(3), and the Honorable Richard B. Kellam , United States District Judge, having reviewed the same and determined that the conditions for an action in rem appear to exist, and has authorized a warrant for the vessel or other property subject of the complaint:

YOU ARE, THEREFORE, commanded to arrest and attach the said portions of The Unidentified, Wrecked and Abandoned Sailing Vessel, her engines, tackle, apparel, appurtenances , and detain the same in your custody until the further order of this Court respecting the same, and all persons claiming the same shall file their said claim within 10 days after process has been executed and serve an answer within 20 days after filing the claim, on pain of being barred of all relief, or of having default entered, or such action taken in the premises as to the Court may deem proper;

And what you shall have done in the premises, do you then and there make prompt return thereof.

illiam J. Kelly, Jr./Curtis A. Loveland
orter, Wright, Morris & Arthur
ichard T. Robol/Philip N. Davey
unton  & Williams
uite 1301, First Virginia Bank Tower
olk, Virginia 23510
    Attorney for Plaintiff

A TRUE COPY, TESTE
Doris R. Casey, Clerk

By _____
        Deputy Clerk

WITNESS, the Honorable Richard B. Kellam ,
Judge of the said Court, at the City of
Norfolk     , in said District, this 7th
day of July          , 1987 .

DORIS R. CASEY, Clerk

By _____ , Deputy Clerk

# Exhibit 2



EXHIBIT

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

<u>Norfolk Division</u>



FILED

JUL · 7 1987

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

COLUMBUS-AMERICA DEEP SEARCH,    )
INC., D/B/A COLUMBUS-AMERICA      )
DISCOVERY GROUP,                  )
                                  )
          Plaintiff,              )
                                  )
v.                                )  Civil Action No. 87-363-N
                                  )
The Unidentified, Wrecked and     )
Abandoned Sailing Vessel, her     )
engines, tackle, apparel,         )
appurtenances, cargo, etc.,       )
Located within a circle having    )
a radius of 15 miles, whose       )
center point is at coordinates    )
31° 52' North latitude and        )
76° 21' West longitude            )
                                  )
          <u>In</u> <u>Rem</u>                   )
                                  )
          Defendant.              )

<u>ORDER</u>

CAME THIS DAY Plaintiff pursuant to Supplemental

Rule C(3), Fed. R. Civ. Proc., and it appearing to the

Court from the verified Complaint and verified Amended Com-

plaint and supporting papers herein that the conditions for

an action <u>in</u> <u>rem</u> appear to exist, and it further appearing

that portions of the <u>in</u> <u>rem</u> Defendant are or shortly will

be within this district during the pendency of this action,

it is hereby ORDERED that a warrant for the arrest of such

portions of the Defendant, The Unidentified, Wrecked and

Abandoned Sailing Vessel, her engines, tackle, apparel, appurtenances, cargo, etc., as may be found within this district shall issue forthwith.

It is further ORDERED that the Clerk shall forthwith prepare the warrant aforesaid and deliver it to the U. S. Marshal for service.

And it is further ORDERED that upon the execution of the warrant of arrest, this Court has constructive possession of the wreck itself and everything that is a part thereof, wherever located and whenever removed therefrom, past, present, or future; and the U. S. Marshal is ORDERED to receive and take into his possession and control any and all items that have or will come up from the wreck in question, no matter who has brought up or who will bring up such items until a determination of ownership is made or a further order of this Court is issued.

Finally, it is ORDERED that the Plaintiff shall within 10 days after execution of process herein cause public notice of the action and arrest to be given for a period of not less than five consecutive days in the Virginian - Pilot in Norfolk, Virginia, and the Journal of Commerce in New York, New York, which notice shall set forth the Court and docket number of this action, a general description of the nature of this action, the fact of the arrest,

-2-

and the requirement that any persons claiming any  interest
in the  in  rem Defendant file their respective claims and
Answers to the Complaint with the Clerk of the Court within
45  days,  in the form of, or similar to, Attachment "A" to
this Order.  ("Notice of Complaint and Arrest  Pursuant  to
Admiralty Rules.")

It is so ORDERED.

July 7th, 1987

_____
United States District Judge

WE ASK FOR THIS:

_____
Counsel for Columbus-America
Deep Search, Inc. d/b/a
Columbus-America Discovery Group

-3-

# Exhibit 3

**EXHIBIT**

**ALL-STATE LEGAL®**

_3_

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Michael H. Williamson, et al.,<br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>Recovery Limited Partnership, et al.,<br>　　　　Defendants.<br><br>AND<br><br>The Dispatch Printing Co., et al.,<br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>Recovery Limited Partnership, et al.,<br>　　　　Defendants.<br><br>AND<br><br>The Dispatch Printing Co., et al.,<br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>Gilman D. Kirk, et al.,<br>　　　　Defendants. | Civil Action No. C2-06-292<br><br>(Upon Removal from Court of<br>Common Pleas, Franklin County,<br>Ohio -- Case No. 06CVH03-4469)<br><br>Judge Sargus<br>Magistrate Judge Kemp<br><br>(Upon Removal from Court of<br>Common Pleas, Franklin County,<br>Ohio -- Case No. 05CVH04-4220)<br><br><br><br>(Upon Removal from Court of<br>Common Pleas, Franklin County,<br>Ohio -- Case No. 05CVH10-11795) |

## THE _WILLIAMSON_ PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' SUPPLEMENTARY MEMORANDUM AND IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

The _Williamson_ Plaintiffs submit this memorandum of law in response to Defendants' supplemental brief in support of their joint motion to transfer venue, and in further opposition to their Motion. Defendants' supplementary memorandum reflects either a basic misunderstanding of admiralty procedure or an intent by Defendants to mislead this Court as to the basis for the _Williamson_ Plaintiffs' filing of their maritime attachment proceedings in the United States District Court for the Southern District of New York and the United States District Court for the Central District of California.

Under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, it is well-settled that a plaintiff having a maritime cause of action may bring a proceeding in which the plaintiff seeks to attach the assets of the defendant. *See, e.g., Western Bulk Carriers (Australia), Pty. Ltd. v. P.S. Int'l, Ltd.*, 762 F. Supp. 1302, 1306 (S.D. Ohio 1991) (citing 7A MOORE'S GENERAL PRACTICE para. B.03 (2d ed. 1988); Jarvis, *An Introduction to Maritime Attachment Practice Under Rule B*, 20 J. MAR. L.& COMM. 512, 526-30 (1989) (hereafter "Jarvis")). As stated by the Second Circuit,

> The use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty . . . has prevailed during a period extending as far back as the authentic history of those tribunals can be traced.

*Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47-48 (2d Cir. 1996) (quoting *Atkins v. The Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 303 (1873)). Accordingly, maritime attachment is available whenever "the plaintiff has an *in personam* claim against the defendant which is cognizable in admiralty . . . . In other words, the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333." Jarvis, *supra*, at 526 & n.20.

