ORIGINAL

James T. Shirley, Jr. (JTS 6114)
Michael J. Frevola (MJF 8359)
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
Attorneys for Plaintiffs Michael Williamson, The Estate of Don C. Craft, Kirk O'Donnell, John
Lettow, Timothy McGinnis, Fred Newton, William Watson, Chris Hancock, Dale Schoeneman,
and International Deep Sea Survey, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL WILLIAMSON, THE ESTATE OF
DON C. CRAFT, KIRK O'DONNELL,
JOHN LETTOW, TIMOTHY MCGINNIS,
FRED NEWTON, WILLIAM WATSON, CHRIS
HANCOCK, DALE SCHOENEMAN, and
INTERNATIONAL DEEP SEA SURVEY, INC.,

          Plaintiffs,

   v.

RECOVERY LIMITED PARTNERSHIP,
COLUMBUS EXPLORATION, LLC,
COLUMBUS-AMERICA DISCOVERY GROUP, INC.
COLUMBUS EXPLORATION LIMITED
PARTNERSHIP, OMNI ENGINEERING, INC.,
OMNI ENGINEERING OF OHIO, INC.,
ECONOMIC ZONE RESOURCE ASSOCIATES,
ECONOMIC ZONE RESOURCE ASSOCIATES, LTD.,
EZRA, INC., EZRA OF OHIO, INC., ECON
ENGINEERING ASSOCIATES, INC., DOE.E, INC.,
THOMAS G. THOMPSON, GILMAN D. KIRK,
JAMES F. TURNER, MICHAEL J. FORD, and
W. ARTHUR CULLMAN, JR.,

          Defendants.

06 Civ. 5724 (LTS)

**AFFIDAVIT OF MICHAEL J.
FREVOLA IN SUPPORT OF
PLAINTIFFS' OPPOSITION
TO DEFENDANTS'
MOTION BY ORDER TO
SHOW CAUSE TO VACATE
MARITIME ATTACHMENT**

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

1.    I am a member of the law firm Holland & Knight LLP, attorneys for Plaintiffs, and I am fully familiar with the facts in this case.

2.    This Affidavit is made in opposition to the Defendants' Motion By Order to Show Cause to Vacate Rule B Attachments in this district.  The statements made in this affidavit are based upon my personal knowledge except where I state them to be based upon information and belief and in those cases I believe them to be true.

3.    This affidavit largely is to sponsor documents filed in other proceedings or exhibits obtained from other sources.

4.    Defendants have stated in the proceedings in the United States District Court for the Southern District of Ohio (the "Ohio Proceedings") that the Treasure at issue in this litigation sold for "tens of millions of dollars".  A copy of Defendant Thompson's Motion to Dismiss (subsequently denied by Judge Sargus) filed on June 23, 2006 is annexed as Exhibit A.

5.    Defendants contend here that Plaintiffs' claims are not subject to admiralty jurisdiction.  Defendants, however, removed the Ohio Proceedings from Ohio state court to the United States District Court for the Southern District of Ohio on grounds that the Plaintiffs' claims were subject to maritime jurisdiction under 28 U.S.C. § 1333.  A copy of Defendants' Notice of Removal in the Ohio Proceedings is annexed as Exhibit B.

1

6.     One of the agreements at issue is the IDSS Agreement for the lease of the side-scan sonar used to find the wreck of the *S.S. Central America*. The IDSS Agreement is a contract by which the Defendant RLP leased a side scan sonar from IDSS for use while Defendants' vessel was sailing more than one hundred miles offshore in the Atlantic Ocean searching for the wreck of the *S.S. Central America*. A side scan sonar is a device that is trailed behind a vessel while at sea, deep in the water, and is used to map the ocean floor and to locate objects on the ocean floor. In fact, in this case the side scan sonar leased from IDSS marked the wreck that later was confirmed to be the *S.S. Central America*. Side scan sonar has no use on land. Gary Kinder's book regarding the *S.S. Central America* search, *Ship of Gold in the Deep Blue Sea* ("*Ship of Gold*"), discusses side-scan sonar at pp. 150-52, which pages I have annexed as Exhibit C. Defendants cite *Ship of Gold* extensively in the Ohio Proceedings and here as well, and I do not believe that Defendants will contest the general description of side-scan sonar.

7.     Another agreement at issue in this proceeding are the non-disclosure and non-compete agreements ("NDAs") under which each of the individual Plaintiffs claims. The Defendants always have claimed they have needed the utmost secrecy in the *S.S. Central America* project because there were competing salvors attempting to find and recover the Treasure and the Defendants had to obtain injunctions from the Eastern District of Virginia to prevent such interlopers. I have attached as Exhibit D an Affidavit of Director Defendant Michael Ford, filed in the Ohio Proceedings, which briefly recites some of the multitude of problems they have had in this regard.

8.     The Defendant Directors claim that they have no connection with the claims asserted herein or liability for those claims. These assertions must be viewed skeptically. As an example, *Ship of Gold* relates that Director Defendant Gilman Kirk was the owner of the vessel

*Artic Discoverer* at the time that the wages that have not been paid were earned.   I annex a copy of pages 413-14 of *Ship of Gold* as Exhibit E, in which Mr. Kirk's proposal to Mr. Thompson is described as follows:  ***"I buy the ship and you lease it from me at a nominal day rate; that way you've got a ship whenever you want it, and I have collateral . . . ."***  Despite the U.S. Wage Statute making clear that the master and owner of a vessel is directly liable for penalty wage claims, Mr. Kirk claims he is not liable to the Plaintiffs for any reason.

9.     Defendants also contend that some or all of the frozen assets should be unfrozen because several days have passed since their assets were frozen without notice from Plaintiffs. We routinely have given notice to Defendants when Plaintiffs have been advised that they have attached an asset of the Defendants.  For example, Plaintiffs' Ohio counsel – at my direction – filed notice previously of the attachment of gold coins and ingots in connection with the Los Angeles Rule B proceeding ***the day after such attachment***, and have given Defendant Gilman Kirk notice of the attachment of approximately $11,600 here in New York related to two separate wire transfers through garnishee Deutsche Bank ***two days after having been notified of that attachment***.  Copies of these notices, which have been served on counsel for Defendants in the Ohio Proceedings and have been filed in the Ohio Proceedings, are annexed as Exhibits F and G, respectively.

10.     Of course, garnishee banks and other financial institutions in New York do not always advise a plaintiff's counsel of the freezing of funds the day that it happens, or even several days thereafter.  As can be seen by the Deutsche Bank fund freezes, Deutsche Bank's official notice was made on October 11, 2006 for funds frozen on September 28 and October 4, 2006.

11.    As a further example of ordinary delays in notification by garnishees in New York, Plaintiffs' counsel are before Judge Berman in *Bertling Logistics (Peru) S.A.C. v. Martrade Shipping & Transport GmbH*, No. 06 Civ. 6543.  There, plaintiff attached assets sufficient to obtain full security and issued a "cease and desist" notice to garnishee banks. Nevertheless, garnishee banks continued to report funds restrained a week and more earlier subsequently were received by plaintiff's counsel because of processing delays with the garnishees.

12.    Indeed, Defendants have had notice of this proceeding for at least several weeks prior to any funds were frozen.  On September 2, 2006, Defendants filed a notice in the Ohio Proceedings advising Judge Sargus of the commencement of this proceeding and of the writs issued in conjunction with this proceeding.  That notice specifically identified the concern of having assets attached.  A copy of the Defendants' notice filed in the Ohio Proceedings is annexed as Exhibit H.

13.    Defendants also claim that equitable grounds exist for vacating the attachment. Of these grounds, however, none of the relevant ones apply.  None of the Defendants is located locally, the Plaintiffs are residents of a multitude of states and none are residents of Ohio,  and Plaintiffs have not obtained any security of any amount.

14.    As the Court may well be aware, many defendants have been threatened with, or sustained, various forms of financial difficulties as a result of Rule B attachments.  As but one example, in *Sea Transport Contractors v. Industries Chimiques du Senegal*, 05 Civ. 10271, Judge Batts ordered a writ of attachment issued against the defendant in the amount of $75 million, which employed over 2,500 employees in Senegal and which was driven into

4

receivership by the Rule B writs filed in New York. A copy of the Declaration of Ousmane Ndiaye in that proceeding is annexed as Exhibit I to demonstrate the drastic results that Rule B writs may have. Nevertheless, these considerations are irrelevant so long as the parameters set forth in the Second Circuit's recent decision in *Aqua Stoli Shipping* are met.

WHEREFORE, it is respectfully requested that this Court deny the Defendants' motion to vacate the Rule B attachments herein, and grant such other and further relief to the Plaintiffs as may be appropriate.

Michael J. Frevola (MJF 8359)

Sworn to before me this
23rd day of October, 2006

Notary Public

RUDY D. GREEN
Notary Public, State of New York
No. 02GR4952723
Qualified in Queens County
Certificate Filed in New York County
Commission Expires February 26, 2010

## ATTORNEY'S AFFIRMATION OF PERSONAL DELIVERY SERVICE VIA MESSENGER

STATE OF NEW YORK     )
                             ) SS.:
COUNTY OF NEW YORK   )

RUDY D. GREEN, an attorney admitted to practice in the Courts of the State of New York, affirms under penalty of perjury:

That on October 23, 2006, I caused a true copy of the attached Affidavit of Michael J. Frevola, Esq., to be served personally by same day messenger delivery upon the following:

Landman Corsi Ballaine & Ford P.C.
120 Broadway
27th Floor
New York, New York 10271

_____
RUDY D. GREEN

Dated: October 23, 2006

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Michael H. Williamson, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. C2-06-292 |
| | : | |
| v. | : | Judge Sargus |
| | : | |
| Recovery Limited Partnership, et al., | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| The Dispatch Printing Co., et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. C2-06-292 |
| | : | |
| v. | : | Judge Sargus |
| | : | |
| Recovery Limited Partnership, et al., | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| The Dispatch Printing Co., et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. C2-06-292 |
| | : | |
| v. | : | Judge Sargus |
| | : | |
| Gilman D. Kirk, et al., | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |

### DEFENDANT THOMAS G. THOMPSON'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant, Thomas G. Thompson, hereby moves this Court to dismiss the above-captioned cause of action on the ground that this Court does not possess subject matter jurisdiction over Mr. Thompson. Although defendants have never perfected service on Mr.

Exh A

Thompson, defendants are filing the motion at this time in view of the July 5, 2006 Preliminary

Injunction hearing in this case. Moreover, although it is clear that either the United States

District Court for the Northern District of Florida, Jacksonville or the Delaware Chancery Court

has jurisdiction over the claims asserted against Mr. Thompson, Mr. Thompson will consent to

the jurisdiction of the United States District Court for the Eastern District of Virginia as

represented in defendants' motion to transfer venue. For the reasons set forth more fully below,

defendant Thompson respectfully submits that this motion is well-taken and should be granted.

<div style="text-align:center">Respectfully submitted,</div>

/s/ Rex H. Elliott
Rex H. Elliott                    (0054054)
Charles H. Cooper, Jr.            (0037295)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)

Attorneys for Defendants
Thomas G. Thompson and
ECON Engineering Associates, Inc.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### Introduction

Plaintiffs, The Dispatch Printing Company and Donald C. Fanta, filed this action

for the purpose of obtaining financial and other records concerning the operations of Recovery

Limited Partnership ("RLP") and Columbus Exploration, LLC ("CX"). Defendant Thomas G.

Thompson is the President of ECON Engineering, Chairman of the Board of CX and formerly

the General Partner of RLP. ECON Engineering is presently the general partner of RLP.

Because the agreements at issue in this dispute contain forum selection clauses identifying the

<div style="text-align:center">- 2 -</div>

Northern District of Florida and the Delaware Chancery Court as the proper courts to adjudicate

disputes thereunder, this Court does not possess jurisdiction over Plaintiffs' claims, and therefore

should dismiss Plaintiffs' Complaint against Mr. Thompson.[1]

<div align="center">**Background**</div>

**A.     Mr. Thompson Discovers The *SS Central America***

In the latter half of the 1970s, Mr. Thompson set out to locate the shipwreck site

of the *SS Central America* which sank during a hurricane in 1857 off the east coast of the United

States.  It was believed that the shipwreck site contained extremely valuable artifacts, including a

significant amount of gold, and it was Mr. Thompson's intent to recover these valuable items.  In

1985, Mr. Thompson formed RLP as an Ohio Limited Partnership in order to finance the search

and recovery efforts.

Thompson's team was successful in locating the *SS Central America*.  After

lengthy litigation in the United States District Court for the Eastern District of Virginia, the

Federal Court held that 92.5% of the recovery from the shipwreck site belonged to Mr.

Thompson's project.  The project, under the leadership and direction of Mr. Thompson, has been

characterized as the greatest deep ocean search and recovery operation in the annals of historic

shipwreck recovery.  Although the project has resulted in precedent setting and meticulous

recovery efforts, new scientific and environmental discoveries and tens of millions of dollars for

---

[1]     Defendants Thompson and Econ Engineering have not been served with the Complaint filed by the plaintiffs in the case captioned *Michael Williamson, et al. v. Recovery Limited Partnership, et al.*

the sale of the recovered gold, much work is left to be done to fully recover the gold and other

artifacts present on this shipwreck site.

      As this Court is aware, the shipwreck lies 1½ miles beneath the ocean's surface

and is an extraordinarily widespread and complex shipwreck site. The efforts of these two

investors -- two of hundreds -- have not only disrupted the operations, they have paralyzed the

company which has been forced to concentrate on litigation as opposed to recovery operations.

**B.**    **The Relevant Contracts Contain Forum Selection Clauses**

      In November, 1998, Thompson formed Columbus Exploration, LLC (hereinafter

referred to as "CX"). CX was created to take over the recovery and sales efforts from RLP, and

RLP's partners were given ownership interests in CX. On November 19, 1998, the members of

CX executed an Operating Agreement for the newly formed entity. The CX Operating

Agreement states that it is a limited liability company under the laws of the State of Delaware.

[CX Operating Agreement, submitted as Exhibit A hereto].[2] In addition, the CX Operating

Agreement states: "This Agreement shall be construed and enforced in accordance with the laws

of the State of Delaware. Any suit involving any dispute of or matter arising under this

Agreement may only be brought in the Chancery Court of the State of Delaware, or in any state

or federal court located in Franklin County, Ohio." [Id. at p. 29].

