James T. Shirley, Jr. (JTS 6114)
Michael J. Frevola (MJF 8359)
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200
Attorneys for Plaintiffs Michael Williamson, The Estate of Don C. Craft, Kirk O'Donnell, John Lettow, Timothy McGinnis, Fred Newton, William Watson, Chris Hancock, Dale Schoeneman, and International Deep Sea Survey, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL WILLIAMSON, THE ESTATE OF DON C. CRAFT, KIRK O'DONNELL, JOHN LETTOW, TIMOTHY MCGINNIS, FRED NEWTON, WILLIAM WATSON, CHRIS HANCOCK, DALE SCHOENEMAN, and INTERNATIONAL DEEP SEA SURVEY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>RECOVERY LIMITED PARTNERSHIP, COLUMBUS EXPLORATION, LLC, COLUMBUS-AMERICA DISCOVERY GROUP, INC. COLUMBUS EXPLORATION LIMITED PARTNERSHIP, OMNI ENGINEERING, INC., OMNI ENGINEERING OF OHIO, INC., ECONOMIC ZONE RESOURCE ASSOCIATES, ECONOMIC ZONE RESOURCE ASSOCIATES, LTD., EZRA, INC., EZRA OF OHIO, INC., ECON ENGINEERING ASSOCIATES, INC., DOE.E, INC., THOMAS G. THOMPSON, GILMAN D. KIRK, JAMES F. TURNER, MICHAEL J. FORD, and W. ARTHUR CULLMAN, JR.,<br><br>Defendants. | 06 Civ. 5724 (LTS)<br><br>**SUPPLEMENTAL AFFIDAVIT OF MICHAEL J. FREVOLA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION BY ORDER TO SHOW CAUSE TO VACATE MARITIME ATTACHMENT** |

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK     )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

1. I am a member of the law firm Holland & Knight LLP, attorneys for Plaintiffs, and I am fully familiar with the facts in this case.

2. This Supplemental Affidavit is made in response to certain representations made by Defendants in their Reply in Support of Motion By Order to Show Cause to Vacate Rule B Attachments (the "Reply") in this district. The statements made in this affidavit are based upon my personal knowledge. I will address them in the order made in the Reply.

**The Los Angeles Proceedings**

3. Defendants make a number of unsupported representations on pages 2 and 3 of their Reply that seriously misrepresent facts to this Court. Defendants purport to describe events occurring in the United States District Court for the Central District of California before Magistrate Judge Jennifer Lum. The only person signing Defendants' Reply who was in Los Angeles during those hearings was Mr. Robol. He was there, however, only on the first day of the hearings, Monday, October 16, 2006. Mr. Robol was not there for the testimony of the president of the garnishee, Michael Carabini of Monaco Financial, LLC ("Monaco"), which took place on Tuesday, October 17, 2006. Nor was he there for the settlement discussions and eventual settlement that occurred on Wednesday, October 18, 2006.

4. I know that Mr. Robol was not there because I was the only attorney (or affiant) in this proceeding who was in the Los Angeles proceedings for the entirety of the hearing and for the settlement. I can identify Mr. Robol by sight, among other reasons because I conducted his cross examination when he testified in that proceeding, and because I was present for several

1

days in the federal courthouse in Columbus, Ohio during the Defendants' settlement discussions with the investor plaintiffs.

5. With myself as the exception, no one else who has submitted an affidavit or had signed a brief before this Court was in Los Angeles last week for the entirety of the hearings and settlement.

6. Mr. Robol might contend that Defendants' local counsel was at the hearings and could testify about events. Defendants' local counsel, however, was not a part of settlement discussions and therefore has no knowledge of those facts.

7. The Rule B attachment process allows any party to apply for release of the property attached. In the Los Angeles proceeding last week, Monaco satisfied Plaintiffs – specifically, they satisfied me and my colleagues – that the gold attached by Plaintiffs was not property in which the Defendants retained a reversionary interest. Plaintiffs have no desire to attach and hold property upon which they cannot execute to enforce any judgment they might receive, so I agreed with Monaco's request that its property be released. It was that simple.

8. What Mr. Robol does not state in Defendants' Reply is that the basis for attaching the Los Angeles gold largely was <u>Mr. Robol's repeated misrepresentations to Plaintiffs' counsel, as recently as 2004, and even more recently by the arguments he has made in Court, that the Defendants retained an interest in *S.S. Central America* gold through the Defendants' vaunted secret marketing program</u>. When Monaco produced the Amendment to the Asset Purchase Agreement, which recites that Defendants' interest in the gold was completely extinguished over 5 years ago, that agreement revealed Mr. Robol's misrepresentations and, accordingly, Plaintiffs agreed to release Monaco's property. Mr. Robol's testimony was part of the garnishee's evidence in support of that fact.

