**Exhibit E**

Division of Corporations - General Information - Entity Details                     Page I of I

Frequently Asked Questions   View Search Results   Summary of Charges   Logout

## Entity Details

| | | | |
|---|---|---|---|
| File Number: | **2234173** | Incorporation Date / Formation Date: | **06/22/1990** (mm/dd/yyyy) |
| Entity Name: | **COLUMBUS EXPLORATION, LLC** | | |
| Entity Kind: | **LIMITED LIABILITY COMPANY (LLC)** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |
| Status: | **GOOD STANDING** | Status Date: | **07/06/1998** |

**TAX INFORMATION**

| | | | |
|---|---|---|---|
| Last Annual Report Filed: | **NO REPORTS ON FILE** | | |
| Annual Tax Assessment: | **$ 200.00** | Tax Due: | **$ 0.00** |
| Tax Status: | **CURRENT** | Total Authorized Shares: | **0** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **THE CORPORATION TRUST COMPANY** | | |
| Address: | **CORPORATION TRUST CENTER 1209 ORANGE STREET** | | |
| City: | **WILMINGTON** | County: | **NEW CASTLE** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **(302)658-7581** | | |

**FILING HISTORY (Last 5 Filings)**

| Seq | Document Code | Description | No. of pages | Filing Date (mm/dd/yyyy) | Filing Time | Effective Date (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| 1 | 17217 | Conversion & Formation | 2 | 11/25/1998 | 16:30 | 11/25/1998 |
| | **Former Name:** | COLUMBUS EXPLORATION LIMITED PARTNERSHIP | | | | |
| 2 | 1719L | L.P./L.L.C. Restoration | 1 | 07/06/1998 | 11:56 | 07/06/1998 |
| 3 | 0102L | Register L.P. | 1 | 06/22/1990 | 16:00 | 06/22/1990 |

Back to Entity Search

To contact a Delaware Online Agent click here.

**Exhibit F**

**LIMITED PARTNERSHIP ANNUAL REPORT 1997**

FLORIDA DEPARTMENT OF STATE
Sandra Mortham
Secretary of State
DIVISION OF CORPORATIONS

FILED
96 DEC 24 PM 4: 15
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

**1a. DOCUMENT #**

Columbus Exploration
Limited Partnership

End of 14th Street, P.O. Box 767
Fernandina Beach, FL 32034

**2.** Mailing Address

**2a.** Principal Office Address

| | |
|---|---|
| **3.** Date Formed or Registered | 12/16/96 |
| **3a.** Date of Last Report | N/A |
| **4.** State or Country of Formation | Delaware |
| **6.** FEI Number | 59-3022670 |
| **5a.** Capital Contribution | $10,000,000 |
| **5b.** Amount of Capital Contribution at $1,000, V. | $75,000 |
| **7.** Certificate of Status Desired | $8.75 |

**9.** Name and Address of Current Registered Agent

CT Corporation System
1200 South Pine Island Road
Plantation, FL  33324

**10.** Name of New Registered Agent

FL

**A GENERAL PARTNER THAT IS A CORPORATION, LIMITED PARTNERSHIP OR OTHER BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.**

| **11.** Name of General Partner | **11a.** Address of each General Partner | **11b.** City, State & Zip Code | **11c.** Registration Number |
|---|---|---|---|
| Omni Engineering, Inc. | End of 14th Street | Fernandina Beach, FL 32034 | F96000000567 |

**Note: General partners MAY NOT be changed on this form; an amendment must be filed to change a general partner.**

**12.**

SIGNATURE   Debra L. Burley, Treasurer          DATE  12/23/96

Debra L. Burley, Treasurer   (Daytime Telephone Number)

FILE ON OR BEFORE DECEMBER 31, 1997 OR PARTNERSHIP WILL BE SUBJECT TO REVOCATION AND $500 PENALTY FEE

| LIMITED PARTNERSHIP ANNUAL REPORT **1998** |  | FLORIDA DEPARTMENT OF STATE **Sandra B. Mortham** Secretary of State DIVISION OF CORPORATIONS | FILED SECRETARY OF STATE DIVISION OF CORPORATIONS 98 FEB 23 PM 2: 05 |

**1.** Name of Limited Partnership

**1a.** DOCUMENT #
B96000000481

COLUMBUS EXPLORATION LIMITED PARTNERSHIP

| Mailing Address P.O. BOX 787 FERNANDINA BEACH FL 32034 | Principal Office Address END OF 14TH STREET FERNANDINA BEACH FL 33034 | **3.** Date Formed or Registered 12/18/1996 **3a.** Date of Last Report 12/24/1996 **4.** State or Country of Formation DE | **5a.** Capital Contributions as Shown on record. $10,000,000.00 **5b.** Amount of Capital Contributions in FLORIDA to date: $75,000.00 |

| **2.** Mailing Address | **2a.** Principal Office Address | **6.** FEI Number 59-3022670 | ☐ Applied For ☐ Not Applicable |
| Suite, Apt. #, etc. | Suite, Apt. #, etc. | **7.** Certificate of Status Desired ☐ | $8.75 Additional Fee Required |
| City & State | City & State | **8.** Make check payable to: Dept. of State (See reverse side for fee information) | |
| Zip     Country | Zip     Country | | |

| **9.** Name and Address of Current Registered Agent | **10.** If changed, new Registered Agent/Office |
| C T CORPORATION SYSTEM 1200 SOUTH PINE ISLAND ROAD PLANTATION FL 33324 | Name Street Address (P.O. Box Number is Not Acceptable) Suite, Apt. #, etc. City          FL     Zip Code |

**10a.** Pursuant to the provisions of sections 620.1051 and 620.192, Florida Statutes, the above-named limited partnership organized or registered under the laws of the State of Florida, submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. Such change was authorized by its general partner(s). I hereby accept the appointment of registered agent. I am familiar with, and accept the obligations of section 620.192, Florida Statutes.

SIGNATURE (Registered Agent Accepting Appointment) _____ DATE _____

**A GENERAL PARTNER THAT IS A CORPORATION, LIMITED PARTNERSHIP OR OTHER BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.**

| **11.** Name(s) of General Partner(s) | **11a.** Address of Each General Partner (Do NOT Use Post Office Box Numbers) | **11b.** City, State & Zip Code | **11c.** Registration/ Document Number |
| OMNI ENGINEERING, INC. | END OF 14TH STREET | FERNANDINA BEACH FL 3 30002442963---8 --02/27/98--01094--001 ****541.25  ****541.25 | F96000008587 |
| | 437.30    103.75    dcc | | |

**Note:** General partners MAY NOT be changed on this form; an amendment must be filed to change a general partner.

**12.** I do hereby certify that the information supplied with this filing is voluntarily furnished and does not qualify for the exemption stated in Section 119.07(3)(k), Florida Statutes. I release the Division of Corporations from any liability of non-compliance with Section 119.07(3)(k) in the event that the information supplied is deemed exempt from public access. I further certify that the information indicated on this annual report is true and accurate and that my signature shall have the same legal effects as if made under oath. I further certify that I am a General Partner of the limited partnership, receiver or trustee empowered to execute this report is required by Chapter 620, Florida Statutes.

SIGNATURE _____     DATE 12/23/97
Typed or Printed Name of General Partner Signing Form    Thomas G. Thompson, President of OMNI Engineering (614) 299-6000

FILE ON OR BEFORE DECEMBER 31, 1998 OR LIMITED PARTNERSHIP
WILL BE SUBJECT TO REVOCATION AND $500 PENALTY FEE

| LIMITED PARTNERSHIP ANNUAL REPORT **1999** |  FLORIDA DEPARTMENT OF STATE Sandra B. Mortham Secretary of State DIVISION OF CORPORATIONS | FILED 99 APR -8 PM 1:21 SECRETARY OF STATE TALLAHASSEE, FLORIDA |
|---|---|---|

| 1. Name of Limited Partnership | 1a. **DOCUMENT #** **B96000000481** | |
|---|---|---|

**COLUMBUS EXPLORATION LIMITED PARTNERSHIP**

| Mailing Address | Principal Office Address | 3. Date Formed or Registered 12/16/1996 | 5a. Capital Contributions as Shown on record $10,000,000.00 |
|---|---|---|---|
| P.O. BOX 767 FERNANDINA BEACH FL 33034 | END OF 14TH STREET FERNANDINA BEACH FL 33034 | 3a. Date of Last Report 02/23/1998 | 5b. Amount of Capital Contributions in FLORIDA to date $ 75,000.00 |
| 2. Mailing Address | 2a. Principal Office Address | 4. State or Country of Formation DE | |
| Suite, Apt. #, etc. | Suite, Apt. #, etc. 1200 Peggy Place | 6. TEI Number 59-3022670 | ☐ Applied For ☐ Not Applicable |
| City & State | City & State Fernandina Beach FL | 7. Certificate of Status Desired | ☐ $8.75 Additional Fee Required |
| Zip       Country | Zip 32034     Country | 8. Make check payable to Dept. of State (see reverse side for fee information) | |

| 9. Name and Address of Current Registered Agent | 10. If changed, new Registered Agent/Office |
|---|---|
| C T CORPORATION SYSTEM 1200 SOUTH PINE ISLAND ROAD PLANTATION FL 33324 | Name Street Address (P.O. Box Number is Not Acceptable) Suite, Apt. #, etc. City |

░░░░░░░░░░░░░░░░░░░░░░░░░ -04/16/99--01090--012
****541.FL    ****541.25

10a. Pursuant to the provisions of sections 620.1051 and 620.192, Florida Statutes, the above-named limited partnership organized or registered under the laws of the State of Florida, submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. Such change was authorized by its general partner(s) I hereby accept the appointment of registered agent. I am familiar with, and accept the obligations of section 620.192, Florida Statutes

SIGNATURE (Registered Agent Accepting Appointment)                          DATE

**A GENERAL PARTNER THAT IS A CORPORATION, LIMITED PARTNERSHIP OR OTHER BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.**

| 11. Name(s) of General Partner(s) | 11a. Address of Each General Partner (Do NOT Use Post Office Box Numbers) | 11b. City, State & Zip Code | 11c. Registration/Document Number |
|---|---|---|---|
| OMNI ENGINEERING, INC. | END OF 14TH STREET 1200 Peggy Place P.O. Box 767 | FERNANDINA BEACH FL 32034 4-13-99 | F96000006567 |

**Note:** General partners MAY NOT be changed on this form; an amendment must be filed to change a general partner.

12. I do hereby certify that the information supplied with this filing is voluntarily furnished and does not qualify for the exemption stated in Section 119.07(3)(k), Florida Statutes. I release the Division of Corporations from any liability of non-compliance with Section 119.07(3)(k) in the event that the information supplied is deemed exempt from public access. I further certify that the information indicated on this annual report is true and accurate and that my signature shall have the same legal effects as if made under oath. I further certify that I am a General Partner of the limited partnership, receiver or trustee empowered to execute this record as required by chapter 620 Florida Statutes

SIGNATURE _Thomas G. Thompson_                          DATE 4/5/99

Typed or Printed Name of General Partner Signing Form _Thomas G. Thompson, President of Omni Engineering_     Daytime Telephone Number ( 614 ) 299-1540

CR2E003 (8/98)

0011733

**DOCUMENT #**    **B96000000481**

**1. Entity Name**

COLUMBUS EXPLORATION LIMITED PARTNERSHIP

| Principal Place of Business | Mailing Address |
|---|---|
| 1200 POGY PLACE | P.O. BOX 767 |
| FERNANDINA BEACH FL 32034 | FERNANDINA BEACH FL 32035-0767 |

**FILED**
SECRETARY OF STATE
DIVISION OF CORPORATIONS

**00 MAY -5 PM 1: 33**

DO NOT WRITE IN THIS SPACE

| **2. Principal Place of Business** | **3. Mailing Address** | | |
|---|---|---|---|
| Suite, Apt. #, etc. | Suite, Apt. #, etc. | | |
| City & State | City & State | **4. FEI Number** 59-3022670 | Applied For / Not Applicable |
| Zip | Country | Zip | Country | **5.** Certificate of Status Desired ☐ | **$8.75** Additional Fee Required |

| **6. Name and Address of Current Registered Agent** | **7. Name and Address of New Registered Agent** |
|---|---|
| C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION FL 33324 | Name<br><br>Street Address (P.O. Box Number is Not Acceptable)<br><br>City    **FL**    Zip Code |

**8.** The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE X _____

Signature, typed or printed name of registered agent and title if applicable. (NOTE: Registered Agent signature required when reinstating) X _____ DATE

| **9.** Capital Contributions as Shown on record. **$10,000,000.00** | **10.** Amount of Capital Contributions in FLORIDA to date. *10,000,000* | **11. MAKE CHECK PAYABLE TO DEPT. OF STATE** SEE REVERSE SIDE FOR FEE INFORMATION |
|---|---|---|

**A GENERAL PARTNER THAT IS A BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.**
**NOTE:** General Partners MAY NOT be changed on the form; an amendment must be filed to change a general partner.

| **12.** | GENERAL PARTNER INFORMATION | **13.** | ADDRESS CHANGES ONLY |
|---|---|---|---|
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY - ST - ZIP | F96000006587<br>OMINI ENGINEERING, INC.<br>1200 POGY PLACE<br>FERNANDINA BEACH FL 32034 | STREET ADDRESS<br><br>CITY - ST - ZIP | 100003288561--7<br>-06/14/00--01042--013<br>****526.25   ****526.25 |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY - ST - ZIP | | STREET ADDRESS<br><br>CITY - ST - ZIP | |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY - ST - ZIP | | STREET ADDRESS<br><br>CITY - ST - ZIP | |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY - ST - ZIP | | STREET ADDRESS<br><br>CITY - ST - ZIP | |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY - ST - ZIP | | STREET ADDRESS<br><br>CITY - ST - ZIP | |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY - ST - ZIP | | STREET ADDRESS<br><br>CITY - ST - ZIP | |

**14.** I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am a General Partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes.

SIGNATURE: X _SIGNATURE REQUIRED_     X 4/22/00

SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING GENERAL PARTNER     Date     Daytime Phone #

# 2001 UNIFORM BUSINESS REPORT (UBR)

**DOCUMENT #**  **B96000000481**

**1. Entity Name**

COLUMBUS EXPLORATION LIMITED PARTNERSHIP

FILED

| Principal Place of Business | Mailing Address |
|---|---|
| 1200 POGY PLACE<br>FERNANDINA BEACH FL 32034 | P.O. BOX 767<br>FERNANDINA BEACH FL 32034 |

01 JUN 22 PM 12: 38

SECRETARY OF STATE
TALLAHASSEE, FLORIDA

DO NOT WRITE IN THIS SPACE

| 2. Principal Place of Business | 3. Mailing Address |
|---|---|
| | 433 W. 6TH AVE. |
| Suite, Apt. #, etc. | Suite, Apt. #, etc. |
| City & State | City & State |
| | COLUMBUS, OHIO |
| Zip | Country | Zip | Country |
| | | 43201 | USA |

**4. FEI Number** 59-3022670  Applied For / Not Applicable

**5.** Certificate of Status Desired ☐ **$8.75** Additional Fee Required

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION FL 33324 | Name<br>Street Address (P.O. Box Number is Not Acceptable)<br>City    FL    Zip Code |

**8.** The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE _____

Signature, typed or printed name of registered agent and title if applicable.    (NOTE: Registered Agent signature required when reinstating)    DATE

| 9. Capital Contributions as Shown on record. | $10,000,000.00 | 10. Amount of Capital Contributions in FLORIDA to date. | 11. MAKE CHECK PAYABLE TO DEPT. OF STATE SEE REVERSE SIDE FOR FEE INFORMATION |
|---|---|---|---|

**A GENERAL PARTNER THAT IS A BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.**
**NOTE:** General Partners MAY NOT be changed on the form; an amendment must be filed to change a general partner.

| 12. | GENERAL PARTNER INFORMATION | 13. | ADDRESS CHANGES ONLY |
|---|---|---|---|
| DOCUMENT # <br> NAME <br> STREET ADDRESS <br> CITY-ST-ZIP | F96000006587<br>OMINI ENGINEERING, INC.<br>1200 POGY PLACE<br>FERNANDINA BEACH FL 32034 | STREET ADDRESS <br> CITY-ST-ZIP | 5101 N A1A <br> FT. PIERCE, FL |
| DOCUMENT # <br> NAME <br> STREET ADDRESS <br> CITY-ST-ZIP | | STREET ADDRESS <br> CITY-ST-ZIP | |
| DOCUMENT # <br> NAME <br> STREET ADDRESS <br> CITY-ST-ZIP | | STREET ADDRESS <br> CITY-ST-ZIP | 000004445790 1 <br> --06/26/01--01051--009- <br> ****526.25  ****526.25 |
| DOCUMENT # <br> NAME <br> STREET ADDRESS <br> CITY-ST-ZIP | | STREET ADDRESS <br> CITY-ST-ZIP | |
| DOCUMENT # <br> NAME <br> STREET ADDRESS <br> CITY-ST-ZIP | | STREET ADDRESS <br> CITY-ST-ZIP | |
| DOCUMENT # <br> NAME <br> STREET ADDRESS <br> CITY-ST-ZIP | | STREET ADDRESS <br> CITY-ST-ZIP | |

**14.** I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(I), Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am a General Partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes.

**SIGNATURE:** X _____    X _____

SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING GENERAL PARTNER    Date    Daytime Phone #

CR2E003 (11/00)

# 2002 UNIFORM BUSINESS REPORT (UBR)

0019619

AB

**DOCUMENT #   B96000000481**

**1. Entity Name**

**COLUMBUS EXPLORATION LIMITED PARTNERSHIP**

| Principal Place of Business | Mailing Address |
|---|---|
| 1200 POGY PLACE<br>FERNANDINA BEACH FL 32034 | 433 W. 6TH AVE.<br>COLUMBUS OH 43201 |

APPROVED
AND
FILED

02 MAY 24   PM 2:11

SECRETARY OF STATE
TALLAHASSEE, FLORIDA



| 2. Principal Place of Business | 3. Mailing Address |
|---|---|
| Suite, Apt. #, etc. | Suite, Apt. #, etc. |
| City & State | City & State |
| Zip | Country | Zip | Country |

**DUE BY MAY 1, 2002**

| 4. FEI Number | 59-3022670 | Applied For |
|---|---|---|
| | | Not Applicable |

**5.** Certificate of Status Desired ☐   **$8.75** Additional Fee Required

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION FL 33324 | Name<br>Street Address (P.O. Box Number Is Not Acceptable)<br>City    **FL**    Zip Code |

**8.** The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE _____   DATE _____
Signature, typed or printed name of registered agent and title if applicable.

| 9. Capital Contributions as Shown on record. **$10,000,000.00** | 10. Amount of Capital Contributions in FLORIDA to date. *10,000,000.00* | 11. MAKE CHECK PAYABLE TO DEPT. OF STATE SEE REVERSE SIDE FOR FEE INFORMATION |
|---|---|---|

**A GENERAL PARTNER THAT IS A BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.**
NOTE: General Partners MAY NOT be changed on the form; an amendment must be filed to change a general partner.

| 12. GENERAL PARTNER INFORMATION | 13. ADDRESS CHANGES ONLY |
|---|---|
| DOCUMENT # F96000006567<br>NAME OMINI ENGINEERING, INC.<br>STREET ADDRESS 5101 N. A1A<br>CITY-ST-ZIP FT. PIERCE FL | STREET ADDRESS<br>CITY-ST-ZIP   500005678245--6<br>06/04/02--01093--019<br>****526.25   ****526.25 |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |

CR2E003 (9/01)

**14.** I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am a General Partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes

**SIGNATURE:** X SIGNATURE REQUIRED    X 5/20/02   X 561-201-6240
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING GENERAL PARTNER    Date    Daytime Phone #

# 2003 LIMITED PARTNERSHIP
# UNIFORM BUSINESS REPORT (UBR)

**DOCUMENT #**   **B96000000481**

1. Entity Name
COLUMBUS EXPLORATION LIMITED PARTNERSHIP

FILED
03 JUN -6 AM 8:00
SECRETARY OF STATE
TALLAHASSEE

| Principal Place of Business | Mailing Address |
|---|---|
| 1200 POGY PLACE | 433 W. 6TH AVE. |
| FERNANDINA BEACH FL 32004 | COLUMBUS OH 43201 |

| 2. Principal Place of Business | 3. Mailing Address | |
|---|---|---|
| Suite, Apt. #, etc. | Suite, Apt. #, etc. | DUE BY MAY 1, 2003 |
| City & State | City & State | 4. FEI Number 59-3022670 / Applied For / Not Applicable |
| Zip    Country | Zip    Country | 5. Certificate of Status Desired ☐ **$8.75** Additional Fee Required |

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| C T CORPORATION SYSTEM 1200 SOUTH PINE ISLAND ROAD PLANTATION FL 33324 | Name<br><br>Street Address (P.O. Box Number is Not Acceptable)<br><br>City                          **FL**   Zip Code |

8. The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. I am familiar with, and accept the obligations of registered agent.

