UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL WILLIAMSON, THE ESTATE OF
DON C. CRAFT, KIRK O'DONNEL, JOHN
LETTOW, TIMOTHY MCGINNIS, FRED NEWTON,
WILLIAM WATSON, CHRIS HANCOCK, DALE        06-CV-5724 (LTS)
SCHONEMAN and INTERNATIONAL DEEP SEA
SURVEY, INC.,

        Plaintiffs,

- against -

RECOVERY LIMITED PARTNERSHIP,
COLUMBUS EXPLORATION, LLC,
COLUMBUS-AMERICA DISCOVERY GROUP,
INC., COLUMBUS EXPLORATION LIMITED
PARTNERSHIP, OMNI ENGINEERING, INC., OMNI
ENGINEERING OF OHIO, INC., ECONOMIC ZONE
RESOURCE ASSOCIATES, ECONOMIC ZONE
RESOURCE ASSOCIATES, LTD., EZRA, INC.,
EZRA OF OHIO, INC., ECON ENGINEERING
ASSOCIATES, INC. DOE.E, INC., THOMAS G.
THOMPSON, GILMAN D. KIRK, JR., JAMES F.
TURNER, MICHAEL J. FORD, JR. and W. ARTHUR
CULLMAN, JR.,

        Defendants.
------------------------------------------------------------------X

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE

Defendants Thomas G. Thompson, Gilman D. Kirk, James F. Turner, Michael J. Ford and W. Arthur Cullman, Jr.,[1] together with the other Defendants, hereby offer the following Reply to Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motion by Order to Show Cause to Vacate Maritime Attachment.

Despite having now had three opportunities to carry their burden of proof, Plaintiffs continue to present the Court with little more than speculation, personal attacks, innuendo and hearsay.[2]

---

[1] Mr. Cullman previously resigned and is NOT a current Board Member. See, Declaration of W. Arthur Cullman, Jr. attached as Exhibit A to Defendants' Motion to Show Cause.
[2] It would serve little purpose, at the present stage of the proceedings, to respond to the personal attacks and innuendo by Plaintiffs on Defendants and their counsel. Such a response

Given Plaintiffs' failure to satisfy the requirements for a Rule B attachment, the Court should vacate the attachments as to each of the Defendants. Alternatively, it should vacate the attachments as to the members of the Board Directors, and should schedule an evidentiary hearing on the amount of the Plaintiffs' claims as to the other Defendants.

## I. PLAINTIFFS' FAILED TO COMPLY STRICTLY WITH LOCAL ADMIRALTY RULE B.2

Plaintiffs' supplemental filing does not speak to Plaintiffs' failure to comply with Local Admiralty Rule B.2. Still, although they do not say so directly, Plaintiffs apparently seek to excuse their failure to give prompt written notice by two tacit arguments.

First, Plaintiffs assert that "To meet their burden under Rule B and maintain their attachment, Plaintiffs need only show that: (1) the Defendants cannot be found within the district, and (2) that Plaintiffs have a valid *prima facie* admiralty claim against Defendants." Pl Suppl Mem 10-30-06 at p. 1. In omitting any mention of the *Aqua Stoli* Court's repeated instruction that a plaintiff must comply with the procedural requirements for a valid *ex parte* prejudgment attachment, Plaintiffs apparently seek tacitly to imply that the Second Circuit's decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty., Ltd.* 460 F.3d 434 (2nd Cir. 2006) has somehow overruled the Court's decision in *Maersk, Inc. v. Neewra, Inc.,* 43 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) (requiring strict technical compliance with the procedures for a Rule B attachment) and *International Ocean Way Corporation of Monrovia v. Hyde Park Navigation, Ltd.*, 555 F. Supp. 1047, 1049 (S.D.N.Y. 1983) (describing constitutional underpinnings of the local rule).

Of course, nothing could be further from the truth. Little is required other than to read *Aqua*

---

would only serve to distract the Court from considering the merits of the four independent grounds for vacating the attachment. The Central District of California had ample opportunity to consider Plaintiffs' wild allegations and *ad hominem* attacks; the result of that proceeding speaks for itself. See *Michael Williamson et al. v. Recovery Limited Partnership et al.*, Case No. CV 06-5689 GHK (JTLx), Consent Order Dissolving Writ of Maritime Attachment and Garnishment and Directing Related Relief, 10-25-06, attached as Exhibit 1. Whether in this forum or another one, Plaintiffs' latest innuendo will be re-adjudicated in an orderly proceeding based on competent evidence, at the proper time and through the proper procedures.