Here, the prerequisites for the *Williamson* Plaintiffs' use of Rule B in a maritime attachment proceeding have been met and their commencement of the Rule B actions in New York and California are not only proper, but justified as a means of obtaining security for their claims made before this Court in light of the Defendants' utter failure to pay the *Williamson* Plaintiffs despite Defendants having recovered the treasure from the *Central America* almost 20 years ago. Indeed, with regard to their basis for the maritime attachment claim, the *Williamson* Plaintiffs remind the Court that *Defendants themselves removed these proceedings to this Court*

2

*on grounds that the Williamson Plaintiffs' claims are admiralty claims pursuant to 28 U.S.C. §*

*1333.*

As for the commencement of the New York and California Rule B proceedings during the pendency of this proceeding, it is likewise well-settled that a plaintiff with an admiralty cause of action may secure its claim by commencing a supplemental maritime attachment proceeding in a jurisdiction other than that in which the primary lawsuit (or other legal proceeding) is pending. *Western Bulk Carriers*, 762 F. Supp. at 1306; *accord Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002); *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 631-33 (9th Cir. 1982); *The West of England Ship Owners Mutual Insurance Ass'n (Luxembourg) v. McAllister Bros., Inc.*, 1993 A.M.C. 2559, 2564-66 (E.D. Pa. 1993); *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F. Supp. 189, 190-91 (S.D.N.Y. 1987).[1]

Indeed, the one case that the *Williamson* Plaintiffs have found on this issue decided by a court in this Circuit involves a quite similar fact pattern. In *Western Bulk Carriers*, the defendant asked a court of this district to vacate a Rule B attachment obtained by the plaintiff because, among other reasons, the plaintiff had a maritime arrest proceeding with an *in personam* claim pending in federal court in Indiana. The court rejected the application, holding that:

> Furthermore, the fact that plaintiff has filed in Indiana federal court an *in rem* action [regarding similar claims] does not per se require a conclusion that the present action was commenced solely to harass and embarrass defendant, *even if, as defendant contends, plaintiff's primary interest in filing in this Court was to obtain security to satisfy a judgment*. *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F. Supp. 189, 190-91 (S.D.N.Y. 1987). Accordingly, the Court finds defendant's motion to vacate the attachment order to be without merit.

---

[1] The *Williamson* Plaintiffs could string cite literally dozens of other decisions for this proposition, but in the interest of space and brevity have listed the cited cases as a representative sample.

*Western Bulk Carriers*, 762 F. Supp. at 1309 (emphasis added); *accord Staronset Shipping*, 659

F. Supp. at 190-91 (*refusing to vacate maritime attachment pursuant to Rule B brought in New*

*York to obtain security in connection with New Jersey admiralty proceeding*).

This principle has been applied both in cases in which the plaintiffs' claims are being

litigated in another forum due to the presence of a forum selection clause or the presence of

jurisdiction over the defendants elsewhere, *see, e.g., Polar Shipping*, 680 F.2d at 633; *Western*

*Bulk Carriers*, 762 F. Supp. at 1309; *Staronset Shipping*, 659 F. Supp. at 190-91, and also in the

context of arbitration where an arbitration clause requires that the parties arbitrate the dispute as

oppose to litigate it. *See, e.g., Winter Storm Shipping*, 310 F.3d at 265 (involving supplemental

maritime attachment lawsuit filed pursuant to Rule B in Southern District of New York in

connection with London arbitration). As stated by the Ninth Circuit in *Polar Shipping*:

> We hold that *in an admiralty action*, absent express intent to the contrary, *a
> forum selection clause* providing that all disputes under the [contract] will be
> determined by a selected foreign court *neither precludes a plaintiff from
> commencing an action in the district court to obtain security by maritime
> attachment, nor prohibits the district court from ensuring the availability of
> security adequate to satisfy a favorable judgment by the selected forum.*

*Polar Shipping*, 680 F.2d at 633 (emphasis added).

Quite simply, courts have recognized for decades that a plaintiff in an admiralty

proceeding may bring a Rule B maritime attachment claim for the sole purpose of obtaining

security in another jurisdiction so long as the prerequisites for Rule B are met in the jurisdiction

in which the plaintiff's Rule B action has been commenced. Defendants either do not understand

this basic admiralty procedural precept or are aware of it and fail to apprise the court of the well-

settled law in this field. In light of Defendants' previous failure to advise the Court of directly

contrary U.S. Supreme Court precedent that clearly prohibited their motion to transfer venue on

4

the grounds alleged, it is difficult to determine which reason applies for their most recent failure to advise this Court of applicable law.

It is interesting that Defendants seek to make a great deal regarding the paragraph in the *Williamson* Plaintiffs' New York and California complaints that refer to the forum selection clause. This recital in the complaint is used routinely in the Southern District of New York and other jurisdictions to advise the court of the pendency of other proceedings and the fact that the Rule B proceeding has been commenced as a supplemental proceeding for the purpose of obtaining security in connection with another pending (or to be commenced) lawsuit or arbitration proceeding elsewhere. Thus, the paragraph to which Defendants point triumphantly as supporting their position in fact shows that the *Williamson* Plaintiffs have no desire to proceed on the merits of New York or California, but, rather, seek to obtain security in New York and California and then stay those actions pending resolution of their proceeding on the merits in Ohio.[2]

As to Defendants' repeated referrals to the <u>concursus</u> in the Eastern District of Virginia, this contention once again appears to seek to misdirect the Court's attention as to the applicable

---

[2]  Defendants in their motion seeking leave to file a supplemental brief suggested that the *Williamson* Plaintiffs were required to file notice with this Court of the filing of the New York Rule B proceeding. Once again, this unsupported assertion is contrary to settled law. The Ninth Circuit's decision in *Polar Shipping* provides an excellent discussion of why prior notice specifically cannot be given in connection with Rule B maritime attachment proceedings:

> *Due process does not require pre-attachment notice. Such notice could readily defeat the whole proceeding.* The ship, if it were being libelled under Supplemental Rule C, could depart beyond the jurisdiction; the other property, to be seized under Supplemental Rule C, or attached under Supplemental Rule B, could be shipped out, otherwise disposed of, or concealed; credits, such as are here involved, could be collected or transferred out of the jurisdiction.
> \* \* \*
> Pre-attachment notice and hearing could, as we have explained, defeat both of the purposes of the [maritime] attachment -- obtaining jurisdiction, and obtaining security.

*Polar Shipping*, 680 F.2d at 638 (emphasis added) (citing *Merchants Nat'l Bank v. Dredge GENERAL G.L. GILLESPIE*, 663 F.2d 1338, 1334 (5th Cir. Unit A 1981); *Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904, 911 (4th Cir. 1981)).

law. The Eastern District of Virginia litigation addressed the assembling and resolution of claims of various entities alleging either a proprietary interest in the treasure or seeking an award of a portion of that treasure based on their salvaging of that treasure. None of the *Williamson* Plaintiffs claims to have a proprietary interest in the treasure, and none claims to be eligible for an award in salvage in that action. Rather, the *Williamson* Plaintiffs all have alleged breach of contract (and similar) claims against the Defendants based on the Defendants' failure to compensate the *Williamson* Plaintiffs in exchange for the *Williamson* Plaintiffs having performed their contracts. None of the *Williamson* Plaintiffs' contracts is a salvage contract. Rather, they are (1) non-compete and non-disclosure agreements relating to the individual *Williamson* Plaintiffs' performance, (2) the IDSS lease agreement pertaining to Defendants' leasing of the side scan sonar used by Defendants to find the wreck of the *Central America*, and, (3) in the case of Don C. Craft, a penalty wage claim based on Mr. Craft not having been paid his full wages while serving on the Defendants' vessel. The *Williamson* Plaintiffs' claims are not based on a percentage of the treasure because they are salvage claims, but rather are based on such a percentage because that was the consideration agreed by Defendants in exchange for the *Williamson* Plaintiffs' performance of the aforementioned contracts.