      The following month, on December 18, 1998, RLP and CX entered into a

Management and Recovery Services Agreement (the "MRSA"). The MRSA stated that the

parties agreed that it is in the best interests of both parties "for CX to assume the responsibility

for management, financing and operation of further recovery and marketing activities" with

---

[2]     Defendant Thompson has separately filed a motion for leave to file his internal Agreements under Seal which is currently pending before the Court. Defendant, therefore, will supplement this filing with the exhibits in the event this Court grants the motion.

respect to the shipwreck of the *SS Central America*.     The MRSA also contains a forum selection

clause:

> *Governing Law, Jurisdiction, and Venue.* All questions concerning the
> validity or meaning of this agreement or relating to the rights and obligations of
> the parties with respect to performance under this agreement shall be construed
> and resolved under the laws of Ohio. The parties to this agreement hereby
> designate the U.S. District Court for the Northern District of Florida, Jacksonville
> Division as the court of proper jurisdiction and venue for any actions or
> proceedings relating to this agreement; hereby irrevocably consent to such
> designation, jurisdiction or venue with respect to any action or proceeding
> initiated in such court; and hereby waive all defenses to jurisdiction and venue.

(A copy of the MRSA is submitted as Exhibit B hereto).

The MRSA also contained an integration clause which recognized that the

document was the entire agreement between the parties and that it superseded all prior

agreements regarding the subject matter of the contract which related to the operation and

management of CX and RLP. Also on December 18, 1998, CX and Mr. Thompson entered into

a Chairman's Management and Services Agreement ("CMSA"), which also contained a forum

selection clause stating that any action arising under that agreement would be brought in the

Northern District of Florida, Jacksonville. (A copy of the CMSA is submitted as Exhibit C

hereto).

The reason for these agreements and clauses is obvious. Because Mr. Thompson

and the activities of CX are headquartered in northern Florida, the parties agreed that any

disputes should be litigated in Florida to minimize the disruption to the Company's operations.

Because the parties agreed to litigate any disputes involving the "management, financing and

operation" of the business in northern Florida, this Court is without jurisdiction over the

activities of Mr. Thompson.

C.     **Plaintiffs File Suit Under These Agreements In The Franklin County Court Of Common Pleas**

      The plaintiffs in this action -- members of CX and partners of RLP -- contend that Mr. Thompson "refuses to provide Plaintiffs with any information as to what happened to Plaintiffs' investments or the proceeds from the treasure, the costs to recover and sell the treasure, revenue earned from the sale, or whether there is any treasure left to be recovered and sold." [Compl. ¶ 1.] The Complaint further recognizes that CX was organized in 1998 "to take over from RLP the recovery, marketing and sale efforts regarding the *SS Central America*," and that, under the MRSA, RLP transferred its salvage rights, as well as the management of operations to finance, recover, and market the treasure, to CX. [Compl. ¶¶ 16-17]. Finally, the Complaint also alleges that "since at least 2000, Thompson has refused to provide the partners of RLP and the members of Columbus Exploration with any meaningful information regarding the finances and operations of those entities." [Compl. ¶ 21].

      The Complaint, therefore, plainly seeks information relating to the finances and operations of CX and RLP which are governed by the MRSA and CMSA. The agreements very clearly designate the Northern District of Florida, Jacksonville, as the venue for any action regarding the "management, financing and operation" of the project. Despite the forum selection clauses, the Complaint was filed in Ohio.

**Legal Argument**

A.     **The Northern District Of Florida, Jacksonville, Is The Proper Jurisdiction For This Action**

      The MSRA and the CMSA are at issue in this lawsuit, and, as a result, jurisdiction is proper only in the Northern District of Florida, Jacksonville. As noted above, the Complaint alleges that Mr. Thompson has refused to provide information "since at least 2000." [Compl. ¶

21]. The MSRA and the CMSA were both enacted in 1998. The actions of Mr. Thompson in

managing the operations, finances, information, marketing, sales and other aspects of the

exploration and recovery of the *SS Central America* have been the subject of the MRSA between

CX and RLP since its enactment, as well as the subject of the CMSA of Thomas G. Thompson.

These agreements expressly superseded the CX Operating Agreement. Most important, as noted

above, they explicitly provide for exclusive jurisdiction in the U.S. District Court for the Northern

District of Florida, Jacksonville.

Such forum selection clauses are typically enforced in Ohio, absent fraud or

overreaching. *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.*

(1993), 66 Ohio St.3d 173 (syllabus). Where, as here, there is a valid forum selection clause, the

existence of minimum contacts is not sufficient to subject a defendant to suit in the forum state.

*Id.* at 175. Indeed, a freely bargained-for forum selection clause is *prima facie* valid, and

overcoming this assumption requires a clear showing that enforcement of the clause would be

"unreasonable and unjust." *Discount Bridal Servs., Inc. v. Kovacs* (8th Dist. 1998), 127 Ohio

App.3d 373, 376; *see also Premier Assoc. Ltd. v. Loper* (2d Dist. 2002), 149 Ohio App.3d 630,

674 ("Forum-selection clauses are enforceable in Ohio so long as they are reasonable and just.").

To be "unreasonable or unjust," a forum selection clause must be so inconvenient that its

enforcement would effectively deprive litigants of their day in court. *Info. Leasing Corp. v. King*

(1st Dist. 2003), 155 Ohio App.3d 73, 78. "[T]he burden of demonstrating the enforceability of

such a clause falls upon the party challenging the clause." *Kovacs*, 127 Ohio App.3d at 376.

The United States Court of Appeals for the Sixth Circuit, citing the Restatement

(Second) of Conflict of Laws § 80, cmt. c, recognized three situations in which a court might

conclude that a forum selection clause is unenforceable: (1) where it was obtained by fraud,

duress, the abuse of economic power, or other unconscionable means, (2) where the designated

forum would not handle the suit effectively or fairly, or would be "closed to it," and (3) where the

designated forum would be so inconvenient that requiring the plaintiff to bring suit there would

be unjust. *Security Watch, Inc. v. Sentinel Systems* (6th Cir. 1999), 176 F.3d 369, 375. In the

present matter, none of these recognized scenarios apply. First, there has been no allegation that

any of the contracts, or any portions thereof, were procured by fraudulent or unconscionable

means. Second, the Northern District of Florida, Jacksonville, is perfectly capable of effectively

handling the litigation. Finally, the designated forum is substantially more convenient, and would

not cause any injustice.

       In the context of the facts underlying this case, the selection of the U.S. District

Court for the Northern District of Florida, Jacksonville, as the court of proper jurisdiction for

claims against Mr. Thompson is neither unjust nor unreasonable. For better than a decade, the

defendants have been focused on protecting their offshore resources and maritime equipment. A

major part of this effort has been to protect defendants' resources from the numerous interlopers

who have tried to interfere with the company operations. To this day, there remains a clear and

present danger that interlopers from the outside will impede defendants' at-sea operations and

properties and threaten the historic shipwreck site. For this reason, the U.S. District Court for the

Northern District of Florida, Jacksonville, was selected as the forum-of-choice for matters

impinging on the management decisions and actions of Mr. Thompson. As part of its

reorganization efforts, it was determined to be in the interest of all limited partners and members

that the most appropriate court for addressing the unusual considerations inherent in international

maritime operations would not be a court in Columbus, Ohio, but instead in the federal district

court with admiralty jurisdiction selected by the parties in Jacksonville, Florida.

Thus, because the forum selection clauses are not unjust and unreasonable, Ohio law requires that the forum selection clauses included in the governing agreements be enforced. This Court must dismiss this action against Mr. Thompson for lack of subject-matter jurisdiction. Mr. Thompson, however, will consent to the United States District Court for the Eastern District of Virginia should this Court grant defendants' motion to transfer venue.

**B.**    **If This Court Finds That Jurisdiction Is Not Proper In The Northern District Of Florida, Jurisdiction Must Be Proper In The Delaware Court Of Chancery**

Alternatively, should this Court find that the MRSA and CMSA are not controlling, a proper interpretation of the CX Operating Agreement compels the conclusion that jurisdiction is proper only in the Delaware Chancery Court.

If Plaintiffs' claims are found not to arise under the MRSA or CMSA, they must arise under the CX Operating Agreement, which provides in §11.02 for exclusive jurisdiction of disputes arising under the Operating Agreement "in the chancery court of Delaware or in any state or federal court located in Franklin County, Ohio." Even though the CX Operating Agreement indicates that jurisdiction in either Delaware <u>or</u> Franklin County is proper, upon closer analysis, it is apparent that the Chancery Court of Delaware is the only court of competent jurisdiction. This is because, while the contract restricts jurisdiction to either of the two locations, Delaware law, which applies to the CX Operating Agreement, requires that the action be brought in the Delaware Court of Chancery. There is no dispute that (a) CX is a Delaware LLC, (b) Delaware law applies to their dispute with CX, and (c) § 11.02 states that "[t]his agreement shall be construed and enforced in accordance with the laws of Delaware."

Section 18-305(f) of Delaware's LLC law gives the Delaware Chancery Court

exclusive jurisdiction over an action by members to obtain company information:

> Any action to enforce any right arising under this section shall be brought
> in the Court of Chancery. If the limited liability company refuses to permit
> a member to obtain or a manager to examine the information described in
> subsection (a)(3) of this section or does not reply to the demand that has
> been made within 5 business days after the demand has been made, the
> demanding member or manager may apply to the Court of Chancery for an
> order to compel such disclosure. *The Court of Chancery is hereby vested*
> *with exclusive jurisdiction to determine whether or not the person seeking*
> *such information is entitled to the information sought.*

(emphasis added).

An Ohio court is obliged, by Ohio's law of limited liability corporations, to defer to

foreign law when dealing with the internal affairs of a foreign LLC such as CX. "Subject to any

contrary provisions of the Ohio Constitution, the laws of a state under which a foreign limited

liability corporation is organized govern its organization and internal affairs and the liability of

its members." O.R.C. §1705.53. This statutory provision reflects the traditional "internal affairs

doctrine," under which Ohio courts are flatly prohibited from entertaining lawsuits which

concern the internal management of foreign corporations. "Courts of Ohio are without

jurisdiction to entertain an action against a foreign corporation where the result of granting the

relief asked would be to interfere with the management of such corporation or the exercise by the

board of directors of such corporation of a discretion vested in them by the laws of the state of

creation or domicile of the corporation." *Relief Ass'n of Union Works v. Equitable Life Assur.*

*Soc.* (1942), 140 Ohio St. 68, syllabus at 2. This doctrine has been consistently upheld over

time; *see, e.g., State ex rel. Corrigan v. Great Northern-Chan Restaurant* (8th Dist. 1982), 3

Ohio App.3d 355.

A company could not, of course, escape from the effect of Delaware LLC law simply by incorporating in the Operating Agreement a provision contrary to the exclusive jurisdiction mandate of 6 Delaware St. §18-305(f). If the plaintiffs wanted to sue CX to obtain the information they seek, they chose the wrong court.

## C.    The Williamson Complaint Also Does Not Properly Assert Subject Matter Jurisdiction Over Mr. Thompson

The lawsuit captioned *Michael H. Williamson, et al. v. Recovery Limited Partnership, et al.* also was not properly filed in the Franklin County Court of Common Pleas and is not proper in this Court. The *Williamson* claims constitute admiralty claims which must be adjudicated in the United States District Court for the Eastern District of Virginia. These arguments are detailed in defendants' motion to transfer venue and will not be repeated here. However, to the extent jurisdiction over Mr. Thompson is proper only in the United States District Court for the Northern District of Florida, Jacksonville, or the Delaware Chancery Court, it is significant that Mr. Thompson has consented to jurisdiction in the Virginia District Court. Mr. Thompson's consent is designed to avoid the additional cost that piecemeal litigation would surely create.

## Conclusion

This dispute is governed by the provisions of the MRSA and the CMSA, which superseded the CX Operating Agreement, and which contain fully enforceable forum selection clauses designating the United States District Court for the Northern District of Florida, Jacksonville, as the court of proper jurisdiction. Alternatively, even if the CX Operating Agreement should be deemed to govern this litigation, Delaware law compels the plaintiffs to bring this action in the Delaware Court of Chancery. Accordingly, under any of the relevant agreements, this Court should dismiss this action against defendant Thompson for want of

- 11 -

subject matter jurisdiction and transfer the matter upon Mr. Thompson's consent to the United

States District Court for the Eastern District of Virginia.

Respectfully submitted,


/s/ Rex H. Elliott
Rex H. Elliott            (0054054)
Charles H. Cooper, Jr.    (0037295)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio  43221
(614) 481-6000
(614) 481-6001 (Facsimile)

Attorneys for Defendants
Thomas G. Thompson and
ECON Engineering Associates, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Defendant, Thomas

G. Thompson's, Motion to Dismiss was filed electronically and served electronically on the

following counsel of record, this 23rd day of June, 2006:

John W. Zeiger, Esq.
Steven W. Tigges, Esq.
Bradley T. Ferrell, Esq.
Zeiger, Tigges & Little LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215

Attorneys for Plaintiffs
The Dispatch Printing Company
and Donald C. Fanta


Michael R. Szolosi, Sr., Esq.
McNamara & McNamara, LLP
88 East Broad Street
Suite 1250
Columbus, Ohio 43215

Attorney for Plaintiffs
Michael H. Williamson, et al.


Richard T. Robol, Esq.
Robol Law Office, LPA
555 City Park Avenue
Columbus, Ohio 43215

Attorney for Defendants
Recovery Limited Partnership and
Columbus Exploration, LLC

William M. Mattes, Esq.
Dinsmore & Shohl LLP
175 South Third Street
10th Floor
Columbus, Ohio  43215-5134

Attorney for Defendants
Gilman D. Kirk, James F. Turner, Michael J. Ford,
and W. Arthur Cullman, Jr.


Kenneth A. Zirm, Esq.
Walter & Haverfield
1300 Terminal Tower
Cleveland, Ohio  44113

Lynn Oberlander, Esq.
Forbes Inc.
60 Fifth Avenue
New York, New York  10011

Attorneys for Intervenor
Forbes Inc.


/s/ Rex H. Elliott

- 14 -

FILED
JAMES BONINI
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

2006 APR 24 P 12: 47

U.S.
SOUTH. . . .OURT
EAS. .IS OHIO
.SUS

Michael H. Williamson, et al.      :

    Plaintiffs,      :

    v.      :

Recovery Limited Partnership, et al.,      :

    Defendants.      :

**AND**      :

The Dispatch Printing Co., et al.,      :

    Plaintiffs,      :

     :

    v.      :

Recovery Limited Partnership, et al.,      :

    Defendants.      :

**AND**      :

    The Dispatch Printing Co., et al.,      :

    Plaintiffs,      :

     :

    v.      :

Gilman D. Kirk, et al.,      :

    Defendants.      :

Civil Action No._____ **C2 06**    **292**

(Upon Removal from Court of
Common Pleas, Franklin County,
Ohio – Case No.06CVH03-4469)

**JUDGE SARGUS**

**MAGISTRATE JUDGE KEMP**

(Upon Removal from Court of
Common Pleas, Franklin County,
Ohio – Case No. 05CVH04-4220)



FILE COPY 50886 0 - 1
HGH&K
SERVED BY MAIL/HAND _____
SUBMITTED/FILED _____
RECEIVED BY MAIL/HAND _____
POST MARKED 5-19-06
**ENTERED**
BY: TW

(Upon Removal from Court of
Common Pleas, Franklin County,
Ohio – Case No. 05CVH10-11795)

## DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Columbus Exploration LLC,

Recovery Limited Partnership, Econ Engineering Associates, Inc., Thomas G.