2

9. Of course, as any competent lawyer would, when agreeing to release the property and dismiss the Los Angeles proceeding, I obtained Monaco's agreement on the record that it would not claim against Plaintiffs for sanctions, wrongful attachment, or the like. The settlement, however, did not result for a threat of sanctions. While arguments existed to continue the attachment, I considered the cost of continuing the matter as compared to the likely property interest of Defendants remaining in that property, and decided that agreeing to dismiss the case and release the attachments was the most advisable course of action for my client.

## The Funds Attached and Prompt Notice

10. Defendants claim that Plaintiffs have attached a variety of Defendants' assets and have not notified Defendants that Plaintiffs have done so. This claim is patently false.

11. I am the attorney responsible for the coordination of the service of the Rule B writs in this case. From many Rule B proceedings in which I have acted as counsel for the defendant, counsel for the plaintiff, or counsel for the bank as garnishee, I am familiar with the subpoena compliance personnel at many of the financial institutions listed in the Amended Order of Attachment in this case. From past experience, the personnel at these institutions advise counsel for the plaintiff of attachments of assets as they occur.

12. The New York financial institutions, however, are burdened with processing literally hundreds of Rule B writs per day. Because of this, there is a time lag that occurs between the time when a wire transfer is stopped by the financial institution and the time when the financial institution notifies the Plaintiffs' counsel.

13. In this case, stated in my first affidavit, I received official notice of attached funds at Deutsche Bank on October 11 for funds attached on September 28 and October 4. As another

3

example, I attach copies of the search reports received from JPMorgan Chase, which are dated October 6 and October 11 but which were not received by my firm until October 24.

14. Turning to the attachments at issue here, there are only two attachments of which Plaintiffs are aware: the two Deutsche Bank attachments of Mr. Kirk's amounting to a total of $11,686.94. Plaintiffs were notified of the attachments on the afternoon of October 11 and filed notice with the Ohio Court and gave notice to Defendants on October 13. I have not received, nor am I aware of any of my colleagues or co-workers receiving, notice from any financial institution of any further attachments. Because I am considered a leading Rule B practitioner in my firm, I would expect to be advised of any "unclaimed" attachment reports as I would be assumed to be the attorney in charge.

15. Defendants claim repeatedly that their assets have been attached, but they give no documents showing such freezing affecting their accounts. For example, the ADP letter attached to Mr. Kirk's Declaration of October 24, 2006 makes no reference to frozen funds. While Mr. Kirk claims that EZRA, Inc. assets were purportedly attached, no garnishee has reported to me any funds of EZRA, Inc. having been attached or frozen.

16. The sole person who has provided somewhat concrete details of attached assets is Mr. Turner, who has advised that an estate over which he is the executor has been attached by UBS Financial Services, Inc.

17. I had representatives of my office serve UBS Financial Services, Inc. on October 5, 2006. I attach a copy of one of the cover letters to UBS Financial Services, Inc. that accompanied our papers the date that we commenced serving UBS Financial Services, Inc.

18. I previously had been corresponding with outside counsel for UBS AG regarding this matter. Outside counsel for UBS AG gave me the name of the in-house counsel at UBS Financial Services, Inc., a Mr. Ed Shea, approximately two weeks ago and told me that UBS Financial Services, Inc. would be contacting me directly with regard to responding to Plaintiffs' writs of attachment.

19. At the time that Defendants filed their initial moving papers with this Court last week, I had not yet heard from UBS Financial Services, Inc. I reviewed the Defendants moving papers on Thursday, October 18, 2006, which was the date after which Defendants served those papers on us and the day on which I returned to New York from the Los Angeles proceedings. After seeing the Declaration of W. Arthur Cullman, Jr. dated October 13, 2006, I began to call Mr. Shea at UBS Financial Services, Inc. to determine whether it had attached any of the Defendants' assets.

20. I traded calls with Mr. Shea until yesterday, at which time I inquired about what assets UBS Financial Services, Inc. had attached in this matter. Mr. Shea told me that he did not know whether anything had been attached but that he would check with his subpoena/writ personnel and call me with any information that he received. He also stated that he recalled receiving the writ in this case slightly over a week ago.

21. Additionally, during my conversation with Mr. Shea, I specifically identified the account mentioned by Mr. Turner for which he is the executor, described above in paragraph 16, and asked Mr. Shea to unfreeze that account if he in fact confirmed that such a freezing had occurred. Similarly, if Plaintiffs are supplied with the details of Mr. Cullman's wife's IRAs which purportedly have been attached, we will confer with UBS Financial Services, Inc. and request their unfreezing of those accounts if they have been mistakenly frozen.