SIGNATURE _____ Signature, typed or printed name of registered agent and title if applicable.          DATE

| 9. Capital Contributions as Shown on record. **$10,000,000.00** | 10. Amount of Capital Contributions in FLORIDA to date. | 11. MAKE CHECK PAYABLE TO FL. DEPT. OF STATE SEE REVERSE SIDE FOR FEE INFORMATION |
|---|---|---|

**A GENERAL PARTNER THAT IS A BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.**
**NOTE: General Partners MAY NOT be changed on the form; an amendment must be filed to change a general partner.**

| 12. GENERAL PARTNER INFORMATION | 13. ADDRESS CHANGES ONLY |
|---|---|
| DOCUMENT # F96000006587<br>NAME OMINI ENGINEERING, INC.<br>STREET ADDRESS 5101 N. A1A<br>CITY-ST-ZIP FT. PIERCE FL | STREET ADDRESS<br>CITY-ST-ZIP   800020565498<br>06/06/03--01052--007  **526.25 |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br>CITY-ST-ZIP |

14. I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am a General Partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes.

**SIGNATURE:** SIGNATURE REQUIRED          x 5/5/03 x
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING GENERAL PARTNER          Date        Daytime Phone #

**2004 LIMITED PARTNERSHIP ANNUAL REPORT**
**Due By May 1, 2004**

**FILED**
**Jun 14, 2004  08:00 AM**
**Secretary of State**

DOCUMENT # B96000000481
1. Entity Name
COLUMBUS EXPLORATION LIMITED PARTNERSHIP

| Principal Place of Business | Mailing Address |
|---|---|
| 1200 POGY PLACE<br>FERNANDINA BEACH, FL 32034 | 433 W. 6TH AVE.<br>COLUMBUS, OH 43201 |

| 2. Principal Place of Business | 3. Mailing Address |
|---|---|
| Suite/Apt #, etc. | Suite, Apt #, etc. |
| City & State | City & State |
| Zip    Country | Zip    Country |

04282004   Chg-LP   CR2E003 (10/03)

4. FEI Number     Applied For
59-3022670        Not Applicable

5. Certificate of Status Desired  ☐   $8.75 Additional Fee Required

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION, FL 33324 | Name<br>Street Address (P.O. Box Number is Not Acceptable)<br>City          FL   Zip Code |

8. The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. I am familiar with, and accept the obligations of registered agent.

SIGNATURE _____  DATE _____

| 9. Capital Contributions as Shown on record. | $10,000,000.00 | 10. Amount of Capital Contributions in FLORIDA to date. |
|---|---|---|

A GENERAL PARTNER THAT IS A BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.
NOTE: General Partners MAY NOT be changed on the form; an amendment must be filed to change a general partner.

| 12. | GENERAL PARTNER INFORMATION | 13. | ADDRESS CHANGES ONLY |
|---|---|---|---|
| DOCUMENT # | F96000006567 | STREET ADDRESS | |
| NAME | OMINI ENGINEERING, INC. | CITY-ST-ZIP | |
| STREET ADDRESS | 5101 N. A1A | | |
| CITY-ST-ZIP | FT. PIERCE, FL | | |
| DOCUMENT # | | STREET ADDRESS | |
| NAME | | CITY-ST-ZIP | U00000162582 |
| STREET ADDRESS | | | 06/16/04-80001-006 526.25 |
| CITY-ST-ZIP | | | |
| DOCUMENT # | | STREET ADDRESS | |
| NAME | | CITY-ST-ZIP | |
| STREET ADDRESS | | | |
| CITY-ST-ZIP | | | |
| DOCUMENT # | | STREET ADDRESS | |
| NAME | | CITY-ST-ZIP | |
| STREET ADDRESS | | | |
| CITY-ST-ZIP | | | |
| DOCUMENT # | | STREET ADDRESS | |
| NAME | | CITY-ST-ZIP | |
| STREET ADDRESS | | | |
| CITY-ST-ZIP | | | |
| DOCUMENT # | | STREET ADDRESS | |
| NAME | | CITY-ST-ZIP | |
| STREET ADDRESS | | | |
| CITY-ST-ZIP | | | |

STAPLE CHECK HERE

14. I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am a General Partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes.

SIGNATURE: _X_ P Ce Thorp_____   _X_ 6/7/04   _____
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING GENERAL PARTNER    Date    Daytime Phone #

**Exhibit G**

Doc ID --> F755_1336

---

State of Ohio
Department of State

F755-1336

**Sherrod Brown**
Secretary of State

Date 10/11/85          Number FN 30195          Receipt No.    27364

F755-1336        0167

Received of          PORTER,WRIGHT,MORRIS & ARTHUR
or filed by _____

The sum of $ _____ 10.00 for filing ____ NFO _____ of

RECOVERY LIMITED PARTNERSHIP

Returned to:                    27364                    NFO   $ _____ 10.00
    PORTER,WRIGHT,MORRIS & ARTHUR
    ATT:S.KELLY                  **RECEIPT**
    37 W. BROAD ST.
    COLUMBUS, OH 43215
Name:                                          Total Fee:  $ _____ 10.00
RECOVERY LIMITED PARTNERSHIP

Doc ID --> F755_1336



**Department of State**

# The State of Ohio

## Sherrod Brown
Secretary of State

FN 30195

## ❧ Certificate ❧

It is hereby certified that the Secretary of State of Ohio has custody of the Records of Incorporation and Miscellaneous Filings that said

records show the filing and recording of _____ YES _____

_____ of

RECOVERY LIMITED PARTNERSHIP

REGISTRANT:      RECOVERY LIMITED PARTNERSHIP
ADDRESS:         867 NEIL AVE.
                 COLUMBUS, OH 43201

STATE OF INCORP: NA

EXPIRATION DATE: 10/13/95

**United States of America**
State of Ohio
Office of the Secretary of State

Recorded on Roll ____ F755 ____ at Frame ____ 1336 ____ of
the Records of Incorporation and Miscellaneous Filings

Witness my hand and the seal of the Secretary of State, at the
City of Columbus, Ohio, this ____ 13th ____ day of ____ JUL ____,
A.D. 19 _95_.



*Sherrod Brown*

**Sherrod Brown**
Secretary of State

Page 2

Doc ID -->        F755_1336

Form FNO, March, 1985
Prescribed by Sherrod Brown
Secretary of State

approved by _____
date _____
fee _____

### REPORT OF USE OF FICTITIOUS NAME
(A Business Name That is not the full legal name of the user)
(Ohio Revised Code Section 1329.01 et seq.)

1.  The exact form of the business (fictitious) name used is: _____
    Recovery Limited Partnership

2.  The name of the user of the business (fictitious) name is: _____
    Recovery Limited Partnership

3.  The user of the above fictitious name is: (check appropriate box)
    (  ) individual person                    (  ) a foreign corporation
    (  ) General Partnership                        incorporated in the state
    (x) limited partnership; County                 of _____
        in which certificate or appli-             holding Ohio License
        cation of limited partnership is           No. _____
        filed is:  Franklin                   (  ) an unincorporated
    (  ) an Ohio corporation, Charter              association
        No. _____

4.  The business address of the user ___ 867 Neil Avenue ___
                                            (street address)
    Columbus            Franklin          Ohio        43201
    (city, village or township)  (county)    (state)    (zip code)

    Note:    If the applicant is a General Partnership, list the name and
             residence address of every partner.  If the applicant is a
             Limited Partnership, list the name and residence address of
             every general partner.

NAMES OF GENERAL PARTNERS              COMPLETE RESIDENCE ADDRESSES:

Thomas J. Thompson                    1046 Neil Avenue

                                      Columbus, Ohio 43201

5.  The general nature of business conducted under the fictitious name is:
    Ocean engineering research and resource evaluation.

                                 _____
                                 (Signature of applicant) Thomas G. Thompson

                                 General Partner
                                 (Title of signer, if applicant is not an individ-
                                 ual)
    14th Floor    State Office Tower    Columbus, Ohio 43215    614/466-3910

Doc ID -->    F755_1336

CORRESPONDENCE

B. Kelly
Porter, Wright, Morris +
Arthur
37 W. Broad St
Columbus OH
43215

**Doc ID -->**      200518101472

| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|
| 06/30/2005 | 200518101472 | FICTITIOUS NAME RENEWAL (NFR) | 25.00 | .00 | .00 | .00 | .00 |

**Receipt**
This is not a bill. Please do not remit payment.

COLUMBUS EXPLORATION
433 W 6TH AVE
COLUMBUS, OH 43201

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, J. Kenneth Blackwell

#### FN30195

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**RECOVERY LIMITED PARTNERSHIP**

and, that said business records show the filing and recording of:

Document(s)                                           Document No(s):
**FICTITIOUS NAME RENEWAL**                  **200518101472**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 29th day of June, A.D.
2005.

Ohio Secretary of State

Page 1



J. Kenneth Blackwell, Secretary of State
30 East Broad Street
Lower Level
Columbus, Ohio 43215

## RENEWAL OF FICTITIOUS NAME REPORT

1.  The Registration Number to be renewed is:  **FN30195**

2.  The fictitious name to be renewed is:
    **RECOVERY LIMITED PARTNERSHIP**

3.  The date of original registration is:  **October 10, 1985**

4.  The applicant is:  (check appropiate item)
    __     an individual
    __     an Ohio corporation, Charter Number: _____
    __     a foreign corporation, incorporated in the state of:  _____
    _X_    a General Partnership
    __     a Limited Liability Company
    __     a Limited Partnership; County in Ohio where certificate /application of limited partnership
    is filed: _____
    __     a Professional association
    __     an association
    __     a Society, Foundation, Federation or other organization

5.  The name of the applicant designated in item 4 is:

    _Recovery Limited Partnership_
    (Note: When the applicant is a partnership, the name of the partnership must appear on this line)

6.  The business address of the applicant is:

    _433 N. 6th Ave_
    (Street address only, P.O. Box not acceptable)

    _Columbus_      _Franklin_     , _Ohio_      _43201_
    (City, Village or Township)     (County)     (State)     (Zip Code)

7.  Complete only if applicant is a partnership:

    Names of All General Partners      Complete Residence Address
    _Thomas G. Thompson_      _433 N. 6th Ave Columbus oH 43201_

    This document is signed by a corporate officer, general
    partner, association member or officer, or the individual appplicant.

    By: _Deloura L. Burley_ _____

BS_QRY_AGENT_CONTACT_DET                    Page 1 of 1



## Agent Contact Information

| Agent Name | Agent Address | City | State | Zip | Effective Date | Contact Status |
|---|---|---|---|---|---|---|
| Recovery Limited Partnership | 433 W Sixth Ave | Columbus | Ohio | 43201 | 10-OCT-85 | Active |

Back to Menu



## Foreign Profit

### COLUMBUS - AMERICA DISCOVERY GROUP, INC.

#### PRINCIPAL ADDRESS
433 WEST SIXTH AVENUE
COLUMBUS OH 43201

#### MAILING ADDRESS
433 WEST SIXTH AVENUE
COLUMBUS OH 43201

| Document Number | FEI Number | Date Filed |
|---|---|---|
| P29283 | 311221030 | 05/10/1990 |
| **State** | **Status** | **Effective Date** |
| OH | ACTIVE | NONE |

## Registered Agent

| Name & Address |
|---|
| CT CORPORATION SYSTEM<br>1200 S. PINE ISLAND ROAD<br>PLANTATION FL 33324 |
| Name Changed: 08/17/1992 |
| Address Changed: 08/17/1992 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| THOMPSON, THOMAS G.<br>5101 N A1A<br><br>FT PIERCE FL | PD |
| EVANS, ROBERT D.<br>500 E. MAYNARD<br><br>COLUMBUS OH | V |
| LOVELAND, CURTIS A., ESQ<br>41 SOUTH HIGH STREET<br><br>COLUMBUS OH | S |



| | |
|---|---|
| BURLEY, DEBRA L<br>644 THISTLE AVE.<br><br>GAHANNA OH | T |
| ROBOL, RICHARD T<br>433 W. 6TH AVE.<br><br>COLOMBUS OH | V |

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2004 | 07/30/2004 |
| 2005 | 05/05/2005 |
| 2006 | 07/17/2006 |

[ Previous Filing ]        [ Return to List ]        [ Next Filing ]

No Events
No Name History Information

## Document Images
Listed below are the images available for this filing.

05/05/2005 -- ANN REP/UNIFORM BUS REP
07/30/2004 -- ANN REP/UNIFORM BUS REP
05/22/2003 -- ANN REP/UNIFORM BUS REP
05/28/2002 -- COR - ANN REP/UNIFORM BUS REP
05/18/2001 -- ANN REP/UNIFORM BUS REP
05/18/2000 -- ANN REP/UNIFORM BUS REP
03/06/1999 -- ANNUAL REPORT
05/13/1998 -- ANNUAL REPORT
03/12/1997 -- ANNUAL REPORT
03/28/1996 -- 1996 ANNUAL REPORT

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

[ Corporations Inquiry ]        [ Corporations Help ]

# 2006 ~~2005~~ FOR PROFIT CORPORATION ANNUAL REPORT (AR)

**FILED**
**May 23, 2006 8:00 am**
**Secretary of State**

05-23-2006 90011 035 ***450.00

**DOCUMENT # F96000006567**

1. Entity Name

OMNI ENGINEERING OF OHIO, INC.

| Principal Place of Business | Mailing Address |
|---|---|
| 1200 POGY PLACE., P.O. BOX 767<br>FERNANDINA BEACH FL 32034-3180 | 433 W. 6TH AVE<br>COLUMBUS OH 43201 |

40094100

1st MOORE    CR2E034 (10/04)

| 2. Principal Place of Business | 3. Mailing Address | | |
|---|---|---|---|
| Suite, Apt. #, etc. | Suite, Apt. #, etc. | 4. FEI Number<br>31-1306572 | Applied For / Not Applicable |
| City & State | City & State | 5. Certificate of Status Desired ☐ | $8.75 Additional/ Fee Required |
| Zip | Country | Zip | Country |

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION FL 33324 | Name<br><br>Street Address (P.O. Box Number is Not Acceptable)<br><br>City _____ FL   Zip Code |

8. The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. I am familiar with, and accept the obligations of registered agent.

SIGNATURE: _____
Signature, typed or printed name of registered agent and title if applicable    (NOTE: Registered Agent signature required when reinstating)    DATE

**FILE NOW!!! FEE IS $150.00**
**After May 1, 2005 Fee Will Be $550.00**
**Make Check Payable to Florida Department of State**

9. Election Campaign Financing    **$5.00** May Be
Trust Fund Contribution. ☐    Added to Fees

| 10. OFFICERS AND DIRECTORS | | 11. ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 11 | |
|---|---|---|---|
| TITLE PD<br>NAME THOMPSON, THOMAS G<br>STREET ADDRESS 5101 N. A1A<br>CITY-ST-ZIP FT PIERCE FL | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change ☐ Addition |
| TITLE V<br>NAME EVANS, ROBERT D<br>STREET ADDRESS 500 E. MAYNARD<br>CITY-ST-ZIP COLUMBUS FL | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change ☐ Addition |
| TITLE S<br>NAME LOVELAND, CURTIS A ESQ<br>STREET ADDRESS 41 S. HIGH STREET<br>CITY-ST-ZIP COLUMBUS OH | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change ☐ Addition |
| TITLE T<br>NAME BURLEY, DEBRA L<br>STREET ADDRESS 644 THISTLE AVE<br>CITY-ST-ZIP GAHANNA OH | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change ☐ Addition |
| TITLE V<br>NAME ROBOL, RICHARD T<br>STREET ADDRESS 433 W 6TH AVE<br>CITY-ST-ZIP COLUMBUS FL | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change ☐ Addition |
| TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change ☐ Addition |

12. I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 10 or Block 11 if changed, or on an attachment with an address, with all other like empowered.

SIGNATURE: _Debra L. Burley_    5-17-06
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR    Date    Daytime Phone #

Division of Corporations                                    Page 1 of 2



# Foreign Profit

## OMNI ENGINEERING OF OHIO, INC.

## Cross Reference Name

## OMNI ENGINEERING, INC.

### PRINCIPAL ADDRESS
1200 POGY PLACE., P.O. BOX 767
FERNANDINA BEACH FL 32034-3180
Changed 05/09/2000

### MAILING ADDRESS
433 W. 6TH AVE
COLUMBUS OH 43201
Changed 05/17/2001

| Document Number | FEI Number | Date Filed |
|---|---|---|
| F96000006567 | 311306572 | 12/16/1996 |

| State | Status | Effective Date |
|---|---|---|
| DE | ACTIVE | NONE |

| Last Event | Event Date Filed | Event Effective Date |
|---|---|---|
| REINSTATEMENT | 02/20/1998 | NONE |

## Registered Agent

| Name & Address |
|---|
| C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION FL 33324 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| THOMPSON, THOMAS G<br>5101 N. A1A<br><br>FT PIERCE FL | PD |
| EVANS, ROBERT D | |

| 500 E. MAYNARD<br><br>COLUMBUS FL | V |
| LOVELAND, CURTIS A ESQ<br>41 S. HIGH STREET<br><br>COLUMBUS OH | S |
| BURLEY, DEBRA L<br>644 THISTLE AVE<br><br>GAHANNA OH | T |
| ROBOL, RICHARD T<br>433 W 6TH AVE<br><br>COLUMBUS FL | V |

## Annual Reports

| Report Year | Filed Date |
| --- | --- |
| 2004 | 07/30/2004 |
| 2005 | 05/05/2005 |
| 2006 | 05/23/2006 |

[ Previous Filing ]        [ Return to List ]        [ Next Filing ]

View Events
No Name History Information

## Document Images
Listed below are the images available for this filing.

05/23/2006 -- ANN REP/UNIFORM BUS REP
05/05/2005 -- ANN REP/UNIFORM BUS REP
07/30/2004 -- ANN REP/UNIFORM BUS REP
05/22/2003 -- ANN REP/UNIFORM BUS REP
05/29/2002 -- COR - ANN REP/UNIFORM BUS REP
05/17/2001 -- ANN REP/UNIFORM BUS REP
05/09/2000 -- ANN REP/UNIFORM BUS REP
05/07/1999 -- ANNUAL REPORT
02/20/1998 -- REINSTATEMENT

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

Corporations Inquiry           Corporations Help



**J. Kenneth Blackwell**
OHIO SECRETARY OF STATE

## Business Information

| Business Name | Charter / Registration Number | Type | Original Filing Date | Status | Expiration Date | Location / County / State | Agent / Contact Info | Business Filing Info | Pri Bus Nar |
|---|---|---|---|---|---|---|---|---|---|
| ECONOMIC ZONE RESOURCE ASSOCIATES, INC. | 678950 | Corporation For Profit | May 29 1986 | Cancel | | Columbus Franklin Ohio | Click for Details | Click for Details | Clic |

[Back to Menu](#)

J. Kenneth Blackwell
OHIO SECRETARY OF STATE

## Agent Contact Information

| Agent Name | Agent Address | City | State | Zip | Effective Date | Contact Status |
|---|---|---|---|---|---|---|
| William Kelly | 41 South High Street | Columbus | Ohio | 43215 | 21-MAY-98 | Inactive |

Back to Menu



## Business Filing Information

| Business Name | Filing Type | Filing Date | Doc Id *Click for Image !* | Doc Id *Click for Approval Cert!* | Additional Filing Type Info |
|---|---|---|---|---|---|
| ECONOMIC ZONE RESOURCE ASSOCIATES, INC. | Domestic Articles/For Profit | May 29 1986 | F926_0832 | F926_0832 | |
| | Domestic/Amended Restated Articles | May 14 1987 | G158_1285 | G158_1285 | |
| | Domestic Agent Subsequent Appointment | May 14 1987 | G158_1285 | G158_1285 | Change Of Purpose |
| | Domestic Continued Existence Letter | Sep 09 1993 | 000000072564 | 000000072564 | |
| | Domestic Agent Subsequent Appointment | Apr 22 1994 | 4110_0928 | 4110_0928 | |
| | Agent Name/Address Tax Update | Jan 08 1999 | AGNTUPDT | AGNTUPDT | |
| | Agent Name/Address Tax Update | Feb 01 1999 | AGNTUPDT | AGNTUPDT | |
| | Agent Name/Address Tax Update | Apr 07 1999 | AGNTUPDT | AGNTUPDT | |
| | Domestic/Agent Resignation | Oct 01 2003 | 200327600582 | 200327600582 | |
| | Domestic/Agent Registration Letter Served | Nov 05 2003 | 200330960875 | 200330960875 | |
| | Domestic/Canceled/Failure To Maintain Agent | Jan 07 2004 | 200400783983 | 200400783983 | Cancellation Notice Served |

Back to Menu

Doc ID -->    F926_0832

**State of Ohio**
**Department of State**

F926-0832

**Sherrod Brown**
Secretary of State

Date 6/10/86          Number  678950          Receipt No.  83619

F926-0832    0176

Received of    JAMES M. HERALD
or filed by _____

The sum of $ _____75.00_____ for filing _____ARF_____ of

ECONOMIC ZONE RESOURCE ASSOCIATES, INC.