*Stoli*. The Second Circuit's decision makes it clear, over and over again, that a valid Rule B attachment requires strict compliance with the technical procedures under Rule B: "Without doubt the Rule E(4)(f) hearing provides defendants with an opportunity to argue that the requirements of Rule B were not in fact met...." *Aqua Stoli*, 460 F.3d at 438.

Rather that overruling the requirements of strict technical compliance under *Maersk* or *Ocean Way,* the *Aqua Stoli* Court makes clear that notice is required: "The order of attachment may be requested and granted *ex parte, though notice of the attachment to the defendant via appropriate service is required." Aqua Stoli,* 460 F.3d at 438. (emphasis added). In the portions of the quotation from the opinion that have been omitted from Plaintiffs' supplemental filing, the *Aqua Stoli* Court stated:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that (1) it has a valid *prima facie* admiralty claim against the defendants; (2) that defendant cannot be found within the district. (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment *if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E.*

*Id.* at 445 (emphasis added).

Second, Plaintiffs say that Defendants pay "short shrift to the whole reason why such notice is required: to prevent a non-present defendant from being defaulted without notice." Pl Mem Opp Def Mot 10-23-06, at p. 22. Plaintiffs say that strict technical compliance with Local Rule B.2 is impractical because it "does not reflect the delays that occur with the huge amount of Rule B writs being processed on a daily basis," and rhetorically ask, "How can notice to the Defendants be reasonably practicable where Plaintiffs have not been advised of the freezing of the alleged property?"

Plaintiffs are wrong on all counts. Prompt written notice is not required "to prevent a non-present defendant from being defaulted." It is required because in the United States of America, no person, rich or poor, may be deprived of life, liberty or property without due process of law. *See* Advisory Committee Notes to 1985 Amendment to Supplemental Rule B. And, if it means anything,

due process of law means that an American citizen is entitled to prompt notice and an opportunity to be heard. Plaintiffs feign ignorance of when the attachments were caused, yet are well aware that those attachments began as early as August 16, 2006. *See* Supplemental Declaration of Gilman D. Kirk, Jr. Exhibit 8, and p.1 ¶ 2. By Plaintiffs' admission, they did not provide notice to *any* Defendant regarding *any* attachment until nearly four weeks later.

Just as Plaintiffs accept no blame for causing wrongful and unlawful attachments in the California proceeding, they now try to blame the banks for their own failure to comply with Local Rule B.2. Plaintiffs fail to mention that the Order for the attachment was issued on July 28, 2006; that an attachment occurred as early as August 11, 2006; and that by their own admissions, the earliest notice they gave was in mid-September.

Plaintiffs do not deny that as of July 28, 2006 — and for the preceding four months — they had known full well exactly how to reach Defendants and their counsel — and how to do so immediately. This was not an exigent situation of a vessel coming into port and then leaving the next day, where it might have been impractical to give prompt written notice.

Due process of law is not a commodity to be bought or sold, or to be ignored just because it may sometimes be inconvenient or politically inexpedient. Just as the exclusionary rule exists to vindicate the public interest in the rule of law, the requirements of strict adherence to the procedures for an *ex parte* prejudgment attachment vindicate public interests basic to the core essence of the American judicial system. Plaintiffs violated that fundamental right, and the resulting attachments should be vacated forthwith. That violation is sufficient to vacate the attachments, and it is unnecessary for the Court to reach the other three independent grounds for vacating the attachments.

## II. PLAINTIFFS' CLAIMS ARE NOT MARITIME

Plaintiffs argue that they have stated a maritime claim because the Second Circuit's decision in *CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377 (2d Cir. 1982) holds that "a state choice of law clause does not divest a federal court of admiralty jurisdiction over a maritime contract." Pl Suppl Mem at 1. This circular argument begs the

question, since the very issue to be answered is whether the contracts are maritime or not.