The Defendants' repeated references to the concursus established by the court in the Eastern District of Virginia is all the more perplexing because they well know that all treasure that was brought into that concursus already has been disposed of by that court by awards made to the Defendants and other claimants. There is no treasure in that court for distribution to others, and the matter has therefore been closed. The *Williamson* Plaintiffs are not seeking to share in any concursus, but rather are seeking compensation due them based on their contracts with the Defendants. Therefore, even if the *Williamson* Plaintiffs had brought this action in

Virginia rather than Ohio, their Rule B maritime attachment proceedings would still have to be brought in New York, California, and other jurisdictions where the Defendants have assets but are not subject to personal service of process. This Court, chosen by the Defendants in the forum selection clauses they drafted, is as competent as the court in Virginia to proceed with the matter before it on the merits while security is being obtained in other jurisdictions pursuant to the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

It is worth noting that previous district courts outside of Virginia *have not* transferred non-salvage claims related to the S.S. Central America's treasure to the United States District Court for the Eastern District of Virginia. The lawsuit in the United States District Court for the Southern District of New York between Christie's Auction House and some or all of the Defendants, entitled *ABC, plc. v. HIJ, Inc.*, No. 98 Civ. 5036, was not transferred to the Eastern District of Virginia. The docket number clearly shows that this matter was filed in 1998. The Court also may recall the *Williamson* Plaintiffs' previous reference to District Judge Clarke's ire when he found out about the Christie's lawsuit:

> Christie's, the famous New York auction house, was hired to sell part of the gold, but *a Norfolk judge voided the contract last year, saying Columbus-America had misled the court about the sale.*
>
> As a result, Christie's now has a $43 million claim on the gold and is trying to seize the treasure from Columbus-America. *A lawsuit is pending in New York.*
>
> The Norfolk federal judge, J. Calvitt Clarke Jr., *is furious with Columbus-America. He disqualified the company from marketing all of the gold last year, saying he was disturbed by the company's "lack of integrity."*
>
> \*   \*   \*
>
> *Judge Clarke became furious when he learned of the Christie's deal. He said it violated a previous marketing order that Columbus-America could sell only a certain part of the gold.*
>
> Last May, Clarke ordered Columbus-America to bring Christie's to the Norfolk courthouse. When Christie's failed to appear, Clarke slammed Columbus-America.
>
> "It became unmistakably clear that *(Columbus-America) has not been forthright with the court,* underwriters or Christie's in its activities to market and sell" the gold, Clarke wrote.

7

> *He ruled that Columbus-America "is disqualified or not qualified by reason of the lack of integrity" for failing to keep him informed, for signing the Christie's contract in violation of his previous order, and for failing to come up with a plan to sell the gold after "years and years and years" as the gold's sole marketer.*
>
> *"For all those reasons . . . I still think and still hold that (Columbus-America) is not competent to handle the treasure," Clarke concluded.*

Marc Davis, *Dispute Over Sunken Treasure Wages On 10 Years After Discovery*, THE VIRGINIAN-PILOT (Norfolk, VA), March 7, 1999, at A4-A5 (emphasis added).

Obviously, no transfer occurred with the Christie's lawsuit even though the Eastern District of Virginia case clearly remained open, even though an assigned district judge was presiding over the proceedings in the Eastern District of Virginia, and even though the Eastern District of Virginia's assigned judge *ordered Columbus-America to bring Christie's to the Norfolk courthouse*.

The final aspect that Defendants raised in their motion seeking leave to file a supplemental brief is that the New York complaint alleges claims against additional defendants and differs in its pleading. As the New York and California complaints mention, the *Williamson* Plaintiffs intend to file a motion shortly to amend their complaint before this Court. That motion will seek leave to file a complaint that brings the complaints filed in all actions into harmony. The allegations in the New York and California complaints merely differ from those filed in Ohio because the *Williamson* Plaintiffs have learned more facts regarding their claims and about the Defendants and their affiliated companies since the *Williamson* Plaintiffs first filed their complaint in the Court of Common Pleas, Franklin County, Ohio.

## CONCLUSION

For the foregoing reasons and for those set forth in the *Williamson* Plaintiffs' previous opposition papers, this Court should deny Defendants' joint motion to transfer venue to the United States District Court for the Eastern District of Virginia.

8

Respectfully submitted,
/s/ Michael R. Szolosi
Michael R. Szolosi, Sr. (0022317)
TRIAL ATTORNEY
McNamara & McNamara, LLP
88 East Broad Street, Suite 1250
Columbus, Ohio 43215-3558
Email: mrs@mcnamaralaw.us
(614) 228-6131/(614) 228-6126 (Fax)
*Counsel for Williamson Plaintiffs*

OF COUNSEL:
James T. Shirley, Jr.
Michael J. Frevola
Holland & Knight LLP
195 Broadway
New York, New York 10007
(212) 513-3200
(212) 385-9010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing memorandum was served via the Court's electronic filing, on the 25th day of September, 2006 upon the following parties:

John W. Zeiger (0010707)
Steven W. Tigges (0019288)
Bradley T. Ferrell (0070965)
Zeiger, Tigges & Little LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-9900/(614) 365-7900
*Attorneys for Plaintiffs*
*The Dispatch Printing Company*
*and Donald C. Fanta*

Rex H. Elliott (0054054)
Charles H. Cooper (0037295)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000/(614) 6001 (Fax)
*Attorneys for Defendants*
*Thomas G. Thompson and*
*ECON Engineering Associates, Inc.*

Richard T. Robol (0064345)
Robol Law Office, LPA
555 City Park Avenue
Columbus, Ohio 43215
(614) 737-3739/(614) 737-3756
*Attorney for Defendants*
*Recovery Limited Partnership*
*and Columbus Exploration, LLC*

William M. Mattes (0040465)
Dinsmore & Shohl LLP
175 South Third Street, 10th Floor
Columbus, Ohio 43215-5134
(614) 628-6901/(614) 628-890 (Fax)
*Attorney for Defendants*
*Gilman D. Kirk, James F. Turner, Michael*
*J. Ford and W. Arthur Cullman, Jr.*

*/s/ Michael R. Szolosi*
Michael R. Szolosi, Sr.