Thompson, Gilman D. Kirk, James F. Turner, Michael J. Ford, and Arthur Cullman, Jr.

Exh B

hereby give notice of their removal of this civil action from the Common Pleas Court of Franklin County, Ohio, to the United States District Court for the Southern District of Ohio, Eastern Division. As grounds for removal, Defendants state as follows:

1.      On March 31, 2006, plaintiffs, Michael H. Williamson, et al., filed claims in the Franklin County Court of Common Pleas against Defendants Columbus Exploration LLC, Recovery Limited Partnership, Econ Engineering Associates, Inc., Thomas G. Thompson, Gilman D. Kirk, James F. Turner, Michael J. Ford, and Arthur Cullman, Jr.

2.      A true, genuine and authentic copy of the complaint setting forth the claims, styled *Michael H. Williamson, et al. v. Recovery Limited Partnership, et al.*, No. 06CVH03-4469, is attached as Exhibit 1.

3.      On April 18, 2006, the Franklin County Court of Common Pleas entered an Order consolidating the claims with other claims then-pending. A copy of the Order is attached as Exhibit 2. Copies of the two complaints asserting the then-pending claims (styled, respectively, *Donald Fanta et al. v. Recovery Limited Partnership, et al.*, No. 05CVH04-4220, and *Donald Fanta et al. v. Gilman D. Kirk, et al.*, Case No. 05CVH10-11795), are attached respectively as Exhibits 3 and 4.

4.      Copies of the other filings and papers to be filed pursuant to 28 U.S.C. §1446(a) are attached as Exhibit 5, and all papers filed in the state court proceeding will be transmitted pursuant to the praecipe attached as Exhibit 6.

5.      This Notice of Removal is filed within thirty (30) days of receipt by the Defendants of a copy of an order or other paper from which it may be ascertained that the case is one which is or has become removable.

6.　　This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1333 because the civil action raises claims arising under the laws, Constitution and statutes of the United States, including claims for contractual salvage rights asserted by persons alleging that they participated in the salvage and recovery of the sunken shipwreck SS *Central America*.  Defendants are therefore entitled to remove the civil action to this Court pursuant to 28 U.S.C. §§ 1441, 1446 and all other applicable statutes and laws of the United States.

7.　　Notice of Removal has been sent to all adverse parties and the Clerk of Court, Court of Common Pleas, Franklin County.  A true, genuine and authentic copy of the Notice is attached hereto as Exhibit 7.

　　　　WHEREFORE, Defendants respectfully request that this action be removed to this Court, that this Court accept jurisdiction of this action, and that this action be placed on the docket of this Court for further proceedings as though this action originally had been instituted in this Court.

Respectfully submitted,

Richard T. Robol (0064345)
Robol Law Office, LPA
555 City Park Avenue
Columbus, Ohio 43215
(614) 737-3739
(614) 737-3756 (Facsimile)
Trial Attorney for Defendants
Recovery Limited Partnership,
Columbus Exploration, LLC, and
Defendant Board Members
(in Case No. 06CVH03-4469)

3

Rex H. Elliott (0054054)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)
Trial Attorney for Defendants
Thomas G. Thompson and
ECON Engineering Associates, Inc.

William M. Mattes (0040465)
Dinsmore & Shohl LLP
175 South Third Street
10th Floor
Columbus, Ohio 43215-5134
(614) 628-6901
(614) 628-6890
Trial Attorney for Defendant Board Members
(in Case No. 05CVH10-11795)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served
on the following counsel of record, by ordinary U.S. mail, postage prepaid, this 20th day
of April, 2006:

Michael R. Szolosi, Esq.
McNamara and McNamara
88 East Broad Street, Suite 1250
Columbus, Ohio 43125
(Attorneys for Plaintiffs Michael H. Williamson, et al.)
**AND**
John W. Zeiger, Esq., Steven W. Tigges, Esq., Bradley T. Ferrell, Esq.
Zeiger, Tigges & Little LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(Attorneys for Plaintiffs The Dispatch Printing Company and Donald C. Fanta

Richard T. Robol (0064345)

4

# SHIP of GOLD in the Deep Blue Sea

GARY KINDER

# SHIP OF GOLD
## ⸺ IN THE ⸺
# DEEP BLUE SEA

## GARY KINDER



The Atlantic Monthly Press
New York

Copyright © 1998 Gary Kinder

All rights reserved. No part of this book may be reproduced in any form or by any electronic or mechanical means, including information storage and retrieval systems, without permission in writing from the publisher, except by a reviewer, who may quote brief passages in a review.

Grateful acknowledgment is made to the Robert Manlove family for permission to quote from the journals of Oliver Perry Manlove.

*Published simultaneously in Canada*
*Printed in the United States of America*

FIRST EDITION

Library of Congress Cataloging-in-Publication Data
Kinder, Gary.
    Ship of Gold in the deep blue sea / Gary Kinder.
        p.   cm.
    ISBN 0-87113-464-0
    1. Central America (Ship)   2. Shipwrecks—North Atlantic Ocean.
3. Survival after airplane accidents, shipwrecks, etc.   I. Title.
    G530.C4K55   1998
    910'.91631—dc21                                                              97-49812

Design by Laura Hammond Hough and Julie Duquet

The Atlantic Monthly Press
841 Broadway
New York, NY 10003

98 99 00 01   10 9 8 7 6 5 4 3 2 1

it upside down. The *Alvin* weighed seventeen metric tons, but at the bottom it had no muscle.

Tommy already had eliminated systems that required the presence of humans on the bottom, anyhow. They were too expensive, too dangerous, too limited. "I figured that the secret was to build a stable unmanned system that could work on the bottom for days at a time with as many mechanical functions as possible." A robot, an underwater Remote Operated Vehicle, or ROV. The oil industry was starting to use them to replace divers, and the military had used them underwater for years. In 1982 only ten existed, and they still presented all of the cable problems with launch and recovery and trying to land on the bottom, and none that Tommy knew of could really work down there. But those were problems Tommy now thought he understood and could solve, because the secret to working in the deep ocean was not in the technology, where everyone else had been looking. Most of the technological pieces were there; they just hadn't been put together properly. The secret was in the concept behind the system and in the interrelation of all of the subsystems, and the keys that would reveal the secret lay in Tommy's innate, insatiable, sometimes irritating need to know why two plus two equals four. What had driven teachers and friends to apoplexy when he was a boy would be at the core of what enabled him as a man to begin dismantling a series of barriers to working in the deep ocean, to examine the pieces, to understand them, and to proceed toward what others had thought impossible. The secret was in his naive, at times arrogant insistence on the absolute simplicity of the quest.

BEFORE HE COULD do anything on the bottom, Tommy first had to find the ship; that was the other difficult technology: the ability to image things lost at sea under thousands of feet of water. Historical documents for any deep-water ship would only reconstruct an approximate location of the sinking; the error could be fifty miles in any direction. To be sure he could locate the site, Tommy would have to sweep an area of ocean so large that traditional sonar would require years of summer weather, dragging a tow fish back and forth.

In 1977, engineers working for the mining consortium that had surveyed the deep ocean had also developed a vacuum that could suck

*Ship of Gold in the Deep Blue Sea*

up potato-sized nodules of manganese from the fields they imaged. After dragging their vacuum along the ocean floor, the techs had returned for a second look with their imaging system, and they had seen a little white band in the middle of the manganese field: a stripe created by the vacuum sucking up the nodules. The water there was eighteen thousand feet deep, and that white stripe was only six feet wide. And the signal bouncing back from below was much stronger than it needed to be. They could open it up and search over three miles of ocean floor in one track.

Three years later, Columbia University's Lamont-Doherty Geological Institute had received funds from a benefactor to build the Sea-MARC I, a sonar prototype by the same engineers who had conceived the mining consortium's high-speed exploration system. Lamont-Doherty wanted the sonar to survey underwater mountain ranges and other large geological formations in deep water. Tommy understood the technology, and he thought that with some adjustments he could use it to find shipwrecks in the deep ocean, but the Lamont SeaMARC was already under contract with various organizations for the next two years during the summer weather window. Tommy also discovered that since Lamont-Doherty was a public institution, any information on deepwater shipwrecks he collected while using its SeaMARC automatically entered the public domain.

In five years of traveling and talking on the phone, Tommy had built a large and diverse network of scientists, engineers, and oceanographers. In 1983, one of those contacts introduced him to Mike Williamson, the geophysicist who had sailed with the mining consortium tech team to find manganese. Williamson still remembered the day six years earlier, when they had seen that thin white stripe cutting through a manganese field. He couldn't believe they could image something that small, that deep. And they could do it in swaths three miles wide. "You could really start herding up the real estate," thought Williamson. If he had one of those imaging systems, he could quickly search large areas of deep ocean, not for underwater mountains or manganese fields, but for downed aircraft, flight recorders, bombs, missile parts, and finer geology for the oil companies. The only thing holding him back was the million-dollar price tag.

151

GARY KINDER

By 1983, Williamson had started an ocean technology company and
sold it and started a new one, and he still wanted that million-dollar
sonar. "I was going to get a million bucks," said Williamson, "and we'd
get one built and go off and do all sorts of things." About this time,
Tommy called him and encouraged him to go ahead with the project,
even to the point of helping him find financing.

To Williamson, Tommy Thompson was a treasure hunter, and
Williamson ran with a different crowd, what a friend called the "black
community," the intelligence people. "Williamson actually has a lot of
clout," said the friend. "He's a pretty big genius in that community."
And Williamson did not work with treasure hunters.

"They're generally a flash in the pan," he said, "a lot of talk and no
dollars, and we considered Harvey the same way. We were interested
in the project but certainly not willing to jump in and share his enthu-
siasm without seeing a little long green."

But Tommy pursued Williamson the same way he had serenaded
other suppliers who consulted for the government and large corpora-
tions: He kept in touch, and he asked intelligent questions. And
he knew that Williamson wanted to get a new SeaMARC, the IA,
built just as much as he, Tommy, wanted to use it to find deep-water
shipwrecks.

By the fall of 1983, Tommy had talked with Williamson frequently
by phone and had met with him three times in Seattle to talk about deep-
water side-scan sonar. Williamson explained his ideas on how to turn
the current SeaMARC technology into a more efficient side scan, and
Tommy knew the ideas were sound. It was the new-generation tech-
nology he had been looking for, and suddenly he could see all of the
pieces. "I started to realize that the technology wasn't going to be in the
year 2000, that with a lot of effort and the right group we could make it
happen. I finally decided that the time was now."

TOMMY NOW ALLOCATED more and more of his free hours each month
to studying ships that had sunk in deep water, like the *Titanic,* the *Re-
public,* the *Andrea Doria,* the *San José.* For each ship he wanted to know:
Was there enough historical documentation to determine that the ship
carried a cargo of substantial value when it sank, and that it sank in a

## IN THE COMMON PLEAS COURT OF FRANKLIN COUNTY, OHIO

The Dispatch Printing Co., et al.,                    :
                                                      :
           Plaintiffs,                 :
                                                      :    Case No. 05CVH04-4220
     v.                                          :
                                                      :    Judge Travis
Recovery Limited Partnership, et al.,                 :
                                                      :
          Defendants.                :

### AFFIDAVIT OF MICHAEL J. FORD, JR.

STATE OF OHIO,
COUNTY OF FRANKLIN, SS:

    Michael J. Ford, Jr. after first being duly sworn, deposes and states as follows:

    I am an adult male. I have all my natural faculties. I am a member of the Board

of Directors of CXLLC and I am also a major investor. I make this Affidavit based on

the facts personally known to me and those as to which I have become aware as a

member of the Board of Directors of CXLLC.

    I am advised that the Plaintiffs have filed a Motion to Amend the Complaint in

various ways, including adding the members of the Board of Directors as Defendants.

To the best of my knowledge and belief, such an amendment would be futile.

    A redacted copy of the CXLLC-RLP Management and Recovery Services

Agreement is attached as an Exhibit. The limited partners and members voted in favor of

the Management and Recovery Services Agreement defeating, by more than a 90% vote,

Plaintiff Don Fanta, in his prior unsuccessful bid to take over the company, and

superseding prior provisions in the RLP limited partnership agreement and the CXLLC

Operating agreement.





EXHIBIT
A

The company was formed as a Delaware limited liability company, and included the Delaware limited liability company law as part of the operating agreement. Because the company's information is the key basis for its business and operations, the members and limited partners wanted to afford the strongest possible protection for the management's decisions with respect to the company's information, with provisions for exclusive jurisdiction in the State of Delaware Chancery Court for actions by members to obtain company information (as provided in Section 18-305(c) and (f) of Delaware's LLC statute on information).

The Chairman and Board of Directors exercised their powers under the Delaware law and the CX-RLP Management Services Agreement to defer the distribution of financial statements to members. The company has consistently treated its financial statements, marketing data, and other information as trade secrets of the company, and has kept such information confidential. Such information is not generally available to the public, may not be readily compiled and reflects information that has been designated as confidential by the Federal Admiralty Court. The Chairman and Board of Directors has determined that release of the information would cause severe damage to the business of the company and the members. On several instances, the Chairman and the Board have analyzed the facts pertaining to the company's mission, threats from outside competitors, the statements and representations that the company has made to the Federal Admiralty Court, and other factors to determine the timing for release of the financial statements and related financial information. The Board believes in good faith that current release of such information is not in the best interest of the company, the limited partners, the members/investors and the business of the limited liability company and the limited

2

partnership. In addition, the Board believes that release of such information could violate the company's duties as required by law or by agreement with third parties to keep such information confidential, including the confidentiality decree of the Federal Admiralty Court. The Board has expressly exercised the powers to defer the release of such information as stated in 6 Del. St. § 18-305(c) and (f) and in light of the comparable provisions of the Ohio Revised Code.

From the outset of this project nearly 20 years ago, the Defendants have been faced with one threat after another from those who sought to use the company's confidential information against the company. The decades-long litigation over these interlopers, and the problems created for the company by leaks of its trade secrets and internal information, are catalogued in the New York Times best seller, *Ship of Gold in the Deep Blue Sea*. One rogue salvage operation after another got wind of the Project, and managed to follow the company to the site of the SS *Central America* and claim that they—not the Defendants—had found it.