5

22. I have not yet heard back from Mr. Shea. At this time, therefore, I still have not received any further details from any financial institution – including UBS Financial Services, Inc. – as to assets of Defendants that may have been attached. As I have done previously, I will report those attachments to the Ohio Court and to the Defendants as we receive such confirmation.

WHEREFORE, it is respectfully requested that this Court deny the Defendants' motion to vacate the Rule B attachments herein, and grant such other and further relief to the Plaintiffs as may be appropriate.

_____
Michael J. Frevola (MJF 8359)

Sworn to before me this
26th day of October, 2006

_____
Notary Public

LINDA M. WILKENS
Notary Public, State of New York
No. 41-0072455     01WI9672455
Qualified in Queens County
Cert. Filed in New York County
Term Expires Sept. 30, 1998
                2010

6

EXHIBIT A

Michael J. Frevola
212 513 3516
michael.frevola@hklaw.com

October 5, 2006

**BY HAND**

UBS Financial Services Inc. (3)
1285 Avenue of the Americas
New York, New York 10019

       Re:   Williamson *et al.* v. Recovery Limited Partnership *et al.*
              06 Civ. 5724 (LTS)
              Our File No.: 508860.00001

Dear Sirs:

       We represent Plaintiffs in the referenced matter. We have reason to believe that you may be in possession of assets of one or more of the Defendants in the referenced matter, including but not limited funds in an account entitled the "W. Arthur Cullman Trust" or some similarly named account. We therefore are serving you as an additional garnishee.

       We enclose for your reference the Verified Complaint and related papers in this matter. Please take note of both the Amended Order and the Writ of Attachment, both of which provide that other non-named parties may be served as garnishees. We are serving UBS Financial Services Inc. in accordance with these provisions of the Amended Order and the Writ.

       Please contact the undersigned at his direct line or e-mail (listed above) to report any assets found or if you have any questions.

       Thank you for your cooperation in this matter.

                               Very truly yours,

                               Michael J. Frevola

MJF/eq
Encs.

# 4092630_v1

EXHIBIT B

# JPMorganChase

Court Orders and Levies
LA2-9381
451 Florida Street
Baton Rouge, Louisiana 70801

**Via U.S. Mail**
October 11, 2006

HOLLAND & KNIGHT LLP
195 BROADWAY
NEW YORK, NY 10007-3189

**Re:**   Ex Parte Order For Process of Maritime Attachment

RECOVERY LIMITED PARTNERSHIP et al.

Dear Sirs:

JPMorgan Chase Bank, N.A. ("**JPMC**") is in receipt of your Maritime Order for the above referenced case.

JPMC conducted a search of its current systems of the named judgment debtors and at this time there are no bank accounts that can be attached for this Maritime Order. Please allow this letter to serve as JPMC's answer to the Ex Parte Order For Process of Maritime Attachment.

If you should have any questions regarding this matter, please contact the bank at (225) 332-7250 between the hours of 8:00am – 6:00pm CST.

Very truly yours,

Paul Aucoin
Processor
Court Orders and Levies

508860-0001

FILE COPY
H G H & K
SERVED BY MAIL/HAND ____
SUBMITTED/FILED ____
RECEIVED BY MAIL/HAND ____
POST MARKED ____
12-29-06 ENTERED
BY: WW

**JPMorganChase**

JPMorgan Chase Bank, N.A.
Court Orders and Levies Dept
Mail Code LA2-2808
PO Box 260164
Baton Rouge LA 70826-0164
Phone: (225) 332-7250
Fax:    (225) 332-7274

**Send Overnight to:**
451 Florida St
Baton Rouge LA 70801

*Friday, October 06, 2006*

HOLLAND & KNIGHT LLP

195 BROADWAY

NEW YORK, NY 10007

Reference          WILLIAMSON VS RECOVERY LIMITED PARTNERSHIP

Case Number #      06CV5724

To Whom It May Concern:

We recently received a restraint from your office in connection with the above named proceeding: Please note the following:

**NO RECORD LOCATED.**

For further information, please contact our Customer Service area at: (225) 332-7250.

Very truly yours,

*Tina Coleman*

Tina Coleman
Court Orders and Levies Department

NLP0020

JPMorgan Chase Bank, N.A.
Court Orders and Levies
PO Box 260154
Baton Rouge, LA 70826-0164

To: M. Frevola

HOLLAND & KNIGHT LLP
195 BROADWAY
NEW YORK, NY 10007-3189