ARF    $_____75.00

Returned to:                    83619
     JAMES M. HERALD
     906 E. BROAD ST.          **RECEIPT**
     COLUMBUS, OH 43205-1150

Name:                          Total Fee:   $_____75.00
ECONOMIC ZONE RESOURCE ASSOCIATES, INC.



Department of State

# The State of Ohio

## Sherrod Brown
Secretary of State

678950

## ✤ Certificate ✤

It is hereby certified that the Secretary of State of Ohio has custody of the Records of Incorporation and Miscellaneous Filings; that said records show the filing and recording of: _____ ARf _____ of:

ECONOMIC ZONE RESOURCE ASSOCIATES, INC.

United States of America
State of Ohio
Office of the Secretary of State

Recorded on Roll _____ F926 _____ at Frame _____ 0834 _____ of the Records of Incorporation and Miscellaneous Filings

Witness my hand and the seal of the Secretary of State, at the City of Columbus, Ohio, this _____ 29th _____ day of _____ MAY _____, A.D. 19_ 55 _.



*Sherrod Brown*

## Sherrod Brown
Secretary of State

Fl ... 554

ARTICLES OF INCORPORATION

OF

Economic Zone Resource Associates, Inc.



APPROVED.

By

Date

Amount

The undersigned, citizens of the United States, desiring to form a corporation for profit under the laws and statutes of the State of Ohio, do hereby certify that:

ARTICLE I:  The name of the Corporation shall be Economic Zone Resource Associates, Inc.

ARTICLE II:  The place in Ohio where its principal place of business is to be located is: 1046 Neil Avenue, Columbus, Ohio 43201, in Franklin County.

ARTICLE III:  The purposes of the Corporation are as follows:

a.  To engage in the business of investigation and research in the oceanographic disciplines, including but not limited to deep sea research and the compilation and collation of information, artifacts and data associated therewith; and

b.  To enter into any legal agreements, contracts, associations, cooperatives, partnerships, corporations for the pursuit of data and information with regard to the oceanographic disciplines, including but not limited to development of machinery and equipment designed to further that end; to enter into leases for the use of machinery and equipment in pursuit of the said oceanographic data and information; and

c.  To hold all licenses, patents, copyrights, trademarks and all other permits, licenses and authorities of every kind and description; and to purchase, sell, transfer, assign, acquire and utilize real estate, surface vessels, underwater vessels, and all other machinery and equipment directly or indirectly associated with these purposes; and

d.  To do all other business operations permitted under Section 1701.01 et seq. of the Ohio Revised Code referencing corporations.

Each purpose specified in any clause or paragraph contained in Article III shall be deemed independent of all other purposes specified herein and shall not be limited, restricted by reference to or inference from the same of any other clause or paragraph of these Articles of Incorporation.

The corporation reserves the right at any time and from time to time to change its purposes in a manner now or hereafter per-

1

Doc ID -->    F926_0832

mitted by statute.  Any change of the purposes of the Corporation
which is authorized by the holders of shares entitling them to
exercise the proportion of the voting power of the Corporation
now or hereafter required by statute shall be binding on all and
each and every one of the Shareholders as fully as if the Share-
holder voted therefore.

    ARTICLE IV:  The maximum number of shares which the Corporation
is authorized to have outstanding is Seven Hundred Fifty (750).

    ARTICLE V:  At the time of the filing of these Articles of
Incorporation, the stated capital of the Corporation is Seven
Hundred Fifty Dollars ($750.00).

    ARTICLE VI:  The Corporation, by the action of the Board of
Directors, and without the action of the Shareholders, may purchase
its shares for the purpose/or to the extent permitted by law.

    ARTICLE VII:  A Director shall not be disqualified from
dealing or contracting with the Corporation as creditor, vendor,
purchaser, employee, agent, or otherwise; nor shall any
transaction or contract or act of this Corporation be void or
voidable or in any way affected or invalidated by the fact that
any Director or any firm of which any Director is a member or any
corporation of which any Director is a Shareholder, Director, or
Officer is in any way interested in such transaction or contract,
or act, provided the fact that such Director or such firm or such
corporation so interested shall be disclosed or shall be known to
the Board of Directors or such members thereof as shall be
present at any meeting of the Board of Directors at which action
upon any such contract or transaction or act shall be taken; nor
shall any such Director be accountable or responsible to the
Corporation for or in respect to any such transaction or contract
or act of this corporation or for any gains or profits realized
by him by reason of the fact that he or any firm of which he is a
member or any corporation of which he is a Shareholder, Director,
or Officer is interested in such transaction or contract or act;
and any such Director may be counted in determining the existence
of a quorum at any meeting of the Board of Directors of the
Corporation which shall authorize or take action in respect to
any such contract or transaction or act, and may vote to authorize,
ratify, or approve any such contract or transaction or act, with
like force and effect as if he or any firm of which he is a member,
or any corporation of which he is a Shareholder, Director, or
Officer were not interested in such transaction, or contract, or
act.

    ARTICLE VIII:  The Corporation shall indemnify each Director
and Officer of the Corporation, and each person who at the
request of or at the instance of the Corporation serves as a
Director or Officer of any other corporation, against any costs
and expenses which may be imposed on or reasonably incurred by

Doc ID -->    F926_0832

him in connection with any claim, suit, or proceeding (whether brought by the Corporation, such other corporation, a receiver, a trustee, one or more Shareholders or creditors, any governmental body, any public official, any private person, or any other corporation) hereafter made or instituted in which he may be involved by reason of his being or having been a Director or Officer of the Corporation or of any other corporation in which he served or serves as a Director or Officer at the request of or at the instance of the corporation (whether he continues to be a Director or Officer at the time of imposition of such costs or incurring of such expenses), such costs and expenses to include the cost to such Director or Officer of reasonable settlements (other than amounts paid to the Corporation itself or to such other Corporation served at the request of or at the instance of the Corporation). The Corporation shall not, however, indemnify such Director or Officer with respect to matters as to which he shall be finally adjudged in any such action, suit or proceeding to be liable because of dereliction in the performance of his duties as such Director or Officer or (except with the approval of a court of competent jurisdiction, a disinterested majority of the Board of Directors, or any committee or group of persons to whom the question may be referred by the Board) with respect to any matter on which a settlement shall substantially exceed the expenses which might reasonably be incurred by him after the date of settlement in conducting litigation to a final conclusion. The foregoing right of indemnification shall not be exclusive of other rights to which any person concerned may be entitled as a matter of law, and shall inure to the benefit of the heirs, executors, and administrators of any such person.

ARTICLE IX: Any action to be taken at any Shareholder's meeting shall be taken by the affirmative vote of the Shareholders entitled to exercise two-thirds of the voting power of the Shareholders of this Corporation.

ARTICLE X: The Corporation may engage in any and all purposes and activities authorized by the General Corporation Law of the State of Ohio.

ARTICLE XI: It shall be a provision of these Articles and required that upon any transfer of any kind and nature of shares by any Shareholder, the other Shareholders shall have the right to first refusal and may purchase and hold the shares of that said Shareholder in the said amount set as valued for the shares to be the fair market value as determined by the Directors of the Corporation. Upon the refusal of the Shareholders to purchase said offering from the Shareholder, Shareholder shall then offer the said shares to the Corporation and the said Corporation shall have the right to purchase and hold the shares of the said Shareholder in the said amount set as valued for the shares to meet the fair market value as determined by the Directors of the Corporation. Upon refusal of the Corporation to purchase the said

FEBRUARY

offering from the Shareholder, the Shareholder may then offer the same to any Buyer ready, willing, and able to purchase the said shares. "Transfer" shall include any Domestic Relations Court-ordered transfer of any jurisdiction whether it be the United States or outside of the United States.

IN WITNESS WHEREOF, the Incorporators hereof have signed this Article of Incorporation on the dates indicated beside their signatures.

Thomas G. Thompson                            5/20/86
_____          _____
Thomas G. Thompson                            Date

_____          _____
                                              Date

4

Page 6

Doc ID -->    F926_0832

FOR...

## ORIGINAL APPOINTMENT OF AGENT

The undersigned, being at least a majority of the Incorporators of Economic Zone Resource Associates, Inc.

hereby appoint James M. Herald,

a natural person resident in the county in which the corporation has its principal office, a corporation having a business address in the county in which

Economic Zone Resource Associates, Inc.

has its principal office, upon whom any process, notice or demand required or permitted by statute to be served upon the corporation may be served.  His complete address is

906 East Broad Street, Columbus, Franklin County, Ohio 43205

Economic Zone Resource Associates, Inc.

Thomas G. Thompson

Columbus, Ohio

May 14, 1986

Economic Zone Resource Associates, Inc.

Gentlemen, I hereby accept appointment as agent of your corporation upon whom process, tax notices, or demands may be served.

James M. Herald, Agent

By
Name and Title



May 23, 1986

Secretary of State
30 E. Broad Street
13th Floor
Columbus, Ohio   43215



    Re: Articles of Incorporation of
    Economic Zone Resource Associates, Inc.

Dear Sir:

    Enclosed please find the articles of incorporation of
Economic Zone Resource Associates, Inc. along with the
Original Appointment of Agent for filing.

    Enclosed also is a check in the amount of $75.00.

    Thank you.

Very truly yours,

James M. Herald

JMH/ssm

Enclosures

Page 8

Doc ID --> 200330960875



J. Kenneth Blackwell, Secretary of State
30 East Broad Street, Lower Level
Columbus, Ohio 43215

11/5/2003

**NOTICE**

RE: ECONOMIC ZONE RESOURCE ASSOCIATES, INC.
REGISTRATION NO:    678950

200330960875
WILLIAM KELLY
433 WEST SIXTH AVE
COLUMBUS, OH  43201

Dear Sir or Madam:

Please be advised that the statutory agent for the above referenced corporation has resigned. Pursuant to Ohio Revised Code Sections, 1701.07, 1702.06, or 1703.041, the referenced corporation must maintain an agent upon whom any process, notice or demand may be served.

The agent may be a natural person who is a resident of Ohio, or a domestic profit corporation or a foreign profit corporation holding a license to transact business in Ohio, which is authorized by its articles of incorporation to act as a statutory agent, and has a business address in Ohio.

This notice is forwarded to you pursuant to the provisions of sections 1701.01(N), 1702.06(M), or 1703.15 of the Ohio Revised Code.

The law provides for cancellation of the corporate charter or license if a subsequent statutory agent is not named within 30 days of the date hereof.  To prevent cancellation, a Subsequent Appointment of Agent filing must be received in this office within 30 days from the date of this notice.

<u>ONCE THE CORPORATE CHARTER IS CANCELLED YOU MAY LOSE YOUR RIGHTS TO YOUR CORPORATE NAME.</u>

Enclosed is a subsequent appointment of agent filing form.  Please complete the form and return with the filing fee of twenty-five dollars ($25.00) to the Secretary of State, P.O. Box 788, Columbus, Ohio, 43216.

If you have questions regarding this notice, please contact our Customer Service Area at (614) 466-3910 or (toll free) 1-877-SOS-FILE.  You may also email our Customer Service area at BusServ@sos.state.oh.us or visit our web site at www.state.oh.us/sos/ to contact us or review your corporate records.

Sincerely,

J. Kenneth Blackwell
Secretary of State

Enclosures

Page 1

Doc ID --->    200330960875



Prescribed by
J. KENNETH BLACKWELL, Secretary of State
30 East Broad Street, Lower Level
Columbus, Ohio 43266-0418

## SUBSEQUENT APPOINTMENT OF AGENT

### ECONOMIC ZONE RESOURCE ASSOCIATES, INC.
(Name of Corporation)

hereby appoints:

Name of New Agent: _____

Street Address 1: _____

Street Address 2: _____

(P.O.Box addresses are not acceptable)

City: _____    State: Ohio    Zip Code: _____

to succeed **WILLIAM KELLY** as agent upon whom any process, notice or demand required or permitted
by statute to be served upon the corporation may be served.

Corporate Office Signature: _____

Title: _____

### Acceptance of Appointment

The undersigned, _____,named herein as the statutory
agent, hereby acknowledges and accepts the appointment of statutory agent for said corporation.

_____

(Statutory Agent)

### Instructions

1). The statutory agent for a corporation may be: (a) a natural person who is a resident of Ohio, or (b) an
Ohio corporation or a foreign profit corporation licensed in Ohio which has a business address in this
state and is authorized by its articles of incorporation to act as a statutory agent. R.C. 1701.07(A),
1702.06(A).

2). A subsequent appointment of agent must be signed by any authorized officer. R.C. 1701.07(L).

3). The filing fee is $3.00. R.C. 1701.07(M), 1702.06(C). Please make checks payable to the Secretary
of State.

# 2003 LIMITED PARTNERSHIP
# UNIFORM BUSINESS REPORT (UBR)

**DOCUMENT #** **A29949**

**1. Entity Name**
ECONOMIC ZONE RESOURCE ASSOCIATES, LTD.

FILED
2003 JUN 10 AM 4: 54
DIVISION OF CORPORATIONS
TALLAHASSEE, FLORIDA

Principal Place of Business
1200 POGY PLACE
FERNANDINA BCH. FL 32034

Mailing Address
433 W. 6TH. AVE.
COLUMBUS OH 43201

| 2. Principal Place of Business | 3. Mailing Address | | |
|---|---|---|---|
| Suite, Apt. #, etc. | Suite, Apt. #, etc. | **DUE BY MAY 1, 2003** | |
| City & State | City & State | **4. FEI Number** 31-1146461 | Applied For / Not Applicable |
| Zip | Country | Zip | Country | **5.** Certificate of Status Desired ☐ | **$8.75** Additional Fee Required |

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| C T CORPORATION SYSTEM<br>1200 S. PINE ISLAND ROAD<br>PLANTATION FL 33324 | Name<br><br>Street Address (P.O. Box Number is Not Acceptable)<br><br>City                                        FL   Zip Code |

**8.** The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. I am familiar with, and accept the obligations of registered agent.

SIGNATURE _____     · DATE

Signature, typed or printed name of registered agent and title if applicable.

| **9.** Capital Contributions as Shown on record. $1,200,000.00 | **10.** Amount of Capital Contributions , in FLORIDA to date. | **11. MAKE CHECK PAYABLE TO FL. DEPT. OF STATE** SEE REVERSE SIDE FOR FEE INFORMATION |
|---|---|---|

**A GENERAL PARTNER THAT IS A BUSINESS ENTITY MUST BE REGISTERED AND ACTIVE WITH THIS OFFICE.**
**NOTE: General Partners MAY NOT be changed on the form; an amendment must be filed to change a general partner.**

| 12. GENERAL PARTNER INFORMATION | 13. ADDRESS CHANGES ONLY |
|---|---|
| DOCUMENT #<br>NAME **THOMPSON, THOMAS G.**<br>STREET ADDRESS **5101 N. A1A**<br>CITY-ST-ZIP **FT. PIERCE FL** | STREET ADDRESS<br><br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br><br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br><br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br><br>CITY-ST-ZIP<br>000020759430<br>06/10/03--01066--008  **$26.25 |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br><br>CITY-ST-ZIP |
| DOCUMENT #<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | STREET ADDRESS<br><br>CITY-ST-ZIP |

**14.** I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am a General Partner of the limited partnership or the receiver or trustee empowered to execute this report as required by Chapter 620, Florida Statutes

**SIGNATURE:** X SIGNATURE REQUIRED                          X  5/5/03

SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING GENERAL PARTNER          Date          Daytime Phone #

CR2E003 (10/02)

# 2005 FOR PROFIT CORPORATION
# ANNUAL REPORT (AR)

**DOCUMENT # P29149**

1. Entity Name

EZRA OF OHIO, INC.

**FILED**
**May 05, 2005  08:00 AM**
**Secretary of State**

| Principal Place of Business | Mailing Address |
|---|---|
| 433 WEST SIXTH AVENUE<br>COLUMBUS OH 43201 | 433 WEST SIXTH AVENUE<br>COLUMBUS OH 43201 |

1st MOORE      CR2E034 (10/04)

| 2. Principal Place of Business | 3. Mailing Address |
|---|---|
| Suite, Apt. #, etc. | Suite, Apt. #, etc. |
| City & State | City & State |
| Zip | Country | Zip | Country |

4. FEI Number  31-1295436 | Applied For / Not Applicable

5. Certificate of Status Desired ☐  **$8.75** Additional Fee Required

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| CT CORPORATION SYSTEM<br>1200 S. PINE ISLAND ROAD<br>PLANTATION FL 33324 | Name<br>Street Address (P.O. Box Number is Not Acceptable)<br><br>City     FL   Zip Code |

8. The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. I am familiar with, and accept the obligations of registered agent.

SIGNATURE
Signature, typed or printed name of registered agent and title if applicable     (NOTE: Registered Agent signature required when reinstating)     DATE

**FILE NOW!!! FEE IS $150.00**
After May 1, 2005 Fee Will Be $550.00
Make Check Payable to Florida Department of State

9. Election Campaign Financing   **$5.00** May Be
Trust Fund Contribution. ☐   Added to Fees

| 10. | OFFICERS AND DIRECTORS | | 11. | ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 11 | |
|---|---|---|---|---|---|
| TITLE | PD | ☐ Delete | TITLE | | ☐ Change  ☐ Addition |
| NAME | THOMPSON, THOMAS G. | | NAME | | |
| STREET ADDRESS | 5101 N A1A | | STREET ADDRESS | | |
| CITY-ST-ZIP | FT PIERCE FL | | CITY-ST-ZIP | | |
| TITLE | V | ☐ Delete | TITLE | | ☐ Change  ☐ Addition |
| NAME | EVANS, ROBERT D. | | NAME | U00000362003 | |
| STREET ADDRESS | 500 E MAYNARD | | STREET ADDRESS | 05/05/05--80098-017 150.00 | |
| CITY-ST-ZIP | COLUMBUS OH | | CITY-ST-ZIP | | |
| TITLE | S | ☐ Delete | TITLE | | ☐ Change  ☐ Addition |
| NAME | LOVELAND, CURTIS A. | | NAME | | |
| STREET ADDRESS | 41 SOUTH HIGH STREET | | STREET ADDRESS | | |
| CITY-ST-ZIP | COLUMBUS OH | | CITY-ST-ZIP | | |
| TITLE | T | ☐ Delete | TITLE | | ☐ Change  ☐ Addition |
| NAME | BURLEY, DEBRA L. | | NAME | | |
| STREET ADDRESS | 844 THISTLE AVE. | | STREET ADDRESS | | |
| CITY-ST-ZIP | GAHANNA OH | | CITY-ST-ZIP | | |
| TITLE | V | ☐ Delete | TITLE | | ☐ Change  ☐ Addition |
| NAME | ROBOL, RICHARD T | | NAME | | |
| STREET ADDRESS | 433 W. 6TH AVE. | | STREET ADDRESS | | |
| CITY-ST-ZIP | COLUMBUS OH | | CITY-ST-ZIP | | |
| TITLE | | ☐ Delete | TITLE | | ☐ Change  ☐ Addition |
| NAME | | | NAME | | |
| STREET ADDRESS | | | STREET ADDRESS | | |
| CITY-ST-ZIP | | | CITY-ST-ZIP | | |

12. I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my signature shall have the same legal effect as if made under oath, that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 10 or Block 11 if changed, or on an attachment with an address, with all other like empowered.