Merely reading the Second Circuit's decision in *Oceanic* shows that Plaintiffs have misunderstood both the facts of that case and its holding. *Oceanic* does not hold that a court will not enforce the parties' selection of state law rather than maritime law. The court was not required to address the issue because there was no conflict between state law and maritime law, and it expressly declined to do so: "Since the New York law in this regard *is the same* as the generally prevailing principles *we need not reach the question* whether a choice of law provision in a maritime contract must be given effect by the courts." *Oceanic*, 682 F.2d at 382 n.8 (emphasis added).[3]

But even if Plaintiffs' characterization of the decision in *Oceanic* two decades ago was correct, little would be required to respond, other than to note — again — that the parties' contract expressly chooses Ohio law as the governing law. This includes, of course, Ohio's choice-of-law rules. Since Ohio falls within the jurisdiction of the U.S. Court of Appeals for the Sixth Circuit, the precedents of the Sixth Circuit, not the Second Circuit, govern the issue.

In the Sixth Circuit, to determine whether a district court can exercise admiralty jurisdiction based on a contract claim, the terms of the contract itself — including the parties' decision to adopt state law as the governing law — are determinative. *See National Enterprises v. Smith*, 114 F.3d 561, 565 (6th Cir. 1997)[4] ("If the terms of the contract indicate that the parties did not intend for their agreement to be considered a charter governed by admiralty law, then the exercise of admiralty jurisdiction is not proper."). A contract provision adopting state law provides clear indication that the contract is not within the court's maritime jurisdiction:

---

[3] Indeed, it is by no means clear that the parties in *Oceanic* had selected New York law as governing the entire contract, although it is clear that they *had* selected New York law to govern, at a minimum, the authority of agents under the contract. *See Oceanic, 682 F.2d* at 382, *quoting* Restatement (Second) of Agency § 323(3) (1957) ("if the fact of agency does not appear in an integrated contract, an agent who appears as a party thereto can not introduce extrinsic evidence to show that he is not a party... . New York law, which the lease specified was to be controlling, conforms to these general rules") (internal quotations omitted).
[4] As noted previously, Judge Van Graafeiland, Circuit Judge of the United States Court of Appeals for the Second Circuit, sat on the Sixth Circuit's three-judge panel by designation.

> Section 25 of the Lease states that the Lease 'Shall be construed, interpreted and determined *by the laws of the State of Ohio.*' As the district court correctly noted, this provision indicates that neither Smith nor First Federal considered the Lease to be a charter cognizable in admiralty at the time of contract.

*National Enterprises*, 114 F.3d at 565 (emphasis in the original).

Each of the agreements on which Plaintiffs base their claim is "governed by Ohio law applicable to contracts between residents of Ohio wholly executed and performed in Ohio." Pl Cmpl, Ex 1, p.4, ¶9; Pl Cmpl, Ex 3, p.4, ¶11; Pl Cmpl, Ex 2, p.5, ¶14.3. Each agreement also contains a merger clause, providing that the written agreement "contains the full and complete understanding of the parties with respect to the subject matter hereof and supersedes all prior representations and understandings, whether oral or written." *Id.*

Still, Plaintiffs cite the lone decision of *Ocean Science & Eng'g Inc. v. Int'l Geo Marine Corp.*, 312 F. Supp. 825 (D. Del. 1970), for the proposition that the parties could not select state law over maritime law. Plaintiffs apparently overlook the fact that any such "holding" was overruled two years later by the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972) ("courts should enforce choice-of-law and choice-of-forum clauses in cases of 'freely negotiated private international agreements.'") *See also Marine Midland Bank, N.A. v. United Missouri Bank, N.A.*, 223 A.D.2d 119, 643 N.Y.S.2d 528, 530 (N.Y. App. Div. 1996) (citing *Wyatt v. Fulrath*, 16 N.Y.2d 169, 211 N.E.2d 637, 264 N.Y.S.2d 233 (N.Y. 1965)); *In re Millenium Seacarriers, Inc.*, 292 B.R. 25, 29 (S.D.N.Y. 2003) (holding "the choice of law provision in the agreement of the parties governs, unless it would be 'unfair, unjust or unreasonable' to hold the party to his bargain").

It is therefore unnecessary to reach Plaintiffs' argument that, at least as to one of them, Plaintiff IDSS, the contract was maritime because it included the lease of technical services and equipment — services and equipment which, Plaintiffs say, can only be used at sea.[5] It is similarly

---

[5] Mr. Williamson's apparent ignorance that sonar is regularly used in land archaeology may be indicative of why he and his team erroneously opined that the anomaly that was ultimately verified by Columbus-America Discovery Group to be the SS *Central America* was nothing

unnecessary to detail the statute making clear that technical service professional and research scientists aboard a research vessel do not qualify as seamen, 46 U.S.C. § 444, and that side scan sonar, which is not used to transport passengers or cargo, is not a vessel. *See* 1 U.S.C. §3. *See also Bernard v. Binnings Constr. Co., Inc.*, 741 F.2d 824, 829-32 (5th Cir. 1984) (factors considered are whether the structure maintains (1) navigational aids; (2) lifeboats and other life-saving equipment; (3) a raked bow; (4) bilge pumps; (5) crew quarters; and (6) registration with the Coast Guard as a vessel).