# 4026503_v1

10

# Exhibit 4

EXHIBIT

_4_

ALL-STATE LEGAL®

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Michael H. Williamson, et al., | Civil Action No. C2-06-292 |
| Plaintiffs, | |
| | (Upon Removal from Court of |
| v. | Common Pleas, Franklin County, |
| | Ohio – Case No. 06CVH03-4469) |
| Recovery Limited Partnership, et al., | |
| Defendants. | |
| | Judge Sargus |
| AND | Magistrate Judge Kemp |
| The Dispatch Printing Co., et al., | |
| Plaintiffs, | (Upon Removal from Court of |
| | Common Pleas, Franklin County, |
| v. | Ohio – Case No. 05CVH04-4220) |
| Recovery Limited Partnership, et al., | |
| Defendants. | |
| AND | |
| The Dispatch Printing Co., et al., | |
| Plaintiffs, | (Upon Removal from Court of |
| | Common Pleas, Franklin County, |
| v. | Ohio – Case No. 05CVH10-11795) |
| Gilman D. Kirk, et al., | |
| Defendants. | |

## THE *WILLIAMSON* PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO TRANSFER VENUE AND ALTERNATIVELY TO DISMISS THE COMPLAINT OF *WILLIAMSON* PLAINTIFFS

### PRELIMINARY STATEMENT

Plaintiffs Michael Williamson, Don Craft, Kirk O'Donnell, John Lettow, Timothy McGinnis, Fred Newton, William Watson, Chris Hancock, Dale Schoeneman, and International Deep Sea Survey, Inc. ("IDSS") (collectively, the *Williamson* Plaintiffs") submit this memorandum in opposition to the joint motion of Defendants Columbus Exploration LLC, Recovery Limited Partnership, Econ Engineering Associates, Inc., Thomas G. Thompson, Gilman D. Kirk, James F. Turner, Michael J. Ford, and Arthur Cullman, Jr. (collectively "Defendants") to transfer venue or alternatively to dismiss the *Williamson* Plaintiffs' complaint.

Defendants' motion (the "Transfer Motion") should be rejected because, as with so many of Defendants' papers submitted to this Court, their motion conveniently fails to address directly contrary law, inconvenient facts, and the reality that the Eastern District of Virginia has no jurisdiction over disputes involving assets which were awarded more than 10 years ago.

## STATEMENT OF FACTS

Yet again, Defendants fail to apprise the Court of critical facts that are dispositive to their motion. First, Defendants insinuate that the Eastern District of Virginia's experience would be critical to dealing with these claims, despite that Court never having dealt with the issues before this Court. Moreover, there is no district judge sitting in the Eastern District of Virginia who has handled any of the *Central America* litigation. ***Both district judges in the Eastern District of Virginia who presided over the Admiralty Litigation now are deceased.*** *See* Affidavit of James T. Shirley, Jr., Esq. ("Shirley Aff."), at ¶ 14 & Ex. 4.

Second, the individual *Williamson* Plaintiffs' claims are for enforcement of non-disclosure agreements ("NDAs") that were executed by Defendant Thomas G. Thompson ("Thompson") and the *Williamson* Plaintiffs individually. Shirley Aff., at ¶¶ 3, 4 & Ex. 1. ***Each of the NDAs specified that disputes would be subject to the jurisdiction of this Court.*** *Id.; see also id.*, Ex. 1. Thus, any suggestion that this Court lacks *in personam* jurisdiction over Thompson is wrong.

Third, Defendants' contention that the *Williamson* Plaintiffs' claim is an *in rem* salvage claim misrepresents facts and law to the Court. The *Williamson* Plaintiffs' claims under the NDAs are for compensation promised in exchange for them not competing and not disclosing information regarding the *S.S. Central America*'s search and recovery operations. As the Court will note, there are no claims made pursuant to Rule C of the Supplemental Rules for Certain

2

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, seeking an *in rem* arrest of any treasure that might be present in this jurisdiction. Defendants attempt to use the word "share" to somehow transmute the *Williamson* Plaintiffs' claims into *in rem* salvage claims subject to the Eastern District of Virginia's Admiralty Litigation completed many years ago is a legal impossibility.

Furthermore, as noted previously by the *Dispatch/Fanta* Plaintiffs, the Eastern District of Virginia lawsuit has been closed for almost six years. (*See* Doc. 16, at 2) (referring to the Eastern District of Virginia Pacer Report and stating that the Pacer Report "shows that the [Admiralty Litigation] *has been closed since July 11, 2000* and there has been no activity since then") (emphasis in original). Thus, there is no proceeding pending in the Eastern District of Virginia, and certainly none involving the issues in this lawsuit. The Eastern District of Virginia had two trials and ultimately awarded Defendants nearly all of the treasure salvaged from the *S.S. Central America. See, e.g., Columbus-America Discovery Group, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel*, No. 87-363-N, 1993 WL 580900, at *32 (E.D. Va. Nov. 18, 1993) (awarding 90% of salvaged gold to Defendants).[1] Having made its award of salvage, the Eastern District of Virginia no longer has jurisdiction over the treasure, the value of which forms the basis for the *Williamson* Plaintiffs claims.

## ARGUMENT

Defendants' Transfer Motion is doomed from the start because it is based on a premise that was rejected by the U.S. Supreme Court in *Hoffman v. Blaski*, 363 U.S. 335 (1960), the seminal case regarding the prerequisites for establishing the proper foundation for transferring a

---

[1]   The actual figure of 92.4% of the treasure was reached by settlement through certain of the Defendants and the plaintiff underwriters in the Eastern District of Virginia lawsuit, rather than actually being a figure provided in any order of the Eastern District of Virginia.

case pursuant to 28 U.S.C. § 1404(a). Defendants do not call the Court's attention to this significant obstruction to their motion, nor do they seek to make an argument for the reversal of that case or show how this case differs from the facts of that case.

Similarly, Defendants have not advised this Court that the two district judges who presided over the Admiralty Litigation in the Eastern District of Virginia are deceased, and they have not advised this Court that a forum selection clause – *choosing this district as the forum*[2] – governs each of the individual *Williamson* Plaintiffs' claims.

## POINT I

### DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) DIRECTLY CONTRAVENES GOVERNING SUPREME COURT PRECEDENT

In *Hoffman*, the Supreme Court was presented with the question of whether a defendant could base a motion to transfer venue under 28 U.S.C. § 1404(a) on the defendant's consent to venue and jurisdiction in the proposed transfer venue. Reviewing the plain language of the statute, which requires that the proposed transfer district be one "where it might have been brought," the Supreme Court categorically rejected the defendants' argument:

> Petitioners' "thesis" and sole claim is that § 1404 (a) . . . should be broadly construed, and, when so construed, the phrase "where it might have been brought" should be held to relate not only to the time of the bringing of the action, but also to the time of the transfer; and that "if at such time the transferee forum has the power to adjudicate the issues of the action, it is a forum in which the action might <u>then</u> have been brought" . . . . They argue . . . if, as here, the defendants move to transfer the action to some other district *and consent to submit to the jurisdiction of such other district*, the latter district should be held one "in which the action might <u>then</u> have been brought" . . . .

---

[2]    One *Williamson* Plaintiff, IDSS, has a clause choosing the Franklin County Court of Common Pleas as the forum. *See* Shirley Aff., ¶ 5 & Ex. 2. That is, of course, where the *Williamson* Plaintiffs' claims first were brought, from which those claims were removed to this Court *by the Defendants* on the basis of admiralty jurisdiction.

> *We do not agree. We do not think the § 1404 (a) phrase "where it might have been brought" can be interpreted to mean, as petitioners' theory would require, "where it may now be rebrought, with defendants' consent."*
>
> *   *   *
>
> [T]he power of a District Court under § 1404 (a) to transfer an action to another district is made to depend *not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action "might have been brought" by the plaintiff.*

*Hoffman*, 363 U.S. at 342-43, 343-44 (underlined emphasis in original, italicized emphasis added). In summarizing, the Court stated:

> We agree with the Seventh Circuit [from one of the underlying proceedings] that:
>
> "If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where [the action] might have been brought.' If he does not have that right, independently of the wishes of defendant, it is not a district 'where it might have been brought,' and *it is immaterial that the defendant subsequently [makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum].*" 260 F.2d, at 321 and 261 F.2d, at 469.