FURTHER AFFIANT SAYETH NAUGHT.

Michael J. Ford, Jr.

The foregoing was subscribed and sworn to before me this 19th day of June, 2005.

Notary Public

RICHARD THOMAS ROBOL
Attorney At Law
Notary Public, State of Ohio
My Commission Has No Expiration Date
Section 147.03 R.C.

3

# MANAGEMENT AND RECOVERY SERVICES AGREEMENT

This Management and Recovery Services Agreement ("Agreement") is entered as of December 18, 1998, by and between Recovery Limited Partnership, an Ohio limited partnership ("RLP") and Columbus Exploration, LLC, a Delaware limited liability company ("CX").

### Background and Recitals

Whereas, RLP was organized in 1985 for, and has engaged in the business of, locating, verifying and recovering the contents of the shipwreck of the ███████████████ S.S. *Central America*, which sank in 1857 (the "Shipwreck");

Whereas, RLP has conducted successful recovery operations at the Shipwreck site, having recovered substantial amounts of gold coins, gold bars, and other artifacts;

Whereas, CX was organized in 1990 for, and has engaged in the business of, developing certain technology, equipment and methods to locate, verify and recover the contents of deep ocean historic shipwrecks, and providing deep ocean technology products and services ███

Whereas, RLP has various rights, including the rights of first salvor with respect to the Shipwreck, which rights have been recognized by the United States District Court for the Eastern District of Virginia;



Whereas, the parties believe that CX has, or is in a better position to obtain, the necessary resources to accomplish this task, as well as to complete the marketing and other activities related to RLP's realization of its rights with respect to recoveries from the Shipwreck;

Whereas, the parties have agreed that it is the best interests of both for CX to assume the responsibility for management, financing ███████████████ and marketing activities with respect to the Shipwreck.

1

Statement of Agreement

Now therefore, in consideration of the foregoing recitals, which the parties agree to be true to the best of their knowledge and belief, and of their mutual promises contained herein, the parties agree as follows:

1.    *Definitions.*    As used in this Agreement, the following terms will have the meanings ascribed to them in this Section:

"Admiralty Litigation" means the proceedings before the United States District Court for the Eastern District of Virginia known as *Columbus America Discovery Group, Inc. v. the Unidentified, Wrecked and Abandoned Sailing Vessel, etc., (believed to be the S.S. CENTRAL AMERICA),* Civil Action No. 87-363-N, including any related judicial proceedings, and appeals from judgments and orders entered in such proceedings.



2



2.      *Engagement and Appointment of Managing Agent.*  On the terms and subject to the conditions set forth in this Agreement, RLP, by and through its General Partner, hereby engages CX, and CX hereby accepts such engagement, to manage and supervise the business of RLP as provided in this Agreement. RLP retains and irrevocably appoints CX as its agent with full power and authority to manage the business, assets and liabilities of RLP, and hereby ratifies all acts of CX taken pursuant to such appointment. The term of this appointment shall commence on the date of this Agreement and terminate upon the completion of the dissolution and winding up of RLP.

3.      *Management Authority and Duties of CX.*  Without limiting the generality of the foregoing appointment, CX shall have the authority to:

(a)     evaluate and make recommendations regarding arrangements for the marketing and sale of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Treasure, including any agreements relating thereto, collect any proceeds of such marketing and sales activities, pay any costs and expenses incurred in the course of such activities, and apply the Net Proceeds as provided in this Agreement;

(b)     ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

(c)     cause the Obligations of RLP to be paid and discharged as they become due;

(d)     commence, prosecute and settle any litigation (including the Admiralty Litigation) in the name and on behalf of RLP;

(e)     establish and maintain management and business systems, books, contracts, computer systems, forms and administration procedures;

(f)     select and retain consultants and technical advisors (including, without limitation, accountants, attorneys, banks, contractors custodians, depositories, agents for collection, and insurers) or persons acting in any other capacity, in connection with the business of RLP, and determine the terms of engagement of such persons, including, without limitation, compensation, expense reimbursement and waiver of conflicts of interest, actual and potential;

(g)     advise the General Partner of RLP with regard to management and direction of the business of RLP and as to any further actions as may be necessary or desirable to further the interests of RLP;

(h)     provide for the maintenance of the books and records of RLP, and the preparation of tax returns and schedules on behalf of RLP and its partners;

(i)     compile and provide information for reports to the partners of RLP, and appropriate governmental authorities, with respect to the business, operations, and financial condition of RLP; and

(j)     perform such other services for RLP as in the best judgment of CX and the General Partner of RLP are necessary or advisable in the best interests of RLP.

3





CX agrees that such compensation shall be the only compensation to which it is entitled for performing the recovery services, and waives any right to assert a claim against RLP for a salvage award or claim of ownership

12.    *Force Majeure; Consequential Damages*. Neither party will be responsible for failure to meet its obligations under this Agreement if the failure arises from causes beyond the control and without the fault or negligence of the non-performing party. Examples of causes beyond a party's control include (i) acts of God or of the public enemy, (ii) acts of the Government in either its sovereign or contractual capacity, (iii) fires, (iv) floods, (v) epidemics, (vi) quarantine restrictions, (vii) strikes, (viii) freight embargoes, and (ix) unusually severe weather. In no event will either party be liable to the other for any consequential damages (including lost profits or anticipated savings), even if the party has been advised of the possibility of such damages or loss.





7



14.    *No Conflict Statement.*  The parties to this Agreement acknowledge that, in addition to his position as CEO for CX, the current Chairman of CX has also served as the general partner for RLP and was the president of the general partner for CX Limited Partnership. Similarly, members of the Board of Directors of CX may hold positions not only as members of the Board, but also as partners in RLP or the successor to CX, or in other capacities.  To avoid any claim of conflict, the parties agree that the Chairman, members of the Board of Directors of CX, and counsel selected by the Chairman must be able to act freely and unhindered by any such claim of conflict that may be made.  This may involve an interplay of their own personal interests as well as the potential interest of both CX and RLP as they participate in the Joint Management and Recovery Services Agreement.  The Chairman and/or members of the Board may also be placed in a position where operations may be enhanced by the use of their life rights or other type of personal endorsements, resulting in additional compensation to them.  The parties hereby agree that Chairman's and Directors' holding of these positions and actions resulting from these positions do not create a conflict of interest.  The parties further agree that under no circumstances shall the Chairman or Directors be liable for any claim of conflict by any limited partner of CX or RLP, or any member of CX as it relates to Chairman's or Directors' holding of multiple positions in CX, RLP, and CX.  Inasmuch as the Chairman's retention of legal counsel creates similar potential conflicts, the parties further agree that this "no conflict" paragraph applies to counsel as well as the Chairman and Directors.  Chairman shall have the right to employ counsel of his choosing.  CX agrees to pay reasonable attorneys fees to said counsel related to CX matters.

15.    *Counsel.*  The parties acknowledge that for efficiency it is important that the Chairman have the benefit of timely advice of counsel.  Inasmuch as the Chairman's retention of legal counsel creates potential conflicts similar to those identified in Paragraph 15 of this Agreement, the parties further agree that the "no conflict" statement in Paragraph 15 applies to

counsel as well as the Chairman. The parties hereto agree that counsel may be employed by the Chairman to represent CX, RLP, CX and/or the Chairman in any capacity designated by the Chairman, and the parties waive any potential or actual conflict of interest or other such claim that that may arise from such representation. The parties further agree that the Chairman may (i) direct counsel as to the goals, methods and interests of the entities, and (ii) waive any potential or actual conflict on behalf of the partnerships and all partners of RLP, CX, and the members of CX, and counsel shall be entitled to accept and rely upon such waivers and such instruction and direction of the Chairman as to any legal or business matter, without requiring or seeking further authorization or taking any further action, with respect to any of the foregoing. It is the intent of the parties that such counsel be third party beneficiaries of this Paragraph.

16.    *Term and Termination.*    The Term of this Agreement shall continue until the recovery and marketing of the ▮▮▮▮▮▮▮ Treasure are completed and the net proceeds, if any therefrom, are distributed according to this Agreement.





21.    *Severability.*  The intention of the Parties is to comply fully with all laws and public policies, and this agreement shall be construed consistently with all laws and public policies to the extent possible.  If any court of competent jurisdiction determines it is impossible to construe any provision of this agreement consistently with any law or public policy and consequently holds that provision to be invalid, such holding shall in no way affect the validity of the other provisions of this agreement, which shall remain in full force and effect, provided that such result would not frustrate the intent of the Parties in entering into this agreement.

22.    *Governing Law, Jurisdiction and Venue.*  All questions concerning the validity or meaning of this agreement or relating to the rights and obligations of the parties with respect to performance under this agreement shall be construed and resolved under the laws of Ohio.  The parties to this agreement hereby designate the U.S. District Court for the Northern District of Florida, Jacksonville Division as the court of proper jurisdiction and venue for any actions or proceedings relating to this agreement; hereby irrevocably consent to such designation, jurisdiction or venue with respect to any action or proceeding initiated in such court; and hereby waive all defenses to jurisdiction and venue.



25.    *Complete Agreement.*  This document contains the entire agreement between the Parties and supersedes all prior or contemporaneous discussions, negotiations, representations or

10



agreements relating to the subject matter of this agreement. No changes to this agreement shall be made or be binding on either Party unless made in writing and signed by each Party.

11

# SHIP of GOLD

## in the

### Deep Blue Sea





GARY KINDER

# SHIP OF GOLD
## IN THE
# DEEP BLUE SEA

## GARY KINDER



The Atlantic Monthly Press
New York

Copyright © 1998 Gary Kinder

All rights reserved. No part of this book may be reproduced in any form or by any
electronic or mechanical means, including information storage and retrieval systems,
without permission in writing from the publisher, except by a reviewer, who may quote
brief passages in a review.

Grateful acknowledgment is made to the Robert Manlove family for permission to quote
from the journals of Oliver Perry Manlove.

*Published simultaneously in Canada*
*Printed in the United States of America*

FIRST EDITION

Library of Congress Cataloging-in-Publication Data
Kinder, Gary.
     Ship of Gold in the deep blue sea / Gary Kinder.
         p.   cm.
     ISBN 0-87113-464-0
      1.  Central America (Ship)    2.  Shipwrecks—North Atlantic Ocean.
     3.  Survival after airplane accidents, shipwrecks, etc.   I.  Title.
     G530.C4K55    1998
     910'.91631—dc21                                                    97-49812

Design by Laura Hammond Hough and Julie Duquet

The Atlantic Monthly Press
841 Broadway
New York, NY 10003

98 99 00 01   10 9 8 7 6 5 4 3 2 1

*Ship of Gold in the Deep Blue Sea*

"It was forty miles closer to shore, so it became obvious to me that instead of testing our winch and doing all that stuff off of Jacksonville in deep water, we'd go all the way out there and test our stuff at that site. If nothing else, it was going to help us understand what we're looking at on Galaxy."

BEFORE TOMMY SET to sea in 1988 he needed a ship. He could lease again, but he wanted to build stability into the project, to have a vessel he could use to protect the site if he needed to. With his own ship, mobilization would be much faster, the crew could be at sea in a few days, and they could stay at sea as long as they needed to; and they didn't have to mount a new winch and a new crane and a new deployment arm and get used to a new deck every season.

"We were in all kinds of trouble financially," admitted Tommy. But that was a short-term problem, and as always he had to juggle the short term with the long term, and long term he could see they needed a ship. Already he had counseled with some of his partners about the wisdom of buying their own ship, and he had assigned Craft to survey ships for sale, to find out how much the owners wanted, how much it would cost to convert them, and how soon he could get them to Jacksonville and have them ready for a June 1 departure.

In December, a partner named Gil Kirk called Tommy with a proposition: I buy the ship and you lease it from me at a nominal day rate; that way you've got a ship whenever you want it, and I have collateral; that leaves you whatever cash you can raise to spend on other things. Tommy liked the idea. Wayne Ashby liked the idea. Tommy called Craft and told him to speed up the search for a ship.

By February, Craft had located the *Arctic Ranger,* a thirty-year-old side trawler built for the Fisheries Research Board of Canada as a vessel for scientists to study fish stocks on the Grand Banks. It had no working deck aft and only a small foredeck, but it had a wet laboratory and ample cargo storage and comfortable bunks for thirty-two crew and scientists. About the only thing Craft didn't like was the trawler's size. He wanted at least 200 feet in length, a big open deck, and a 50-foot beam to give them more stability. The *Arctic Ranger* ran 180 feet stem to stern, 33 feet abeam.

413

Craft flew to Newfoundland, drove north to Goose Bay, beat the owner down to $167,000, and brought in an icebreaker to cut through ice two feet thick so Burlingham could get the *Arctic Ranger* to a shipyard in St. John's. There, they hoisted her out, sandblasted and painted her, and gave her a quick overhaul, just enough to get the vessel through the Canadian steamship inspection, temporarily flagged in the United States, and down to Jacksonville, where they would begin the real conversion.

At the end of the first week in April, Burlingham sailed into Jacksonville, up the St. Johns River, and had the ship on shore power dockside, Pier 7, in Green Cove Springs the evening of April 9. He and Craft and a crew of carpenters, electricians, and day workers now had two months to transform the *Arctic Ranger,* old, frozen, Canadian fisheries research vessel, into the *Arctic Discoverer,* technologically unequaled deep-ocean recovery marvel.

Burlingham took charge of the ship's crew, while Craft prepared for the conversion. For weeks Burlingham's crew blasted and sanded the temporary paint job, and for another month they primed it all with a ruddy compound. Craft's crew ripped twelve tons of junk out of the bowels, including old hydraulic units and generators, old wiring and fishing equipment, and much of her three-inch-thick concrete, which had to be jack-hammered out in sections. Craft hauled the bulk of it to the junkyard. He converted the electrical system, air conditioned the ship, replaced the generators, mounted the SAT COM unit, installed the deployment arm, installed the winch, installed the crane. For a control room, he stripped the fish lab down to the bulkhead, installed a new deck, new paneling, electrical connections, painted the whole inside black, and created a small electronics shop adjacent.

The conversion continued every day through April and into May and then into June, as the *Arctic Ranger* slowly became the *Arctic Discoverer*. By June they had seven day workers, then thirteen day workers, still cleaning and blasting and painting, ripping out and throwing away, retrofitting and realigning and upgrading, preparing for the techs to arrive and begin mobilizing. They worked on Saturdays, they worked on Sundays. They painted the entire ship, everything from the bridge to the foredeck and forecastle, the aft deck and the hull, all the way down to the waterline, in bright white. They added touches of blue along the

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MICHAEL WILLIAMSON, et al.