**SIGNATURE:** _Debra L. Burley_      6-28-05
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR      Date      Daytime Phone #

Division of Corporations                                                           Page 1 of 2



# Foreign Profit

## EZRA OF OHIO, INC.

## Cross Reference Name

### EZRA, INC.

### PRINCIPAL ADDRESS
433 WEST SIXTH AVENUE
COLUMBUS OH 43201

### MAILING ADDRESS
433 WEST SIXTH AVENUE
COLUMBUS OH 43201

| Document Number | FEI Number | Date Filed |
|---|---|---|
| P29149 | 311295436 | 05/01/1990 |

| State | Status | Effective Date |
|---|---|---|
| OH | ACTIVE | NONE |

## Registered Agent

| Name & Address |
|---|
| CT CORPORATION SYSTEM 1200 S. PINE ISLAND ROAD PLANTATION FL 33324 |
| Name Changed: 08/21/1992 |
| Address Changed: 08/21/1992 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| THOMPSON, THOMAS G. 5101 N A1A FT PIERCE FL | PD |
| EVANS, ROBERT D. 500 E MAYNARD COLUMBUS OH | V |

Division of Corporations



| | |
|---|---|
| LOVELAND, CURTIS A. 41 SOUTH HIGH STREET COLOMBUS OH | S |
| BURLEY, DEBRA L 644 THISTLE AVE. GAHANNA OH. | T |
| ROBOL, RICHARD T 433 W. 6TH AVE. COLOMBUS OH | V |

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2004 | 07/30/2004 |
| 2005 | 05/05/2005 |
| 2006 | 07/17/2006 |

[ Previous Filing ]      [ Return to List ]      [ Next Filing ]

No Events
No Name History Information

## Document Images
Listed below are the images available for this filing.

05/05/2005 -- ANN REP/UNIFORM BUS REP
07/30/2004 -- ANN REP/UNIFORM BUS REP
05/23/2003 -- ANN REP/UNIFORM BUS REP
05/28/2002 -- COR - ANN REP/UNIFORM BUS REP
05/18/2001 -- ANN REP/UNIFORM BUS REP
05/18/2000 -- ANN REP/UNIFORM BUS REP
05/06/1999 -- ANNUAL REPORT
05/13/1998 -- ANNUAL REPORT
05/02/1997 -- ANNUAL REPORT
03/28/1996 -- 1996 ANNUAL REPORT

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

Corporations Inquiry          Corporations Help

# 2005 FOR PROFIT CORPORATION
## ANNUAL REPORT

**FILED**
**Mar 12, 2005  08:00 AM**
**Secretary of State**

**DOCUMENT # P99000107943**

1. Entity Name
DOE.E, INC.

| Principal Place of Business | Mailing Address |
|---|---|
| 1200 POGY PLACE<br>FERNANDINA BEACH, FL 32034-3180 | 1200 POGY PLACE<br>FERNANDINA BEACH, FL 32034-3180 |

02022005    No Chg-P    CR2E034 (10/03)

## DO NOT WRITE IN THIS SPACE

| 4. FEI Number | | Applied For |
|---|---|---|
| 31-1682132 | | Not Applicable |

5. Certificate of Status Desired ☐ — $8.75 Additional Fee Required

6. Name and Address of Current Registered Agent

THOMPSON, THOMAS G
1200 POGY PLACE
FERNANDINA BEACH, FL 32034-3180

## DO NOT WRITE
## IN THIS SPACE

8. The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. I am familiar with, and accept the obligations of registered agent.

SIGNATURE: _____    3/2/05
Signature, typed or printed name of registered agent and title if applicable    (NOTE: Registered Agent signature required when reinstating)    DATE

**FILE NOW!!!  FEE IS $150.00**
**After May 1, 2005 Fee will be $550.00**

9. Election Campaign Financing
Trust Fund Contribution.  ☐  $5.00 May Be Added to Fees

U000000260687
03/12/05-80034-020 150.00

| 10. | OFFICERS AND DIRECTORS |
|---|---|
| TITLE | P |
| NAME | THOMPSON, THOMAS G |
| STREET ADDRESS | 5318 GALLEY WAY, #102 |
| CITY-ST-ZIP | FORT PIERCE, FL 34949 |
| TITLE | |
| NAME | |
| STREET ADDRESS | |
| CITY-ST-ZIP | |
| TITLE | |
| NAME | |
| STREET ADDRESS | |
| CITY-ST-ZIP | |
| TITLE | |
| NAME | |
| STREET ADDRESS | |
| CITY-ST-ZIP | |
| TITLE | |
| NAME | |
| STREET ADDRESS | |
| CITY-ST-ZIP | |
| TITLE | |
| NAME | |
| STREET ADDRESS | |
| CITY-ST-ZIP | |

## DO NOT WRITE
## IN THIS SPACE

12. I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i), Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my signature shall have the same legal effect as if made under oath, that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 10 or Block 11 if changed, or on an attachment with an address, with all other like empowered.

SIGNATURE: _____    3/2/05    772-201-6240
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR    Date    Daytime Phone #

**Exhibit H**

## NON-DISCLOSURE AGREEMENT

THIS AGREEMENT is entered into this 6th day of March, 1986, by and between Thomas G. (Harvey) Thompson, a research scientist in the field of ocean engineering with principal offices in Columbus, Ohio (herein called "Thompson"), who represents interests, in addition to his own, of certain other science professionals and individuals, including one or more entities, and Timothy M. McGinnis (herein called "McGinnis"), an ocean engineer with Williamson & Associates, Inc. ("Williamson") and a corporate officer of International Deep Sea Survey, Inc. ("IDSS").

### RECITALS

A.    Thompson is engaged in the costly implementation and testing of various theories and innovations resulting from years of extensive research, which was undertaken at considerable out-of-pocket expense and investment of time by Thompson and others. Thompson is currently engaged in the development of procedures and applications for high technology equipment to be used in locating, verifying, surveying and recovering certain lost deep-water cultural sites of significant historical importance (defined as shipwrecks and other man-made sites being neither natural nor mineral). In the course of this undertaking, Thompson's projects have fostered valuable cooperative relationships among professional colleagues and unique multi-disciplinary innovations with regard to research and exploration of deep-ocean cultural sites. Thompson and his colleagues recognize that strict secrecy is essential with regard to the research data, its development, and the proprietary nature of their projects if they are to realize success in their cooperative efforts.

B.    McGinnis is engaged in the business of providing consulting services for at-sea search and survey operations through his employers, Williamson and IDSS.

C.    Thompson has engaged Williamson and IDSS in connection with a Project to locate and verify the remains of a certain historic shipwreck(s). It is anticipated that McGinnis, as a member of the professional team at Williamson and IDSS assigned to work on Thompson's Project, will contribute consulting work that will become a constituent part of the multi-disciplinary approach to deep-water historic shipwreck recovery developed by Thompson in connection with the current Project effort. As such, McGinnis's contributions will entitle him to receive a percentage of the recovery profits.

D.    While McGinnis does not intend to pursue the search and recovery of historic shipwrecks as a line of business, his tasks involve the actual search operations and require that he review certain highly confidential and proprietary information developed by Thompson. In addition, they may require that McGinnis consult with certain other research consultants and

(Page 1 of 4 pages)

technical operations personnel for the purpose of completing the selection and design of equipment to be used in the search operation to locate the particular target Shipwreck site(s).

E.    Thompson desires McGinnis to participate in the Project effort through Williamson and IDSS, but only to the extent that Thompson is sure that the Information developed by Thompson, including the existence of the Project being directed by Thompson, remains confidential between Thompson and McGinnis.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth, Thompson and McGinnis agree as follows:

1.  (a)    For the purposes of this Agreement, "Confidential Information" shall mean all Information concerning the deep-water cultural site(s) and/or object(s) of search, including the location, the procedures and applications to be used to confirm the location(s) of or to engage in archaeological work on the site(s), and all other Information or material proprietary to Thompson or designated as Confidential Information by Thompson, of or to which McGinnis may obtain knowledge or access through or as a result of McGinnis's relationship with Thompson, Williamson, and IDSS.

(b)    Confidential Information includes, but is not limited to, the following types of Information and other Information of a similar nature (whether or not reduced to writing): discoveries, ideas, concepts, computer programs, designs, drawings, specifications, techniques, models, data, documentation, diagrams, research, development, processes, procedures, expertise ("know-how"), marketing and development plans, names and other information related to sources of funding and supplies, and financial information.

(c)    Confidential Information also includes any information described above which Thompson treats as proprietary or designates as Confidential Information, whether or not owned or developed by Thompson individually or by other individuals, colleagues, or entities to whom Thompson may be confidentially obligated.

(d)    Confidential Information also includes knowledge of the existence of the Project being directed by Thompson, including, but not limited to, the names of any ship or shipwreck associated with the Project.

2.    McGinnis agrees that the recitals above are true and that the Confidential Information, as defined in paragraphs 1. (a), (b), (c), and (d), above are in the nature of trade secrets and that they are owned by and/or under Thompson's fiduciary protection. McGinnis further agrees that the Confidential Information is not readily available and cannot be easily obtained. McGinnis acknowledges that but for his executing this Agreement, Thompson would not permit McGinnis to review the Confidential Information

(Page 2 of 4 pages)

developed by Thompson.

3.   McGinnis agrees that he will not remove, copy, or make any notes concerning any Confidential Information provided him by Thompson through Williamson and/or IDSS without obtaining Thompson's prior consent. Further, McGinnis agrees to hold in confidence and not directly or indirectly reveal, report, publish, disclose or transfer any Confidential Information to any person or entity. For the purpose of performing his assigned tasks, McGinnis may consult as necessary with other research consultants and technical personnel on the basis of the "need-to-know" criteria and the Project's formal security structure, as discussed in a meeting between Thompson and Williamson in Seattle, Washington on 18 January 1986 and in other communications between Thompson and Williamson. In view of the relationship between Thompson, Williamson, IDSS, and McGinnis, McGinnis agrees that he will contact Michael E. Williamson, Thompson's principal contact at Williamson and IDSS, for decisions if questions arise concerning the use of the Project's security structure.

4.   McGinnis agrees that he will not at any time for a period of ten (10) years after the execution of this Agreement become involved in any effort regarding search, verification, survey and/or recovery of the target Shipwreck site(s) that is the object of the Project's search operations, unless such efforts are being sponsored by Thompson.

5.   Because of the unique nature of the Confidential Information, McGinnis understands and agrees that Thompson will suffer irreparable harm in the event that McGinnis fails to comply with any of his obligations under this Agreement, and that monetary damages will be inadequate to compensate Thompson for such breach. Accordingly, McGinnis agrees that Thompson will, in addition to any other remedies available to him at law or in equity, be entitled to injunctive relief to enforce the terms of this Agreement.

6.   McGinnis acknowledges that the damages suffered by Thompson as a result of McGinnis's breach of this Agreement will be incapable of exact measurement and therefore agrees that in the event he breaches this Agreement in any manner whatsoever, or sponsors or participates in a venture to recover the target Shipwreck site(s), in addition to the remedies available to Thompson under paragraph 5 above, or otherwise, Thompson will be entitled to liquidated damages equal to the greater of: (a) Fifty percent (50%) of all profits obtained by any venture recovering the target Shipwreck site(s) with which McGinnis is in any way associated; or (b) Ten Thousand Dollars ($10,000).

7.   Thompson agrees to give McGinnis One-Fortieth (1/40) of One Percent (1%) of the recovery profits, provided the target Shipwreck site(s) is located in June-July of 1986 regardless of when the recovery operation is performed and provided that McGinnis employs his best efforts to complete his assigned tasks in connection with the search operations.

8.   Thompson and McGinnis agree that if any term, paragraph or

(Page 3 of 4 pages)

section of this Agreement is unenforceable, a court of competent jurisdiction may construe this Agreement without including the specific term, paragraph, or section found to be unenforceable.

9.    This Agreement shall be governed by Ohio law applicable to contracts between residents of Ohio wholly executed and performed in Ohio. Further, this Agreement contains the full and complete understanding of the parties with respect to the subject matter hereof and supersedes all prior representations and understandings, whether oral or written. This Agreement may be modified only in a writing signed by both parties.

10.    In the event that disputes, differences, or controversies arise in connection with this Agreement, McGinnis agrees that the United States District Court for the Southern District of Ohio, Eastern Division, shall have exclusive jurisdiction. Accordingly, McGinnis irrevocably submits his person to the jurisdiction of such court for purposes of such litigation.


IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year written above.

THOMPSON:                                    McGINNIS:

_____              _____
Thomas (J. (Harvey) Thompson          Timothy M. McGinnis

Date: 2/23/86 _____                 Date: 3/6/86 _____

(Page 4 of 4 pages)

Economic
Zone
Resource
Associates          1046 Neil Ave. Columbus, Ohio 43201 (614) 299-6000

## NON-DISCLOSURE AGREEMENT

THIS AGREEMENT is entered into this _23rd_ day of _JUNE_,
1986, by and between Thomas G. (Harvey) Thompson, a research scientist in
the field of ocean engineering with principal offices in Columbus, Ohio
(herein called "Thompson"), who represents interests, in addition to his
own, of certain other science professionals and individuals, including one
or more entities, and ___Don O Craft___ (herein called
"Confidant").

### RECITALS

A.     Thompson is engaged in the costly implementation and testing of
various theories and innovations resulting from years of extensive
research, which was undertaken at considerable out-of-pocket expense and
investment of time by Thompson and others. Thompson is currently engaged in
the development of procedures and applications for high technology
equipment to be used in locating, verifying, surveying and recovering
certain lost deep-ocean cultural sites (defined as shipwrecks and other
man-made sites being neither natural nor mineral) of significant historical
importance. In the course of this undertaking, Thompson's projects have
fostered valuable cooperative relationships among professional colleagues
and unique multi-disciplinary innovations with regard to research and
exploration of deep-ocean cultural sites. Thompson and his colleagues
recognize that strict secrecy is essential with regard to the research
data, its development, and the proprietary nature of their projects if they
are to realize success in their cooperative efforts.

B.     Confidant is being paid to perform work in one of the following
areas in connection with the search operations effort: operations, data
interpretation, equipment repair and maintenance, image processing, and
logistics.

C.     Thompson, through one of his agents, has accepted Confidant to
work as a member of the search operations team involved in locating and
verifying the remains of a certain historic Shipwreck(s). Thompson desires
that Confidant, as a member of the search operations team, share in the
proceeds of the net recovery, provided that the target Shipwreck(s) is
found as a result of Confidant having lent his best efforts to the search
operations effort and providing that subsequent recovery operations are
successful.

D.     While Confidant does not intend to pursue the search and recovery
of historic shipwrecks as a line of business, his tasks involve the actual
search operations and may also require that he review certain highly
confidential and proprietary information developed by Thompson. In
addition, they may require that Confidant consult with certain other search
operations personnel for the purpose of carrying out his assigned tasks.

(Page 1 of 4 pages)

E.    Thompson desires Confidant to participate in the search operations, but only to the extent that Thompson is sure that the information developed by Thompson, including the existence of the Project being directed by Thompson and the location(s) of any Shipwreck target(s) found, remains confidential between Thompson and Confidant.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises hereinafter set forth, Thompson and Confidant agree as follows:

1.  (a)    For the purposes of this Agreement, "Confidential Information" shall mean all information concerning the deep-water cultural site(s) and/or object(s) of search, including the location, the procedures and applications to be used to confirm the location(s) of or to engage in archaeological work on the site(s), and all other information or material proprietary to Thompson or designated as Confidential Information by Thompson, of or to which Confidant may obtain knowledge or access through or as a result of Confidant's relationship with Thompson.

(b)    Confidential Information includes, but is not limited to, the following types of information and other information of a similar nature (whether or not reduced to writing): discoveries, ideas, concepts, computer programs, designs, drawings, specifications, techniques, models, data, documentation, diagrams, research, development, processes, procedures, expertise ("know-how"), marketing and development plans, names and other information related to sources of funding and supplies, and financial information.

(c)    Confidential Information also includes any information described above which Thompson treats as proprietary or designates as Confidential Information, whether or not owned or developed by Thompson individually or by other individuals, colleagues, or entities to whom Thompson may be confidentially obligated.

(d)    Confidential Information also includes knowledge of the existence of the Project being directed by Thompson, including, but not limited to, the names of any ship or shipwreck associated with the Project.

2.    Confidant agrees that the recitals above are true and that the Confidential Information, as defined in paragraphs 1. (a), (b), (c), and (d), above are in the nature of trade secrets and that they are owned by and/or under Thompson's fiduciary protection. Confidant further agrees that the Confidential Information is not readily available and cannot be easily obtained. Confidant acknowledges that but for his executing this Agreement, Thompson would not permit Confidant to review the Confidential Information developed by Thompson.

3.    Confidant agrees that he will not remove, copy, or make any notes

(Page 2 of 4 pages)

concerning any Confidential Information provided him, either directly or indirectly, through Thompson without obtaining Thompson's prior consent. Further, Confidant agrees to hold in confidence and not directly or indirectly reveal, report, publish, disclose or transfer any Confidential Information to any person or entity. For the purpose of performing his assigned tasks, Confidant may consult as necessary with other operations personnel on the basis of the "need-to-know" criteria.

4.  Confidant agrees that he will not at any time for a period of ten (10) years after the execution of this Agreement become involved in any effort regarding search, verification, survey and/or recovery of the target Shipwreck site(s) that is the object of the Project's search operations, unless such efforts are being sponsored by Thompson.

5.  Because of the unique nature of the Confidential Information, Confidant understands and agrees that Thompson will suffer irreparable harm in the event that Confidant fails to comply with any of his obligations under this Agreement, and that monetary damages will be inadequate to compensate Thompson for such breach. Accordingly, Confidant agrees that Thompson will, in addition to any other remedies available to him at law or in equity, be entitled to injunctive relief to enforce the terms of this Agreement.

6.  Confidant acknowledges that the damages suffered by Thompson as a result of Confidant's breach of this Agreement will be incapable of exact measurement and therefore agrees that in the event he breaches this Agreement in any manner whatsoever, or sponsors or participates in a venture to recover the target Shipwreck site(s), in addition to the remedies available to Thompson under paragraph 5 above, or otherwise, Thompson will be entitled to liquidated damages equal to the greater of: (a) Fifty percent (50%) of any interest of Confidant in a competing venture, or of any sums that Confidant might receive as a result of participating in such a venture; or (b) One Hundred Fifty Thousand Dollars ($150,000).

7.  Thompson agrees to give Confidant One-Twentieth (1/20) of One Percent (1%) of the net recovery, provided the target Shipwreck site(s) is found as a result of Confidant having participated in the search operations effort and providing that subsequent recovery operations are successful, regardless of when the recovery operation is performed and provided that Confidant employs his best efforts to complete his assigned tasks in connection with the search operations.

8.  The limitations and obligations imposed on Confidant by this Agreement shall extend to any corporation, partnership, joint venture, association or other entity in which Confidant is a shareholder, partner, or member.

9.  Confidant may not assign or transfer his obligations under this Agreement, without the prior written consent of Thompson, but Thompson may assign this Agreement to Economic Zone Resource Associates or others who

7.a. Confidant shall be entitled to his percentage of the net recovery based on the following breakdown: .15% for Confidant's advise and participation early on in the Project; .15% in exchange for a one-third reduction in Confidant's normal day rate during Vessel mobilization, demobilization, and at-sea operations.

(Page 3 of 4 pages)

may be beneficiaries of this Agreement and therefore entitled to enforce its terms.

10.    Thompson and Confidant agree that if any term, paragraph or section of this Agreement is unenforceable, a court of competent jurisdiction may construe this Agreement without including the specific term, paragraph, or section found to be unenforceable.

11.    This Agreement shall be governed by Ohio law applicable to contracts between residents of Ohio wholly executed and performed in Ohio. Further, this Agreement contains the full and complete understanding of the parties with respect to the subject matter hereof and supersedes all prior representations and understandings, whether oral or written. This Agreement may be modified only in a writing signed by both parties.

12.    In the event that disputes, differences, or controversies arise in connection with this Agreement, Confidant agrees that the United States District Court for the Southern District of Ohio, Eastern Division, shall have exclusive jurisidiction. Accordingly, Confidant irrevocably submits his person to the jurisdiction of such court for purposes of such litigation.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year written above.