As to the wage penalty claim stated by another lone Plaintiff (the Estate of Don Craft), the statute is clear and unambiguous: since by Plaintiff's own admission he claims entitlement to a share of profits by virtue of his contract, his claim fails as a matter of law. The plain language of the statute could not be any clearer that the *entire chapter* of the statute — including the penalty wage provision — has no application to voyages where the seaman is entitled to a share of the profits. 46 U.S.C. §10501(b). Even if the claim did not fail as a matter of law under the clear language of the statute, it would nevertheless fail because of the absence of anything to rebut Mr. Kirk's testimony

---

more than "geology." See Supplemental Declaration of Gilman D. Kirk, Jr. Not surprisingly, Mr. Williamson is also mistaken in his recollection of the relationship between the contracts at issue and the significance of Battelle Memorial Institute and the Ohio State University. The concept of finding deep ocean cultural deposits (mostly pre-20[th] Century shipwrecks) by using highly sophisticated sonar originally created to locate manganese nodules was developed in Columbus, Ohio, through many years of research by the Defendants and others. Supplemental Declaration of Gilman D. Kirk, Jr. Columbus is home to Battelle Memorial Institute Research Labs (dedicated to Developing Technology for the Benefit of Mankind and, at the time of the execution of the Non-Disclosure Agreements, the largest not-for-profit contract research organization in the country) and the Ohio State University (one of the largest on-campus universities in the country). Both of these institutions are notable for their broad-ranging research into varied cutting-edge fields of science and technology, including sonar. *Id.* These two institutions alone are particularly notable in the area of extreme environments, including the deep ocean, outer space and the polar caps. This high density of research facilities (they are within walking distance of each other) centered in the Midwest is particularly important because of the need for access to broad-ranging, multidisciplinary research projects, research data and research facilities. *Id.* It was determined that a multidisciplinary approach would be necessary when creating new paradigms for exploring new frontiers like outer space or the deep ocean, the last frontier on Earth. *Id.* Columbus is only 600 miles (or a day's drive) from over 60 percent of the population of the U.S., including many of the largest cities and other centers of research and technology.

that he never owned the R/V *Arctic Discoverer*; and, of course, the mere hearsay statement in *Ship of Gold in the Deep Blue Sea* that Mr. Kirk may have made a "proposal" regarding financing does not rebut that evidence.

### III. EVEN IF PLAINTIFFS HAD COMPLIED WITH ALL THE TECHNICAL REQUIREMENTS FOR A RULE B ATTACHMENT, THE OTHER CONSIDERATIONS, ON BALANCE, WEIGH AGAINST PERMITTING THE ATTACHMENT

Plaintiffs' arguments against the other grounds for vacating the attachment rest on their mistaken application of *Aqua Stoli*. Contrary to Plaintiffs' assumption, *Aqua Stoli* recognizes additional grounds for vacatur, including the availability of a forum in which the parties are present, as well as other factors. As noted before, in addition to vacatur based on the plaintiff's failure "to sustain his burden of showing that he has satisfied the requirements of Rules B and E," vacatur "is appropriate in other limited circumstances." *Aqua Stoli*, 460 F.3d at 445. These include, for example, where the plaintiff and defendant may be subject to jurisdiction in the same district, or where another alternative convenient forum is available. *Id.* Plaintiffs have failed to prove that there are no fora where both Plaintiffs and Defendants are subject to jurisdiction, or that there are no other convenient jurisdictions. To the contrary, Plaintiffs have filed virtually identical claims in Ohio and California, often using word-for-word language in the complaints.