*Id.* at 344 (emphasis added).

Here, none of the Defendants have tendered evidence of jurisdictional contacts with Virginia, and no such contacts exist. None of the defendant companies are incorporated or have principal places of business in Virginia. Rather, as shown by Defendants' previous submissions, all are either Ohio companies or have places of business in Ohio. The individual director defendants all are Ohio residents. As for Defendant Thompson, it is the *Williamson* Plaintiffs' understanding that he not only is an officer and/or director of several or all of the Defendant companies, and not only owns several residences in Ohio, but that – most significantly – he executed each and every one of the individual *Williamson* Plaintiffs' NDAs in Ohio, which agreements identify him as a Ohio resident, and *which agreements call for the U.S. District Court for the Southern District of Ohio having exclusive jurisdiction for the resolution of*

5

*disputes.* It is well-settled that this agreement to use this forum as the exclusive forum makes Thompson subject to this Court's *in personam* jurisdiction. *See, e.g., Preferred Capital, Inc. v. New Tech Eng'g, LP,* No. 5:04CV2301, 2005 U.S. Dist. LEXIS 32619, at *15 (N.D. Ohio Mar. 8, 2005) (stating that "[n]umerous courts have held that an express waiver or consent to venue in a forum selection clause necessarily implies a waiver of or consent to personal jurisdiction.") Thus, this venue is proper for every Defendant, while Virginia is not proper for any!

Instead of proving jurisdiction could have been had in Virginia, Defendants' argument for transfer of venue is based on their consent to jurisdiction in the Eastern District of Virginia, which gambit was proscribed by the *Hoffman* Court 46 years ago:

> None of the Defendants claims any jurisdictional defenses to suit in the U.S. District Court for the Eastern District of Virginia. *All Defendants have waived any objection to suit in that jurisdiction, and each has agreed to submit themselves to th[at] jurisdiction . . . ."*

Defendants' Transfer Motion Memorandum (Doc. 44), at 3 (emphasis added).

Defendants also claim that transfer under 28 U.S.C. § 1406(a) also might be proper. That section contains identical language to § 1404(a), so a transfer to the Eastern District of Virginia once again would fail. More significantly, however, this district is the proper venue *because Thompson – for himself and on behalf of the Defendants*[3] *– chose this district as the proper forum in the forum selection clauses in the NDAs which were drafted by them.* Thus, Defendants' motion to transfer venue under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) must fail as such a motion directly contravenes controlling U.S. Supreme Court precedent, and their own agreements with the *Williamson* Plaintiffs.

---

[3] Each of the NDAs was executed by Defendant Thompson and stated that he "represent[ed] interests, in addition to his own, of certain other science professionals and individuals, including one or more entities." *See* Shirley Aff., ¶ 3 & Ex. 1.

## POINT II

### EVEN IF DEFENDANTS' MOTION TO TRANSFER WAS NOT ILL-FOUNDED, THE FORUM SELECTION CLAUSES IN THE NDAS ARE CONTROLLING ON THE QUESTION OF THE APPROPRIATE VENUE

Just as the Defendants fail to advise this Court that direct Supreme Court precedent controverts their motion to transfer, they also fail to advise this Court that direct Supreme Court precedent foils their motion to transfer because of the governing forum selection clauses. In *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), the Supreme Court held that while a forum selection clause should not be a "dispositive consideration" of the district court in deciding whether a matter should be transferred pursuant to § 1404, the "presence of a forum selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Id.* at 29, 32.

Significantly, the *Ricoh* Court was faced with a question of diversity jurisdiction in which federal law and the governing state's law were at odds. Federal law would enforce the forum selection clause, but Alabama's law "looks unfavorably" upon forum selection clauses. *Id.* at 25-26. Such a conflict is not present here. As explained below, under both federal maritime law and Ohio state law, forum selection clauses are enforced except in the most exceptional cases.

### A.     Federal Maritime Law Governs Transfer Issues Related to the NDAs

American jurisprudence has long recognized the importance of maintaining uniformity in maritime law. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221 (1986). In their papers removing these proceedings to this Court, Defendants base their removal on admiralty law because the *Williamson* Plaintiffs' NDAs are maritime contracts. (Doc. 2-1, at 3) (citing 28 U.S.C. § 1333 – entitled "Admiralty, maritime and prize cases" – as the basis for removal). As

such, general maritime law governs the enforceability of the clauses, including the forum selection clauses, in each of the *Williamson* Plaintiffs' NDAs.

**B.     Under General Maritime Law, Forum Selection Clauses are *Prima Facie* Valid**

Here, each of the *Williamson* Plaintiffs' NDAs contains a forum selection clause.

> In the event that disputes, differences, or controversies arise in connection with this Agreement, [Plaintiff] agrees that *the United States District Court for the Southern District of Ohio, Eastern Division, shall have exclusive jurisdiction.* Accordingly, [Plaintiff] irrevocably submits his person to the jurisdiction of such court for purposes of such litigation.[4]

Shirley Aff., ¶ 4 & Ex. 1 (emphasis added).

Under general maritime law, a forum selection clause is *"prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The BREMEN v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972); *see also Smith v. Teco Ocean Shipping, Inc.,* No. 04-0445, 2004 U.S. Dist. LEXIS 13851, at *7 (E.D. La. July 20, 2004) ("[t]here is a strong presumption in favor of enforcement of forum selection clauses, and 'a valid forum selection clause is given controlling weight in all but most exceptional cases.'") (citations omitted).[5] A party seeking to set aside a forum selection clause has a "heavy burden of proof" and, absent a very strong showing of unreasonableness, the forum selection clause must

---

[4]    The one NDA that differs in the choice of forum is the IDSS contract, which provides for exclusive jurisdiction in "the Court of Common Pleas, Franklin County, Ohio." Shirley Aff., ¶ 5 & Ex. 2. As that contract provided the largest claim of all the *Williamson* Plaintiffs, and as the *Dispatch/Fanta* Plaintiffs already had sought similar relief in the Franklin County Court of Common Pleas, the *Williamson* Plaintiffs initially filed suit in the Court of Common Pleas under the IDSS forum selection clause and petitioned for consolidation. As this Honorable Court is aware, that action was removed to this Court, which is the forum agreed upon in all the other NDAs, by Defendants.