        Plaintiffs,

        v.

RECOVERY LIMITED
PARTNERSHIP, et al.

        Defendants

CASE NO. C2-06-292

JUDGE EDMUND A. SARGUS, JR.

MAGISTRATE JUDGE TERRENCE P. KEMP

### NOTICE BY THE WILLIAMSON PLAINTIFFS OF EXECUTION
### OF WRIT OF MARITIME ATTACHMENT AND GARNISHMENT

    The Williamson Plaintiffs, by and through their undersigned counsel, hereby give notice

that an Order Directing the Issuance of a Writ of Maritime Attachment and Garnishment Under

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure was carried out on Thursday, September 14, 2006 in the Central District

of California.  See Exhibits A, B and C attached (Order, Writ of Maritime Attachment and

Garnishment and Seizure Order in Case No. CV-06-3689 signed on September 11, 2006 by

Magistrate Judge Jennifer T. Lum).

    The receipt for the items that were attached is also attached as Exhibit D.

    Service of the Writs of Attachment were also made or attempted at the offices of:

        (1)    Monaco Financial, LLC
               4900 Birch Street
               Newport Beach, CA 92660

508860-00001

```
FILE COPY
H G H & K
SERVED BY MAIL/HAND _____
SUBMITTED/FILED _____
RECEIVED BY MAIL/HAND _____
POST MARKED _____
      9-15-06
      ENTERED
BY: LUV
```

-1-

Exh F

    (2)     California Gold Marketing Group, LLC
                100 Bayview Circle, #5100
                Newport Beach, CA 92660

    (3)     Monaco Financial Corporation Of California
                2160 Century Park East, #1009N
                Los Angeles, CA 90067

The Williamson Plaintiffs give further notice that as further attachments are made pursuant to the above-noted Writ or other writs obtained in other jurisdictions, further Notices will be promptly provided to this District Court all in accord with federal law. The Williamson Plaintiffs have asserted in this action an admiralty cause of action and are thus entitled to commence in jurisdictions other than this Southern District of Ohio, where the primary lawsuit is pending, supplemental maritime attachment proceedings in order to obtain security for their claim in this Court. *Western Bulk Carriers (Australia), Pty. Ltd. v. P.S. Int'l, Ltd.*, 762 F. Supp. 1302, 1306 (S.D. Ohio 1991) (citing 7A MOORE'S GENERAL PRACTICE para. B.03 (2d ed. 1988); *accord Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002); *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 631-33 (9th Cir. 1982); *The West of England Ship Owners Mutual Insurance Ass'n (Luxembourg) v. McAllister Bros., Inc.*, 1993 A.M.C. 2559, 2564-66 (E.D. Pa. 1993); *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F.Supp. 189, 190-91 (S.D.N.Y. 1987).

Respectfully submitted,

*/s/ Michael R. Szolosi, Sr.*
Michael R. Szolosi, Sr. (0022317)
Of Counsel
McNamara and McNamara, L.L.P.
88 East Broad Street, Suite 1250
Columbus, Ohio 43215
(614) 228-6131/(614) 228-6126 (Fax)
Email: mrs@mcnamaralaw.us
*Counsel for Williamson Plaintiffs*

OF COUNSEL:

James T. Shirley, Jr.
Michael Frevola
Holland & Knight LLP
195 Broadway, 24th Floor
New York, NY 10007-3189
(212) 513-3561/(212) 385-9010 (Fax)

-3-

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Notice was served via the Court's electronic filing on the 15th day of September, 2006, upon the following parties:

John W. Zeiger (0010707)
Steven W. Tigges (0019288)
Bradley T. Ferrell (0070965)
Zeiger, Tigges & Little LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-9900/(614) 365-7900
*Attorneys for Plaintiffs*
*The Dispatch Printing Company*
*and Donald C. Fanta*

Richard T. Robol (0064345)
Robol Law Office, LPA
555 City Park Avenue
Columbus, Ohio 43215
(614) 737-3739/(614) 737-3756
*Attorney for Defendants*
*Recovery Limited Partnership*
*and Columbus Exploration, LLC*

Rex H. Elliott (0054054)
Charles H. Cooper (0037295)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000/(614) 6001 (Fax)
*Attorneys for Defendants*
*Thomas G. Thompson and*
*ECON Engineering Associates, Inc.*

William M. Mattes (0040465)
Dinsmore & Shohl LLP
175 South Third Street, 10th Floor
Columbus, Ohio 43215-5134
(614) 628-6901/(614) 628-890 (Fax)

*Attorney for Defendants*
*Gilman D. Kirk, James F. Turner, Michael*
*J. Ford and W. Arthur Cullman, Jr.*

Kenneth A. Zirm (0010987)
Walter & Haverfield LLP
1300 Terminal Tower, 50 Public Square
Cleveland, Ohio 44113-2253
(216) 781-1212/(216) 575-0911 (Fax)

Lynn Oberlander, Esq.
Editorial Counsel
Forbes Inc.
60 Fifth Avenue
New York, New York 10011
(212) 620-2329/(212) 620-1873 (Fax)
*Attorneys for Forbes, Inc.*

*/s/ Michael R. Szolosi, Sr.*
Michael R. Szolosi, Sr.

1   Mark S. Shipow (SBN 91134)
    Kregg A. Koch (SBN 230145)
2   HOLLAND & KNIGHT LLP
    633 West Fifth Street, 21st Floor
3   Los Angeles, California 90071-2040
    Telephone: (213) 896-2400
4   Facsimile: (213) 896-2450

5   Attorneys for Plaintiffs Michael
    Williamson, The Estate of Don C.
6   Craft, Kirk O'Donnell, John Lettow,
    Timothy McGinnis, Fred Newton,
7   William Watson, Chris Hancock,
    Dale Schoeneman, and International
8   Deep Sea Survey, Inc.



9

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13  MICHAEL WILLIAMSON, THE         )   CASE NO. 06CV-06-5689
    ESTATE OF DON C. CRAFT,         )
14  KIRK O'DONNELL, JOHN            )   [PROPOSED]
    LETTOW, TIMOTHY MCGINNIS,       )
15  FRED NEWTON, WILLIAM            )   ORDER DIRECTING THE
    WATSON, CHRIS HANCOCK,          )   ISSUANCE OF A WRIT OF
16  DALE SCHOENEMAN, and            )   MARITIME ATTACHMENT AND
    INTERNATIONAL DEEP SEA          )   GARNISHMENT UNDER RULE B
17  SURVEY, INC.,                   )   OF THE SUPPLEMENTAL RULES
                                    )   FOR CERTAIN ADMIRALTY AND
18                                  )   MARITIME CLAIMS OF THE
                                    )   FEDERAL RULES OF CIVIL
19          Plaintiffs,             )   PROCEDURE
                                    )
20      v.                          )
                                    )   Date:
21  RECOVERY LIMITED                )   Courtroom:
    PARTNERSHIP, COLUMBUS           )   Time:
22  EXPLORATION, LLC,               )
    COLUMBUS-AMERICA                )
23  DISCOVERY GROUP, INC.,          )
    COLUMBUS EXPLORATION            )
24  LIMITED PARTNERSHIP, OMNI       )
    ENGINEERING, INC., OMNI         )
25  ENGINEERING OF OHIO, INC.,      )
    ECONOMIC ZONE RESOURCE          )
26  ASSOCIATES, ECONOMIC ZONE       )
27  RESOURCE ASSOCIATES, LTD.,      )

28

- 1 -

EXHIBIT
A

1  EZRA, INC., EZRA OF OHIO,             )
   INC., ECON ENGINEERING                )
2  ASSOCIATES, INC., DOE.E, INC.,        )
   THOMAS G. THOMPSON,                   )
3  GILMAN D. KIRK, JAMES F.              )
   TURNER, MICHAEL J. FORD, and          )
4  W. ARTHUR CULLMAN, JR.,               )
5                                        )
          Defendants.                    )
6  _____      )

7

8        **UPON** reading the Verified Complaint for issuance of process of maritime

9  attachment and garnishment pursuant to Rule B of the Supplemental Rules for

10 Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure

11 ("Supplemental Rule B"), and the affidavits and papers submitted in support

12 thereof, and the Court finding that the conditions for an action under Supplemental

13 Rule B appear to exist;

14       **NOW**, upon application of Holland & Knight LLP, attorneys for Plaintiffs,

15 it is hereby

16       **ORDERED** that the Clerk shall issue process of attachment and

17 garnishment pursuant to Supplemental Rule B as prayed for in the Verified

18 Complaint in the amount of $11,909,880.00, against all goods, chattel, credits,

19 letters of credit, bills of lading, debts, effects and monies, funds, credits, wire

20 transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights,

21 charter hire, sub-charter hire, or any other tangible or intangible property belonging

22 to, claimed by, being held for or on behalf of, or being transferred for the benefit of

23 the Defendants Recovery Limited Partnership, Columbus Exploration, LLC,

24 Columbus-America Discovery Group, Inc., Columbus Exploration Limited

25 Partnership, Omni Engineering, Inc., Omni Engineering of Ohio, Inc., Economic

26 Zone Resource Associates, Economic Zone Resource Associates, Ltd., EZRA,

27 Inc., EZRA of Ohio, Inc., Econ Engineering Associates, Inc., DOE.E, Inc., Thomas

28 G. Thompson, Gilman D. Kirk, James F. Turner, Michael J. Ford, and/or W.

- 2 -

Arthur Cullman, Jr., by any garnishee within this district, including, *inter alia*, the following gold bars or ingots recovered from the wreck of the *S.S. Central America* held in the possession of garnishees (including but not limited to Monaco Financial, LLC and the California Gold Marketing Group, LLC):

| Original Owner of Gold Ingots | Serial # | Weight (Oz.) | Fineness | 1857 Value |
|---|---|---|---|---|
| Kellogg & Humbert | 579 | 28.2 | 886 | $516.48 |
| Kellogg & Humbert | 694 | 38.67 | 913 | $729.83 |
| Kellogg & Humbert | 944 | 45.23 | 871 | $814.37 |
| Kellogg & Humbert | 614 | 46.41 | 871 | $835.62 |
| Kellogg & Humbert | 922 | 48.05 | 933 | $926.78 |
| Kellogg & Humbert | 827 | 49.02 | 933 | $945.44 |
| Kellogg & Humbert | 825 | 50.42 | 769 | $801.51 |
| Kellogg & Humbert | 842 | 52.29 | 861 | $930.67 |
| Kellogg & Humbert | 949 | 52.37 | 865 | $936.43 |
| Kellogg & Humbert | 622 | 53.05 | 883 | $968.33 |
| Kellogg & Humbert | 776 | 53.09 | 873 | $958.08 |
| Kellogg & Humbert | 779 | 54.07 | 909 | $1,016.01 |
| Kellogg & Humbert | 341 | 54.08 | 948 | $1,069.80 |
| Kellogg & Humbert | 824 | 55.02 | 858 | $975.85 |
| Kellogg & Humbert | 623 | 55.21 | 835 | $952.97 |
| Kellogg & Humbert | 673 | 55.44 | 878 | $1,006.23 |
| Kellogg & Humbert | 230 | 56.11 | 865 | $1,003.30 |
| Kellogg & Humbert | 552 | 56.25 | 908 | $1,055.81 |
| Kellogg & Humbert | 794 | 56.91 | 880 | $1,035.26 |
| Kellogg & Humbert | 366 | 57.90 | 870 | $1,041.30 |
| Kellogg & Humbert | 549 | 59.41 | 863 | $1,059.86 |
| Kellogg & Humbert | 1006 | 59.73 | 842 | $1,036.64 |
| Kellogg & Humbert | 766 | 61.89 | 905 | $1,157.83 |
| Kellogg & Humbert | 1004 | 64.55 | 907 | $1,210.27 |
| Kellogg & Humbert | 880 | 65.47 | 864 | $1,169.32 |
| Kellogg & Humbert | 855 | 67.46 | 861 | $1,200.68 |
| Kellogg & Humbert | 899 | 73.98 | 816 | $1,247.90 |
| Kellogg & Humbert | 807 | 81.6 | 859 | $1,448.97 |
| Kellogg & Humbert | 750 | 85[est.] | 850[est.] | n/a |

| | | | | |
|---|---|---|---|---|
| 1 | Kellogg & Humbert | 826 | 85.35 | 896 | $1,580.85 |
| 2 | Kellogg & Humbert | 975 | 91.73 | 887 | $1,681.95 |
| 3 | Kellogg & Humbert | 867 | 92.74 | 876 | $1,679.38 |
| 4 | Kellogg & Humbert | 831 | 93.1 | 860 | $1,655.11 |
| 5 | Kellogg & Humbert | 697 | 95.83 | 888 | $1,759.11 |
| 6 | Kellogg & Humbert | 981 | 97.19 | 875 | $1,757.96 |
| 7 | Kellogg & Humbert | 480 | 98.32 | 880 | $1,788.55 |
| 8 | Kellogg & Humbert | 690 | 102.44 | 929 | $1,967.26 |
| 9 | Kellogg & Humbert | 954 | 103.85 | 918 | $1,970.72 |
| 10 | Kellogg & Humbert | 806 | 103.96 | 896 | $1,925.54 |
| 11 | Kellogg & Humbert | 958 | 104.59 | 876 | $1,893.96 |
| 12 | Kellogg & Humbert | 621 | 107.76 | 871 | $1,940.24 |
| 13 | Kellogg & Humbert | 907 | 108.44 | 892 | $1,999.55 |
| 14 | Kellogg & Humbert | 283 | 108.79 | 868 | $1,952.04 |
| 15 | Kellogg & Humbert | 946 | 109.55 | 895 | $2,026.81 |
| 16 | Kellogg & Humbert | 980 | 110.23 | 878 | $2,000.66 |
| 17 | Kellogg & Humbert | 685 | 111.63 | 896 | $2,067.61 |
| 18 | Kellogg & Humbert | 639 | 112.03 | 881 | $2,040.27 |
| 19 | Kellogg & Humbert | 731 | 117.99 | 831 | $2,026.86 |
| 20 | Kellogg & Humbert | 882 | 126.44 | 848 | $2,216.45 |
| 21 | Kellogg & Humbert | 890 | 130.68 | 898 | $2,425.85 |
| 22 | Kellogg & Humbert | 505 | 287.17 | 887 | $5,265.52 |
| 23 | Kellogg & Humbert | 804 | 662.28 | 893 | $12,225.62 |
| 24 | Harris, Marchand & Co. | 6500 | 149.35 | 890 | $2,747.72 |
| 25 | Harris, Marchand & Co | 6504 | 195.7 | 945 | $3,822.97 |
| 26 | Henry Hentsch | 3214 | 110.0 | 904 | $1,931.71 |
| 27 | Henry Hentsch | 3244 | 218.68 | 891 | $4,027.77 |
| 28 | Justh & Hunter | 9498 | 29.83 | 895 | $551.89 |
| | Justh & Hunter | 4200 | 85.49 | 886 | $1,565.76 |
| | Justh & Hunter | 9442 | 106.15 | 915 | $2,007.79 |
| | Justh & Hunter | 9439 | 133.23 | 912 | $2,511.74 |
| | Justh & Hunter | 9496 | 327.97 | 909 | $6,162.78 |
| | Justh & Hunter | 4254 | 568.07 | 917 | $10,768.39 |
| | Justh & Hunter | 4051 | 754.95 | 900 | $14,045.54 |