THOMPSON:

_Thomas G. (Harvey) Thompson_

Date: 6/23/86

CONFIDANT:

_Confidant's Signature_

DON C CRAFT
Print Name

Date: 6/23/86

(Page 4 of 4 pages)

*[Handwritten in left margin:]* 9.a. Confidant agrees that this Agreement supercedes all previous Non-Disclosure agreements between Confidant and Thompson.

**Exhibit I**

RECOVERY 1046 Neil Ave. Columbus, Ohio 43201 (614) 299-6000

20 February 1986

Don C. Craft, President
Craft Marine Associates, Inc.
P. O. Box 125
Satsuma, FL 32089

Dear Don:

This letter represents the Agreement between Recovery, Ltd. (the "Partnership") and Craft Marine Associates, Inc. ("Craft") for the performance of certain work in connection with vessel mobilization and search operations to locate a historic shipwreck site(s), whose confidentiality and proprietary nature has been communicated to you in prior discussions and correspondence.

You agree to manage the selection of a search vessel, to mobilize the vessel, and to select and train a crew in accordance with the timeline established for going to sea by June 1, 1986. In addition, you agree to collaborate with Williamson & Associates, Inc. on the logistical management of search operations. You agree that the three documents enclosed with this letter represent your basic responsibilities within the context of the timeline established by Fred Newton's Program Plan for going to sea.

In return for your services in connection with pre-mobilization, the Partnership agrees to pay you $350.00 per day plus standard expenses for related travel, subsistence, and operational expenses as incurred. A day's work shall be defined as at least eight hours for pre-mobilization services. You agree that this work will require approximately nine days to complete. If more time is required, you agree to get my verbal consent prior to proceeding.

Upon commencement of vessel mobilization, the Partnership agrees to pay you at a rate of $450.00 per day, unless you and I subsequently agree to substitute your day rate with a fixed at-sea fee and/or a percentage of the interest in the recovery. Your at-sea work day shall be defined as the time necessary to assure both the efficient and safe execution of round-the-clock search operations.

In exchange for the Partnership hiring your services for the at-sea search operations, you agree to forego any broker's commissions in connection with leasing the vessel.

(Page 1 of 3 pages) DCC

The Partnership agrees to pay you monthly on the basis of 30 days net upon receipt of invoices for services and expenses.

You acknowledge being in receipt of an advance payment in the amount of $1050.00 for your services in connection with this Agreement, which advance is explained in my letter to you dated 9 October 1985.

In the event a candidate vessel's operator will not accept you as master of the vessel, you agree to obtain consent of the operator that Craft will have the sole customer responsibility for directing the search operations and all other matters of vessel operation that do not infringe upon the master's ultimate responsibility for the safety of the vessel and the personnel embarked.

You acknowledge that all historical, location, cargo, technological, and other information about the Partnership and the target shipwreck site(s) are proprietary. Further, you acknowledge that all of this information has been developed by the Partnership's General Partner over a period of years and that such information is not publicly available. Accordingly, you agree not to disclose any proprietary information concerning the Partnership, including the existence of the target shipwreck site(s) and its project to locate and recover the shipwreck target(s), without first obtaining the written consent of the General Partner.

You agree that for a period of five years from the date of this Agreement you will not compete with the Partnership in any other search, verification, or recovery operation whose purpose involves the target shipwreck site(s). You further agree not to work for any person or other entity during this five-year period that intends to locate and/or recover the target shipwreck site(s).

You and I agree that this Agreement shall be governed by Ohio law applicable to contracts between residents of Ohio wholly executed and performed in Ohio.

In the event that serious disputes, differences, or controversies arise in connection with this Agreement, you and I agree that the United States District Court for the Southern District of Ohio, Eastern Division, shall have exclusive jurisdiction over the matter. Accordingly, you agree to irrevocably submit your person to the jurisdiction of such court for purposes of litigation.

You and I agree that if any term, paragraph or section of this Agreement is unenforceable, a court of competent jurisdiction may construe this Agreement without including the specific term, paragraph, or section found to be unenforceable.

If the foregoing provisions are acceptable, kindly sign the

(Page 2 of 3 pages)

Agreement and return a photocopy to me in the self-addressed, stamped envelope provided.

My signature below reflects the Partnership's agreement to the terms of this letter.

Very truly yours,
for RECOVERY, LTD.

Thomas G. (Harvey) Thompson
General Partner

Accepted for
CRAFT MARINE ASSOCIATES, INC.

Capt. Don C. Craft, President

Date: 3/1/86

Enclosures: Newton's Project Plan for Hardware Selection Phase, dated 1/30/86;
Suggested Schedule of Don Craft, dated 10/4/85 (2 pages);
Page of correspondence from Craft listing Project responsibilities; dated 2/7/86.

(Page 3 of 3 pages)

**Exhibit J**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL H. WILLIAMSON, et al., | : | |
| | : | **Case No. C2-06-292** |
| Plaintiffs, | : | |
| | : | **Judge Sargus** |
| -vs- | : | |
| | : | **Magistrate Judge Kemp** |
| RECOVERY LIMITED | : | |
| PARTNERSHIP, et al. | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF PLAINTIFFS THE DISPATCH PRINTING COMPANY AND DONALD FANTA IN RESPONSE TO DEFENDANTS' JOINT MEMORANDUM OF LAW REGARIDNG SEALING OF CONFIDENTIAL MATERIALS

### I.    DISCUSSION AND ARGUMENT

**A.    Plaintiffs Never Agreed A Seal Order Was Necessary To Protect Trade Secrets**

Defendants contend that while these cases were pending in state court, The Dispatch Printing Company ("The Dispatch") and Donald Fanta ("Mr. Fanta") (collectively, "Plaintiffs") agreed that the proceedings should be sealed "due to the vital importance of preserving the parties' confidential information and trade secrets." [Defendants' Joint Memorandum at pg. 8] This is not true.  Plaintiffs agreed to a **temporary** sealing of the proceedings in state court as an expedient to allow the trial court to receive evidence and adjudicate the substantive merits of Plaintiffs' claims without Defendants being able to delay the proceedings with another frivolous appeal.[1]

---

[1]    Early on in the proceedings in state court, Plaintiffs subpoenaed Defendants' accountant to produce certain financial records in the accountant's possession.  Defendants moved to quash the subpoena on the ground the records subpoenaed contained trade secrets.  The trial court rejected Defendants' argument and ordered the accountant to produce the documents.  Defendants then promptly filed an appeal.  Although the Tenth District Court of Appeals ultimately dismissed Defendants' appeal for lack of a final appealable order, Defendants were successful in their ultimate goal of delaying the underlying trial court proceedings for several months.  Thus, after Defendants' first appeal, Plaintiffs agreed to a temporary sealing order so they could progress with the merits of the case and avoid additional delays through baseless appeals by Defendants.

Plaintiffs **never** conceded that any of the information at issue in this action constitutes a trade secret. In fact, it is Plaintiffs' position that the records they seek from Defendants **do not** contain trade secrets. Moreover, Plaintiffs made it clear during the proceedings in state court that their agreement to a seal order was temporary, and that any party could later file a motion to have the record unsealed, with the party who opposed unsealing the record bearing the burden of proof.

**B.      The Prior Admiralty Proceedings In The Eastern District of Virginia, Which Have Now Been Closed, Do Not Affect This Action**

Defendants make several allegations regarding prior admiralty proceedings that took place in the Eastern District of Virginia regarding ownership and control of the treasure recovered from the shipwreck of the S.S. *Central America*. Specifically, Defendants contend that (a) all matters relating to the shipwreck of the S.S. *Central America* are under the exclusive jurisdiction of the Eastern District of Virginia, (b) the Eastern District of Virginia is exercising continuing jurisdiction over the shipwreck, and (c) the Eastern District of Virginia has issued confidentiality orders that control and affect the disclosure of information in these proceedings. Defendants' allegations are wrong in several respects.

For instance, while Defendants repeatedly assert that the Eastern District of Virginia is exercising continuing jurisdiction over the proceedings there, the docket report for Columbus-America Discovery Group v. The Unidentified, Wrecked and Abandoned Sailing Vessel, etc., et al., Civil Action No. 2:87-cv-00363 (E.D. Va.), which is the action referenced by Defendants, shows that the case *has been closed since July 11, 2000* and there has been no activity since then. [See E.D. Va. PACER Docket Report (attached as Exh. 1)].

Likewise, Defendants' insinuation that these proceedings are somehow subject to exclusive jurisdiction in the Eastern District of Virginia is also wrong because, even assuming

2

the Eastern District of Virginia has exclusive jurisdiction over "the shipwreck" of the S.S. *Central America*, Plaintiffs' claims in this action do not involve matters regarding ownership or control of the shipwreck. Rather, Plaintiffs' claims involve state law matters regarding contracts and corporate governance. As such, Plaintiffs' claims have nothing to do with the admiralty issues that were litigated in Virginia.

Defendants also claim that the disclosure of certain information in these cases will violate confidentiality orders that were entered in the admiralty litigation in the Eastern District of Virginia. These same arguments were rejected by Judge Travis almost a year ago when these proceedings were pending in state court. Judge Travis held that the admiralty action in the Eastern District of Virginia was an *in rem* action, and thus, the orders from that action have no effect upon the proceedings in these cases:

> The orders in the Virginia *in rem* action appear to have been issued over ten years ago, before the agreements between the parties in this case were drawn and executed. Defendants have not satisfied the court that the *in rem* action offers any reason why this litigation cannot proceed or why the secrecy of that action somehow trumps the disclosure agreements in this case.

[State Court Decision, June 17, 2005 (attached as Exh. 2)]

Indeed, Defendants' own actions belie their argument that they are constrained by confidentiality orders from the Eastern District of Virginia. From 1985 to 2000, which included the period during which the admiralty litigation in the Eastern District of Virginia was active and pending, Defendants provided Plaintiffs with financial statements and memoranda detailing the finances and operations of Columbus Exploration and Recovery Limited Partnership.

It was not until Defendants began marketing and selling the gold in the 2000-2001 timeframe that Defendants decided to go "radio silent" and withhold information regarding the finances and operations of the companies. By then, however, the admiralty litigation in the

3

Eastern District of Virginia was closed. Thus, it is disingenuous for Defendants to argue they are now constrained from disclosing company information by certain confidentiality orders that were issued as part of an unrelated admiralty action in the Eastern District of Virginia when Defendants regularly disclosed such information for years while the admiralty litigation was pending.

In addition, it is telling that Defendants have been unable produce copies of these purported confidentiality orders. While Defendants claim they are still trying to locate the orders, that seems doubtful in view of the fact that Defendants made these same arguments regarding the alleged confidentiality orders nearly a year ago in these proceedings. [See Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel, filed on May 27, 2005, at pgs. 11-12] Thus, Defendants have had plenty of time to locate these purported confidentiality orders from the Eastern District of Virginia, yet still Defendants have not produced them.

**C.    Defendants Have Not Produced Any Of The Purported Third-Party Confidentiality Agreements On Which They Rely As A Basis For Withholding Information**

Defendants also contend they "are bound by certain contractual agreements containing a variety of confidentiality provisions," including "several key agreements with third parties for marketing the treasure of the S.S. *Central America*." [Defendants' Joint Memorandum at pg. 11] Defendants claim that if they produce the information requested by Plaintiffs they "could place the company in breach of those agreements" and subject the company to "claims for substantial damages by third parties." [Id. at pgs. 11-12] Once again, however, Defendants have failed to produce copies of these purported third-party agreements to support their allegations. As such, there is no way to confirm the veracity of Defendants' allegations regarding the nature and scope of these alleged third-party agreements.

4

D.    **Defendants Have Not Satisfied The Standard For Establishing A Trade Secret**

Defendants' sole argument in support of sealing these proceedings is to protect against

the disclosure of Defendants' alleged trade secrets.  Defendants' trade secrets argument fails,

however, because Defendants have failed to carry their burden of identifying the specific

information for which they are claiming trade secret status and demonstrating how that

information satisfies the definition of a trade secret.

The law is well settled that a litigant seeking to protect against the disclosure of

information on grounds of trade secrets must make a particularized listing of the specific

information the litigant seeks to protect and then affirmatively prove that the information is, in

fact, secret.  For example, in the case of <u>In re Bank One Securities Litigation</u>, 222 F.R.D. 582,

587 (N.D. Ill. 2004), the court explained:

> To the extent that a pleading, motion, or brief contains
> confidential information, that information may be redacted. . . .
> **However, in the event a party does not show good cause to
> maintain the confidentiality of any part of the pleading, the
> entire document will be unsealed and no longer removed from
> public access.** . . .
>
>        *    *    *
>
> . . . . If Defendant wishes to maintain confidentiality of any
> portion of these pleadings, briefs, or motions, Defendant must do
> more than defend on a procedural technicality arising from a
> protective order.  **Defendant must show, with specificity,
> genuine trade secrets or other confidential information within
> each of the documents it requests to remain under seal.** . . .

[Emphasis added]

<u>Accord</u>: <u>Centurion Industries, Inc. v. Warren Steurer and Associates</u>, 665 F.2d 323, 325

(10th Cir. 1981) ("To resist discovery . . . a person must first establish that the information

sought is a trade secret and then demonstrate that its disclosure might be harmful."); <u>American</u>

Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 740 (Fed. Cir. 1987) ("[o]ne seeking a protective

order . . . must establish that the information sought is confidential" and "must then demonstrate

that disclosure might be harmful"); Kaiser Aluminum & Chemical Corp. v. Phosphate

Engineering & Construction Co., Inc., 153 F.R.D. 686, 688 (M.D. Fla. 1994); Digital Equipment

Corp. v. Micro Technology, Inc., 142 F.R.D. 488, 491 (D. Colo. 1992).

The burden thus is squarely on Defendants to identify the particular items of information

for which they seek protection and establish that those items are, in fact, trade secrets.

Defendants, however, completely failed to carry their burden.  Defendants have not identified

any particular document or other item of information for which they are claiming trade secret

status, nor have they presented any evidence to support their trade secret argument.  Instead,

Defendants simply rely on conclusory allegations and unsworn assertions in their memorandum,

but that is insufficient as a matter of law to establish the existence of trade secrets:

> [I]t is not enough that a party seeking the protection of an alleged
> trade secret simply states that a document contains a trade secret,
> as good cause does not permit "stereotyped and conclusory
> statements." . . . .  Rather, a party must attempt to "winnow out
> properly confidential information" in order to justify sealing and to
> show good cause. . . .  Furthermore, a party claiming that injury
> will result from disclosure of certain information must provide
> support for such a statement . . .

[In re Bank One Securities Litig., 222 F.R.D. at 588 (internal citations omitted)]

Accord: Byrnes v. JetNet Corp, 111 F.R.D. 68, 73 (M.D.N.C. 1986) ("Courts must insist

on a particular and specific demonstration of fact, as distinguished from stereotyped or

conclusory statements in order to establish good cause. . . .  Macfield has, therefore, failed to

meet its initial burden of showing confidentiality."); Cutler v. Lewiston Daily Sun, 105 F.R.D.

137, 140 (D. Me. 1985) ("Defendant has labeled much of the requested information as a trade

secret or as "commercially sensitive," but in no instance has Defendant explained how disclosure

of such information would be harmful to its business interests. . . . Accordingly, Defendant's claim that the requested information constitutes trade secrets or confidential information must fail."); Reliance Insurance Co. v. Barrons, 428 F. Supp. 200, 203-204 (S.D.N.Y. 1977) (denying plaintiff's motion for confidentiality order to protect alleged confidential information where "plaintiff has made an insufficient showing both as to the confidentiality of the documents for which protection is sought and as to the expected harm which would result from their release").

Thus, in this case, the foregoing authorities make clear that Defendants cannot rely on conclusory and generalized allegations of trade secrets regarding unspecified information. Rather, they are required to identify with specificity the information they want to protect and present evidence establishing that the information does, in fact, qualify as a trade secret. Defendants have completely failed in this regard.

**E.    Plaintiffs Are Not Seeking To Discover Defendants' Secret Treasure Map Or Their Technological Advancements**

Defendants mischaracterize the nature of Plaintiffs' claims in this action by stating that Plaintiffs have asked for confidential information regarding the specific location of the S.S. *Central America* and the "novel technology developed for the recovery of the treasure." [Defendants' Joint Memorandum at pgs. 3, 9-10] That is **not** the type of information Plaintiffs are seeking.  Plaintiffs are not asking for Defendants' secret treasure map, nor are Plaintiffs seeking information regarding their deep-sea robot or other machinery used to locate and recover the treasure of the S.S. *Central America*.  Rather, Plaintiffs simply want to see **financial information** regarding Columbus Exploration and Recovery Limited Partnership so they can learn what has happened to their investments.

In fact, Plaintiffs have provided Defendants with a list of the specific financial records they are seeking in these proceedings, which Plaintiffs developed with the assistance of their

7

forensic accountants, KPMG. [See Plaintiffs' List of Request Records (attached as Exh.3)]
Thus, Defendants are well aware that Plaintiffs are not seeking confidential information
regarding the location of the shipwreck or the "novel technology" employed by the companies,
and it is improper for Defendants to so blatantly mischaracterize the nature of Plaintiffs' claims
to support their otherwise unfounded arguments.

F.    **The Historical Financial Information Sought By Plaintiffs Is Not Confidential**

       Defendants also contend the historical financial records Plaintiffs have requested contain
trade secrets.  This argument is also wrong.  First, as explained above, Defendants have not
carried their burden of identifying the specific information for which they are claiming trade
secret status or demonstrating why that information would qualify for trade secret protection.

       More fundamentally, Defendants' historical financial records are **not** trade secrets as a
matter of law.  Plaintiffs are not seeking information regarding the companies' future strategies,
such as new shipwreck sites or recovery techniques.  Rather, Plaintiffs are seeking historical
information regarding the companies' financial transactions, such as the amount of gold
recovered from the S.S. *Central America*, the individuals and entities to whom its was sold, and
the amount of money earned from its sale.

       There is no risk of harm to the companies from the disclosure of this information because
it is all historical in nature.  According to published media reports, Defendants sold all or nearly
all of the gold recovered from the S.S. *Central America* by the end of 2003. [See Coin Resource
Article, Sold Out: S.S. Central America Treasure Dispersed, Nov. 19, 2003 (attached as Exh. 4)]
Thus, information regarding the inventory of gold recovered, marketing and sales efforts, and
revenues earned are all historical matters that do not qualify as trade secrets.

**G.**    **There Are No Trade Secrets In The Prior Pleadings And Transcripts From State Court**

Defendants claim that "the pleadings, exhibits and testimony in this case refer to or directly address the trade secrets of the company" and cite to the testimony of Defendants Arthur Cullman and Gilman Kirk as examples.  Defendants have again mischaracterized the record. Plaintiffs deposed Mr. Cullman for several hours and examined Mr. Kirk during a half day of a preliminary injunction hearing in state court, and neither witness testified about or otherwise disclosed anything that would qualify as a trade secret.

Plaintiffs' examination of these witnesses did not focus on the confidential matters such as the location of the shipwreck or the company's technological advancements.    Instead, Plaintiffs' examinations of Kirk and Cullman focused on issues of corporate governance; specifically, how Defendants Thompson, Kirk, Cullman, Turner and Ford have unlawfully entrenched themselves as directors of Columbus Exploration and usurped control of the company by continuing to hold over as directors and refusing to stand for reelection even though their respective terms of office expired years ago.

**H.**    **The Past Orders Of The State Court Do Not Contain Trade Secrets**

Defendants also argue that the state court's prior orders in these actions may contain trade secrets.  Again, Defendants are wrong.  The state court docket in these cases was open and accessible to the public for more than ten months, until the parties agreed to a temporary sealing order on approximately February 24, 2006.  Thus, Defendants have no basis for now claiming trade secret status on any information contained in the orders (and other pleadings) filed in state court prior to February 24, 2006. See, e.g., State ex. rel. Rea v. Ohio Dept. of Educ., 81 Ohio St. 3d 527, 532 (1998) ("once material is publicly disclosed, it loses any status it ever had as a trade secret").

After February 24, 2006, there appear to have been only two orders entered by the state court, which were merely procedural orders and did not disclose any information that would qualify as a trade secret. Thus, it is disingenuous for Defendants to claim that the prior state court orders in this case contain trade secrets.