### IV. PLAINTIFFS HAVE NO GROUNDS FOR ATTACHING THE PERSONAL ASSETS OF THE BOARD MEMBERS

A.     **Plaintiffs' Have No Cognizable Maritime Claim Against the Defendant Board Members**

       1.     **Plaintiffs' Claims Against the Defendant Board Members Are Not Maritime or Admiralty Claims**

Plaintiffs' claims against Defendant Board Members sound in common law, not admiralty or maritime law. It has long been established that admiralty and maritime tort claims are those which arise from actions on navigable waters. As early as 1868, the Supreme Court stated:

> Torts or injuries committed on navigable waters, of a civil nature, are also cognizable in the admiralty courts. Jurisdiction in the former case depends upon the nature of the contract, but in the latter it *depends entirely upon locality*. Mistakes need not be made if these rules are observed; but contracts to be performed on waters not navigable, are not maritime any more than those made to be performed on land. Nor are torts cognizable in the admiralty unless committed on waters within the admiralty and maritime jurisdiction, as defined by law.

*The Belfast*, 74 U.S. 624, 637(1868) (emphasis added). Thus, claims for torts committed on land or contracts to be performed on land are not maritime.

Plaintiffs allege that the Defendant Board Members breached fiduciary duties on land. There is no claim that such a breach occurred on navigable waters. Certainly, the Operating Agreement of the CXLLC was not to be performed on water. Similarly, Plaintiffs' arguments to "pierce the corporate veil" have nothing to do with any acts performed on navigable waters. Indeed, Plaintiffs have cited no authority that supports their assertion that their claims against Defendant Board Members are admiralty or maritime. For example, Plaintiffs cite *Zim Israel Navigation Co., Ltd. v. 3-D Imports*, 29 F. Supp. 2d 186 (S.D.N.Y. 1998). Although *Zim* involved a claim for breach of fiduciary duty, it did not recognize breach of fiduciary duty as a maritime claim or authorize attachment under the maritime law for an alleged breach of fiduciary duty. Similarly, *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329 (2d Cir. 1986), also cited by Plaintiffs, does not authorize maritime attachment of personal property for alleged breach of fiduciary duty. Instead, that case involved a claim regarding the impermissible deviation of a vessel. *Id.* The plaintiff in *Rascator* sought to recover for the defendants' wrongful conduct in impermissibly deviating the ship's cargo and issuing false bills of lading. *Id.* Nothing in *Dow Chemical, supra*, supports Plaintiffs' assertion that they are entitled to attach personal assets of Defendant Board Members for an alleged breach of fiduciary duty.

It is clear that Plaintiffs' claims against Defendant Board Members are not maritime. Plaintiffs' unlawful attachment of the personal assets of Defendant Board Members was done in bad

faith and without legal basis in order to get a tactical advantage.[6]

### 2. Even if this Court Could Somehow Find that Plaintiffs' Claims Are Maritime, Plaintiffs Cannot Make a *Prima Facie* Case of Liability Against Defendant Board Members

Plaintiffs cannot recover against Defendant Board Members personally. As fully briefed in Defendants Reply in Support of Motion to Show Cause to Vacate Maritime Attachment, both Delaware[7] and Ohio law limit the liability of the company's advisory directors. The Delaware Limited Company Act, at § 18-303, expressly limits the personal liability of LLC members and managers to third parties.

Similarly, Ohio law is clear that shareholders, officers and directors of corporate entities are not personally liable for the acts of the corporate entity absent a few, defined exceptions. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roak Companies, Inc.*, 76 Ohio St.3d 274 (1993). In order to pierce the corporate veil, Plaintiffs must prove (1) that Defendant Board Members had such complete control over CXLLC that it had no separate mind, will or existence; (2) that Defendant Board Members exercised control in such a way as to commit fraud or an illegal act and (3) that Plaintiffs sustained an injury or unjust lost resulting therefrom. *Id.*[8] Plaintiffs cannot make such a case.

As set forth in Defendants' Reply in Support of Motion by Order to Show Cause to Vacate Maritime Attachment, no Defendant company even had a board of directors when the non-disclosure agreements were executed in 1986, and the board of directors was not created until 12 years later, after CXLLC was formed. Similarly, the lease for the sonar was executed years before CXLLC was

---

[6] *Reibor Int'l Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262, 265 (2d Cir. 1985) (holding that an attachment is improper where plaintiff has no cognizable claim in admiralty against the defendant). A maritime attachment "may be vacated if the defendant shows that the plaintiff sought the attachment to obtain a tactical advantage over the defendant." *See Aqua Stoli*, 460 F.3d at 439.

[7] CXLLC was formed in Delaware and the Operating Agreement is subject to Delaware law. (Notwithstanding Plaintiffs' suggestion to the contrary, no judge in any jurisdiction has held otherwise).