[5]    Although this matter is governed by federal maritime law, the same result is reached under Ohio law. *See, e.g., Preferred Capital, Inc. v. Sarasota Kennel Club,* No. 1:04CV2063, 2005 U.S. LEXIS 15239, at *2 (N.D. Ohio July 27, 2005) (holding under Ohio law that "[a] forum selection clause is presumptively valid and should only be set aside when trial in the contractual forum would be so gravely difficult as to effectively deprive the opposing party of its day in court"); *Kennecorp Mortgage Brokers, Inc. v. Country Club Conv. Hosp., Inc.,* 66 Ohio St.3d 173, 175 (Ohio 1993) (holding "a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside").

be enforced. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 594-95 (1991); *see also Teco Ocean Shipping,* 2004 U.S. Dist. LEXIS 13851, at *6 (stating that "a court sitting in admiralty must enforce a forum selection clause unless enforcement is shown by the resisting party to be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching."); *Launey v. Carnival Corp.,* 1998 A.M.C. 579, 581 (E.D. La. 1997) (holding that "to overcome a forum selection clause under maritime law, the burden on the resisting party must be "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.") (citing *The BREMEN,* 407 U.S. at 17-18). Here, Defendants have not even ***mentioned*** the forum selection clauses, much less sustained their "heavy burden" to set them aside. Moreover, Thompson drafted the very clauses at issue on behalf of himself and the other Defendants.

As shown by *The BREMEN* and *Shute,* courts will give substantial weight to the parties' choice of forum in maritime contracts. Indeed, in the *Ricoh* decision, three of the Justices cited to *The BREMEN* in their concurrence and dissent, stating that under § 1404 a forum selection clause should be *"**given controlling weight in all but the most exceptional cases.**" Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 (1988) (Kennedy, J., O'Connor, J., concurring) (citing *The BREMEN,* 407 U.S. at 10) (emphasis added); *see also id.* at 35 n.* (Scalia, J. dissenting). Thus, the forum selection clauses, which call for the exclusive jurisdiction in the Southern District of Ohio, are *prima facie* valid and should be upheld by this Court unless Defendants show that this is an "exceptional case." No such showing has been made, nor can Defendants make such a showing. The forum selection clause in each of the NDAs should therefore be given controlling weight.

9

## POINT III

### EVEN IF DEFENDANTS' MOTION TO TRANSFER WAS NOT ILL-FOUNDED, GOVERNING LAW AND THE FACTS OF THIS CASE CLEARLY SUPPORT THIS COURT'S RETENTION OF THIS DISPUTE

Defendants cite "public factors" and "private factors" that purportedly support their motion to transfer venue. None of these alleged factors withstands more than cursory scrutiny.

### A.    Public Factors

Defendants argue that (1) the "first to file rule" requires that this matter be transferred to Virginia, (2) the Eastern District of Virginia is familiar with Defendants' internal operations, (3) the "emerging law of the sea" supports such a transfer, and (4) the Eastern District of Virginia's so-called "rocket docket" will permit this matter to be handled more efficiently and expeditiously. None of these factors has merit in this action and, therefore, they are insufficient to set aside the controlling forum selection clauses.

### 1.    The "First to File Rule" Does Not Apply

Defendants' attempted use of the "first-to-file rule" is a "throw-away". The Admiralty Litigation was closed six years ago, so the doctrine cannot apply because there is no other proceeding pending! Overlooking that fatal defect, the "first-to-file rule" is a tool which provides that "when duplicative lawsuits are pending in separate federal courts the entire action should be decided by the court in which an action was first filed." *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005). "Duplicative lawsuits" refer to two proceedings "in which the issues have such an identity *that a determination in one action leaves little or nothing to be determined in the other.*" *Id.* (emphasis added) (internal citations omitted). While the parties need not be identical in both proceedings, the identity of the parties is only one of three factors examined by courts to determine whether the actions are duplicative,

10

the other two being: (1) the chronology of the actions; and (2) the similarity of the issues at stake. *Id.* at 689.

Here, the Eastern District of Virginia proceeding has been closed for six years. There is no ongoing dispute in that district between the Defendants and anyone. The *Williamson* Plaintiffs have never been parties in that proceeding. Shirley Aff., ¶ 8. To the contrary, several of the *Williamson* Plaintiffs testified on Defendants' behalf in the Admiralty Proceeding. *See, e.g., Columbus-America Discovery Group, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel*, No. 87-363-N, 1993 WL 580900, at *24-26 (E.D. Va. Nov. 18, 1993) (summarizing trial testimony of *Williamson* Plaintiffs Fred Newton, Michael Williamson, Tim McGinnis and Don Craft). Moreover, neither the chronology nor the similarity of issues supports a "first-to-file" finding. Turning back to the parties, there likewise is no similarity. The *Williamson* Plaintiffs claims never have been brought against Defendants anywhere except in this proceeding. Shirley Aff., ¶ 6.

### 2.     The Eastern District of Virginia's Familiarity is Overstated

Defendants argue that the Eastern District of Virginia is more familiar with these disputes and with Defendants' secrets. The two judges who presided over the Admiralty Litigation both are dead. This Court has greater familiarity with the parties and issues than any district judge in Virginia. But even if that was not true, the dispute between the *Williamson* Plaintiffs and Defendants involves a non-disclosure and non-competition contract that never was an issue before that court. As such, the familiarity argument is overplayed.

### 3.     The "Law of Deep Sea Exploration" is Irrelevant to the NDA claims

Defendants argue – yet again – that their secret internal procedures require the Eastern District of Virginia to hear this dispute as it is in a unique position to understand Defendants'

supposed unilateral desire to preserve "the long-term scientific, historic and environmental values of shipwrecks and other cultural and natural resources of the world's oceans." Transfer Motion Memo., at 9. Review of the NDAs, however, reveals that Defendants' purported issues have no connection with the NDA claims.

This case simply involves how much treasure has been recovered and its value. That is it. *See* Shirley Aff., ¶¶ 11, 12. Defendants repeat their mantra incessantly that they have secrets that must be protected and that the Eastern District of Virginia knows all, but the *Williamson* Plaintiffs' claim does not involve the "emerging law of deep sea exploration." *See, e.g., id.* ¶ 8. Rather, this is a contract dispute founded upon the *Williamson* Plaintiffs' NDAs. Defendants explain in detail how the Eastern District of Virginia has significant experience in adjudicating matters concerning the "emerging law of the sea," but they never explain how the "emerging law of deep sea exploration" has any bearing on resolution of the *Williamson* Plaintiffs' claims.

Defendants claim that issues exist that the Court will need to analyze in deciding this matter, such as, an "analysis of the time line and process for marketing." (Transfer Motion Memo., at 11). But all indications – including statements by Defendants in this proceeding that tens of millions of dollars of sales have occurred – point to the conclusion that *the treasure already has been sold*. Moreover, as shown in the *Williamson* Plaintiffs' opposition to the sealing motions, the grand "marketing campaign" appears to have been selling the treasure on the internet and through sales brochures which contain much of the "secret" information that Defendants claim is so sensitive.

With the sale of the treasure, marketing issues have become irrelevant. Defendants have provided no indication why any of their supposed factors would actually need to be addressed in this proceeding or, if they must be addressed in this proceeding, why this Court is unable to

12

handle such issues. The reason for this omission is simple: there is no logical reason why such information is necessary to adjudicate this claim.

Even if the factors listed by Defendants needed to be addressed to resolve this contract dispute, the Eastern District of Virginia having some familiarity with the "emerging law of deep sea exploration" would not meet the heavy burden imposed upon Defendants to overcome the forum selection clause. Defendants have provided no reason why it would be "unreasonable or unjust" to proceed in the Southern District of Ohio and they have certainly not alleged any "fraud or overreacting," as it was Defendants themselves who drafted the contractual provision. *Teco Ocean Shipping*, 2004 U.S. Dist. LEXIS 13851, at *6. Thus, even if Defendants are correct that the Eastern District of Virginia has experience in "the emerging law of deep sea exploration," that factor is insufficient to set aside the forum selection clause in the NDAs or to overcome the weight to be given those clauses. Indeed, that factor appears to be completely irrelevant.