1       In addition to the referenced gold bars and ingots, said garnishees (or

2  others) possess some or all of the following property of the Defendants:

3        1. 7,000 gold coins of various denominations, including but not limited

4           to $50 gold pieces, $20 gold pieces, $10 gold pieces, $5 gold pieces,

5           $3 gold pieces, and $2½ gold pieces, all of which were recovered

6           from the wreck of the *S.S. Central America*;

7        2. Any other treasure or artifacts recovered from the wreck of the *S.S.*

8           *Central America*; and

9        3. Funds or accounts held in the name (or names) of some or all of

10           Defendants, or on behalf of some or all of Defendants, with any

11           garnishees present within this district (including but not limited to

12           Monaco Financial, LLC and the California Gold Marketing Group,

13           LLC);

14    And it is further

15    **ORDERED** that said Order will be equally applicable to any other

16  garnishees upon whom a copy of the Process of Maritime Attachment and

17  Garnishment herein may be served, in an amount up to and including

18  $11,909,880.00, pursuant to Supplemental Rule B; and it is further

19    **ORDERED** that any person claiming an interest in the property attached or

20  garnished pursuant to this Order and the process of maritime attachment and

21  garnishment shall, upon application to the Court, be entitled to a prompt hearing at

22  which the Plaintiffs shall be required to show why the attachment and garnishment

23  should not be vacated or other relief granted; and it is further

24    **ORDERED** that supplemental process enforcing this Court's Order may be

25  issued by the Clerk upon application without further Order of the Court; and it is

26  further

27    **ORDERED** that a copy of this order be attached to and served with the said

28  process of maritime attachment and garnishment; and it is further

1    **ORDERED** pursuant to Rule 4(c)(1) of the Federal Rules of Civil Procedure

2    that the writs of attachment and garnishment may be served by any person, who is

3    not less than 18 years old, and who is not a party to this action.

4    **IT IS SO ORDERED.**

5

6

7    Date: _Sept 11 2006_ _____          JENNIFER T. LUM _____

8                                                      United States District Court Judge
                                                            *MAGISTRATE*
9

10

11    # 4036282_v1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Mark S. Shipow (SBN 91134)
      Kregg A. Koch (SBN 230145)

2   HOLLAND & KNIGHT LLP
      633 West Fifth Street, 21st Floor

3   Los Angeles, California 90071-2040
      Telephone: (213) 896-2400

4   Facsimile: (213) 896-2450

5   Attorneys for Plaintiffs Michael
      Williamson, The Estate of Don C.

6   Craft, Kirk O'Donnell, John Lettow,
      Timothy McGinnis, Fred Newton,

7   William Watson, Chris Hancock,
      Dale Schoeneman, and International

8   Deep Sea Survey, Inc.

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  MICHAEL WILLIAMSON, THE        )   CASE NO. 06 CV-06-5689
      ESTATE OF DON C. CRAFT,        )

14  KIRK O'DONNELL, JOHN            )
      LETTOW, TIMOTHY MCGINNIS,      )   WRIT OF MARITIME

15  FRED NEWTON, WILLIAM            )   ATTACHMENT
      WATSON, CHRIS HANCOCK,         )   AND GARNISHMENT

16  DALE SCHOENEMAN, and            )
      INTERNATIONAL DEEP SEA         )

17  SURVEY, INC.,                    )
                                     )

18            Plaintiffs,           )   Date:
                                     )   Courtroom:

19                                   )   Time:

20       v.                          )

21  RECOVERY LIMITED               )
      PARTNERSHIP, COLUMBUS          )

22  EXPLORATION, LLC,               )
      COLUMBUS-AMERICA               )

23  DISCOVERY GROUP, INC.,          )
      COLUMBUS EXPLORATION           )

24  LIMITED PARTNERSHIP, OMNI       )
      ENGINEERING, INC., OMNI         )

25  ENGINEERING OF OHIO, INC.,      )
      ECONOMIC ZONE RESOURCE         )

26  ASSOCIATES, ECONOMIC ZONE       )

27

28

- 1 -

**ORIGINAL**

JTLx

EXHIBIT

B

1  RESOURCE ASSOCIATES, LTD.,
   EZRA, INC., EZRA OF OHIO,
2  INC., ECON ENGINEERING
   ASSOCIATES, INC., DOE.E, INC.,
3  THOMAS G. THOMPSON,
4  GILMAN D. KIRK, JAMES F.
   TURNER, MICHAEL J. FORD, and
5  W. ARTHUR CULLMAN, JR.,

6            Defendants.

7

8  THE PRESIDENT OF THE UNITED STATES OF AMERICA TO THE

9  MARSHAL OF THE CENTRAL DISTRICT OF CALIFORNIA (OR

10          DESIGNATED PROCESS SERVER)

11  GREETINGS:

12          WHEREAS a Verified Complaint has been filed in the United States District

13  Court for the Central District of California on the 11th day of September, 2006, by

14

15  MICHAEL WILLIAMSON, THE ESTATE OF DON C. CRAFT, KIRK
16  O'DONNELL, JOHN LETTOW, TIMOTHY MCGINNIS, FRED NEWTON,
    WILLIAM WATSON, CHRIS HANCOCK, DALE SCHOENEMAN, and
17  INTERNATIONAL DEEP SEA SURVEY, INC.,

18                     Plaintiffs,
                     - against –
19  RECOVERY LIMITED PARTNERSHIP, COLUMBUS EXPLORATION,
    LLC, COLUMBUS-AMERICA DISCOVERY GROUP, INC. COLUMBUS
20  EXPLORATION LIMITED PARTNERSHIP, OMNI ENGINEERING, INC.,
    OMNI ENGINEERING OF OHIO, INC., ECONOMIC ZONE RESOURCE
    ASSOCIATES, ECONOMIC ZONE RESOURCE ASSOCIATES, LTD.,
21  EZRA, INC., EZRA OF OHIO, INC., ECON ENGINEERING
    ASSOCIATES, INC., DOE.E, INC., THOMAS G. THOMPSON, GILMAN D.
22  KIRK, JAMES F. TURNER, MICHAEL J. FORD, and W. ARTHUR
    CULLMAN, JR.,
23
24                   Defendants,

25  in a certain action for breach of maritime contract wherein it is alleged that there is

26  due and owing from Defendants to Plaintiffs the amount of $11,909,880.00 and

27  praying for process of maritime attachment and garnishment against the

28  Defendants, and for the attachment of the goods and chattels of said Defendants;

                              - 2 -

1    NOW, THEREFORE, we do hereby empower and strictly charge and

2    command you, the said Marshal (or designated process server), to cite and

3    admonish the said Defendants, if they shall be found in your district, to appear

4    before the said District Court, at the U.S. District Courthouse for the Central

5    District of California, Los Angeles, California, that you attach Defendants' goods

6    and chattels in said District, to the amount sued for, found within this district,

7    including, *inter alia*, the following gold bars or ingots recovered from the wreck of

8    the *S.S. Central America* held in the possession of garnishees (including but not

9    limited to Monaco Financial, LLC and the California Gold Marketing Group,

10   LLC):

11

| Original Owner of Gold Ingots | Serial # | Weight (Oz.) | Fineness | 1857 Value |
|---|---|---|---|---|
| Kellog & Humbert | 579 | 28.2 | 886 | $516.48 |
| Kellog & Humbert | 694 | 38.67 | 913 | $729.83 |
| Kellog & Humbert | 944 | 45.23 | 871 | $814.37 |
| Kellog & Humbert | 614 | 46.41 | 871 | $835.62 |
| Kellog & Humbert | 922 | 48.05 | 933 | $926.78 |
| Kellog & Humbert | 827 | 49.02 | 933 | $945.44 |
| Kellog & Humbert | 825 | 50.42 | 769 | $801.51 |
| Kellog & Humbert | 842 | 52.29 | 861 | $930.67 |
| Kellog & Humbert | 949 | 52.37 | 865 | $936.43 |
| Kellog & Humbert | 622 | 53.05 | 883 | $968.33 |
| Kellog & Humbert | 776 | 53.09 | 873 | $958.08 |
| Kellog & Humbert | 779 | 54.07 | 909 | $1,016.01 |
| Kellog & Humbert | 341 | 54.08 | 948 | $1,069.80 |
| Kellog & Humbert | 824 | 55.02 | 858 | $975.85 |
| Kellog & Humbert | 623 | 55.21 | 835 | $952.97 |
| Kellog & Humbert | 673 | 55.44 | 878 | $1,006.23 |
| Kellog & Humbert | 230 | 56.11 | 865 | $1,003.30 |
| Kellog & Humbert | 552 | 56.25 | 908 | $1,055.81 |
| Kellog & Humbert | 794 | 56.91 | 880 | $1,035.26 |
| Kellog & Humbert | 366 | 57.90 | 870 | $1,041.30 |

| | | | | |
|---|---|---|---|---|
| Kellog & Humbert | 549 | 59.41 | 863 | $1,059.86 |
| Kellog & Humbert | 1006 | 59.73 | 842 | $1,036.64 |
| Kellog & Humbert | 766 | 61.89 | 905 | $1,157.83 |
| Kellog & Humbert | 1004 | 64.55 | 907 | $1,210.27 |
| Kellog & Humbert | 880 | 65.47 | 864 | $1,169.32 |
| Kellog & Humbert | 855 | 67.46 | 861 | $1,200.68 |
| Kellog & Humbert | 899 | 73.98 | 816 | $1,247.90 |
| Kellog & Humbert | 807 | 81.6 | 859 | $1,448.97 |
| Kellog & Humbert | 750 | 85[est.] | 850[est.] | n/a |
| Kellog & Humbert | 826 | 85.35 | 896 | $1,580.85 |
| Kellog & Humbert | 975 | 91.73 | 887 | $1,681.95 |
| Kellog & Humbert | 867 | 92.74 | 876 | $1,679.38 |
| Kellog & Humbert | 831 | 93.1 | 860 | $1,655.11 |
| Kellog & Humbert | 697 | 95.83 | 888 | $1,759.11 |
| Kellog & Humbert | 981 | 97.19 | 875 | $1,757.96 |
| Kellog & Humbert | 480 | 98.32 | 880 | $1,788.55 |
| Kellog & Humbert | 690 | 102.44 | 929 | $1,967.26 |
| Kellog & Humbert | 954 | 103.85 | 918 | $1,970.72 |
| Kellog & Humbert | 806 | 103.96 | 896 | $1,925.54 |
| Kellog & Humbert | 958 | 104.59 | 876 | $1,893.96 |
| Kellog & Humbert | 621 | 107.76 | 871 | $1,940.24 |
| Kellog & Humbert | 907 | 108.44 | 892 | $1,999.55 |
| Kellog & Humbert | 283 | 108.79 | 868 | $1,952.04 |
| Kellog & Humbert | 946 | 109.55 | 895 | $2,026.81 |
| Kellog & Humbert | 980 | 110.23 | 878 | $2,000.66 |
| Kellog & Humbert | 685 | 111.63 | 896 | $2,067.61 |
| Kellog & Humbert | 639 | 112.03 | 881 | $2,040.27 |
| Kellog & Humbert | 731 | 117.99 | 831 | $2,026.86 |
| Kellog & Humbert | 882 | 126.44 | 848 | $2,216.45 |
| Kellog & Humbert | 890 | 130.68 | 898 | $2,425.85 |
| Kellog & Humbert | 505 | 287.17 | 887 | $5,265.52 |
| Kellog & Humbert | 804 | 662.28 | 893 | $12,225.62 |
| Harris, Marchand & Co. | 6500 | 149.35 | 890 | $2,747.72 |
| Harris, Marchand & Co | 6504 | 195.7 | 945 | $3,822.97 |

- 4 -

| Henry Hentsch | 3214 | 110.0 | 904 | $1,931.71 |
| Henry Hentsch | 3244 | 218.68 | 891 | $4,027.77 |
| Justh & Hunter | 9498 | 29.83 | 895 | $551.89 |
| Justh & Hunter | 4200 | 85.49 | 886 | $1,565.76 |
| Justh & Hunter | 9442 | 106.15 | 915 | $2,007.79 |
| Justh & Hunter | 9439 | 133.23 | 912 | $2,511.74 |
| Justh & Hunter | 9496 | 327.97 | 909 | $6,162.78 |
| Justh & Hunter | 4254 | 568.07 | 917 | $10,768.39 |
| Justh & Hunter | 4051 | 754.95 | 900 | $14,045.54 |

In addition to the referenced gold bars and ingots, there are other assets of Defendants held in the hands of garnishees in this District, specifically including tangible or intangible including some or all of the following property of the Defendants:

1. 7,000 gold coins of various denominations, including but not limited to $50 gold pieces, $20 gold pieces, $10 gold pieces, $5 gold pieces, $3 gold pieces, and $2½ gold pieces, all of which were recovered from the wreck of the *S.S. Central America*;

2. Any other treasure or artifacts recovered from the wreck of the *S.S. Central America*; and

3. Funds or accounts held in the name (or names) of some or all of Defendants, or on behalf of some or all of Defendants, with any garnishees present within this district (including but not limited to Monaco Financial, LLC and the California Gold Marketing Group, LLC);

These assets are held in the possession of Defendants' garnishees, including but not limited to the following entities:

1    (1)    Monaco Financial, LLC

2         4900 Birch Street

3         Newport Beach, California  92660

4

5    (2)    California Gold Marketing Group, LLC

6         100 Bayview Circle

7         Suite 5100

8         Newport Beach, California  92660

9

10   and if no goods and chattels can be found, that you attach Defendants' debts,

11   credits and effects, to the amount sued for, in the hands of garnishees named in the

12   Verified Complaint as may be found.

13        You are also directed to notify the said garnishees that:

14   (1)    A foreign attachment has been commenced against the Defendants;

15   (2)    The garnishee is required to file in the office of the Clerk of the United

16   States District Court for the Central District of California within twenty (20) days

17   from the service of this Writ, a report, under oath, setting forth in detail all debts

18   owing by the garnishee to the Defendants; all property of the Defendants in the

19   possession, custody or control of the garnishee or to which the garnishee holds

20   legal title; all property which is held by the garnishee as fiduciary in which the

21   Defendants has an interest; and whether any property attached is immune or

22   exempt from attachment; and

23   (3)    The garnishee is enjoined from paying any debt to or for the account of

24   Defendants, and from delivering any property owned by the Defendants to or for

25   the account of the Defendants or otherwise disposing thereof;

26   (4)    The garnishee is required to promptly forward to Defendants, by any form of

27   mail requiring a return receipt, a copy of this Writ, a copy of the Verified

28   Complaint, and a copy of the Summons.

- 6 -

1  If the property of the Defendants is found in the possession of anyone not a

2  garnishee, you are directed to notify him that he has been added as a garnishee, is

3  directed to file a report, and is enjoined as above stated.