**I.    The Dispatch And Mr. Fanta Are Not "Interlopers" As Plaintiffs Contend; Rather, They Are Investors Who Have A Contractual Right To The Financial Information They Are Seeking In These Cases**

Defendants label The Dispatch and Mr. Fanta as "interlopers" and accuse them of diverting and harming the company by the filing of these lawsuits. These accusations are baseless. The Dispatch and Mr. Fanta are not interlopers; they are **investors** who have a **contractual right** to information regarding the finances and operations of Columbus Exploration and Recovery Limited Partnership.[2]

Defendants' position is truly remarkable. They accept millions of dollars in investments from Plaintiffs and the other investors to fund the search and recovery efforts for the S.S. *Central*

---

[2]    Both the operating agreement for Columbus Exploration and the partnership agreement for Recovery Limited Partnership provide Plaintiffs with an express contractual right to inspect and copy the companies' books and records:

> 9.02. Books and Records.
>
> The Directors shall direct the officers to keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company's business. . . . The books and records shall be . . . available at the Company's principal office for examination by any Member at any and all reasonable times during normal business hours. . . .
>
> [CX Operating Agreement § 9.02]
>
> 15.1 *Books of Account*: The Partnership's books and records . . . shall be maintained at the principal office of the General Partner, and each Partner shall have access thereto at all reasonable times. The books and records shall be kept by the General Partner using the tax basis of accounting consistently applied and shall reflect all Partnership transactions and be appropriate and adequate for the Partnership's business.
>
> [RLP Amended Limited Partnership Agreement § 15.1]

10

*America* and then, once the treasure is recovered and sold and the proceeds collected, they stonewall the investors from any meaningful information regarding the company's finances and accuse the Plaintiffs of acting improperly for simply trying to exercise the very contractual rights of inspection Plaintiffs bargained for and relied upon in making their investments in the first place.

**J.    The Decision Of Columbus Exploration's Board Of Directors To Withhold Information Is Not Entitled To Any Consideration Because The Directors Are Holding Office Unlawfully And Therefore They Lack Authority To Take Any Actions Affecting The Members Of The Company**

Next, it is necessary to address an issue raised by Defendants regarding their purported right to withhold information from the company's investors pursuant to the Delaware Limited Liability Company Act ("Delaware Act"). Specifically, Defendants cite to Section 18-305 of the Delaware Act, which provides that "[t]he manager of a limited liability company shall have the right to keep confidential from the members, for such period of time as the manager deems reasonable, any information which the manager in good faith believes is not in the best interest of the limited liability company or could damage the limited liability company or its business." [Defendants' Memorandum at pg. 13, fn. 15]

Defendants state in their memorandum that the board of directors of Columbus Exploration voted unanimously to withhold information from Plaintiffs and the company's other investors based on the board's purported "good faith" belief that it was in the best interests of the company, and that their decision is therefore protected under Section 18-305 of the Delaware Act. Defendants cannot rely on Section 18-305, however, because at the time the directors voted to withhold information, their terms of office had expired, and thus, they had no authority to act as the managers of Columbus Exploration.

A corporate director who unlawfully holds over in his position after his term expires or who otherwise holds office without having been properly elected or appointed is known as a *de facto* director. See 2 Fletcher's Cyclopedia of Corporations § 376 ("A person is a de facto officer where that person acts as such, under color of an election or appointment, although the meeting may have been irregularly called, or held without proper notice, or irregularly conducted, or, according to some cases, although the person may have been elected at a meeting of the shareholders held outside the state, or though elected by a board of directors that was itself illegally elected or chosen."). The law in Delaware and other jurisdictions is well settled that the actions of a *de facto* director may be binding as between the corporation and third parties, but a *de facto* director has ***no authority to take actions affecting the corporation's shareholders.***

For instance, in Dillon v. Scotten, Dillon Co., 335 F. Supp. 566 (D. Del. 1971), the court held that the actions of the board of directors in creating two new directorship seats and appointing new directors to those seats were null and void because one of the directors who voted in favor of those transactions was never legally elected as a director of the company. The court rejected the defendants' argument that the director's actions were valid as a *de facto* director, because the court held the *de facto* director doctrine does not apply when the director's actions are challenged by the company's shareholders as opposed to a third party:

> The defendants contend that, while Summers' election to the Board may have been illegal, he could properly act as a *de facto* director. However, despite the defendants' claim that Summers' votes were properly counted on the dates in question since he was at least a *de facto* director "then in office," this Court holds that the *de facto* directors' doctrine does not apply when there is a direct challenge to a disputed office. The doctrine may not be used to perpetuate illegal control.

*  *  *

12

In this case the challenge does not involve third parties. It concerns two sets of officers claiming title to the same directorships. **The doctrine of *de facto* directors does not apply in cases not involving third parties. . . . The law of Delaware is in accord with this principle.**

[Id. at 569-70 (emphasis added)]

Likewise, in Baggett v. Cyclopss Medical Systems, Inc., 935 P.2d 1265 (Utah Ct. App. 1997), the court held the *de facto* director doctrine does not apply to internal corporate disputes challenging the transactions of the company's directors:

Cyclopss [Corporation] argues that Mr. Sansom's self-appointment as sole director for [the company], although "irregular" and "informal," was sufficient to confer on him the status of de facto director. We believe, however, that Mr. Sansom's alleged status as de facto director or officer is neither applicable nor relevant under the facts of this case.

The de facto doctrine validates the acts of officers who do not have actual authority as officers de jure. . . . The public policy promoted by this doctrine is to protect third persons relying on apparent authority because it "'would be impracticable for third persons to deal with corporations at all, if each one must investigate the legality of the title of each corporation officer as a condition precedent to a business transaction.'" . . .

The de facto director doctrine is not applicable, however, to transactions with shareholders. . . . Because this case involves an internal dispute challenging Mr. Sansom's actions and the Baggetts were not relying on his asserted authority to act, the de facto doctrine is inapplicable.

[Id. at 1269-70]

Accord: In re Stile, 707 N.Y.S.2d 227, 228-29 (N.Y. Ct. App. 2000) ("While Antico may have served as something of a de facto director whose acts may bind the corporation as to third parties, as between the de facto director and the corporation, a de facto director is not a director in law or fact. Accordingly, since Antico was not a director, there was no quorum of directors at the April 6, 1998, meeting, and the actions taken thereat were invalid.")

13

In this case, the evidence will show that at the time Defendants Thompson, Kirk, Turner, Ford and Cullman (the "Director-Defendants") voted to withhold information from Columbus Exploration's members, all of the Director-Defendants' terms of office had expired. In fact, the Director-Defendants have been unlawfully holding over as directors of Columbus Exploration for several years, and have refused to hold annual meetings so that new directors can be elected. Thus, as the foregoing authorities make clear, the decision of the Director-Defendants to withhold information from Plaintiffs and the other members of Columbus Exploration is invalid as a matter of law because Defendants were not lawful directors at the time they made the decision.

There is also a second reason Defendants cannot rely on Section 18-305 of the Delaware Act to support their decision to withhold information from Plaintiffs – that section only applies to investors who are exercising their **statutory** rights of inspection under the Delaware Act; it does not apply to investors who are exercising **contractual** rights of inspection.

As Plaintiffs' complaint clearly states, Plaintiffs are suing to enforce only their contractual rights of inspection under Columbus Exploration's operating agreement. The Delaware courts have recognized that, in the context of a limited liability company, a member's contractual right to inspect the company's book and records is separate and independent from the statutory right under Section 18-305 of the Delaware Act:

> Although the statute provides for a good faith defense to a statutory claim for production of books and records, *see* 6 *Del. C.* § 18-305(c), **this does not appear to be the proper standard to apply in response to a contractual claim to inspect books and records**. In a case interpreting 6 *Del. C.* § 17-305, the limited partnership analog to § 18-305, this Court has held that a partnership agreement can create a contractual inspection right that is "**in addition to and separate from" the statutory inspection right**. *Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P .,* 746 A.2d 842, 853 (Del.Ch.1999). This contractual right may be

14

> broader or narrower than the statutory right by its own terms . . . .
> Reliance on a limited partnership case is appropriate because
> Delaware's LLC Act was "modeled on the popular Delaware LP
> Act. . . ."
>
> > [Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C., 2002 WL
> > 205681, at *4 n.9 (Del. Ch. Ct. Jan. 29, 2002) (emphasis added)]

Thus, because Plaintiffs have filed suit to enforce only their contractual right of inspection, Defendants cannot rely on the "good faith" provision in Section 18-305 of the Delaware Act as a basis for withholding information.

## II.    CONCLUSION

Plaintiffs The Dispatch Printing Company and Donald Fanta do not take a position on whether these proceedings should be sealed or unsealed, but they do believe it is important to truly and accurately represent the factual and legal issues relevant to the issue of sealing as well as the substantive merits of these proceedings.

This case is about corporate fiduciaries who have been entrusted with millions of dollars in investments but then refuse to tell their investors what happened to their money. It has become obvious through Defendants' actions in these proceedings that the only way Plaintiffs will ever obtain access to the information to which they are contractually entitled is by an order of this Court (1) compelling Defendants to provide that information, and (2) removing Defendants Thompson, Kirk, Turner, Ford and Cullman as directors of Columbus Exploration.

Respectfully submitted,

/s/ John W. Zeiger
John W. Zeiger, Trial Attorney  (0010707)
Steven W. Tigges  (0019288)
Bradley T. Ferrell  (0070965)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 S. High Street
Columbus, Ohio  43215
Telephone:  (614) 365-9900
Facsimile:  (614) 365-7900

Attorneys for Plaintiffs
The Dispatch Printing Company
And Donald C. Fanta

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been

served via regular U.S. mail, postage prepaid, this 22nd day of May 2006, upon the following:

Richard T. Robol
ROBOL LAW OFFICE
555 City Park Avenue
Columbus, Ohio 43215

Attorney for Defendants
Recovery Limited Partnership and
Columbus Exploration LLC

Rex H. Elliott
COOPER & ELLIOTT LLC
2175 Riverside Drive
Columbus, Ohio 43221

Attorney for Defendants Econ Engineering
Associates, Inc. and Thomas G. Thompson

William M. Mattes
DINSMORE & SHOHL LLP
175 South Third Street, 10th Floor
Columbus, Ohio 43215

Attorney for Defendants Gilman T. Kirk,
James F. Turner, Michael J. Ford, and
W. Arthur Cullman, Jr.

Michael R. Szolosi, Sr.
MCNAMARA & MCNAMARA, L.L.P.
88 East Broad Street, Suite 1250
Columbus, Ohio 43215

Attorney for Plaintiffs
Michael Williamson, et al.


/s/ Steven W. Tigges
Steven W. Tigges            (0019288)


169785

17

**Exhibit K**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL H. WILLIAMSON, et al., | : | |
| | : | Case No. C2-06-292 |
| Plaintiffs, | : | |
| | : | Judge Sargus |
| -vs- | : | |
| | : | Magistrate Judge Kemp |
| RECOVERY LIMITED | : | |
| PARTNERSHIP, et al. | : | (On Removal From The Franklin County, |
| | : | Ohio Court Of Common Pleas, Case No. |
| Defendants. | : | 06CVH-03-4469) |
| | : | |

| | | |
|---|---|---|
| THE DISPATCH PRINTING | : | |
| COMPANY, et al., | : | Case No. C2-06-292 |
| | : | |
| Plaintiffs, | : | Judge Sargus |
| | : | |
| -vs- | : | Magistrate Judge Kemp |
| | : | |
| RECOVERY LIMITED | : | (On Removal From The Franklin County, |
| PARTNERSHIP, et al., | : | Ohio Court Of Common Pleas, Case No. |
| | : | 05CVH-04-4220) |
| Defendants. | : | |
| | : | |

| | | |
|---|---|---|
| THE DISPATCH PRINTING | : | |
| COMPANY, et al., | : | Case No. C2-06-292 |
| | : | |
| Plaintiffs, | : | Judge Sargus |
| | : | |
| -vs- | : | Magistrate Judge Kemp |
| | : | |
| GILMAN D. KIRK, et al., | : | (On Removal From The Franklin County, |
| | : | Ohio Court Of Common Pleas, Case No. |
| Defendants. | : | 05CVH-10-11795) |

## MEMORANDUM OF PLAINTIFFS THE DISPATCH PRINTING COMPANY AND DONALD C. FANTA IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

508860-0001

FILE COPY
H G H & K
SERVED BY MAIL/HAND _____
SUBMITTED/FILED _____
RECEIVED BY MAIL/HAND _____
POST MARKED
7-12-06
ENTERED
BY: WV

**MEMORANDUM OF PLAINTIFFS THE DISPATCH PRINTING COMPANY
AND DONALD C. FANTA IN OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER VENUE**

## I.    Introduction

Defendants' motion to transfer venue is notable not so much for what it says as for what

it omits to say:  **Despite nearly twenty pages of briefing, Defendants never mention that the**

**fundamental document at issue in these cases, the Operating Agreement of Columbus**

**Exploration, LLC, includes a forum selection clause that expressly vests this Court with**

**personal jurisdiction and venue over these cases.**  CX's Operating Agreement provides:

> **Any suit involving any dispute of or matter arising
> under this Agreement may only be brought in the Chancery
> Court of the State of Delaware <u>or in any state or federal court
> located in Franklin County, Ohio.</u>  <u>All members hereby
> consent to the exercise of personal jurisdiction by any such
> court with respect to any such proceeding, and waive any
> objection to venue in any such court.</u>**

> [CX Operating Agreement § 11.02 (emphasis added)]

Defendants Thompson, Kirk, Turner, Ford and Cullman are "members" of CX, and each

thus expressly agreed to this Court as an appropriate forum.  **More specifically, each expressly**

**consented to personal jurisdiction in this Court and "waiv[ed] any objection to venue"**

**here.**  Indeed, the first judge assigned to these cases, the Honorable Alan Travis, cited to this

very provision of the CX Operating Agreement in rejecting the same "venue" argument that

Defendants have, once again, raised here. Judge Travis wrote:

> [I]t appears that the Columbus Exploration Operating
> Agreement actually provides that in "[a]ny suit involving any
> dispute or matter arising under this Agreement may only be
> brought in the chancery court of the State of Delaware or in any
> state or federal court located in Franklin County, Ohio." **Finally,
> Article 11.02 of the . . . agreement specifically states that "[a]ll
> members hereby consent to the exercise of personal**

> jurisdiction by any such court with respect to any such
> proceeding, and waive any objection to venue in any such
> court."  **Thus, all defendants who are partners to the
> agreement consented to personal jurisdiction and waived any
> objection to venue in this court.**

> [Decision and Entry, June 17, 2005,
> at pgs. 5-6 (emphasis added)]

The case law is absolutely clear: "Forum selection clauses generally are enforced . . .

unless enforcement is shown to be unfair or unreasonable."  Security Watch, Inc. v. Sentinel

Systems, Inc., 176 F.3d 369, 374 (6th Cir. 1999).  "A forum selection clause is presumptively

valid and should only be set aside when trial in the contractual forum would be so gravely

difficult as to effectively deprive the opposing party of its day in court."  Preferred Capital, Inc.

v. Sarasota Kennel Club, 2005 U.S. LEXIS 15239 at *2 (N.D. Ohio 2005).  And a party seeking

to set aside a forum selection clause – here, Defendants – has a "heavy burden of proof" to show

that the clause is so unreasonable as to be unenforceable.  Carnival Cruise Lines, Inc. v. Shute,

499 U.S. 585, 594-95 (1991).

Defendants have failed to meet their burden of proof.  **Indeed, Defendants' motion to

transfer venue never even mentions the forum selection clause, much less purports to

demonstrate its alleged unfairness.**  For this reason alone, Defendants' motion should be

DENIED.

**II.**    **Defendants' Mischaracterization Of The Dispatch Cases**

At the outset, we should clear up Defendants' mischaracterization of what The Dispatch

cases are really about.

Defendants say that "the claims of the Fanta Plaintiffs arise out of the salvage of the S.S.

Central America" and thus involve "deep ocean exploration" and "protecting the marine

environment."  [Defendants' Motion to Transfer Venue at pgs. 2, 9]  Defendants even go so far

3

as to assert that the "law of deep sea exploration governs the key questions" in these cases.  [Id. at pg. 11]

Lest there be any misunderstanding, let's be clear:  **The Dispatch and Mr. Fanta are not trying to get their hands on any "secret treasure map," nor are they seeking to lay claim to the shipwreck of the S.S. Central America.**  The only reason that Defendants have devoted so much of their motion to the purported applicability of "law of the sea" is because Defendants want to divert attention from what these cases are really about – corporate mismanagement and breach of fiduciary duty to investors.

The Dispatch invested $1 million in Defendants.  Mr. Fanta invested $500,000.  In consideration of these investments, Defendants promised regular financial reports, annual financial statements, and annual meetings to elect new directors.  **But for five years now, since 2001, when Defendants started to sell the gold and other treasure that has been reported to be worth more than $100 million, Defendants have refused to provide any financial reports, they have refused to provide annual financial statements, they have refused to hold annual meetings or stand for reelection, and they have actually misled their investors with falsehoods about these matters.**  The question presented by these cases is simply this:  Should corporate fiduciaries be allowed to usurp corporate governance unto themselves, in patent violation of their promise of annual meetings and elections, and then refuse to account to their investors for the millions of dollars that were entrusted to them? The answer lies not in "law of the sea," but in basic corporate law of fiduciary responsibility and proper corporate governance.

**III.    By Removing These Cases To This Court, Defendants Waived Any Objections Based On Alleged Improper Venue Under 28 U.S.C. § 1406(a)**

As an initial matter, we should point out that one of the two statutory bases for Defendants' motion to transfer venue is inapplicable as a matter of law.

Defendants purport to base their motion on two separate venue statutes, 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). But Defendants waived any ability to invoke § 1406(a) when they voluntarily removed these cases to this Court.

As written, § 1406(a) only applies when venue is improper in the district in which the case is originally brought. By definition, in a removed case such as this, venue can never be improper in the district to which the case is removed, because, by removing the case, the removing party thereby consents to the propriety of venue in that district. As the court explained in Bacik v. Peek, 888 F.Supp. 1405 (N.D. Ohio 1993):

> **By their voluntary application for removal, the defendants have sanctioned the propriety of venue in this district and division. . . .    As its language suggests, the fundamental prerequisite for [Section 1406(a)'s] utilization is the impropriety of venue in the transferring or dismissing court.  Since that situation is clearly not present here, Section 1406(a) is inapplicable.**

> [Id. at 1413 (emphasis added)]

Accord: Burlington Northern & Santa Fe Ry. Co. v. Herzog Servs., Inc., 990 F. Supp. 503, 504 (N.D. Tex. 1998) ("a defendant who removes an action waives his objection to venue" under Section 1406(a)).

Here, all Defendants joined in removing these cases to this Court. All Defendants thus waived any objection to improper venue under Section 1406(a) and cannot now rely on that statute as a basis for their motion to transfer venue.

IV.    **Defendants' Request For Discretionary Transfer Of These Cases To Virginia Under
       28 U.S.C. § 1404(a) Should Also Be Denied**

As noted above, the other basis for Defendants' motion is 28 U.S.C. § 1404(a).    It

provides:

> "For the convenience of the parties and witnesses, in the
> interests of justice, a district court may transfer any civil action to
> any other district or division where it might have been brought."

[28 U.S.C. § 1404.]

**"A reading of case law in this . . . Circuit reveals that a change of venue [under §**

**1404(a)] is warranted in only limited circumstances.   The balance must be strongly in the**

**defendant's favor before a transfer will be ordered."**    Jonsson v. Stanley Works, 1985 WL

72676, 229 U.S.P.Q. 780, 781 (N.D. Ohio 1985) (emphasis added).    **"The plaintiff's choice of**

**forum rarely should be disturbed unless the balance of the factors strongly weigh in favor**

**of the defendant."**    Roby v. Boeing Co., 1998 WL 54976 at *1 (S.D. Ohio 1998) (emphasis

added).    **"For a proper transfer [under § 1404(a)] in the Sixth Circuit, the balance of all**

**relevant factors must weigh strongly in favor of transfer."**    Jeffrey Min. Products v. Left Fork

Min. Co., 992 F. Supp. 937, 938 (N.D. Ohio 1997) (emphasis added).

These cases do not present the "limited circumstances" in which transfer under § 1404(a)

would be appropriate.    Defendants' request for transfer under § 1404(a) should be denied for

seven reasons.

1.    **Defendants Have Failed To Meet Their Heavy Burden Of Demonstrating
      That The Forum Selection Clause In CX's Operating Agreement Is Unfair
      Or Unreasonable In Any Respect**

Perhaps the most fundamental problem with Defendants' request to transfer these cases to

Virginia is the forum selection clause in CX's Operating Agreement which expressly vests this

Court with personal jurisdiction and venue over these cases – and which makes no mention of Virginia as an acceptable alternate venue.