[8] Plaintiffs imply that there is a separate test for corporate veil piercing under federal maritime law, citing *Northern Tankers (Cyprus) Ltd. v. Backstrom*, 967 F. Supp. 1391 (D. Ct. 1997). Instead, *Northern Tankers* applied common law. *Id.* at 1398.

formed and years before the existence of the its Board of Directors. Plaintiffs have no cognizable claim against Defendant Board Members. There is simply no basis for a maritime claim and no personal liability on the part of Defendant Board Members. Accordingly, any attachment of their personal assets was improper and without legal foundation.

**B.   Pursuant to the Documents Attached to Plaintiffs' Complaint, Plaintiffs Are Only Entitled to Recover Net Profits of CXLLC**

The documents upon which Plaintiffs' claims are based limit Plaintiffs' recovery to a very small portion of the net profits of CXLLC. As set forth in Mr. Kirk's previously filed declaration, CXLLC had no net profits. Because Plaintiffs were only entitled to recover the net profits[9] and there are none, the maritime attachment of Defendant Board Members' personal property was improper. It must therefore be vacated.

**C.   Defendant Board Members Are Entitled to Attorneys' Fees, Costs and Damages**

As set forth above, Plaintiffs' attachment of Defendant Board Members' personal assets was wholly without merit in fact and in law. Plaintiffs attached an estate over which Mr. Turner merely served as Executor. Plaintiffs also attached an IRA, a Roth IRA and other accounts jointly owned by Mr. Cullman and his wife. Finally, Plaintiffs persuaded the Court to attach property that did not belong to Gilman Kirk. Plaintiffs' unlawful attachment of the personal assets of Defendant Board Members is mere gamesmanship and should not go unpunished. Pursuant to Fed. R. C. P. 11 and the law set forth in *Rashi Textiles, U.S.A. v. Rhomberg Textil Gesellschaft M.B.H. of Austria*, 857 F. Supp. 1051 (S.D.N.Y. 1994) (holding a defendant is entitled to fees and costs where attachment was wrongful),[10] the Court should award Defendant Board Members attorneys' fees, costs and damages for Plaintiffs' wrongful attachment of Defendant Board Members' personal assets.

Respectfully Submitted,

---

[9] The "Verified Complaint," at paragraph 2, claims Plaintiffs are entitled to "gross value" but the exhibits attached to the "Verified Complaint" state "recovery profits." Ex 1-NDA, p. 4, paragraph 7. *See also* Exhibit 2, Lease and Service Agreement, p. 2, paragraph 4.5, which reads "net recovery" and Exhibit 3, N.D.A., p. 3, paragraph 7(a), "net recovery."

[10] Plaintiffs admitted they improperly attached Mr. Turner's assets and allegedly release the same.

Dated: Columbus, Ohio
       November 1, 2006

ROBOL LAW OFFICE, LPA

By: _____
Richard T. Robol
Admitted *Pro Hac Vice*
Attorneys for Defendants
555 City Park Avenue
Columbus, Ohio 43125
(614) 737-3739

_____
William M. Mattes
Admitted *Pro Hac Vice*
DINSMORE & SHOHL LLP
Attorneys for Defendants
Thomas G. Thompson, Gilman D. Kirk,
  James F. Turner, Michael J. Ford, Jr.,
  and W. Arthur Cullman, Jr.
175 South Third Street
Columbus, Ohio 43125
(614) 628-6880

Dated: New York, New York
      November 1, 2006

_____
Daniel S. Moretti (DSM 6630)
LANDMAN CORSI BALLAINE & FORD P.C.
Attorneys for Defendants
Thomas G. Thompson, Gilman D. Kirk,
  James F. Turner, Michael J. Ford, Jr.,
  and W. Arthur Cullman, Jr.
120 Broadway, 27th Floor
New York, New York 10271
(212) 238-4800

TO:  James T. Shirley, Jr., Esq.
     Michael J. Frevola, Esq.
     HOLLAND & KNIGHT LLP
     Attorneys for Plaintiffs
     195 Broadway
     New York, New York 10007-3189
     (212) 513-3200

## AFFIDAVIT OF SERVICE BY E-MAIL

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

      **NICOLE A. DYER**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at NEWARK, NEW JERSEY.

      That on the 1ST day of November, 2006, deponent served the within **REPLY TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION BY ORDER TO SHOW CAUSE TO VACATE MARITIME ATTACHMENT**

upon

**VIA ELECTRONIC MAIL**
jim.shirley@hklaw.com
michael.frevola@hklaw.com

HOLLAND & KNIGHT LLP
195 Broadway, 24th Floor
New York, New York 10007

attorneys in this action, at the addresses designated by said attorneys for that purpose by transmitting a copy to the above-named person(s) by E-MAIL at said e-mail addresses.