4.     The "Rocket Docket" Argument Likewise Carries Insufficient Weight

Defendants also argue that the Eastern District of Virginia is more capable than the Southern District of Ohio of handling this matter in an expeditious fashion because of its alleged "rocket docket." The issue of whether the Eastern District of Virginia has a "rocket docket" — even if Defendants insinuations are to be believed – should not be determinative.

First, under Defendants' analysis, all cases that could jurisdictionally be transferred to the Eastern District of Virginia should be so transferred based on this factor. Second, as shown by Defendants' recycling in this proceeding of motions *already made and lost* in Ohio state court, a quick resolution of these disputes is not the Defendants' intention. Indeed, the same motions made here and in Ohio state court likely would be re-filed in the Eastern District of Virginia.

Despite the claimed "rocket docket" nature of the Eastern District of Virginia, the Admiralty Litigation proceeded tortuously through that district and multiple appellate courts over the course of twelve years. This is hardly the stuff of which a "rocket docket" is made. Defendants' actions, rather than trying to speed the process of justice, are meant to delay and deny justice and to specifically take the "rocket" out of any district court's "docket."

Most significantly, Defendants' comments simply do not take into account the reality of events in this proceeding. This matter was removed to this Court on or about April 28, 2006 and the *Dispatch/Fanta* Plaintiffs preliminary injunction hearing was scheduled for July 5, 2006. The only reason why the *Dispatch/Fanta* Plaintiffs' hearing could not take place sooner was because of the unavailability of Defendants' counsel at an earlier time. Can Defendants' counsel realistically claim to be more likely to be available more quickly in a Virginia courtroom than in an Ohio courtroom?

5.    This Court is Better Suited to Resolve Issues of Ohio Law That Might Arise

The NDAs all contain a reference that Ohio law will govern the NDAs. *See* Shirley Aff, ¶¶ 4, 5 & Exs. 1, 2. As with other areas of law, and similar to choice of forum clauses, federal maritime law recognizes the parties' right to incorporate a choice-of-law clause into a maritime contract. *See, e.g., Marquette Transp. Co. v. Zurich Am. Ins. Co.*, No. 04-2386, 2006 U.S. Dist. LEXIS 9928, at *15-16 (E.D. La. Mar. 13, 2006) (stating that "[w]here a maritime contract contains a choice of law clause, the state law chosen by the parties will apply "'unless [1] the state has no substantial relationship to the parties or the transaction or [2] the state's law conflicts with the fundamental purposes of maritime law.'") (quoting *Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of La.*, No. 03-2980, 2004 U.S. Dist. LEXIS 22094, at *16 (E.D. La. Nov. 1, 2004) (quoting *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1126 (5th Cir.

1992) (internal quotations omitted)). In this case, pursuant to the NDAs' choice-of-law clauses, any issues of state law that will arise will be subject to interpretation under Ohio law. It is well-settled in choice of venue questions that a court will favor the venue with greater experience in interpreting the law that will govern the contract. *See, e.g., Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 951 (S.D. Ohio 2002) (Sargus, J.) (stating that a court's greater experience in interpreting the law governing a dispute "weighs heavily" in favor of the more conversant court handling the dispute). Here, clearly this Court would have greater experience in interpreting Ohio law than the Eastern District of Virginia, and this factor also favors this Court's retention of this dispute. *See id.* at 949 (stating that "if Ohio law applies, then this Court would be more conversant with the law that applies to this case" than a Louisiana district court).

Accordingly, for the foregoing reasons, the public factors purportedly present favoring transfer should be rejected and Defendants' motion to transfer denied.

**B.    Private Factors**

Defendants argue that the Eastern District of Virginia may better handle this matter as it has access to "extensive sealed testimony, documentation and analysis relating to marketing, the unique confidentiality concern's of the company's work and how these factors affect the protection of the scientific, historic and archaeological values of the SS *Central America*." There are two main problems with this analysis: (1) Defendants have not presented any reason why these various different considerations, including the "scientific, historical and archaeological values of the SS *Central America*" are relevant to a rather straightforward contract dispute; and (2) even if the sealed documents were relevant, the Eastern District of Virginia is not the sole authority concerning the sealed documents; the Southern District of Ohio may make its own determination as to the protective nature that should – or should not – be afforded such material.

1.    Documents Are Not Only Accessible in Virginia

As the *Williamson* Plaintiffs noted in their opposition to the Defendants' sealing motions,

Defendants use seals that they obtain on consent to claim that they cannot comply with

subsequent document requests. They already have used this tactic in this proceeding, going so

far as to submit an affidavit to the Court *ex parte* that was not filed with the Court or served on

the plaintiffs.

In conjunction with the *Williamson* Plaintiffs' initial opposition to the sealing motions,

the Williamson Plaintiffs provided brief dated July 29, 1998 filed by counsel for the underwriter

opponents of these Defendants in the Admiralty Litigation. That brief opposed Defendants'

insistence on filing under seal a broad range of documents in the Admiralty Litigation:

> [M]uch of the information for which [Defendants] seek[ ] protection is not
> encompassed within [the district judge]'s categories, but instead is included
> *because it either displays [Defendants] in an unfavorable light, or will hinder
> [Defendants'] efforts to withhold from the buying public information about the
> number and quality of coins and bars recovered from the wreck site.*

(Doc. 18, Ex. 5, at 5) (emphasis added).

Furthermore, as underwriters' counsel makes clear in the Admiralty Litigation in the

Eastern District of Virginia, *it was the Defendants here that requested the agreed sealing*

*orders in that proceeding*:

> Counsel for Underwriters do not recall ever requesting that *any* particular
> information be placed under seal in this case.

*Id.* at 2 (emphasis added).

Here, Defendants seek to use the seals that *they* intentionally and unilaterally demanded

be put in place in Virginia as a convenient excuse for trying to get this proceeding transferred.

As the parties agreed to seal the documents in Virginia, Defendants can obtain relevant

16

information as necessary – assuming any is necessary – by obtaining the consent of opposing counsel in the Admiralty Litigation. Defendants have not shown that such consent is impossible. Indeed, quite to the contrary, counsel for the underwriters in the Admiralty Litigation questioned why *anything* should be sealed! Defendants' attempts to base their transfer motion on a seal that *they* created, for *their* own protection, at *their* insistence, should not be countenanced.

    2.    <u>Convenience Contentions Are Overstated and Unavailing</u>

Defendants argue that Virginia is more convenient than Ohio. First, mere inconvenience of a party in insufficient to overcome the heavy burden required to set aside a forum selection clause, and it cannot serve to overcome the controlling weight to be accorded that forum selection clause. Indeed, the burden must be "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Launey*, 1998 A.M.C. at 581 (citing *The BREMEN*, 407 U.S. at 17-18). Defendants have not demonstrated any such burden, but merely a lack of desire to litigate in Ohio. A mere disinclination to litigate in Ohio is insufficient to overcome a forum selection clause to which one is contractually bound, especially where that forum selection clause was drafted and presented by Defendants!