4

5  **Amount of Plaintiffs' claim: $11,909,880.00, including estimated interest.**

6  Clerk:    SHERRI R. CARTER

7

8  By: _Terry R. Baker_    Date: 09/12/2006

9  Deputy Clerk

10

11

12  Presented By:

13  Mark S. Shipow (SBN 91134)
   Kregg A. Koch (SBN 230145)

14  HOLLAND & KNIGHT LLP
   633 West Fifth Street, 21st Floor

15  Los Angeles, California 90071-2040
   Telephone:  (213) 896-2400

16  Facsimile:  (213) 896-2450

17  *Attorneys for Plaintiffs*
   *Michael Williamson, The Estate Of Don C. Craft, Kirk O'Donnell, John Lettow,*

18  *Timothy McGinnis, Fred Newton, William Watson, Chris Hancock, Dale*
   *Schoeneman, and International Deep Sea Survey, Inc.*

19

20

21

22  # 4036373_v1

23

24

25

26

27

28

1    Mark S. Shipow (SBN 91134)
     Kregg A. Koch (SBN 230145)
2    HOLLAND & KNIGHT LLP
     633 West Fifth Street, 21st Floor
3    Los Angeles, California  90071-2040
     Telephone:  (213) 896-2400
4    Facsimile:  (213) 896-2450

5    Attorneys for Plaintiffs Michael
     Williamson, The Estate of Don C.
6    Craft, Kirk O'Donnell, John Lettow,
     Timothy McGinnis, Fred Newton,
7    William Watson, Chris Hancock,
     Dale Schoeneman, and International
8    Deep Sea Survey, Inc.

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13   MICHAEL WILLIAMSON, THE        )   CASE NO. CV-06-5689
     ESTATE OF DON C. CRAFT,        )
14                                   )   SEIZURE ORDER
     KIRK O'DONNELL, JOHN            )
15   LETTOW, TIMOTHY MCGINNIS,      )
     FRED NEWTON, WILLIAM            )   Date:
16   WATSON, CHRIS HANCOCK,         )   Courtroom:
     DALE SCHOENEMAN, and           )   Time:
17   INTERNATIONAL DEEP SEA          )
18   SURVEY, INC.,                   )
                                     )
19          Plaintiffs,              )
                                     )
20       v.                          )
                                     )
21                                   )
     RECOVERY LIMITED                )
22   PARTNERSHIP, COLUMBUS          )
23   EXPLORATION, LLC,              )
     COLUMBUS-AMERICA                )
24   DISCOVERY GROUP, INC.,          )
     COLUMBUS EXPLORATION            )
25   LIMITED PARTNERSHIP, OMNI      )
26   ENGINEERING, INC., OMNI        )
     ENGINEERING OF OHIO, INC.,     )
27   ECONOMIC ZONE RESOURCE         )
28   ASSOCIATES, ECONOMIC ZONE      )

- 1 -

EXHIBIT

C

| | |
|---|---|
| 1 | RESOURCE ASSOCIATES, LTD., )<br>EZRA, INC., EZRA OF OHIO, ) |
| 2 | INC., ECON ENGINEERING )<br>ASSOCIATES, INC., DOE.E, INC., ) |
| 3 | THOMAS G. THOMPSON, ) |
| 4 | GILMAN D. KIRK, JAMES F. )<br>TURNER, MICHAEL J. FORD, and ) |
| 5 | W. ARTHUR CULLMAN, JR., ) |
| 6 | Defendants.    ) |
| 7 | ) |
| 8 | |

9    **TO THE UNITED STATES MARSHAL:**

10          On September 11, 2006, plaintiffs Michael Williamson, The Estate Of Don

11    C. Craft, Kirk O'Donnell, John Lettow, Timothy McGinnis, Fred Newton, William

12    Watson, Chris Hancock, Dale Schoeneman, and International Deep Sea Survey,

13    Inc. (collectively the "Plaintiffs") applied *ex parte* for a Writ of Maritime

14    Attachment and Garnishment order authorizing seizure of assets, goods or chattels

15    recovered from the *S.S. Central America* in the possession of Monaco Financial

16    LLC exhibited at the Long Beach Convention Center on or about September 14-16,

17    2006.

18          Appearances of counsel were noted on the record.  Mark S. Shipow, Esq., of

19    Holland & Knight LLP, appeared on behalf of the Plaintiffs.  Defendants Recovery

20    Limited Partnership, Columbus Exploration, LLC, Columbus-America Discovery

21    Group, Inc., Columbus Exploration Limited Partnership, Omni Engineering, Inc.,

22    Omni Engineering of Ohio, Inc., Economic Zone Resource Associates, Economic

23    Zone Resource Associates, Ltd., EZRA, Inc., EZRA of Ohio, Inc., Econ

24    Engineering Associates, Inc., DOE.E, Inc., Thomas G. Thompson, Gilman D. Kirk,

25    James F. Turner, Michael J. Ford, and W. Arthur Cullman, Jr. were unrepresented.

26          Having considered the papers submitted in connection with the application,

27    arguments of counsel, and all other matters presented to the Court, and good cause

28    appearing,

1    Plaintiffs' *ex parte* application for a Writ of Maritime Attachment and
2 Garnishment having been granted,

3    **IT IS HEREBY ORDERED** as follows:

4    1.    The U.S. Marshal is authorized and directed to seize the following
5 items:  all assets, goods or chattels recovered from the *S.S. Central America* in the
6 possession of Monaco Financial LLC exhibited at the Long Beach Convention
7 Center, located at 100 South Pine Avenue, Long Beach, California, 90802, on or
8 about September 14-16, 2006 (hereinafter referred to as the "*Central America*
9 treasure"), including but not limited to the following items:

| Original Owner of Gold Ingots | Serial # | Weight (Oz.) | Fineness | 1857 Value |
|---|---|---|---|---|
| Kellogg & Humbert | 579 | 28.2 | 886 | $516.48 |
| Kellogg & Humbert | 694 | 38.67 | 913 | $729.83 |
| Kellogg & Humbert | 944 | 45.23 | 871 | $814.37 |
| Kellogg & Humbert | 614 | 46.41 | 871 | $835.62 |
| Kellogg & Humbert | 922 | 48.05 | 933 | $926.78 |
| Kellogg & Humbert | 827 | 49.02 | 933 | $945.44 |
| Kellogg & Humbert | 825 | 50.42 | 769 | $801.51 |
| Kellogg & Humbert | 842 | 52.29 | 861 | $930.67 |
| Kellogg & Humbert | 949 | 52.37 | 865 | $936.43 |
| Kellogg & Humbert | 622 | 53.05 | 883 | $968.33 |
| Kellogg & Humbert | 776 | 53.09 | 873 | $958.08 |
| Kellogg & Humbert | 779 | 54.07 | 909 | $1,016.01 |
| Kellogg & Humbert | 341 | 54.08 | 948 | $1,069.80 |
| Kellogg & Humbert | 824 | 55.02 | 858 | $975.85 |
| Kellogg & Humbert | 623 | 55.21 | 835 | $952.97 |
| Kellogg & Humbert | 673 | 55.44 | 878 | $1,006.23 |
| Kellogg & Humbert | 230 | 56.11 | 865 | $1,003.30 |
| Kellogg & Humbert | 552 | 56.25 | 908 | $1,055.81 |
| Kellogg & Humbert | 794 | 56.91 | 880 | $1,035.26 |
| Kellogg & Humbert | 366 | 57.90 | 870 | $1,041.30 |
| Kellogg & Humbert | 549 | 59.41 | 863 | $1,059.86 |
| Kellogg & Humbert | 1006 | 59.73 | 842 | $1,036.64 |

- 3 -

| | | | | |
|---|---|---|---|---|
| Kellogg & Humbert | 766 | 61.89 | 905 | $1,157.83 |
| Kellogg & Humbert | 1004 | 64.55 | 907 | $1,210.27 |
| Kellogg & Humbert | 880 | 65.47 | 864 | $1,169.32 |
| Kellogg & Humbert | 855 | 67.46 | 861 | $1,200.68 |
| Kellogg & Humbert | 899 | 73.98 | 816 | $1,247.90 |
| Kellogg & Humbert | 807 | 81.6 | 859 | $1,448.97 |
| Kellogg & Humbert | 750 | 85[est.] | 850[est.] | n/a |
| Kellogg & Humbert | 826 | 85.35 | 896 | $1,580.85 |
| Kellogg & Humbert | 975 | 91.73 | 887 | $1,681.95 |
| Kellogg & Humbert | 867 | 92.74 | 876 | $1,679.38 |
| Kellogg & Humbert | 831 | 93.1 | 860 | $1,655.11 |
| Kellogg & Humbert | 697 | 95.83 | 888 | $1,759.11 |
| Kellogg & Humbert | 981 | 97.19 | 875 | $1,757.96 |
| Kellogg & Humbert | 480 | 98.32 | 880 | $1,788.55 |
| Kellogg & Humbert | 690 | 102.44 | 929 | $1,967.26 |
| Kellogg & Humbert | 954 | 103.85 | 918 | $1,970.72 |
| Kellogg & Humbert | 806 | 103.96 | 896 | $1,925.54 |
| Kellogg & Humbert | 958 | 104.59 | 876 | $1,893.96 |
| Kellogg & Humbert | 621 | 107.76 | 871 | $1,940.24 |
| Kellogg & Humbert | 907 | 108.44 | 892 | $1,999.55 |
| Kellogg & Humbert | 283 | 108.79 | 868 | $1,952.04 |
| Kellogg & Humbert | 946 | 109.55 | 895 | $2,026.81 |
| Kellogg & Humbert | 980 | 110.23 | 878 | $2,000.66 |
| Kellogg & Humbert | 685 | 111.63 | 896 | $2,067.61 |
| Kellogg & Humbert | 639 | 112.03 | 881 | $2,040.27 |
| Kellogg & Humbert | 731 | 117.99 | 831 | $2,026.86 |
| Kellogg & Humbert | 882 | 126.44 | 848 | $2,216.45 |
| Kellogg & Humbert | 890 | 130.68 | 898 | $2,425.85 |
| Kellogg & Humbert | 505 | 287.17 | 887 | $5,265.52 |
| Kellogg & Humbert | 804 | 662.28 | 893 | $12,225.62 |
| Harris, Marchand & Co. | 6500 | 149.35 | 890 | $2,747.72 |
| Harris, Marchand & Co | 6504 | 195.7 | 945 | $3,822.97 |
| Henry Hentsch | 3214 | 110.0 | 904 | $1,931.71 |
| Henry Hentsch | 3244 | 218.68 | 891 | $4,027.77 |

| Justh & Hunter | 9498 | 29.83 | 895 | $551.89 |
|---|---|---|---|---|
| Justh & Hunter | 4200 | 85.49 | 886 | $1,565.76 |
| Justh & Hunter | 9442 | 106.15 | 915 | $2,007.79 |
| Justh & Hunter | 9439 | 133.23 | 912 | $2,511.74 |
| Justh & Hunter | 9496 | 327.97 | 909 | $6,162.78 |
| Justh & Hunter | 4254 | 568.07 | 917 | $10,768.39 |
| Justh & Hunter | 4051 | 754.95 | 900 | $14,045.54 |

    a. 7,000 gold coins of various denominations, including but not limited to $50 gold pieces, $20 gold pieces, $10 gold pieces, $5 gold pieces, $3 gold pieces, and $2½ gold pieces, all of which were recovered from the wreck of the *S.S. Central America*;

    b. Any other treasure or artifacts recovered from the wreck of the *S.S. Central America*; and

    c. Funds or accounts held in the name (or names) of some or all of Defendants, or on behalf of some or all of Defendants, with any garnishees present within this district (including but not limited to Monaco Financial, LLC and the California Gold Marketing Group, LLC);

    2.    The U.S. Marshal is authorized to forcibly enter the Long Beach Convention Center if necessary to seize the *Central America* treasure on or about September 14-16; and

    3.    The U.S. Marshal shall be held harmless for any damages, physical or personal injuries, or any other form of liability that might arise during the seizure of the *Central America* treasure resulting from the U.S. Marshal's negligence.

**IT IS SO ORDERED.**

Date: _____, 2006    By: _____

    JENNIFER T. LUM

    United States District Court Judge

#4033781_v1

- 5 -

**SECTRAN ARMORED**
*ARMORED TRUCK SERVICES*
P.O. BOX 227267
LOS ANGELES, CA 90022-0967

## DELIVERY TRANSFER SHEET

MESSENGER _Alverez_
DRIVER _Brown_
_WEBB_
ROUTE _A57_   TRUCK # _860_

PAGE _1_ OF _1_
DATE _091806_

TIME _11_ : _31_   RECEIVED BY: _(signature)_
(SIGNATURE)

| REF. # | (FROM) CONSIGNOR | NO. PKGS. | VALUE | VALUE | VALUE | (TO) CONSIGNEE | OUT RTE. |
|---|---|---|---|---|---|---|---|
| #4081 | Y/G BAR # 754.95 oz s | (1) | ONE | | 2772531 | 2772532 | |
| #6580 | Y/G BAR # 55.48 oz | (1) | ONE | | | | |
| #804 | Y/G BAR 662.28 oz | (1) | ONE | | | | |
| #827 | Y/G BAR 49.02 oz | (1) | ONE | | 2772540 | 2772539 | |
| #6214 | Y/G BAR 103.50 oz | (1) | ONE | | | | |
| #3244 | Y/G BAR 218.68 oz | (1) | ONE | | | | |
| #1857 | DEL CHRISTIES SELL LOT 150 GOLD COIN | (1) | ONE | | 2772637 | 2772638 | |

EXHIBIT

_D_

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

MICHAEL WILLIAMSON, et al.

              Plaintiffs,

                               CASE NO. C2-06-292

   v.

                               JUDGE EDMUND A. SARGUS, JR.