The CX Operating Agreement provides: "Any suit involving any dispute of or matter arising under this Agreement may only be brought in the Chancery Court of the State of Delaware or in any state or federal court located in Franklin County, Ohio." [CX Operating Agreement § 11.02] The Dispatch cases plainly are "dispute[s] . . . arising under this Agreement," inasmuch as The Dispatch and Mr. Fanta are suing to enforce their rights under the Operating Agreement to receive annual financial statements and other financial reports from directors who stand annually for reelection. Thus, under the plain language of the CX Operating Agreement, the Dispatch cases are already properly venued in a court to which CX and its members agreed.

If this isn't enough, the Operating Agreement goes on to specify that "[a]ll Members hereby consent to the exercise of personal jurisdiction by any such [state or federal] court [in Franklin County, Ohio] with respect to any such proceeding, and waive any objection to venue in any such court." [CX Operating Agreement § 11.02] In other words, Section 11.02 of the Operating Agreement not only identifies this Court as a proper forum, it also subjects these Defendants to this Court's personal jurisdiction and waives any objection these Defendants may raise to venue in this Court.

Under the Delaware Limited Liability Company Act, which governs CX, this forum selection clause is binding not only on CX's members but also on its "managers" (i.e. its officers and directors) and on the company itself. The Delaware LLC Act provides:

> **A member or manager of a limited liability company . . .**
> **is bound by the limited liability company agreement whether**
> **or not the member or manager . . . executes the limited liability**
> **company agreement. . . . A limited liability company is bound**

7

> **by its limited liability company agreement whether or not the**
> **limited liability company executes the limited liability company**
> **agreement.**

[Del. Code Ann. § 18-101(7) (emphasis added)]

Defendants Thompson, Kirk, Turner, Ford and Cullman, as well as CX itself, thus are bound as a matter of law by their agreement to personal jurisdiction and venue in this Court. In addition, we would refer the Court to pages 63 and 64 of the transcript from the February 24, 2006 hearing, which provides further confirmation of Defendants' agreement to jurisdiction and venue in Ohio.

In a case such as this, where the parties have agreed to jurisdiction and venue for their disputes, their agreement is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). "Forum selection clauses generally are enforced . . . unless enforcement is shown to be unfair or unreasonable." Security Watch, Inc. v. Sentinel Systems, Inc., 176 F.3d 369, 374 (6th Cir. 1999). "A forum selection clause is presumptively valid and should only be set aside when trial in the contractual forum would be so gravely difficult as to effectively deprive the opposing party of its day in court." Preferred Capital, Inc. v. Sarasota Kennel Club, 2005 U.S. LEXIS 15239 at *2 (N.D. Ohio 2005).

Indeed, forum selection clauses are entitled to such great deference that in each of the following cases, the court denied a motion to transfer venue under § 1404(a) where, as here, the court in which the action was already pending was a proper venue under the parties' forum selection agreement. See, e.g., Medicine Shoppe International v. Browne, 683 F. Supp. 731, 733 (E.D. Mo. 1988) (denying motion to transfer under § 1404(a): "[b]ecause the Court has concluded . . . that the forum selection clause is enforceable according to its terms, this action

could only have been brought in Missouri, and could not have been brought in New York");

National Equipment Rental, Ltd. v. Centra Cast Co., 270 F. Supp. 999, 1000 (E.D.N.Y. 1966)

(denying motion to transfer to California because of forum selection clause designating New

York as the proper venue: "A court should, absent strong countervailing considerations, give the

parties' agreement for venue its intended effect"); Richardson Greenshields Securities, Inc. v.

Metz, 566 F. Supp. 131, 134 (S.D.N.Y. 1983) (denying motion to transfer action to the District

of Columbia where parties had agreed to a forum selection clause designating New York as the

proper venue); S.M.W. Seiko, Inc. v. Howard Concrete Pumping Co., 170 F.Supp.2d 152, 156-

58 (D.N.H. 2001) ( "[e]ven more significant is the fact that the parties selected New Hampshire

as the appropriate venue in which to resolve disputes under the Agreement . . . . While not

dispositive of the defendant's motion [to transfer] . . . the parties' Agreement weighs heavily in

favor of the plaintiff's choice of forum"); First Mississippi Corp. v. Thunderbird Energy, Inc.,

876 F. Supp. 840 (S.D. Miss. 1995) (denying motion to transfer case to Kentucky because parties

had a forum selection clause designating Mississippi as the proper venue: "a forum selection

clause overrides even strong cases for change of venue, unless the moving party shows that

enforcement of the clause is legally unreasonable").

As these cases make clear, a party seeking to avoid a forum selection clause – here,

Defendants – has a "heavy burden of proof" to show that the clause is so unreasonable and unfair

as to be unenforceable. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594-95 (1991). **But

Defendants have not even bothered to mention the forum selection clause in CX's

Operating Agreement, much less offer any arguments or proof as to its alleged unfairness.**

Defendants' motion should be denied for this reason alone.

**2.     Defendant Thompson Has Already Consented To Personal Jurisdiction In This Court And Cannot Now Be Heard To Contend Otherwise**

Defendants also contend that Defendant Thompson cannot be sued here. As Defendants put it, Mr. Thompson "contests his amenability to personal jurisdiction in the Southern District of Ohio for matters arising out of this case." [Defendants' Motion to Transfer Venue at pg. 3]

Mr. Thompson's objection is baseless. **As noted above, in CX's Operating Agreement, he expressly consented to personal jurisdiction in this Court, and waived any objection to venue here.** By statute, under Delaware Code Annotated § 18-101(7), his agreement to jurisdiction and venue in this Court is binding on him not only in his capacity as a member of CX, but also in his capacity as an officer and director of the company. Compare National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1964) ("it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court"). Mr. Thompson thus cannot now be heard to contend that he supposedly is not amenable to suit in this Court when he expressly agreed to this Court's jurisdiction and venue in the CX Operating Agreement. Compare Ford Dealer Computer Servs., Inc. v. Fullerton Motors, LLC, 42 Fed. Appx. 770, 772 (6th Cir. 2002) ("we conclude that the district court correctly found that Mr. Fullerton had consented to personal jurisdiction in Michigan courts when he signed the contract agreeing to arbitrate disputes in Michigan"); Anderson v. Vantage Press, Inc., 802 F.2d 456, 1986 WL 17582, at *1 (6th Cir. 1986) ("The general rule is that the parties to a contract may agree in advance to submit to the jurisdiction of a particular court. . . . So long as there is nothing unreasonable in such a provision, it is valid").

3.    **Defendants Have Failed To Show That Each Of Them Would Have Been Subject To Personal Jurisdiction And Venue In The Eastern District Of Virginia When These Cases Were Filed**

Section 1404(a) contains a significant restriction on its applicability:    It only allows transfer of a case to another district **"where it might have been brought"** (emphasis added).

In order to satisfy this provision, the party moving for transfer must affirmatively demonstrate that each of the defendants in the case would have been subject to subject matter jurisdiction, personal jurisdiction and venue in the proposed transferee court at the time the case was originally filed. Bacik v. Peek, 888 F. Supp. 1405, 1413 (N.D. Ohio 1993) ("[t]his statute permits transfer of an action to a district 'where it might have been brought,' a court which enjoys proper venue, subject matter and territorial jurisdiction"); Guillory v. Barrieau Moving, 2004 WL 1393618 at *2 (D. Conn. 2004) (denying motion to transfer venue because "the court cannot determine whether [the defendant] would be subject to personal jurisdiction in the Middle District of Florida, which is a prerequisite to any transfer pursuant to Section 1404(a)"); CC Investors Corp. v. Raytheon Co., 2003 WL 22937748 at *2 (D. Del. 2003) (denying motion to transfer venue because the defendants failed to present the court with sufficient evidence that personal jurisdiction would exist in the transferee forum).    And, as these cases indicate, the burden falls squarely on the party who seeks to transfer venue to prove that the case could have originally been brought in the proposed transferee forum. Illinois Union Insurance Co. v. Tri Core, Inc., 191 F.Supp.2d 794, 797-98 (N.D. Tex. 2002).

Defendants have failed to meet this burden as well.    Although Defendants offer unsupported conclusions, their motion fails to include any evidence that would show that each of them would have been subject to personal jurisdiction and venue in the Eastern District of Virginia at the time that the Dispatch cases were filed.    Instead, Defendants propose an "after-

the-fact consent" to jurisdiction and venue in Virginia, but, as explained below, this purported

"consent" is insufficient to meet Defendants' burden.  Instead, Defendants had to offer proof of

their assertions of jurisdiction and venue in Virginia.  Their failure to do so is another ground for

denial of their motion.  See, e.g., Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3rd Cir. 1970)

(holding the trial court abused its discretion in transferring the case under Section 1404(a)

because "there [was] a very real question whether plaintiff could have obtained jurisdiction in

Missouri" over one of the co-defendants).

> **4.     Defendants Cannot Circumvent § 1404(a) By An After-The-Fact "Consent"
> To Jurisdiction And Venue In Virginia**

As noted above, instead of proving that Defendants would have been subject to suit in

Virginia, Defendants have offered an after-the-fact "consent" to jurisdiction in Virginia.

[Defendants' Joint Submission at pg. 1]  This tactic was rejected by the United States Supreme

Court more than forty-five years ago.

In Hoffman v. Blaski, 363 U.S. 335 (1960), the Court held that a defendant cannot use an

after-the-fact consent to jurisdiction in a proposed transferee court as a substitute for meeting his

burden of proving that he would have been subject to jurisdiction in such court at the time the

case was originally filed.  In reasoning that is equally apt here, the Court in Hoffman held:

> [T]he power of a district court under § 1404(a) to
> transfer an action to another district is made to depend **not
> upon the wish or waiver of the defendant**, but, rather, upon
> whether the transferee district was one in which the action
> 'might have been brought' by the plaintiff.
>
> The thesis urged by petitioners would not only do
> violence to the plain words of § 1404(a), but would also inject
> gross discrimination.  **That thesis, if adopted, would empower a
> District Court, upon a finding of convenience, to transfer an
> action to any district desired by the defendants and in which
> they were willing to waive their statutory defenses as to venue
> and jurisdiction over their persons, regardless of the fact that**

12

> **such transferee district was not one in which the action 'might**
> **have been brought' by the plaintiff. . . .**

> [Id. at 343-44 (emphasis added)]

Accord: Bacik, supra, 888 F. Supp. at 1413 (Section 1404(a) "permits transfer of an action to a district 'where it might have been brought,' a court which enjoys proper venue, subject matter and territorial jurisdiction. . . . These conditions apply regardless of a defendant's wishes or willingness to consent to a forum lacking proper venue or territorial jurisdiction"); United States v. Edward Rose & Sons, 246 F.Supp.2d 744, 756 (E.D. Mich. 2003) ("Defendants have failed to meet their threshold burden of proving that this action could have been brought against all of the named defendants in Indiana, short of their agreement to consent to jurisdiction. Therefore, Hoffman is controlling and defendants' motion must be denied").

Under Hoffman, Defendants' after-the-fact "consent" to suit in Virginia is wholly ineffective. It was Defendants' burden to prove that they could have been sued in Virginia at the time the Dispatch cases were originally brought, but Defendants have utterly failed to meet this burden.

## 5.    "Convenience Factors" Under § 1404(a) Also Favor The Southern District Of Ohio

It is well settled that the plaintiff's choice of forum should be given significant weight in determining where a case should be venued under § 1404(a), especially when that forum is also the plaintiff's place of residence. Max Rack, Inc. v. Hoist Fitness Systems, Inc., 2006 WL 640497 at *3 (S.D. Ohio 2006), ("[a]s a general rule, the plaintiff's choice of forum is given 'substantial consideration in balancing the § 1404 factors. . . . This is especially true [when] the plaintiff also resides in the chosen forum'"), quoting Steelcase, Inc. v. Smart Technologies, Inc., 336 F.Supp.2d 714, 720 (W.D. Mich. 2004). This remains true even where, as here, the

plaintiffs originally filed the action in state court and it was removed by defendants; plaintiffs' home forum is still entitled to substantial weight in deciding whether to transfer the case. Eberline v. Ajilon, LLC, 349 F.Supp.2d 1052, 1055 (N.D. Ohio 2004) (holding that plaintiff's choice of forum was still entitled to substantial weight even though Plaintiff had originally filed in state court).

Here, The Dispatch and Mr. Fanta are both residents of Ohio.  As the foregoing authorities make clear, this fact alone weighs heavily in favor of the Southern District of Ohio as the proper venue for this action.  Moreover, most of the Defendants are residents of Ohio and/or maintain offices here:

- Defendants Kirk, Turner, Ford and Cullman are all residents of Ohio.

- Defendants Econ Engineering Associates, Inc. and Recovery Limited Partnership both are organized under the laws of the State of Ohio and maintain their principal places of business here.

- Although Columbus Exploration LLC ("Columbus Exploration") is organized in Delaware, it maintains its home office at 433 West Sixth Avenue in Columbus and has done so since its formation in 1998.  This is also the location from which the directors of the company have issued their written communications to the company's members.

- The only remaining defendant is Mr. Thompson, who claims now to reside in Florida.  But even if he now lives in Florida, that makes no difference because, as noted earlier, Mr. Thompson expressly consented to personal jurisdiction and venue in Ohio for purposes of these claims.

14

By contrast, none of Plaintiffs or Defendants in these cases have any connection with the Eastern District of Virginia. None of them reside there, none has offices there.

Similarly, the Southern District of Ohio is more convenient for witnesses. Compare Moses v. Business Card Express, Inc., 929 F.2d 1131, 1136-37 (6th Cir. 1991), cert. denied, 502 U.S. 821 (1991) ("convenience of potential witnesses" is a significant factor under § 1404); Jeffery Mining, supra, 992 F. Supp. at 938. The Dispatch's witness in these cases are residents of Ohio. Likewise, the accountant for RLP and CX, Stephen Alexander, who will be a key witness, is also a resident of Ohio. [See Proof of Service of Subpoena on Stephen Alexander (Doc. # 52)] The lawyer who prepared the CX Operating Agreement, Bill Kelly, is also a resident of Ohio. And, all of the Director-Defendants are residents of Ohio, with the exception of Mr. Thompson who now purports to live in Florida.

By contrast, none of the key witnesses in these cases reside in the Eastern District of Virginia. While Defendants contend that the Clerk of Courts for the Eastern District of Virginia, will be a witness, this is baseless. The key documentary evidence in this case will be the financial records of CX and RLP. These documents are not in the possession of the Clerk for the Eastern District of Virginia; rather, they are in the possession and custody of the companies' accountant, Mr. Alexander, who resides in Urbana, Ohio. Compare Jeffrey Mining, supra, 992 F. Supp. at 938 ("location of records" is another important factor to consider in deciding whether to transfer under § 1404).

In short, Plaintiffs' choice of forum, convenience of the parties, convenience of witnesses, and location of the financial records actually at issue in this case, all weigh in favor of keeping this case in Ohio.

6.     **Contrary To Defendants' Contentions, The Interests Of Comity And Judicial Economy Do Not Favor The Eastern District Of Virginia, Because The Prior Admiralty Action There Did Not Involve Any Of The Claims, Issues Or Parties That Are Involved In The Present Cases**

Much of Defendants' motion is built upon their suggestion of "similarity" in parties and issues between these cases and the prior admiralty action in the Eastern District of Virginia. But Defendants have badly overstated this alleged "similarity."

Contrary to Defendants' suggestion, there is no overlap in parties between the Dispatch cases and the prior admiralty action. The Dispatch and Mr. Fanta were not parties to the admiralty action. Indeed, Columbus Exploration and Recovery also were not parties to the Virginia case, nor was Econ or any of the individual defendants in these cases. Instead, the named plaintiff in the admiralty case was Columbus America Discovery Group, Inc., but it is not a party to the instant cases.

In addition, the claims and issues in the present cases are completely different from the claims in the prior Virginia admiralty action. The admiralty action was an *in rem* maritime action to determine ownership and salvage rights to the shipwreck of the S.S. Central America. The Dispatch cases, by contrast, are not *in rem* proceedings, nor do they involve any admiralty or maritime claims. The Dispatch and Mr. Fanta are suing to obtain the financial records of CX and RLP; their claims involve state law issues of contract rights, corporate governance, and the fiduciary obligations owed by corporate managers to their investors.

Moreover, as a matter of law, the Eastern District of Virginia's admiralty jurisdiction in the prior action would not have extended to the Dispatch Plaintiffs' state law claims. See, e.g., Kling v. Waguespack, 635 F.2d 406, 406-07 (5th Cir. 1981) (holding that state law claim against corporate liquidator for breach of fiduciary duty was not an admiralty claim, even though the corporate asset at issue was a ship: "although the vehicle involved in this case was a vessel, its

16

only significance to this action seems to be the fact that is was a corporate asset"); Clements v. Preston, 2005 WL 3371084 at *6 (U.S.D.C. S.D. Ala. 2005) ("[i]n determining whether a contract is maritime in nature, it is not enough that the agreement relates to a ship; rather, maritime contracts are those concerning transportation by sea, those relating to navigable waters, and those concerning maritime employment"); Webster v. Longfellow Cruise Line, Inc., 725 F. Supp. 63, 64-66 (D. Me. 1989) (holding that state law claims involving corporate disputes between shareholders and directors of a cruise line were not admiralty claims: "Counts I and II in this action rest wholly on state business law.  A party's fiduciary obligation not to waste corporate assets and to properly conduct the business of the corporation arise from the Maine Business Corporations Act").

When stripped of its rhetoric, Defendants' claim of alleged "similarity" between the Dispatch cases and the prior Virginia case is nonsense.  The Virginia case was terminated on July 11, 2000, before The Dispatch's claims in this case even arose.  The two judges in the Eastern District of Virginia who presided over that case are now deceased.  And, perhaps most notably of all, the two companies in which The Dispatch and Mr. Fanta invested – CX and RLP, and thus the two companies at the center of the instant cases – were not even parties in Virginia.

### 7.    The First-To-File Rule Does Not Apply

Lastly, perhaps it goes without saying, but Defendants' invocation of the "first-to-file" rule is baseless. [Defendants' Motion to Transfer Venue at pgs. 6-8]

The first-filed rule provides that "when identical suits are pending in two courts, the court in which the first suit was filed should generally proceed to judgment." Smithers-Oasis Co. v. Clifford Sales & Marketing, 194 F.Supp.2d 685, 687 (N.D. Ohio 2002), quoting Plating Resources, Inc. v. UTI Corp., 47 F.Supp.2d 899, 903 (N.D. Ohio 1999).  Courts applying the rule

have made clear that it only applies when two suits involving substantially the same parties and purpose have been filed in concurrent federal jurisdictions. Smithers, supra, 194 F.Supp.2d at 687; Chubb & Son, Inc. v. Kimes, 1992 WL 88112 at *3 (D.N.J. 1992) (first-filed rule "requires that the parties be identical and the issue be the same").

The first-filed rule has no application here for several reasons. First, as the court in Smithers, supra, stated, the first-filed rule requires that two suits actually be "**pending**" in separate courts. 194 F.Supp.2d at 687 (emphasis added). See also Kytel Int'l Group, Inc. v. Rent-A-Center, Inc., 43 Fed. Appx. 420 at *1 (2d Cir. 2002) ("[t]he first filed rule . . . permits the transfer or dismissal of subsequently commenced litigation involving the same parties and the same issues **when both suits are pending in federal courts**.") (emphasis added). But, the Virginia admiralty action was terminated **six years ago** and thus is not a "pending" action for purposes of the first-filed rule.

Second, none of the parties in the present cases were parties to the prior admiralty action in Virginia. Compare Chubb & Son, supra, at *3 ([b]ecause . . . the court finds that the two actions involve different parties and distinct legal issues, such an analysis under the first-filed rule is unnecessary").

Third, the factual and legal issues involved in the present cases are completely different than the issues involved in the prior admiralty action. The Dispatch cases involve state law matters of contract, fiduciary duty and corporate governance; whereas the claims in the admiralty action involved ownership and salvage rights to a shipwreck. Indeed, the Dispatch Plaintiffs' claims in these cases did not even arise until 2001, when Defendants first began their stonewalling tactics, but, by then, the Virginia admiralty case had already been terminated. Compare EEOC v. Liberty Maritime Corp., 1999 WL 39521 at *1 n.4 (E.D. La. Jan. 28, 1999)

18

("because the court finds that the cases involve substantially different claims, the court need not address the 'first-to-file' rule").