                                                  Nicole A. Dyer

Sworn to before me this

1ST day of November, 2006

_____
              Notary

SOPHIA REE
Notary Public, State of New York
No. 02RE6130625
Qualified in Kings County
Commission Expires July 18, 2009

429529.1 DocsNY

Index No. 06-CV-5724          Year

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL WILLIAMSON, et al.,

                             Plaintiffs,

v.

RECOVERY LIMITED PARTNERSHIP, et al.,

                             Defendants.

REPLY TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION BY ORDER TO SHOW CAUSE TO VACATE MARITIME ATTACHMENT

Signature (Rule 130-1.1-a)

Print name beneath

LANDMAN CORSI BALLAINE & FORD P.C.
*Attorneys for*

*Office and Post Office Address, Telephone*
120 Broadway
NEW YORK, N.Y. 10271-0079
(212) 238-4800

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated

Attorney(s) for

1500 – **Blumberg**Excelsior Inc., NYC 10013

---

NOTICE OF ENTRY

PLEASE take notice that the within is a *(certified)* true copy of a duly entered in the office of the clerk of the within named court on

Dated,

    Yours, etc.
LANDMAN CORSI BALLAINE & FORD P.C.
*Attorneys for*

*Office and Post Office Address*
120 Broadway
NEW YORK, N.Y. 10271-0079

To

Attorney(s) for

NOTICE OF SETTLEMENT

PLEASE take notice that an order of which the within is a true copy will be presented for settlement to the Hon. one of the judges of the within named Court, at

on                                  M.
at
Dated,

    Yours, etc.
LANDMAN CORSI BALLAINE & FORD P.C.
*Attorneys for*

*Office and Post Office Address*
120 Broadway
NEW YORK, N.Y. 10271-0079

To

Attorney(s) for

EXHIBIT 1

| | |
|---|---|
| 1 | Mark S. Shipow (SBN 91134) |
|   | Kregg A. Koch (SBN 230145) |
| 2 | HOLLAND & KNIGHT LLP |
|   | 633 West Fifth Street, 21st Floor |
| 3 | Los Angeles, California 90071-2040 |
|   | Telephone: (213) 896-2400 |
| 4 | Facsimile: (213) 896-2450 |
| 5 | Michael J. Frevola |
|   | (Admitted Pro Hac Vice) |
| 6 | HOLLAND & KNIGHT LLP |
|   | 195 Broadway |
| 7 | New York, New York 10007 |
|   | Telephone: (212) 513-3200 |
| 8 | Facsimile: (212) 385-9010 |
| 9 | Attorneys for Plaintiffs Michael |
|   | Williamson, The Estate of Don C. |
| 10 | Craft, Kirk O'Donnell, John Lettow, |
|   | Timothy McGinnis, Fred Newton, |
| 11 | William Watson, Chris Hancock, |
|   | Dale Schoeneman, and International |
| 12 | Deep Sea Survey, Inc. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 17 | MICHAEL WILLIAMSON, THE ESTATE OF DON C. CRAFT, KIRK O'DONNELL, JOHN LETTOW, TIMOTHY MCGINNIS, FRED NEWTON, WILLIAM WATSON, CHRIS HANCOCK, DALE SCHOENEMAN, and INTERNATIONAL DEEP SEA SURVEY, INC., | CASE NO. CV 06-5689 GHK (JTLx) |
|   |   | [PROPOSED] |
|   |   | CONSENT ORDER DISSOLVING WRIT OF MARITIME ATTACHMENT AND GARNISHMENT AND DIRECTING RELATED RELIEF |
|   |   | Honorable Jennifer T. Lum, Magistrate Judge |
|   | Plaintiffs, | NOTE CHANGES MADE BY THE COURT |
|   | v. |   |
|   | RECOVERY LIMITED PARTNERSHIP, COLUMBUS EXPLORATION, LLC, COLUMBUS-AMERICA DISCOVERY GROUP, INC., |   |