Further, Defendants' argument about convenience is curious, as the only person Defendants cite as being a Virginia resident is the Clerk of the Court in the Eastern District of Virginia. That Mr. Thompson now lives in Florida is of no consequence to the convenience of Virginia, as it is no more difficult to board a plane for Ohio than one for Virginia. Indeed, Defendants' own brief speaks of the ease of airline travel. In contrast, the director defendants all are Ohio residents, and perhaps the most important witnesses of all – *the non-party accountants* – all appear to be located in Ohio and subject to this Court's jurisdiction. In contrast, they would not be subject to the compulsory jurisdiction of the Eastern District of Virginia.

Defendants next refer to unidentified "property" that they claim is located "within the exclusive jurisdiction of the Eastern District of Virginia." Presumably, Defendants are referring to the wreck of the *Central America*, although that is not and has not been in Virginia. Anyhow, the *Williamson* Plaintiffs' claim is not about the shipwreck. Nor is it about archaeological digs, secret treasure maps, the emerging law of the sea, or top-secret deep-sea robots. It simply is a claim for approximately 2% of the value of the treasure that has been recovered, awarded, and now sold in exchange for – according to Defendants – "tens of millions of dollars." There is no connection between the *Williamson* Plaintiffs' claim for money damages related to treasure already awarded and sold and *any* "property" located in the Eastern District of Virginia.

According to the Defendants, because the treasure was awarded to them in the Eastern District of Virginia all those years ago, somehow any dispute regarding that treasure, or even its value, until the end of time must revert to the Eastern District of Virginia because of the *in rem* concursus that used to exist over the treasure recovered from the *Central America* in the now-six-years-closed Admiralty Litigation regarding salvage rights surrounding the *Central America*. This contention simply is not the law, in admiralty or in any other legal field.

What really is at issue is Defendants' desire to extract themselves once again from a jurisdiction in which they may not be allowed to seal the docket. They tried and failed in Ohio state court. Now, after this Court's pronouncements on what must be shown properly to seal documents, they want to escape the jurisdiction of this Court. As has been shown, Defendants have a lengthy history of misrepresentation and outright disobedience of federal court orders, while the *Williamson* Plaintiffs have stood by for nearly two decades patiently waiting for the Defendants to do the right thing in consideration of their fulfilling their end of the bargain. Twenty years after the *Central America* first was imaged by the *Williamson* Plaintiffs' side scan

sonar and the treasure was recovered through their efforts, the Defendants still refuse to honor their commitments to the *Williamson* Plaintiffs. Defendants transfer motion – which fails to advise this Court of directly contrary Supreme Court precedent and of the critical forum selection clauses – is yet another attempt to flee the jurisdiction, which should be denied.

### POINT IV

### DEFENDANTS' CLAIM THAT THE ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE AND LACK OF JURISDICTION IS UNFOUNDED AND IMPROPERLY ANALYZES PLAINTIFFS' CLAIM

Defendants also argue that the *in rem* concursus in the Eastern District of Virginia is similar to a consent decree situation, requiring this Court to refer all claims to that district and the *Williamson* Plaintiffs to submit their claims to that district. Defendants' argument is fallacious, because the *Williamson* Plaintiffs are not asserting *in rem* claims against the treasure and are not claiming to be salvors. Rather, they are seeking to recover consideration on non-disclosure and non-compete contracts.

Defendants seek to mislead this Court into concluding that because the *Williamson* Plaintiffs' consideration under the NDAs was pegged to the value of the treasure recovered, their claims must be heard by the Eastern District of Virginia. This is erroneous. The determinative issue is whether the *Williamson* Plaintiffs claims are *in rem* claims against the *res* (i.e., the salvaged treasure) or *in personam* claims against the Defendants for their breach of the NDAs. The answer, of course, is the latter.

As stated in a case that Defendants cite that was related to the Admiralty Litigation, "[a]ctions *in rem*, or 'against the thing,' *are designed to adjudicate rights in specific property as against all of the world*, and judgments in such cases are binding to the same extent." *Darlak v. Columbus Am. Discovery Group, Inc.*, 59 F.3d 20, 22 (4th Cir. 1995) (citations omitted). The

19

*Williamson* Plaintiffs are not claiming against the *res*, nor could they. In fact, Defendants fail to refer to the critical language in *Darlak* which demonstrates the distinction between an *in rem* salvage claim and an *in personam* claim on a maritime contract:

> The crux of Darlak's claim for relief is that he is entitled to a portion of the salvaged *res*. . . . As Darlak has no claim against Columbus-America and Thompson *outside the context of their performance as salvors*, he may not maintain an *in personam* action against them.

*Darlak*, 59 F.3d at 23.

Here, exactly opposite to the facts of *Darlak*, the *Williamson* Plaintiffs do not have an *in rem* claim against the *res* but *do have* a contractual, *in personam* claim against the Defendants based on the non-disclosure and non-compete agreements. Most tellingly, the consideration in the NDAs was not even for salvage services. Rather, it was for not disclosing information and not competing with Defendants' salvage operation. Such claims do not create an *in rem* right against property owned by third parties.

## CONCLUSION

For all the foregoing reasons, Defendants' motion to transfer venue or alternatively to dismiss should be denied.

Respectfully submitted,

s/Jonathan M. Bryan (0065032)
Jonathan M. Bryan
Michael R. Szolosi, Sr. (0022317)
McNamara and McNamara, L.L.P.
88 East Broad Street, Suite 1250
Columbus, Ohio 43215
(614) 228-6131/(614) 228-6126 (Fax)
Email: mrs@mcnamaralaw.us
*Attorney for Williamson Plaintiffs*

OF COUNSEL:
James T. Shirley, Jr.
Michael J. Frevola
Holland & Knight LLP
195 Broadway, 24th Floor
New York, NY 10007-3189
(212) 513-3200/(212) 385-9010 (Fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing memorandum was served via the Court's electronic filing, on the 30th day of June, 2006 upon the following parties:

John W. Zeiger (0010707)
Steven W. Tigges (0019288)
Bradley T. Ferrell (0070965)
Zeiger, Tigges & Little LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-9900/(614) 365-7900
*Attorneys for Plaintiffs*
*The Dispatch Printing Company*
*and Donald C. Fanta*

Rex H. Elliott (0054054)
Charles H. Cooper (0037295)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000/(614) 6001 (Fax)
*Attorneys for Defendants*
*Thomas G. Thompson and*
*ECON Engineering Associates, Inc.*

Richard T. Robol (0064345)
Robol Law Office, LPA
555 City Park Avenue
Columbus, Ohio 43215
(614) 737-3739/(614) 737-3756
*Attorney for Defendants*
*Recovery Limited Partnership*
*and Columbus Exploration, LLC*

William M. Mattes (0040465)
Dinsmore & Shohl LLP
175 South Third Street, 10th Floor
Columbus, Ohio 43215-5134
(614) 628-6901/(614) 628-890 (Fax)
*Attorney for Defendants*
*Gilman D. Kirk, James F. Turner, Michael*
*J. Ford and W. Arthur Cullman, Jr.*

/s/ Jonathan M. Bryan
Jonathan M. Bryan

# 3853056_v1

21