RECOVERY LIMITED
PARTNERSHIP, et al.                MAGISTRATE JUDGE TERRENCE P. KEMP

              Defendants.

**NOTICE BY THE *WILLIAMSON* PLAINTIFFS OF EXECUTION
OF WRIT OF MARITIME ATTACHMENT AND GARNISHMENT**

The *Williamson* Plaintiffs, by and through their undersigned counsel, hereby give notice

that two separate attachments of the property of Defendant Gilman D. Kirk, Jr. were carried out

by Deutsche Bank AG on September 28, 2006 and October 4, 2006, which attachments froze the

respective amounts of $9,000.00 and $2,686.94, pursuant to the supplemental maritime

attachment proceeding commenced by the Williamson Plaintiffs in New York as noted by

Defendants in their September 2, 2006 filing with this Court.  (Doc #110).

Deutsche Bank AG's letter dated October 11, 2006 advising counsel for the *Williamson*

Plaintiffs of the attachments is annexed as Exhibit A.

-1-

*Exh E*

The *Williamson* Plaintiffs once again give notice that as writs are served and as

attachments are made, further Notices will be promptly provided to this District Court all in

accord with federal law.

Respectfully submitted,

*/s/ Michael R. Szolosi, Sr.*
Michael R. Szolosi, Sr. (0022317)
Of Counsel
McNamara and McNamara, L.L.P.
88 East Broad Street, Suite 1250
Columbus, Ohio 43215
(614) 228-6131/(614) 228-6126 (Fax)
Email: mrs@mcnamaralaw.us
*Counsel for Williamson Plaintiffs*

OF COUNSEL:

James T. Shirley, Jr.
Michael Frevola
Holland & Knight LLP
195 Broadway, 24th Floor
New York, NY 10007-3189
(212) 513-3561/(212) 385-9010 (Fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing motion was served via the Court's electronic filing, on the 13th of October, 2006 upon the following parties:

John W. Zeiger (0010707)
Steven W. Tigges (0019288)
Bradley T. Ferrell (0070965)
Zeiger, Tigges & Little LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-9900/(614) 365-7900
*Attorneys for Plaintiffs*
*The Dispatch Printing Company*
*and Donald C. Fanta*

Rex H. Elliott (0054054)
Charles H. Cooper (0037295)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000/(614) 6001 (Fax)
*Attorneys for Defendants*
*Thomas G. Thompson and*
*ECON Engineering Associates, Inc.*

Richard T. Robol (0064345)
Robol Law Office, LPA
555 City Park Avenue
Columbus, Ohio 43215
(614) 737-3739/(614) 737-3756
*Attorney for Defendants*
*Recovery Limited Partnership,*
*Economic Zone Resource Associates,*
*Columbus Exploration, LLC,*
*Gilman D. Kirk, Jr., James F. Turner,*
*Michael J. Ford and W. Arthur Cullman, Jr.*

Kenneth A. Zirm (0010987)
Walter & Haverfield LLP
1300 Terminal Tower, 50 Public Square
Cleveland, Ohio 44113-2253
(216) 781-1212/(216) 575-0911 (Fax)

Lynn Oberlander, Esq.
Editorial Counsel
Forbes Inc.
60 Fifth Avenue
New York, New York 10011
(212) 620-2329/(212) 620-1873 (Fax)
*Attorneys for Forbes, Inc.*

*/s/ Michael R. Szolosi, Sr.*
Michael R. Szolosi, Sr.

-3-

# Deutsche Bank AG

60 Wall Street, New York, NY 10005
Mail Stop: NYC60-3615

## Yvonne Falconer

Legal Department
Telephone: 212-250-7513
Facsimile: 212-797-4567

---

THIS TRANSMISSION CONSISTS OF __2__ PAGES (INCLUDING THIS COVER)

      **To:**   **Michael J. Frevola, Esq.**
      Fax:   212-341-7184

      Date:  October 11, 2006

Michael:

Attached please find letter detailing information on the funds being held on behalf of Michael Williamson, et al.

Thank you.

---

*CONFIDENTIAL NOTE:* This facsimile message contains confidential information sent by an attorney or his agent and is intended solely for the use of the addressee. The information may be protected by one or more legal rules including attorney-client privilege. If the reader of this message is not the intended recipient, you are hereby notified that retention, dissemination, distribution or copying of this fax is strictly prohibited. If you received this fax in error, please notify us immediately by telephone and return it by mail to the address above. Thank you.



EXHIBIT
A



**Deutsche Bank**

Deutsche Bank AG New York
Legal Department
60 Wall Street
New York, NY 10005

Tel 212 250 2500

October 11, 2006

<u>VIA U.S. MAIL</u>

Michael J. Frevola, Esq.
Holland & Knight LLP
195 Broadway
New York, NY 10007-3189

   Re: MICHAEL WILLIAMSON, ET AL v. RECOVERY LIMITED
     PARTNERSHIP, ET AL
     S.D.N.Y No. 06 Civ. 5724 (LTS)

Dear Mr. Frevola:

  Pursuant to the above-referenced Maritime Attachment notice received by Deutsche Bank
Trust Company Americas ("DBTCA") on July 31, 2006, please be advised that DBTCA has
intercepted a total of Eleven Thousand Six Hundred and Eighty Six Dollars and Ninety Four
Cents ($11,686.94) for the account of one of the above defendants, Gilman D. Kirk, Jr.

  The amounts are broken down as follows – September 28, 2006 - $9,000.00 and October
4, 2006 - $2,686.94.  The funds are currently being held in a suspense account and we await your
further instructions.

  Please feel free to contact the undersigned at (212) 250-7513 with your instructions.

       Very truly yours,

       Yvonne Falconer

508860- /
FILE COPY
SERVED BY MAIL AND
SUBMITTED
RECEIVED
POST
9-5-06
BY: TW

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Michael H. Williamson, et al.  :
      Plaintiffs,  :
     v.  :
Recovery Limited Partnership, et al.,  :
      Defendants.  :
    :
AND  :
    :
The Dispatch Printing Co., et al.,  :    **Civil Action No.C2 06 292**
      Plaintiffs,  :    **Judge Sargus**
     v.  :    **Magistrate Judge Kemp**
Recovery Limited Partnership, et al.,  :
      Defendants.  :
    :
AND  :
    :
The Dispatch Printing Co., et al.,  :
      Plaintiffs,  :
     v.  :
Gilman D. Kirk, et al.,  :
      Defendants.  :

## DEFENDANTS' NOTICE OF FILING OF DUPLICATIVE MARITIME CLAIM
## IN SOUTHERN DISTRICT OF NEW YORK

Defendants Columbus Exploration LLC, Recovery Limited Partnership, Econ Engineering Associates, Inc., Thomas G. Thompson, EZRA and the Defendant Board Members respectfully provide notice to the Court of the filing of a duplicative maritime proceeding in the U.S. District Court for the Southern District of New York. *See Michael Williamson, et al. v. Recovery Limited Partnership, et al.,* 06-CV-5724 (S.D.N.Y.). A copy of the Complaint filed on July 28, 2006 is attached.

Exl. #

Defendants file this Notice because (1) they are unaware of any filing by the Williamson Plaintiffs bringing this matter to the Court's attention,[1] and (2) both the filing of the duplicative proceeding and the representations by the Williamson Plaintiffs to the Southern District of New York in that proceeding are clearly material to the Defendants' Motion to Transfer Venue, which remains pending before the Court.

The proceeding in the Southern District of New York is brought by the same Plaintiffs as the proceeding in this case. It is filed against all of the Defendants in this case.[2] It makes essentially the same allegations as the proceeding in this case. Indeed, if anything, the allegations of the Williamson Plaintiffs' maritime claim for salvage in the New York Complaint Plaintiffs appear more forthright in making even clearer their position that they claim an interest in the entire treasure of the SS *Central America*.[3]

The New York filing is material to Defendants' Motion to Transfer Venue that is currently pending in this proceeding. The Williamson Plaintiffs' filing of a second, duplicative lawsuit involving the same parties and essentially the same allegations as the proceeding currently pending in this Court illustrates why the salvage *concursus* favors a single, unified proceeding for adjudicating all salvage claims arising out the salvage of an historic shipwreck. Transfer to the *concursus* in the U.S. District Court for the Eastern

---

[1] Defendants are at a loss as to why Plaintiffs apparently have not called the New York filing to the Court's attention, other than the fact that many of the statements and representations made in that proceeding are directly contrary to the statements and representations that they have made in opposition to Defendants' Motion to Transfer Venue. If the Williamson Plaintiffs have made a filing in this proceeding calling the Court's attention to the New York proceeding, then Defendants apologize to the Court and the Williamson Plaintiffs for having overlooked it.

[2] In addition, Plaintiffs have joined 8 other corporate parties, whom, Plaintiffs represent, will also be added by amendment in the proceeding here in the Southern District of Ohio. Pl Compl, p.3, ¶3.

[3] *See, e.g.*, Pl Compl, p.16, ¶58, p. 17, ¶64, p. 17, ¶¶67-69, p. 19, ¶77. The proceeding in New York includes a Rule B attachment of certain bank accounts in which Defendants allegedly have interests. See Suppl. Rule B, Fed. R. Civ. P.

)

District of Virginia would avoid the waste, inefficiency and needless costs inherent in

such duplication of effort and multiplication of litigation.

The New York filing is also material in illustrating the admissions and

representations made by the Williamson Plaintiffs in the Southern District of New York.

Many of those admissions and representations are inconsistent with the claims that they

have made in opposition to Defendants' pending Motion to Transfer Venue. By way of

example, in contrast to their representations to the Court here, the Williamson Plaintiffs

have represented to the Southern District of New York that:

> In accordance with the Non-Disclosure Agreements [*sic*] forum selection
> clauses, all disputes arising out of those agreements are to be litigated in
> Ohio. However, the action herein, submitted in accordance with Rule B of
> the Supplemental Rules of Certain Admiralty and Maritime Claims of the
> Federal Rules of Civil Procedure, is not and cannot be considered a waiver
> of the forum selection clauses in the Non-Disclosure Agreements.

Pl Compl, p. 14, ¶51.

)

)

Respectfully submitted,

___/s/ Richard T. Robol_____
Richard T. Robol (0064345)
Melanie L. Frankel (0078852)
ROBOL LAW OFFICE, LPA
555 City Park Avenue
Columbus, Ohio 43215
(614) 737-3739
(614) 737-3756 (Facsimile)
Trial Attorneys for Defendants
Recovery Limited Partnership,
Columbus Exploration, LLC, EZRA
and Defendant Board Members

_/s/ Richard T. Robol per tel. authority_
Rex H. Elliott    (0054054)
Charles H. Cooper, Jr.    (0037295)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio  43221
(614) 481-6000
(614) 481-6001 (Facsimile)
Attorneys for Defendants
Thomas G. Thompson and
ECON Engineering Associates, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on all counsel of record, by means of the Court's electronic filing system, this 2nd day of September, 2006.

___/s/ Richard T. Robol_____
Richard T. Robol (0064345)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————X

SEA TRANSPORT CONTRACTORS LTD.    :

             Plaintiff,    :

      against    :       **DECLARATION IN**

INDUSTRIES CHIMIQUES du SENEGAL    :       **ACCORDANCE WITH**

            Defendant,    :       28 U.S.C. §1746

————————————————X

OUSMANE NDIAYE declares and states as follows:

1.    I am the Chief Executive Officer of Defendant Industries Chimiques du Senegal ("ICS").

2.    I am submitting this declaration in support of ICS's motion for the vacation of an attachment order, previously granted by this Court in the above captioned case, so as to permit funds that have been blocked by the Société Générale in New York to be paid as originally intended.

3.    Insofar as the contents of this declaration are within my own knowledge, they are true. Insofar as the contents of this declaration are not within my own direct knowledge, they are true to the best of my information and belief.

4.    The funds which have been blocked are needed by ICS to fund payments of its suppliers and creditors, principally its raw materials providers. If ICS is unable to purchase sulphur from its raw material suppliers, it will soon have to cease trading, with potentially drastic consequences for its employees, shareholders and creditors.

5.    In fact, the only person that appears ready to benefit from crippling ICS in this way is Mr. Jérôme Godart, who is the controlling mind behind Plaintiff Sea Transport Contractors Ltd ("STC") and who was until recently a trusted advisor of ICS.

6.    Mr. Godart has every interest in threatening to bring ICS to its knees so that he can negotiate a windfall financial settlement.

EX. 2: NDIAYE DECL

Exh I

7.    By way of background, ICS is Senegal's largest manufacturing entity, involved since 1981 in the production of phosphoric acid (of which it is the second largest exporter in the world)[1] and fertilizer (of which it is the only producer in West Africa).

8.    Its principal place of business is in Dakar, Senegal.

9.    It accounts for 2% of Senegal's gross domestic product.

10.   It is Senegal's largest foreign currency provider, is the largest customer of Senegal's electricity company, its railway operator, its port operator, its water company and its telecom company.

11.   It employs 2,500 persons, and thus helps to feed some 100,000 mouths.

12.   Apart from its importance within Senegal, ICS also occupies an important position on the international stage. It imports sulphur, the principal raw material for the production of phosphoric acid from, among others, including BP-Amoco and ICEC.

13.   It purchases mining equipment from Caterpillar (to whom ICS paid $ 10 million in 2002-2003 and to whom ICS continues to pay $ 2 million per year for spare parts), Komatsu and Bucyrus. It purchases rolling stock for its railways from General Motors, to which it pays $ 1 million per year for spare parts. Its principal banker for its import and export activities is Citibank.

14.   Further information about ICS is available on its website, www.ICS.sn.

15.   By letter dated December 21, 2005, the Société Générale informed me that its New York branch had blocked two transfers from IFFCO, one of our principal purchasers, one for $ 6,804,073.51 and the other for $ 7,929,195.51.

16.   After this Court granted an attachment order, an application was made to the Tribunal de Grande Instance de Nanterre ("the TGI") in France for a similar attachment order.

17.   On December 14, 2005, the TGI granted such an order, although it was limited to a total of € 900,000, instead of the € 63,670,292.38 sought by STC.

18.   I believe that there is no way that STC could hope to obtain any more than € 900,000 in the claims that it has commenced in London. I understand that this is not the appropriate place to argue the merits of those claims, but I would wish to draw attention to the fact that the French Court who reviewed essentially the same

---

[1]    The largest producer is Office Chérifien du Phosphate (in Morocco).

2

submission made in New York found there to be insufficient support for security at the level demanded, and limited any such security to the amount mentioned above -- roughly USD 1.2 million.

19. On behalf of ICS and the thousands of people this governmentally owned entity supports, we are grateful to you for your consideration of our application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

OUSMANE NDIAYE

Executed this 30th day of December 2005
in Dakar, Senegal

3