Before concluding, we should note one more point: If Defendants truly thought that these types of corporate governance cases should be brought in Virginia, Defendants had the perfect opportunity to do so in 1998, when they drafted CX's Operating Agreement. If Defendants truly wanted these cases in Virginia, they could have written CX's Operating Agreement to provide that these claims must be brought there. But Defendants chose a different course; they crafted CX's Operating Agreement to provide that cases thereunder should be lodged in Delaware or Ohio, not Virginia. It's much too late for Defendants to change their mind now. This case is filed precisely where Defendants agreed it ought to be filed – Franklin County, Ohio.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs The Dispatch Printing Company and Donald C. Fanta respectfully request the Court to DENY Defendants' motion to transfer venue.

Respectfully submitted,

/s/ John W. Zeiger
John W. Zeiger, Trial Attorney (0010707)
Steven W. Tigges (0019288)
Bradley T. Ferrell (0070965)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street, Suite 3500
Columbus, Ohio 43215
Telephone: (614) 365-9900
Facsimile: (614) 365-7900
Attorneys for The Dispatch Printing
Company and Donald C. Fanta

19

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically this 6th day of July, 2006. Notice of this

filing and a copy of the pleading will be sent to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's system.

Richard T. Robol
ROBOL LAW OFFICE
555 City Park Avenue
Columbus, Ohio 43215

Attorney for Defendants
Recovery Limited Partnership and
Columbus Exploration LLC

Rex H. Elliott
COOPER & ELLIOTT LLC
2175 Riverside Drive
Columbus, Ohio 43221

Attorney for Defendants Econ Engineering
Associates, Inc. and Thomas G. Thompson

William M. Mattes
DINSMORE & SHOHL LLP
175 South Third Street, 10th Floor
Columbus, Ohio 43215

Attorney for Defendants Gilman T. Kirk,
James F. Turner, Michael J. Ford, and
W. Arthur Cullman, Jr.

Michael R. Szolosi, Sr.
MCNAMARA & MCNAMARA, L.L.P.
88 East Broad Street, Suite 1250
Columbus, Ohio 43215

Attorney for Plaintiffs
Michael Williamson, et al.

/s/ Bradley T. Ferrell
Bradley T. Ferrell (0070965)

157-169/170295

**Exhibit L**

IN THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO

THE DISPATCH PRINTING COMPANY,       :
et al.,                              :
                                     :
                    Plaintiffs,      :
                                     :        Case No. 05CVH-10-11795
    -vs-                             :
                                     :        Judge Peterson
                                     :
GILMAN D. KIRK, et al.,              :
                                     :
                    Defendants.      :

## APPLICATION OF PLAINTIFFS THE DISPATCH PRINTING COMPANY AND DONALD C. FANTA FOR PRELIMINARY AND PERMANENT INJUNCTION

Plaintiffs The Dispatch Printing Company and Donald C. Fanta move the Court pursuant to Civil Rule 65 for a preliminary and permanent injunction to:

(1)    Order Defendants immediately to provide Plaintiffs with all financial reports and other financial information regarding Columbus Exploration, LLC to which Plaintiffs are entitled under their existing Operating Agreement with Defendants.

(2)    Enjoin Defendants' unlawful demand that, before Defendants will provide Plaintiffs with any reports regarding the financial affairs of Columbus Exploration, LLC, Plaintiffs first must agree to (i) forgo their existing right to receive these financial reports under their existing Operating Agreement with Defendants, (ii) sign a new agreement, and (iii) agree to pay "liquidated damages" to Defendants.

Pursuant to Civil Rule 65(B)(2), Plaintiffs further move the Court to consolidate the hearing on Plaintiffs' application for preliminary injunction with the hearing on Plaintiffs' application for permanent injunction.

The grounds supporting this motion are set forth in the attached memorandum.

Respectfully submitted,

John W. Zeiger (0010707)
Steven W. Tigges (0019288)
Bradley T. Ferrell (0070965)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 S. High Street
Columbus, Ohio 43215
Telephone: (614) 365-9900
Facsimile: (614) 365-7900

Attorneys for Plaintiffs

2

## MEMORANDUM IN SUPPORT

### I.    Introduction

Perhaps the most fundamental fiduciary duty that corporate directors owe to their investors is the duty to keep them informed of what happened to the money that the investors entrusted to the directors. In stark contrast to this most basic fiduciary duty, this case is about directors who have been entrusted with millions from their investors but then refused to tell them what happened to their money.

Plaintiffs The Dispatch Printing Company and Donald C. Fanta are investors in a limited liability company known as Columbus Exploration, LLC. **Between them, The Dispatch and Mr. Fanta have invested $1.25 million in Columbus Exploration.    The Dispatch's investment is $1 million; Mr. Fanta has invested an additional $250,000.**

Defendants are the directors of Columbus Exploration.  As directors, Defendants are responsible for the overall management of Columbus Exploration and owe fiduciary duties to the company's investors, including The Dispatch and Mr. Fanta, to ensure that Columbus Exploration is managed lawfully and responsibly. **More fundamentally, Defendants owe a fiduciary duty to the company's investors, including The Dispatch and Mr. Fanta, to keep the investors apprised of the company's financial affairs.**  This duty is so basic that it is actually set out in Columbus Exploration's corporate governance document, its "Operating Agreement," which specifically obligates Defendants, as the company's directors, to provide each investor with an annual financial report:

> "9.04. Reports. Within ninety (90) days after the end of each taxable year of the Company, **the Directors <u>shall</u> cause to be sent to each person who was a Member at any time during such year the financial statements of the Company for such year,** accompanied by a certificate of the chief financial officer of the Company that such financial statements present fairly, in all

3

material respects, the financial position and results of operations and cash flows for the Company at year-end and for the year then ended, in conformity with generally accepted accounting principles. . . .

[Operating Agreement § 9.04 (emphasis added)]

As fiduciaries entrusted with someone else's money, you would think that Defendants would have been especially vigilant in protecting their investors' rights to receive these financial reports. Unfortunately, this case is about these fiduciaries' disregard for their investors' rights. **For the past five years, Defendants have refused to provide The Dispatch, Mr. Fanta and the other investors in Columbus Exploration with any financial reports.** And then, when The Dispatch and Mr. Fanta sent not one but four letters asking for financial information, Defendants never even bothered to give Plaintiffs the courtesy of acknowledging that Defendants had received their letters.

Defendants' stonewalling was bad enough, but now, in response to this case, Defendants have taken their disregard for their investors' rights to new heights by announcing that, in order to receive any financial reports from Defendants, Plaintiffs and the other investors first must (i) forgo their right to receive these financial reports under their **existing** Operating Agreement with Defendants, (ii) Plaintiffs must sign a **new** agreement, and (iii) Plaintiffs must agree to pay "liquidated damages" to Defendants.

Plaintiffs commenced this case to find out what Defendants did with their money. **Has Plaintiffs' investment in Columbus Exploration been squandered, or stolen, or worse?** We don't know, and we won't know until this Court exercises its equitable powers to enjoin Defendants' violations of fiduciary duty and order them to fulfill their promise in the Operating Agreement to provide The Dispatch, Mr. Fanta and the other investors with complete and timely reports of the company's financial affairs.

4

## II.    Statement Of Facts

Defendants are directors of Columbus Exploration, LLC, and have held this office ever since the company was formed in 1998. As directors, Defendants are responsible for the overall management of Columbus Exploration's business and, more importantly, are responsible for reporting the financial results of the company's business to Columbus Exploration's investors.

Columbus Exploration was formed for the purpose of recovering sunken treasure from the *S.S. Central America*, a U.S. mail steamship that sank off the Carolina coast in 1857 while carrying several tons of gold. Prior to the formation of Columbus Exploration, this business was being carried on by another company known as Recovery L.P. When Columbus Exploration was formed, Columbus Exploration took over Recovery's operations.

The Dispatch and Mr. Fanta were investors in Recovery and, therefore, they were granted equivalent ownership interests in Columbus Exploration when it took over Recovery's business. The Dispatch has invested $1 million; Mr. Fanta has invested another $250,000.

Columbus Exploration and its predecessor, Recovery, successfully recovered more than one ton of gold and other sunken treasure from the shipwreck of the *S.S. Central America*. The question presented by this case is: **What happened to this treasure? More specifically, what happened to the millions that Defendants should have received from sale of the treasure?**

In January 2000, Defendants advised Columbus Exploration's investors, including The Dispatch and Mr. Fanta, that Defendants had signed a contract with a California company to market the recovered treasure. Defendants told the investors that this deal enabled them to pay off all of Columbus Exploration's debt and **"will bring us a return on the . . . treasure."**

Plaintiffs are informed and believe that the California marketing company sold all of the treasure by the end of 2003. **But where is the "return on the treasure" that Defendants**

**promised?** Defendants' sale of the treasure should have yielded millions, but Defendants have failed to account to their investors for any of the proceeds of these sales. That brings us back to the fundamental question presented by this case: **What happened to Plaintiffs' investments? And what happened to the "return" on their investments that Defendants promised?**

As investors in Columbus Exploration, The Dispatch and Mr. Fanta have an absolute right to know the answers to these questions. The corporate governance document for Columbus Exploration, its "Operating Agreement," specifically provides: "Within ninety (90) days after the end of each taxable year of the Company, **the Directors <u>shall</u> cause to be sent to each person who was a Member at any time during such year the financial statements of the Company for such year . . . .**" [Columbus Exploration Agreement § 9.04 (emphasis added)] The Operating Agreement further provides: **"The books and records [of Columbus Exploration] . . . <u>shall</u> be available at the Company's principal office for examination by any Member at any and all reasonable times during normal business hours."** [Columbus Exploration Agreement § 9.02 (emphasis added)]

Despite the clarity of the investors' rights to this information, Defendants have stonewalled their investors. **The Dispatch and Mr. Fanta have not received any financial reports from Defendants for five years.** Even worse, Defendants refused to respond to Plaintiffs' repeated requests to inspect Columbus Exploration's financial records. During the period from September 2004 to March 2005, The Dispatch and Mr. Fanta sent four separate letters to Columbus Exploration asking to inspect its financial records. As stated above, under Columbus Exploration's Operating Agreement, The Dispatch and Mr. Fanta have an absolute right to receive these records from Defendants. **But Defendants never even bothered to give**

**Plaintiffs the courtesy of acknowledging that they had even received any of Plaintiffs' letters.**

Defendants' stonewalling left Plaintiffs with no choice but to file this case to find out what happened to their investments.[1] But now, in response to the filing of this case, Defendants have committed an even more egregious violation of their fiduciary duties. On December 16, 2005, Defendants sent a memo to their investors, including The Dispatch and Mr. Fanta, announcing that Defendants will meet with their investors to "discuss" Columbus Exploration's financial affairs, **but only if the investors forgo their right to receive financial reports under the existing Operating Agreement, sign a new agreement, and agree to pay "liquidated damages" to Defendants.**

Let's be clear: **Plaintiffs do not need to sign any new agreement, or agree to pay "liquidated damages," to be entitled to receive financial reports.** The existing Operating Agreement for Columbus Exploration is absolutely clear: Plaintiffs already have an absolute, presently-existing right to receive financial reports and other financial information from Defendants. Indeed, as fiduciaries entrusted with other peoples' monies, Defendants owe a fiduciary obligation to their investors to provide them with these financial reports.

Defendants' attempt to hold Plaintiffs' investment hostage by demanding that Plaintiffs agree to pay "liquidated damages" before Defendants will perform their existing fiduciary duties is unconscionable. As explained below, Defendants' fiduciary violations should be enjoined and they should be ordered to comply with their fiduciary duty as plainly spelled out in the existing Operating Agreement for Columbus Exploration.

---

[1] Plaintiffs also filed a second case, against Columbus Exploration and Recovery, in an effort to obtain financial information about their investments. That case is presently pending before the Franklin County Court of Appeals, on an appeal taken by Columbus Exploration and Recovery from an order by Judge Travis compelling them to provide financial information to Plaintiffs.

7

### III.    Law And Argument

It's not even debatable that (1) Defendants, as directors, owe a fiduciary duty to their investors, including The Dispatch and Mr. Fanta, to provide financial reports, and (2) Defendants have breached this duty.

Section 9.04 of the Operating Agreement of Columbus Exploration is perfectly clear: **Defendants, as directors, are charged with a mandatory duty to provide annual financial reports to their investors**. Section 9.04 of the Agreement specifically states that "the Directors **shall** cause" these financial reports "to be sent to each person who was a Member." Under Ohio law, the word "shall" is mandatory; it means what it says, that Defendants must, without any exceptions, provide financial reports to each and every investor, including The Dispatch and Mr. Fanta. See Guy v. City of Steubenville, 2001 WL 96120 at *5 (Ohio App. 7th Dist. 2001) ("[i]t is a well-settled principle of law that the use of the word 'shall' in a statute or contract connotes a mandatory obligation"); Nail v. Leader Nat'l Ins. Co., 1992 WL 80786 at *2 (Ohio App. 2d Dist. 1992) ("[t]he word 'shall' as used in contracts is ordinarily regarded as mandatory").

It is equally apparent that Defendants have breached this duty. For five years now, Defendants have refused to send annual financial reports to their investors, in direct violation of their mandatory duty to do so. Even after being asked four separate times for a report on financial affairs, Defendants continued to stonewall their investors.

In Cousins v. Brownfield, 83 Ohio App. 3d 782, 615 N.E.2d 1064 (10th Dist. 1992), the Franklin County Court of Appeals considered a corporate director's similar mistreatment of his investors. In Cousins, as here, an investor asked repeatedly, for five years, for financial reports, but defendant, the company's director, refused to provide any information. The Court of Appeals held that the director not only violated his fiduciary duties to the investor but also

8

affirmed an award of punitive damages against the director. <u>Accord</u>: <u>Manbourne, Inc. v. Conrad</u>,

796 F.2d 884, 889 (7th Cir. 1986) (holding that corporate directors breached their fiduciary duty

to plaintiff-shareholder by denying him the right to inspect the corporation's financial records).

In the instant case, we need look no further than Columbus Exploration's own Operating

Agreement to know that an injunction is the proper remedy for Defendants' violation of fiduciary

duties. In Section 11.09 of the Operating Agreement, Defendants and the other members of

Columbus Exploration expressly agreed that any violation of the Operating Agreement will

cause irreparable injury and entitles the injured party to injunctive relief:

> 11.09. Specific Performance. The parties recognize that
> irreparable injury will result from a breach of any provision of this
> Agreement and that money damages will be inadequate to fully
> remedy the injury. **Accordingly, in the event of a breach or**
> **threatened breach of one or more of the provisions of this**
> **Agreement, any party who may be injured (in addition to any**
> **remedies that may be available to that party) shall be entitled**
> **to one or more preliminary or permanent orders (i) restraining**
> **and enjoining any act that would constitute a breach, or (ii)**
> **compelling the performance of any obligation that, if not**
> **performed, would constitute a breach.**

> [Operating Agreement § 11.09 (emphasis added)]

Defendants thus expressly agreed that any violation of the Operating Agreement will

cause irreparable harm and entitles the injured party to an injunction. Here, Defendants have

unquestionably breached the Agreement by failing to fulfill their mandatory duty to provide

financial reports to their investors. And now, they have made this violation all the worse by

demanding that Plaintiffs and the other investors agree to pay "liquidated damages" to receive

any financial information at all. Under the plain language of the Operating Agreement, Plaintiffs

are entitled to injunctive relief to bring an end to Defendants' ongoing refusal to abide their

duties. <u>See, e.g.</u>, <u>Schafer v. Citizens Nat'l Bank of Ironton</u>, 168 Ohio St. 535, 536 (1959)

(holding that injunction is the proper form of remedy to enforce a shareholder's right to inspect a corporation's financial records); Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St. 189, 196-97 (1900) (same).

The Dispatch and Mr. Fanta therefore respectfully request this Court to enter a preliminary injunction to (i) compel Defendants to provide Plaintiffs with the financial reports to which Plaintiffs are entitled under the Operating Agreement and (ii) enjoin Defendants' unlawful demand that Plaintiffs must waive their existing rights, sign a new agreement and agree to pay "liquidated damages" in order to receive financial information about their investment.

John W. Zeiger  (0010707)
Steven W. Tigges  (0019288)
Bradley T. Ferrell  (0070965)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 S. High Street
Columbus, Ohio  43215
Telephone:  (614) 365-9900
Facsimile:  (614) 365-7900

Attorneys for Plaintiffs

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served via U.S. mail this 28th day of December, 2005, on William M. Mattes, Dinsmore & Shohl LLP, 175 South Third Street, 10th Floor, Columbus, Ohio 43215.

Steven W. Tigges (0019288)

166568v2

11

**Exhibit M**

# UBS FINANCIAL SERVICES INC.
## 499 WASHINGTON BOULEVARD
## LEGAL PROCESSING CONTROL – 10TH FL.
## JERSEY CITY, NEW JERSEY 07310
## TELEPHONE: (201) 318-2729
## FACSIMILE:  (201) 318-2890

## FACSIMILE TRANSMISSION SHEET

**RECIPIENT NAME:**    James T. Shirley, Jr. Esq.

**COMPANY:**    Holland & Knight LLP

**FACSIMILE NO.:**    212-385-9010

**TELEPHONE:**

**DATE:**    October 30, 2006

**REGARDING:**    Williamson v. Recovery Limited Partnerhip, et al.

**PAGES (INCLUDING COVER SHEET):**    3

This transmission is intended for the sole purpose of the individual and entity to whom it is addressed , and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated agent is strictly prohibited.  If your receipt of this transmission is in error, please notify us immediately at (201) 352-5275 and send the original transmission to us by return mail at the above address.

**FROM:**    Ivan Sterling

**TELEPHONE:**    (201) 318-2729

**MESSAGE:**    Call me with any questions. Thank you.

 **UBS**

UBS Financial Services Inc.
499 Washington Boulevard
Jersey City, NJ 07310-1998

Ivan Sterling
Associate
Legal Processing Control
Tel.  201.318.2729
Fax  201.318.2890

October 30, 2006

**Via Facsimile and Regular Mail**

Michael J. Frevola, Esq.
Holland & Knight LLP
195 Broadway
New York, NY 10007-3189

> **Re:**   **Williamson et al. v. Recovery Limited Partnership et al.**
> **06 Civ. 5724 (LTS)**

Dear Mr. Frevola:

I am writing on behalf of UBS Financial Services Inc. ("UBSFS" or "the firm") in response to the Writ of Attachment and Garnishment concerning the above referenced matter. To confirm our telephone conversation of today, all restraints have been removed from account number UE16875, titled, James F. Turner, Executor Estate of Margaret Graham Armour

In accordance with the Writ of Attachment, the firm has restrained the following accounts:

- Resource Management account (RMA) number CM90921, titled -W. Arthur Cullman and has a current balance of $ 936,912.80; consisting of securities.

- Joint account number CM90922, titled -W. Arthur Cullman and Nancy Cullman. This account has a current balance of $144,648.99; consisting of cash and securities.

- Individual Retirement account (IRA) number CM90923, titled -W. Arthur Cullman. This account has a current balance of $ 940,439.89; consisting of cash and securities.

- Individual Retirement account (IRA) number CM90924, titled -W. Arthur Cullman. This account has a current balance of $292,198.21; consisting of cash and securities.

- Individual Retirement account (IRA) number CM90925, titled -W. Arthur Cullman. This account has a current balance of $ 151,534.03; consisting of cash and securities.

- Individual Retirement account (IRA) number CM90926, titled -W. Arthur Cullman. This account has a current balance of $13,019.75; consisting of cash and securities.

**UBS|PaineWebber**

- Individual Retirement account (IRA) number CM90927, titled -W. Arthur Cullman. This account has a current balance of $ 185,539.25; consisting of cash and securities.

- Trust account number CM90946, titled -W. Arthur Cullman and Peter A Cullman Co-Ttees W. Arthur Cullman Trust B. This account has a current balance of $190,361.21; consisting of cash and securities.

- Resource Management account (RMA) number CM90957, titled -W. Arthur Cullman. This account has a current balance of $257,999.55; consisting of cash and securities.

Since the aforementioned accounts contain securities, the value provided is subject to market fluctuations. Accounts will remain restrained until further notice from the court.

Sincerely,

Ivan Sterling
Paralegal