- 1 -

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10 | COLUMBUS EXPLORATION LIMITED PARTNERSHIP, OMNI ENGINEERING, INC., OMNI ENGINEERING OF OHIO, INC., ECONOMIC ZONE RESOURCE ASSOCIATES, ECONOMIC ZONE RESOURCE ASSOCIATES, LTD., EZRA, INC., EZRA OF OHIO, INC., ECON ENGINEERING ASSOCIATES, INC., DOE.E, INC., THOMAS G. THOMPSON, GILMAN D. KIRK, JAMES F. TURNER, MICHAEL J. FORD, and W. ARTHUR CULLMAN, JR.,<br><br>Defendants. |

WHEREAS, the Verified Complaint was filed in this matter on September 11, 2006; and

WHEREAS, upon application of Holland & Knight LLP, attorneys for Plaintiffs, on September 12, 2006, the Court issued an Order Directing The Issuance Of A Writ Of Maritime Attachment And Garnishment (the "Directing Order") and a Seizure Order (the "Seizure Order"); and

WHEREAS, on September 12, 2006, upon order of this Court, the Clerk of the Court issued a Writ of Maritime Attachment And Garnishment (the "Writ"); and

WHEREAS, on September 14, the U.S. Marshall executed the Seizure Order and seized certain items from Monaco Financial, LLC ("Monaco"), which items currently are in the possession of the substitute custodian appointed by this Court; and

WHEREAS, on September 22, 2006, Monaco filed, *inter alia*, a Motion To Quash Writ of Maritime Attachment And Garnishment (the "Motion"); and

1     WHEREAS, this Court conducted a hearing on the Motion on October 16
2 and October 17, to be resumed on October 18, 2006; and
3     WHEREAS, prior to the resumption of the hearing on the Motion on
4 October 18, 2006, the Plaintiffs and Monaco, by and through their respective
5 counsel of record, reached a resolution of the Motion pending before this Court,
6 and have read the terms of such resolution into the record of this Court, at which
7 times such terms became the binding agreement of Plaintiffs and Monaco, with the
8 following constituting a written Order implementing such agreement; and
9     **GOOD CAUSE APPEARING,**
10     **NOW THEREFORE IT IS ORDERED** as follows:
11         1. The Directing Order, Seizure Order and Writ are hereby dissolved in
12             their entirety and of no further force or effect;
13         2. All property seized pursuant to the Seizure Order shall be released to
14             Monaco upon two (2) business days notice of Monaco to Plaintiffs
15             after receipt (whether by fax, email or otherwise) of this signed Order
16             by counsel for the parties;
17         3. The release of the seized property shall be handled in accordance with
18             the written instructions of counsel for Monaco to be provided
19             forthwith to counsel for Plaintiffs;
20         4. ~~The Complaint is hereby dismissed~~ without prejudice, and ~~without~~
21             any prevailing party, ~~with all parties~~ to bear their own costs, including
22             ~~attorneys' fees~~;
23         5. Monaco and its counsel have agreed not to pursue, and are hereby
24             precluded from pursuing, any claims against Plaintiffs or their
25             counsel, Holland & Knight LLP and the individual attorneys thereof,
26             arising out of the attachment and seizure of property from Monaco,
27             including but not limited to claims for malicious prosecution, abuse of
28             process, wrongful seizure, wrongful attachment, or Rule 11 sanctions;

6. Plaintiffs and their counsel acknowledge that they are not and will not be, and are hereby precluded from, asserting any claims relating to the *S.S. Central America* treasure against any bona fide purchasers of artifacts or numismatics recovered from the *S.S. Central America*,

7. Counsel for the parties acknowledge, and the Court confirms, that counsel for Plaintiffs has returned to counsel for Monaco all unredacted documents produced in these proceedings, and has not retained copies thereof, and that the Protective Order issued by the Court during the course of the proceedings shall remain a binding and enforceable Order of the Court.

IT IS SO ORDERED.

Date: October 25, 2006

United States Magistrate Judge

APPROVED AS TO FORM AND CONTENT

Mark S. Shipow
Kregg A. Koch
Michael J. Frevola
(Admitted Pro Hac Vice)
HOLLAND & KNIGHT LLP

By: _____
Mark S. Shipow
Attorneys for Plaintiffs

Richard K. Howell
Heather N. Herd
RUTAN & TUCKER, LLP

By: _____
Heather N. Herd
Attorneys for Garnishee, Monaco Financial, LLC

# 4121970_v1

- 4 -